WEIL, GOTSHAL & MANGES LLP
R. BRUCE RICH (admitted *pro hac vice*)
bruce.rich@weil.com
BRUCE S. MEYER (admitted *pro hac vice*)
bruce.meyer@weil.com
BENJAMIN E. MARKS (admitted *pro hac vice*)
benjamin.marks@weil.com
TODD LARSON (admitted *pro hac vice*)
todd.larson@weil.com
767 Fifth Avenue
New York, New York 10153
Telephone:  212.310.8000
Facsimile:   212.310.8007

KRAMER LEVIN NAFTALIS & FRANKEL LLP
MICHAEL S. OBERMAN, Cal. Bar. No. 101857
MOberman@KRAMERLEVIN.com
1177 Avenue of the Americas
New York, New York 10036
Telephone:  212.715.9294
Facsimile:   212.715.8294

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
FRED R. PUGLISI, Cal. Bar No. 121822
fpuglisi@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone:  310.228.3700
Facsimile:   310.228.3701

Attorneys for Defendant
SIRIUS XM RADIO INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLO & EDDIE, INC., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SIRIUS XM RADIO INC., and DOES 1 through 100,<br><br>Defendants. | Case No. 13-CV-5693 PSG (RZx)<br>**CLASS ACTION**<br>**DEFENDANT'S: (1) NOTICE OF MOTION AND MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a); and (2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT.**<br><br>**Date:** Dec. 2, 2013<br>**Time:** 1:30 pm<br>**Ctrm:** 880<br><br>[Request for Judicial Notice and Declarations filed, and [Proposed] Order lodged, concurrently herewith] |

TO THE ABOVE-CAPTIONED COURT AND TO PLAINTIFF FLO & EDDIE, INC. AND ITS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on December 2, 2013 at 1:30 p.m., or as soon thereafter as counsel may be heard in Courtroom 880 in the United States District Court for the Central District of California, 255 East Temple Street, Los Angeles, CA 90012-3332, the Honorable Philip S. Gutierrez, presiding, defendant Sirius XM Radio Inc. ("**Sirius XM**") will and hereby does move the Court for an order transferring this action from the District Court for the Central District of California to the District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a).

This motion is made on the grounds that transfer is warranted pursuant to § 1404(a) because (1) there is a nearly identical lawsuit already pending between the same parties hereto in the Southern District of New York, (2) this action could have been brought in the Southern District of New York; and (3) transfer is warranted in the interests of convenience and fairness. More specifically, Sirius XM's headquarters are in New York, the witnesses relevant to Plaintiff Flo & Eddie, Inc.'s allegations are likely to be in New York (or, in a few instances, Washington, D.C.), whereas few, if any, witnesses reside in California. Transfer also conserves the courts' and the parties' resources that would otherwise be wasted on litigating duplicative cases in multiple federal courts at the same time.

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the Declarations of Terrence R. Smith and Fred R. Puglisi, the Request for Judicial Notice, all pleadings, papers and other documentary materials in the Court's file for this action, any additional matters of which this Court may or must take judicial notice, and such other matters as this Court may consider.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on September 24, 2013.

1  Dated:  October 9, 2013

2  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

3

4  By _____ /s Fred R. Puglisi _____

5  FRED R. PUGLISI

6  WEIL, GOTSHAL & MANGES LLP

7  R. BRUCE RICH (admitted *pro hac vice*)
   BRUCE S. MEYER (admitted *pro hac vice*)
8  BENJAMIN E. MARKS (admitted *pro hac vice*)
   TODD LARSON (admitted *pro hac vice*)
9

10  KRAMER LEVIN NAFTALIS & FRANKEL LLP

11  MICHAEL S. OBERMAN

12  Attorneys for Defendant
    SIRIUS XM RADIO INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ...........................................................................................i

TABLE OF AUTHORITIES ...................................................................................ii

I.     INTRODUCTION .........................................................................................1

II.    PROCEDURAL HISTORY ..........................................................................4

III.   THIS CASE SHOULD BE TRANSFERRED TO THE UNITED
       STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
       NEW YORK PURSUANT TO 28 U.S.C. § 1404(A)....................................5

       A.     The Southern District of New York is a Proper Venue ......................7

       B.     The Convenience of the Parties and Witnesses and Interests of
              Justice Warrant Transfer to the Southern District of New York ...........7

              1.     The convenience of witnesses favors litigating in the
                     Southern District of New York......................................................8

              2.     The location where the agreements were negotiated and
                     executed does not favor either forum ..........................................11

              3.     The states' familiarity with the governing law is neutral
                     because either court can apply the relevant law ........................11

              4.     Plaintiff's choice of forum should be accorded little
                     weight because Plaintiff has filed a nearly identical class
                     action suit in the Southern District of New York ......................12

              5.     The parties' contacts with the chosen forum are neutral............14

              6.     The contacts relating to Plaintiff's causes of action in the
                     chosen forum favor transfer.........................................................14

              7.     Access to sources of proof favors transfer .................................15

              8.     Transferring this case to the Southern District of New
                     York will reduce the costs of litigation and serve the
                     interests of efficiency..................................................................15

IV.    CONCLUSION ............................................................................................17

SIRIUS XM'S MOTION TO TRANSFER VENUE

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

<u>Federal Cases</u>

4
5
*A.J. Indus., Inc.v.United States Dist. Court for Cent. Dist.*
    503 F.2d 384 (9th Cir. 1974) ......................................................6, 7, 17

6
7
*Alcatel Lucent USA, Inc. v. Dugdale Commc'ns, Inc.*
    CV 09-2140 (PSG), 2010 WL 883831 (C.D. Cal. Mar. 5, 2010) (Gutierrez,
    J.) ......................................................................................8, 9, 10, 12

8
9
*Bastys v. Rothschild*
    97 CIV. 5154 CMGAY, 2000 WL 1810107 (S.D.N.Y. Nov. 21, 2000) ...........12

10
11
*Bristol-Myers Squibb Co. v. Andrx Pharmaceuticals, LLC*
    03 CIV. 2503 (SHS), 2003 WL 22888804 (S.D.N.Y. Dec. 5, 2003)................13

12
13
*Cont'l Grain Co. v. Barge F.B.L.-585*
    364 U.S. 19 (1960) .................................................................................2, 6

14
15
*Ezieme v. Ward Int'l Trading, Inc.*
    CV 08-6748 (PSG), 2009 WL 2818394 (C.D. Cal. Aug. 31, 2009) ...................8

16
17
*Fontaine v. Washington Mut. Bank, Inc.*
    CV08-5659PSGEX, 2009 WL 1202886 (C.D. Cal. Apr. 30, 2009)
    (Gutierrez, J.)....................................................................................15

18
19
*Golden Bridge Tech., Inc. v. Apple Inc.*
    2:12-CV-4014-ODW, 2012 WL 3999854 (C.D. Cal. Sept. 11, 2012) .............13

20
21
*Hatch v. Reliance Ins. Co.*
    758 F.2d 409 (9th Cir. 1985) ..............................................................6

22
23
*Hoefer v. U.S. Dep't of Commerce*
    C 00 0918 VRW, 2000 WL 890862 (N.D. Cal. June 28, 2000) ................13, 14

24
25
*Hoffman v. Blaski*
    363 U.S. 335 (1960) ......................................................................7

26
*Jones v. GNC Franchising, Inc.*
    211 F.3d 495 (9th Cir. 2000) ...........................................................6

27
28
*Keeton v. Hustler Magazine, Inc.*
    465 U.S. 770 (1984) .......................................................................7

*Kirby v. Coastal Sales Ass'n, Inc.*
    82 F. Supp. 2d 193 (S.D.N.Y. 2000) ................................................................. 12

*Lou v. Belzberg*
    834 F.2d 730 (9th Cir. 1987) ..................................................................... 12, 13

*Meijer, Inc. v. Abbott Labs.*
    544 F. Supp. 2d 995 (N.D. Cal. 2008) ............................................................ 7

*Metz v. U.S. Life Ins. Co. in City of N.Y.*
    674 F. Supp. 2d 1141 (C.D. Cal. 2009) ....................................................... 6, 15

*In re Pfizer Inc.*
    364 F. App'x 620 (Fed. Cir. 2010) ................................................................ 12

*Shaw Family Archives Ltd. v. CMG Worldwide, Inc.*
    05 CIV. 3939 (CM), 2008 WL 4127830 (S.D.N.Y. Sept. 2, 2008) ................. 12

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*
    C-13-1803 EMC, 2013 WL 4530470 (N.D. Cal. Aug. 26, 2013) ............... 11, 12

*Van Dusen v. Barrack*
    376 U.S. 612 (1964) ..................................................................................... 6, 7

**Federal: Statutes, Rules, Regulations, Constitutional Provisions**

28 U.S.C. § 1332(d) ............................................................................................ 7

28 U.S.C. § 1391(b) ............................................................................................ 7

28 U.S.C. § 1404(a) ..........................................................................2, 3, 5, 6, 7, 17

Federal Rule of Civil Procedure 42 ................................................................... 16

-iii-

# I.      <u>INTRODUCTION</u>

Plaintiff Flo & Eddie, Inc. ("**Plaintiff**") has filed, in short succession, three nearly identical putative class action lawsuits against defendant Sirius XM Radio Inc. ("**Sirius XM**") over certain claimed rights in pre-1972 sound recordings ("**Pre-1972 Recordings**").  One is pending in this Court, the second was filed in the Southern District of New York (the "**New York Action**"), and the third was filed in the Southern District of Florida (the "**Florida Action**").  All three lawsuits arise out of the same alleged course of conduct, namely, that Sirius XM purportedly performs Pre-1972 Recordings to subscribers via its satellite radio and internet webcasting services and made copies of those recordings in connection therewith without permission.  Each case is brought on behalf of a virtually identical putative class of owners of Pre-1972 Recordings allegedly copied and performed by Sirius XM.[1] The only salient difference between this action and the New York and Florida actions is which state law Plaintiff contends has been violated by Sirius XM.  This motion seeks to transfer this action to New York, so that those cases (and potentially the Florida Action) can be litigated together and the costs to the parties and burden on the federal courts can be reduced.

These three lawsuits present a single dispute.  Sirius XM pays hundreds of millions of dollars per year in royalties to the owners of copyrights in sound recordings, and has paid such copyright royalties since the inception of its service more than a decade ago.  Federal copyright law, however, protects only those sound recordings made after February 15, 1972; accordingly, it is on account of those recordings that Sirius XM pays those royalties.  Plaintiff apparently has become aggrieved by the distinction drawn by Congress in withholding copyright protection

---

[1] The class in each case is defined as "owners of Pre-1972 Recordings reproduced, performed, distributed or otherwise exploited by Defendants . . . without license or authorization to do so" in, respectively, California, New York and Florida.  Because Sirius XM operates a national service and its broadcast is the same in every state, the classes will be identical or virtually identical.

from its Pre-1972 Recordings; thus now, after decades of inaction while a wide variety of music users, including radio and television broadcasters, bars, restaurants and website operators, exploited those Pre-1972 Recordings countless millions of times without paying fees, it asserts a purported right under the law of various states to be compensated by Sirius XM for comparable unlicensed uses.  Sirius XM and its corporate predecessors themselves have operated for some twelve years without paying license fees for their performances of Pre-1972 Recordings or any demand from the Plaintiff that they do so.

As will be shown at a later stage of these proceedings, there is no state law that requires Sirius XM (or any of the hundreds of thousands of other U.S. businesses that publicly perform music) to pay license fees for Pre-1972 Recordings. Plaintiff's multiple court filings constitute a form of lawsuit lottery in search of an elusive new state-law right that would radically overturn decades of settled practice. While none of these lawsuits has merit, there is absolutely no reason to burden three different courts with the same dispute between the same parties that will entail the same discovery and overlapping defenses.

Proceeding with duplicative cases before three different federal district courts would be inefficient in the extreme, significantly increase the cost of litigating what is in reality a single dispute, and waste judicial resources.  In order to streamline these cases, reduce costs, and eliminate waste, Sirius XM seeks to transfer this case (and by separate motion to be filed in the Southern District of Florida, the Florida Action as well) to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).  It is well-established by the Supreme Court that "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent."  *Cont'l Grain Co. v. Barge F.B.L.-585*, 364 U.S. 19, 26 (1960).  *A fortiori*, permitting three different cases involving the same

-2-

SIRIUS XM'S MOTION TO TRANSFER VENUE

1 | parties and issues to proceed in different district courts would be contrary to

2 | purposes of § 1404(a).

3 |       Courts in this Circuit conduct a two-part analysis in evaluating a motion to

4 | transfer under § 1404(a).  First, the proposed transferee court must be one where the

5 | case "might have been brought" in the first instance.  This requirement is plainly

6 | satisfied as Plaintiff has already brought a duplicative action in the transferee court.

7 | Second, courts employ a multi-factor balancing test to determine whether transfer is

8 | warranted in the interests of convenience and fairness.  Here, this test favors transfer

9 | to the Southern District of New York.  The convenience of the witnesses and

10 | interests of justice strongly favor transfer.  Sirius XM's headquarters are in New

11 | York, and, as further discussed below, any witnesses relevant to Plaintiff's

12 | allegations are likely to be in New York (or, in a few instances, Washington, D.C.).

13 | Conversely, Sirius XM has limited employees and operations in California, who and

14 | which hold no specific relevance to this lawsuit.  Plaintiff's principals reside in

15 | Washington State and Tennessee, which makes New York no less, and likely more,

16 | convenient than California.  Transfer also conserves the parties' and judicial

17 | resources that would otherwise be wasted on litigating duplicative cases with

18 | identical classes in multiple federal courts at the same time.

19 |       Also favoring transfer are the contacts relating to Plaintiff's causes of action.

20 | Plaintiff alleges that Sirius XM improperly copied its Pre-1972 Recordings to Sirius

21 | XM's "central servers" and performed those recordings in California.  The "central

22 | servers," however, are located in New York and Washington, D.C., not California.

23 | Neither are records regarding what Pre-1972 Recordings have been played on Sirius

24 | XM maintained in California.  Sirius XM's national service plays the same songs in

25 | every state, which means there is nothing that uniquely connects Plaintiff's

26 | allegations to California.  Access to sources of proof also favors transfer to New

27 | York because any relevant corporate documents will likely be found in Sirius XM's

28 | New York headquarters.  The remaining factors are neutral.  There are no

-3-

1   agreements or contracts at issue.  The Southern District of New York is perfectly

2   capable of applying California law and the California claims in this case are

3   intertwined with the federal copyright regime.  Plaintiff's incorporation in California

4   does not outweigh the much stronger contacts Sirius XM has to New York.  And

5   Plaintiff's choice of forum should be afforded virtually no weight since Sirius XM is

6   seeking to transfer this case to another forum of Plaintiff's choosing.

7        In light of the foregoing and as Sirius XM further demonstrates herein, the

8   balance of factors plainly favors transfer.

9   **II.    PROCEDURAL HISTORY**

10        On August 1, 2013, Plaintiff filed the instant action in the Superior Court of

11   the State of California for the County of Los Angeles, Central District.  *See*

12   Complaint (Dkt. No. 1, Ex. 1).  Plaintiff purports to assert its complaint on behalf of

13   itself and "owners of Pre-1972 Recordings reproduced, performed, distributed or

14   otherwise exploited by Defendants in California without a license or authorization to

15   do so during the period from August 1, 2009 to the present." *Id.* ¶ 9.  Plaintiff

16   alleges that Sirius XM, "without any license or authority, has copied Plaintiff's and

17   each Class Members' Pre-1972 Recordings onto the Service's central server(s) and

18   makes such copies available to its subscribers in California.  Sirius XM publicly

19   performs these recordings in California via streaming audio transmission through

20   the Service for a fee as part of a subscription plan that currently includes up to 72

21   different music channels." *Id.* ¶ 3.  On August 6, 2013, Sirius XM removed the case

22   to this Court.

23        On August 16, 2013 – before Plaintiff had even served Sirius XM in this

24   action – Plaintiff filed the virtually identical New York Action in the Southern

25   District of New York, *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.; John Does 1-10*,

26   No. 1:13-cv-5784 (CM) (S.D.N.Y.).  *See* Declaration of Fred R. Puglisi, dated

27   October 9, 2013 ("Puglisi Decl.") Ex. 1.  Plaintiff again purported to bring an action

28   on behalf of a functionally identical class:  "Class Members defined as the owners of

-4-

1 | Pre-1972 Recordings reproduced, performed, distributed or otherwise exploited by

2 | Defendants in New York without a license or authorization to do so during the

3 | period from August 10, 2009 to the present." *Id.* ¶ 11.[2]  The New York Action is

4 | also based on the same factual allegations as this case: "Sirius XM, without any

5 | license or authority, has copied Plaintiff's and each Class Members' Pre-1972

6 | Recordings onto the Service's central server(s) and makes such copies available to

7 | its subscribers in New York.  Sirius XM publicly performs these recordings in New

8 | York via streaming audio transmission through the Service for a fee as part of a

9 | subscription plan that currently includes up to 72 different music channels." *Id.* ¶ 3.

10 | The complaint in the New York Action is substantially a verbatim copy of the

11 | complaint in this action.

12 | On September 3, 2013, just over two weeks after filing the New York Action,

13 | Plaintiff filed the Florida Action, yet another nearly identical suit, in the Southern

14 | District of Florida:  *Flo & Eddie, Inc. v. Sirius XM Radio, Inc., et al*., No.

15 | 1:13-cv-23182 (KMM) (S.D. Fla.).  *See* Puglisi Decl. Ex. 2.  Again, Plaintiff

16 | purports to bring the same factual allegations on behalf of an identical class of

17 | alleged rights holders.  *See id.* ¶¶ 11-16.

18 | Concurrently with filing this motion, Sirius XM is also filing a motion in the

19 | Southern District of Florida to transfer the Florida Action to the Southern District of

20 | New York.

21 | **III.**   **THIS CASE SHOULD BE TRANSFERRED TO THE UNITED**

22 |          **STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF**

23 |          **NEW YORK PURSUANT TO 28 U.S.C. § 1404(A)**

24 | "For the convenience of parties and witnesses, in the interest of justice, a

25 | district court may transfer any civil action to any other district or division where it

---

[2]Because the Sirius XM service is national, and a work that Sirius XM has performed anywhere has been performed everywhere, the distinction between the putative class in the New York Action and the putative class in the instant action is one without a difference.

1   might have been brought. . . ."  28 U.S.C. § 1404(a).  The purpose of § 1404(a) is to

2   prevent the waste of time, energy and money, and to protect litigants, witnesses and

3   the public against unnecessary inconvenience and expense.  *Van Dusen v. Barrack*,

4   376 U.S. 612, 616 (1964) (citing *Cont'l*, 364 U.S. at 26 (1960)).  It is

5   well-established that "[t]o permit a situation in which two cases involving precisely

6   the same issues are simultaneously pending in different District Courts leads to the

7   wastefulness of time, energy and money that § 1404(a) was designed to prevent."

8   *Cont'l*, 364 U.S. at 26; *see also, A.J. Indus., Inc.v.United States Dist. Court for Cent.*

9   *Dist.*, 503 F.2d 384, 389 (9th Cir. 1974) ("[T]he pendency of an action in another

10   district is important because of the positive effects [transfer] might have in possible

11   consolidation of discovery and convenience to witnesses and parties.").  This

12   proposition is all the more true here, given that Plaintiff has filed *three* identical

13   lawsuits in three different courts.

14        In determining whether to transfer an action pursuant to § 1404(a), the Court

15   first must determine that the district to which the action would be transferred is one

16   where the action "might have been brought."  *Hatch v. Reliance Ins. Co.*, 758 F.2d

17   409, 414 (9th Cir. 1985).  If it determines that the proposed transferee forum is

18   appropriate, the Court must make an "individualized, case-by-case consideration of

19   convenience and fairness," taking into consideration the following factors:  (1) the

20   convenience of the witnesses, (2) the location where the relevant agreements were

21   negotiated and executed, (3) the state that is most familiar with the governing law,

22   (4) the plaintiff's choice of forum, (5) the respective parties' contacts with the

23   forum, (6) the contacts relating to the plaintiff's cause of action in the chosen forum,

24   (7) the differences in the cost of litigation in the two forums, (8) the availability of

25   compulsory process to compel attendance of unwilling non-party witnesses, and (9)

26   the ease of access to sources of proof.  *Jones v. GNC Franchising, Inc.*, 211 F.3d

27   495, 498-99 (9th Cir. 2000); *Metz v. U.S. Life Ins. Co. in City of N.Y.*, 674 F. Supp.

28   2d 1141, 1149 (C.D. Cal. 2009).

**A.     The Southern District of New York is a Proper Venue**

The requirement that the case "might have been brought" in the transferee court is easily satisfied here.  *See* 28 U.S.C. § 1404(a); *Hoffman v. Blaski*, 363 U.S. 335, 338 (1960); *A.J. Indus., Inc.*, 503 F.2d at 387.  Sirius XM is a Delaware corporation with its principal place of business in New York, New York.  *See* Compl. ¶ 7; Declaration of Terrence R. Smith, dated October 8, 2013 ("Smith Decl."), ¶ 3.  Therefore, venue is proper in the Southern District of New York and the proposed transferee court has personal jurisdiction over Sirius XM.  *See* 28 U.S.C. § 1391(b).[3]  Additionally, the court has subject-matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).  Plaintiff has already brought an action virtually identical to this one in the Southern District of New York based on these same jurisdictional grounds.  *See* Puglisi Decl. Ex. 1 ¶¶ 5-10.  There is simply no dispute that this case "might have been brought" in the Southern District of New York.

**B.     The Convenience of the Parties and Witnesses and Interests of Justice Warrant Transfer to the Southern District of New York**

Courts apply the second prong of the § 1404(a) analysis – "the individualized, case by case consideration of convenience and fairness" – using a multi-factor balancing test.  *Van Dusen*, 376 U.S. at 622.  In examining the §1404(a) factors, "[n]o single factor is dispositive, and [the] district court has broad discretion" to examine the individualized facts of the case.  *Meijer, Inc. v. Abbott Labs.*, 544 F. Supp. 2d 995, 999 (N.D. Cal. 2008) (citing *Stewart Org. Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) and *Sparling v. Hoffman Constr. Co., Inc.*, 864 F. 2d 635, 639 (9th Cir. 1988)).  Even where some factors are neutral or weigh against transfer, granting transfer may still be appropriate based on an overall weighting of all

---

[3]The Southern District of New York also has personal jurisdiction over Plaintiff because Plaintiff has consented to jurisdiction by electing to file the New York Action.  *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984).

-7-

factors. *See Alcatel Lucent USA, Inc. v. Dugdale Commc'ns, Inc.,* CV 09-2140 (PSG), 2010 WL 883831, at *13 (C.D. Cal. Mar. 5, 2010) (Gutierrez, J.) (balancing the factors and granting a motion to transfer where some of the factors either favored or slightly favored transfer and other factors were neutral); *Ezieme v. Ward Int'l Trading, Inc*., CV 08-6748 (PSG), 2009 WL 2818394, at *11 (C.D. Cal. Aug. 31, 2009) (Gutierrez, J.) (balancing the factors and granting a motion to transfer even where some factors weighed against transfer). Here, a review of the factors demonstrates that several factors weigh in favor of transfer, and the other factors are neutral. No factor weighs against transfer. Accordingly, the balance of factors weighs in favor of transfer.

### 1.   The convenience of witnesses favors litigating in the Southern District of New York

The convenience of the witnesses is often regarded as the most important factor in evaluating a motion to transfer venue. *Ezieme*, 2009 WL 2818394, at *3. This factor clearly favors transfer to the Southern District of New York. Sirius XM is headquartered in New York, and its programming and broadcast operations, along with the vast majority of employees in those areas, are, in large part, located in New York and Washington, D.C.[4] *See* Smith Decl. ¶ 5. Records reflecting any Pre-1972 Recordings are maintained in New York and Washington, D.C. *See id.* ¶ 7. It is likely that relevant Sirius XM witnesses are based out of New York. Specifically, Sirius XM anticipates that the following individuals, all based out of New York, will be witnesses in this action: Terrence R. Smith, Corporate Vice President & Chief Engineering Officer with responsibility for Broadcast Operations and Engineering, Robert Law, Senior Vice President & General Manager, Streaming Services and

---

[4]Sirius XM was formed as a result of a merger between Sirius Satellite Radio ("Sirius") and XM Satellite Radio Holdings Inc. ("XM"). Since the merger, Sirius XM has operated the Sirius and XM satellite radio services (collectively referred to herein as "Sirius XM's service"). *See* Smith Decl. ¶ 4.

-8-

Products, and Steven Blatter, Senior Vice President & General Manager, Music
Programming. *See id.* ¶ 9.

While Sirius XM maintains some small offices in California, those offices are
not involved with tracking plays of Pre-1972 Recordings. *See id.* ¶¶ 6-7.[5]  Rather
they focus on selling Sirius XM's service to subscribers and provide some limited
studio space. *See id.* ¶ 6.  It is unlikely that any Sirius XM employees residing in
California possess significant information relevant to this matter.  Accordingly, the
convenience of potential Sirius XM witnesses clearly favors transfer.

The convenience of Plaintiff's potential witnesses may also favor a transfer to
the Southern District of New York and certainly does not weigh against transfer.
The Plaintiff's principals are Mark Volman and Howard Kaylan, s*ee* Compl. ¶ 2,
known professionally as Flo and Eddie.  Neither appears to reside in California.
Volman resides in Nashville, TN, *see* Puglisi Dec. Exs. 4, 5, 6,[6] which is
substantially closer to New York than California.  Kaylan appears to reside in
Bellevue, Washington.  *See* Puglisi Dec. Exs. 7, 8, 9.[7]  Kaylan, however, travels

---

[5] Sirius XM also operates certain broadcast equipment in California, like it does in
other states, that, in essence, serves to strengthen its signal.  *See* Smith Decl. ¶ 6.

[6] Exhibit 4, Mark Volman's biography on Belmont University's website, indicates
that Volman is a professor at Belmont University, and that Belmont University is
located in Nashville, TN.  Exhibit 4 is also available at
http://www.belmont.edu/cemb/faculty_and_staff/volman_mark.html (last visited
Sept. 16, 2013).  Exhibit 5, the contact page of Mark Volman's personal website,
reflects that he is "located in Nashville, Tennessee."  Exhibit 5 is also available at
http://www.professorflo.com/contact (last visited Sept. 16, 2013).  Exhibit 6, Mark
Volman's twitter website, reflects in its header that Volman is located in "Nashville,
TN."  Exhibit 6 is also available at https://twitter.com/markvolman (last visited Sept.
16, 2013).

[7] Exhibit 7, an article dated May 8, 2013 from *Record Collector News*, states that
Kaylan is "now based in Seattle, Washington."  Exhibit 7 is also available at
http://recordcollectornews.com/2013/05/shell-shocked.  Exhibit 8, an article dated
May 9, 2013 from *MyNorthwest.com*, states that Kaylan as "called the Seattle area
home for years."  Exhibit 8 is also available at
http://mynorthwest.com/871/2271125/From-Happy-Together-to-hurling-on-Hendrix
-A-Seattle-rock-legend-tells-all.  Exhibit 9, Howard Kaylan's twitter website,

-9-

1    extensively throughout the United States.  Over the time period from June to

2    October, 2013 alone, Kaylan will have traveled to over 50 different cities in over 25

3    different states.  *See* Puglisi Dec. Ex. 10.[8]  This includes multiple trips to the New

4    York metropolitan area.  *See id.* (identifying eight trips to New York, New Jersey,

5    and Connecticut during the five-month period).  In addition, Plaintiff's decision to

6    file a nearly identical action in New York suggests that New York is not an

7    inconvenient forum for its potential witnesses, and transfer of this action to New

8    York would potentially be even more convenient for Plaintiff's witnesses because

9    they would not have to appear multiple times in multiple courts.

10          With respect to non-party witnesses, there is no indication from the face of

11   the complaint that any non-party witnesses residing in California will be needed to

12   resolve this dispute.  At the same time, Sirius XM will likely subpoena information

13   relevant to the putative classes and prior industry licensing practices from the record

14   industry's three principal trade associations, the Recording Industry Association of

15   America, SoundExchange, Inc., and the American Association of Independent

16   Music, two of which are headquartered in Washington, D.C. and one is in New

17   York.  *See* Smith Decl. ¶ 10.  This also weighs in favor of transfer to New York,

18   which will be the more convenient venue for all three and will have the power to

19   compel the attendance of the American Association of Independent Music

20   (headquartered in New York) should it prove unwilling to voluntarily testify at a

21   potential trial.  *See Alcatel Lucent USA, Inc.*, 2010 WL 883831, at *9-10 (favoring

22   transfer where the majority of non-party witnesses resided in or near the proposed

23   transferee district).

24

25

---

26   reflects in its header that Kaylan is located in "Bellevue, Washington."  Exhibit 9 is
     also available at https://twitter.com/howardkaylan (last visited Sept. 16, 2013).

27   [8]Exhibit 10, Howard Kaylan's personal website, lists his tour schedule and dates
     from June 8, 2013 to October 18, 2013.  Exhibit 10 is also available at
28   http://howardkaylan.com/documents/59.html (last visited Sept. 16, 2013).

-10-

New York is far more convenient for Sirius XM's potential witnesses.  It may also be more convenient for Plaintiff's witnesses, but is certainly not inconvenient to those witnesses as they will need to appear in the New York Action in any event. Accordingly, this factor strongly weighs in favor of transfer.

### 2.   The location where the agreements were negotiated and executed does not favor either forum

Plaintiff has not identified any contracts or agreements at issue in this case. This factor is therefore neutral and does not favor one forum over the other.

### 3.   The states' familiarity with the governing law is neutral because either court can apply the relevant law

Federal district courts routinely apply the laws of other jurisdictions or states in cases pending before them.  *See Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, C-13-1803 EMC, 2013 WL 4530470, at * 12 (N.D. Cal. Aug. 26, 2013).  There is "no reason to question the ability of [federal district courts] to correctly apply the law of foreign jurisdictions."  *Martin v. Spring Break %2C83 Prods., LLC*, CV096104PSG (FMOX), 2009 WL 4673918, at *4 (C.D. Cal. Dec. 3, 2009) (Gutierrez, J.) (transferring a case to the Eastern District of Louisiana and finding the familiarity with governing law factor neutral).  Moreover, the state law claims presented in these cases intersect with the federal copyright regime, which all federal courts are equally capable of interpreting.  Plaintiff's position that California law protects a performance right in Pre-1972 Recordings is a novel claim with which California federal courts would not have recurring experience.[9]  To the extent that California law may apply in this case to the alleged actions of Sirius XM, the

---

[9]After Plaintiff filed this action, the New York Action, and the Florida Action, a separate group of plaintiffs, including the so-called "major" record companies, filed an individual action – titled *Capitol Records, LLC et al. v. Sirius XM Radio Inc.*, No. BC520981 – in California state court raising similar issues.  Plaintiffs in that case have acknowledged that no California state court has ever found that California law protects performance rights for Pre-1972 Recordings.  S*ee* Puglisi Dec. Ex. 3 at 3.

1  Southern District of New York is fully competent to adjudicate such claims.[10]

2  Therefore, this factor is neutral and does not favor either party or venue. *See id.*,

3  at *4.

4         **4.**    **Plaintiff's choice of forum should be accorded little weight**
**because Plaintiff has filed a nearly identical class action suit**

5  **in the Southern District of New York**

6       While, ordinarily, weight is accorded to a plaintiff's choice of forum, *see Lou*

7  *v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987), in the circumstances presented here,

8  where the Plaintiff has chosen multiple fora, that consideration should be of little

9  moment.

10       As established, Plaintiff has filed a duplicative lawsuit in the Southern

11  District of New York on behalf of the same putative class as is alleged in the instant

12  action.  A transfer of this case to the Southern District of New York would still

13  result in litigation of this matter before a forum chosen by Plaintiff.  For that reason,

14  the usual deference given to choice of forum in a first-filed action does not apply.

15  *See Alcatel Lucent USA, Inc. v. Dugdale Commc'ns, Inc.,* CV 09-2140 PSG(JCX),

16  2010 WL 883831 (C.D. Cal. Mar. 5, 2010) (granting a motion to transfer from this

17  Court to the Southern District of Indiana even where Plaintiff filed suit in California

18  before filing in Indiana); *In re Pfizer Inc.*, 364 F. App'x 620, 621 (Fed. Cir. 2010)

19  (affirming a district court's granting of a motion to transfer out of the first-filed

20  forum because where "plaintiff chose both fora . . . it would be inappropriate to

21  allow a plaintiff to file identical actions in different courts and then pick the court in

22  which it wishes to proceed.").

23       Numerous district courts have held that a plaintiff's recent filing of multiple

24  other suits in other jurisdictions against the same defendants and on the same issues,

25

26  [10]The Southern District of New York judge assigned to handle the New York Action
has adjudicated California law claims on numerous occasions. *See e.g.*, *Shaw*

27  *Family Archives Ltd. v. CMG Worldwide, Inc*., 05 CIV. 3939 (CM), 2008 WL
4127830 (S.D.N.Y. Sept. 2, 2008); *Bastys v. Rothschild*, 97 CIV. 5154 CMGAY,

28  2000 WL 1810107 (S.D.N.Y. Nov. 21, 2000); *Kirby v. Coastal Sales Ass'n, Inc*., 82
F. Supp. 2d 193 (S.D.N.Y. 2000).

1  is a "suggesti[on] that convenience of forum matters not to [plaintiff]."  *Golden*
2  *Bridge Tech., Inc. v. Apple Inc*., 2:12-CV-4014-ODW, 2012 WL 3999854, at *4
3  (C.D. Cal. Sept. 11, 2012).  In *Golden Bridge*, the court granted defendant's motion
4  to transfer because "forum convenience [would] have a substantially more
5  significant impact to [d]efendants than to [plaintiff]," since plaintiff's
6  "forum-related problems [were] its own doing."  *Id*.

7      Similarly, a district court in the Southern District of New York held that
8  where plaintiff's choice of forum would otherwise be accorded weight,
9  "double-filing does cut against [a plaintiff's] choice."  *Bristol-Myers Squibb Co. v.*
10  *Andrx Pharmaceuticals, LLC*, 03 CIV. 2503 (SHS), 2003 WL 22888804, at *5
11  (S.D.N.Y. Dec. 5, 2003).  In *Bristol-Myers*, plaintiff filed identical suits in the
12  Southern District of New York and Southern District of Florida.  *Id*.  Defendant
13  sought transfer of the New York action to Florida, and, in granting defendant's
14  transfer request, the court found that "the importance of plaintiff's choice of forum
15  [was] greatly diminished" because of the duplicative suits.  *Id.*, at *4.

16      Likewise, in *Papapetrou v. Boeing Co*., plaintiff filed a suit in Illinois state
17  court (which was removed to the Northern District of Illinois), and subsequently
18  filed a nearly-identical action in the Eastern District of Pennsylvania.  No. 07 C
19  5892, 2008 WL 548770, at *1 (N.D. Ill. Feb. 25, 2008).  In granting defendant's
20  motion to transfer the Illinois case to the Eastern District of Pennsylvania, the court
21  acknowledged the weight traditionally given to a plaintiff's choice of forum but
22  found that doing so "would be unjust where, as here, the plaintiffs actually filed a
23  nearly-identical suit in the very court to which defendants seek to transfer this case."
24  *Id.*, at *5.

25      What is more, when a plaintiff "brings a derivative suit or represents a class,
26  the named plaintiff's choice of forum is given less weight."  *Lou v. Belzberg*, 834
27  F.2d at 739 (citations omitted); *see also Hoefer v. U.S. Dep't of Commerce,* C 00
28  0918 VRW, 2000 WL 890862 (N.D. Cal. June 28, 2000) (finding that where

-13-

1  "members of the purported class are numerous and are located throughout the nation

2  . . . plaintiff's choice of forum [ ] is not given substantial weight when determining

3  whether a transfer of venue is proper").  As in *Hoefer*, the putative class is alleged to

4  have numerous members and is not limited to California residents.

5      Accordingly, Plaintiff's "choice" of forum in California should be

6  disregarded for this analysis.

7      **5.    The parties' contacts with the chosen forum are neutral**

8      There are no especial contacts between the parties and the Central District of

9  California that warrant keeping the case in this district.  Plaintiff is a California

10  entity, but its principals appear to reside in Seattle, Washington and Nashville,

11  Tennessee.  The complaint is devoid of allegations that Plaintiff conducts significant

12  business activities in the Central District of California or that the Central District of

13  California is somehow more important to its business than any other part of the

14  country.  As noted above, Mr. Kaylan's touring activities appear to be national in

15  scope.  *See* Puglisi Decl. Ex. 10.  And Mr. Volman appears to base his professional

16  activities out of Nashville, Tennessee.  *See* Puglisi Dec. Exs. 4-5.

17      While Sirius XM has subscribers in the Central District of California, and a

18  limited physical presence in California that is not specifically related to the

19  allegations in this case, its headquarters is in New York.  *See* Smith Decl. ¶¶ 3, 6-7.

20  Its satellite service is offered nationwide, and broadcasts are the same in every state.

21  Plaintiff's incorporation in California and the availability of the Sirius XM service

22  to subscribers in this district are not enough to tip this factor against transfer to the

23  Southern District of New York.

24      **6.    The contacts relating to Plaintiff's causes of action in the**

25           **chosen forum favor transfer**

26      Plaintiff alleges that Sirius XM improperly copied its Pre-1972 Recordings

27  onto Sirius XM's "central servers" and then performed those recordings over Sirius

28  XM's satellite radio service.  *See* Compl. ¶ 3.  Plaintiff's "copying" allegation has

-14-

no connection to California.  Sirius XM's central servers are not located in California, but rather New York and Washington D.C.  *See* Smith Decl. ¶ 8.  Plaintiff also alleges that Sirius XM performed its Pre-1972 Recordings in California when California subscribers to Sirius XM's national satellite radio service listened to those recordings.  Compl. ¶ 3.  This, however, does not distinguish California from any other state where a Sirius XM subscriber turns on his or her satellite radio.  The activities relevant to this matter – broadcast operations, tracking of song plays, and the maintenance of the central computer servers with respect to Pre-1972 Recordings – largely occur in New York and Washington, D.C (which are also the locations of the employees responsible for such activities).  *See* Smith Decl. ¶¶ 5-9.  This factor favors transfer to New York.  *See Fontaine v. Washington Mut. Bank, Inc.*, CV08-5659PSGEX, 2009 WL 1202886, at *5 (C.D. Cal. Apr. 30, 2009) (Gutierrez, J.) (favoring transfer where "the contacts that are most relevant to this case all occurred in [the proposed transferee jurisdiction]," and where "very few of [p]laintiff's [ ] claims even concern the parties' contacts with California").

### 7.  <u>Access to sources of proof favors transfer</u>

The vast majority of documents and other sources of proof relevant to Plaintiff's claims do not exist in California.  As noted, Sirius XM's headquarters is in New York.  *See* Smith Decl. ¶ 3.  To the extent Plaintiff seeks corporate documents from Sirius XM, any such documents exist in New York.  Also noted, Sirius XM's central servers are in New York and Washington, D.C.  This factor slightly favors transfer.  *See Metz v. U.S. Life Ins. Co. in City of New York*, 674 F. Supp. 2d 1141, 1149 (C.D. Cal. 2009) (finding that the costs of litigation and sources of proof favor transfer to the Southern District of New York).

### 8.  <u>Transferring this case to the Southern District of New York will reduce the costs of litigation and serve the interests of efficiency</u>

Litigating this case in the Southern District of New York will reduce costs because Sirius XM is headquartered in New York, and it is likely that any relevant

-15-

1   witnesses will be based in New York (or possibly Washington, D.C.) and any

2   relevant documents likewise located in New York or D.C.  Plaintiff's principals, on

3   the other hand, are based out of Washington State and Tennessee and thus will be

4   required to travel and incur costs whether the case is in New York or California.

5        In addition, transferring this case to the Southern District of New York will

6   allow for a more efficient resolution of the dispute.  In the absence of a transfer,

7   these matters will proceed on parallel paths litigating the same issues – and

8   potentially conducting identical discovery – in multiple district courts at the same

9   time.  This will result in increased costs to both parties as the various phases of

10  litigation would have to be duplicated in multiple courts.  If trials were necessary,

11  the same witnesses would likely have to testify multiple times in various courts

12  located at opposite ends of the country, further raising the costs to the parties.

13  Parallel actions would also unnecessarily waste judicial resources.  This Court and

14  the Southern District of New York would have to oversee duplicative discovery,

15  resolve duplicative disputes and rule on duplicative motions.  There is no reason to

16  burden the federal courts in such a manner.  Nor should there be any concern that

17  transfer would cause delay.  The practices of the court currently handling the New

18  York Action reflect the court's expectation that discovery will be completed within

19  six months of commencement of an action.  *See* Individual Practices and Procedures

20  of the Honorable Colleen McMahon, Rule V(A), *available at*

21  http://www.nysd.uscourts.gov/cases/show.php?db=judge_info&id=692.

22        Transferring this case to New York will also allow for coordination between

23  and possibly consolidation of the cases.[11]  It will reduce the costs to the parties and

24  minimize the impact on the resources of the federal courts.  Indeed, courts find that

25  _____

26  [11]Federal Rule of Civil Procedure 42 provides that "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any

27  other orders to avoid unnecessary cost or delay."  This action, the New York Action and the Florida Action all present identical questions of fact because Plaintiff alleges

28  the same conduct by Sirius XM in all three complaints.

-16-

1  the "feasibility of consolidation" weighs heavily in favor of transfer because of the

2  "positive effects it might have in possible consolidation of discovery and

3  convenience to witnesses and parties." *A.J. Indus. Inc.*, 503 F.2d at 389.

4  Accordingly, this factor strongly supports transfer.

5  **IV.   CONCLUSION**

6      For the foregoing reasons, Sirius XM respectfully requests that the Court

7  transfer this action to the Southern District of New York pursuant to 28 U.S.C.

8  § 1404(a).

9  Dated:  October 9, 2013

10                          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

11

12                          By _____/s Fred R. Puglisi_____

13                                  FRED R. PUGLISI

14                          WEIL, GOTSHAL & MANGES LLP

15                              R. BRUCE RICH (admitted *pro hac vice*)
                                BRUCE S. MEYER (admitted *pro hac vice*)
16                              BENJAMIN E. MARKS (admitted *pro hac vice*)
                                TODD LARSON (admitted *pro hac vice*)
17

18                          KRAMER LEVIN NAFTALIS & FRANKEL LLP

19                              MICHAEL S. OBERMAN

20                              Attorneys for Defendant
                                SIRIUS XM RADIO INC.
21

22

23

24

25

26

27

28

-17-