GRADSTEIN & MARZANO, P.C.
HENRY GRADSTEIN (State Bar No. 89747)
hgradstein@gradstein.com
MARYANN R. MARZANO (State Bar No. 96867)
mmarzano@gradstein.com
HARVEY W. GELLER (State Bar No. 123107)
hgeller@gradstein.com
MATTHEW A. SLATER (State Bar No. 259986)
6310 San Vicente Blvd., Suite 510
Los Angeles, California 90048
T: 323-776-3100

EVAN S. COHEN (State Bar No. 119601)
esc@manifesto.com
1180 South Beverly Drive, Suite 510
Los Angeles, California 90035
T: 310-556-9800  F: 310-556-9801

Attorneys for Plaintiff
FLO & EDDIE, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLO & EDDIE, INC., a California corporation, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SIRIUS XM RADIO, INC., a Delaware corporation; and DOES 1 through 10,<br><br>Defendants. | Case No. CV13-05693 PSG (RZx)<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFF FLO & EDDIE, INC. IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

# TABLE OF CONTENTS

I. INTRODUCTION.................................................................................................. 1

II. SIRIUS XM IS LIABLE FOR ITS UNLICENSED PERFORMANCES. ........................ 1

    A.    California, Not Federal, Law Governs This Case. .................................. 1

    B.    Ownership Of The Artistic Performance In A Recording Includes The Right To Exclude All Others From Using That Performance........................... 2

III. THE DORMANT COMMERCE CLAUSE IS NOT APPLICABLE. ............................. 7

IV. SIRIUS XM'S ACQUIESCENCE ARGUMENT IS MERITLESS.................................. 9

V. SIRIUS XM IS LIABLE FOR ITS REPRODUCTIONS. ............................................ 11

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

1

# TABLE OF AUTHORITIES

2

<u>Cases</u>

3

*ACLU* v. *Johnson*, 194 F.3d 1149, 1160-64 (10th Cir. 1999) ................................. 9

4

*American Booksellers Found. v. Dean*, 342 F.3d 96, 104 (2d Cir. 2003) ........................... 9

5

*Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 437 (S.D.N.Y. 2011).................... 6

6

*Arrow Air, Inc.* v. *Port Auth. Of New York and New Jersey*, 602 F. Supp. 314, 321 (S.D.N.Y. 1985)................................................................ 8

7

*Balboa Ins. Co. v. Trans Global Equities*, 218 Cal. App. 3d 1327, 1342 (1990) ..................... 5

8

*Bowers* v. *NCAA, Inc.*, 151 F. Supp. 2d 526, 538 (D.N.J. 2001) ................................. 8

9

*California School Employees Ass'n v. Travis Unified School Dist.,* 156 Cal. App. 3d 242, 247 (1984) ................................................................ 4

10

*Capitol Records, LLC v. Bluebeat, Inc.*, 765 F. Supp. 2d 1198 (C.D. Cal. 2010) ................. 1, 2, 6

11

*Central Valley Chrysler-Jeep* v. *Witherspoon,* 456 F. Supp. 2d 1160, 1183-84 (E.D. Cal. 2006) ... 8

12

*DiCampli-Mintz* v. *County of Santa Clara,* 55 Cal. 4th 983,992 (2012) ......................... 5

13

*Dillon v. NBCUniversal Media*, LLC, 2013 U.S. Dist. LEXIS 100733 (C.D. Cal. June 18, 2013) . 6

14

*Esberg v. Union Oil Co.*, 28 Cal. 4th 262, 268 (2002).......................................... 3

15

*Exxon Corp.* v. *Governor of Maryland*, 437 U.S. 117, 127 (1978) ................................. 8

16

*G & G Closed Circuit Events, LLC v. Nguyen,* 2013 U.S. Dist. LEXIS 81387 * 5 (N.D. Cal. June 10, 2013) .......................... 10

17

*Goldstein v. California*, 412 U.S. 546 (1973). .............................................. 2

18

*Harrison v. Frye*, 148 Cal. App. 2d 626 (1957) ............................................ 9

19

*Hollywood Screentest Of America, Inc.* v. *NBC Universal, Inc.,* 151 Cal. App. 4th 631, 650 (2007) ............................................ 5

20

*International News Service* v. *Associated Press,* 248 U.S. 215, 239-40 (1918) ................... 5

21

*Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*, 552 F.3d 1033 (9th Cir. 2009)................. 11

22

*Kramer v. Thomas*, 2006 U.S. Dist. LEXIS 96714 (C.D. Cal. Sept. 28, 2006) ........................ 12

23

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322-23 (2011) ................................. 6

24

*Lam v. Bureau of Sec. & Investigative Services*, 34 Cal. App. 4th 29, 36 (1995) .................... 10

25

*Lewis v. BT Investment Managers, Inc.*, 447 U.S. 27, 44 (1980)................................. 8

26

*Lux v. Haggin*, 69 Cal. 255, 270 (1886) ................................................... 9

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

*Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 961 (N.D. Cal. 2006) .................. 9

*Ne. Bancorp v. Bd. of Governors of Fed. Reserve Sys.*, 472 U.S. 159, 174 (1985) ....................... 7

*New England Power Co. v. New Hampshire*, 455 U.S. 331, 340 (1982)........................................ 8

*Paramount Pictures Corp.* v. *Carol Pub I 'g Group*, 11 F. Supp. 2d 329, 337 (S.D.N.Y. 1998) .. 10

*Partee v. San Diego Chargers Football Co.*, 34 Cal. 3d 378, 668 P.2d 674 (1983)...................... 9

*People v. Gipson*, 213 Cal. App. 4th 1523, 1530 (2013) ...................................................... 4

*People* v. *Kwak,* 63 Cal. App. 4th 1236,1251-52 (1998) .................................................... 3

*Petrella v. MGM*, 134 S.Ct. 1962 (2014) ........................................................................ 10

*Soto* v. *Tu Phuoc Nguyen*, 634 F. Supp. 2d 1096 (E.D. Cal. 2009) ...................................... 8

*UMG Recordings v. MP3.com, Inc.*, 92 F. Supp. 2d 349 (S.D.N.Y. 2000) ............................. 13

*Unilogic, Inc. v. Burroughs Corp.*, 10 Cal. App. 4th 612, (1992) ...................................... 10

*United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991) ............................................... 11

*United States v. Gonzales*, 520 U.S. 1, 5 (1997) .......................................................... 8

*Welco Elecs., Inc. v. Mora*, 223 Cal. App. 4th 202, 210-211 (2014)................................. 6

*Wells Fargo Bank v. Bank of Am.*, 32 Cal. App. 4th 424, 38 Cal. Rptr. 2d 521 (1995) ......... 9

*White* v. *Mass. Council of Const. Employers, Inc.,* 460 U.S. 204, 213 (1983) ................... 8

<u>Statutes</u>

17 U.S.C. § 107 ...................................................................................................... 12, 13

17 U.S.C. § 114(b) ................................................................................................... 4

17 U.S.C. § 301(c) ............................................................................................ 1, 8, 12

Cal. Bus. & Prof. Code § 17200 ................................................................................. 5

Cal. Civil Code § 654 ............................................................................................... 3

Cal. Civil Code § 980(a)(2); ................................................................................... 1-4

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

GRADSTEIN & MARZANO, P.C.
6310 San Vicente Blvd, Suite 510
Los Angeles, California 90048
Telephone: 323-776-3100

# I.    INTRODUCTION.

The thrust of Sirius XM's Opposition is that California law cannot possibly mean what it says.  However, it does, and always has.  The fact that Sirius XM wrongly concluded that pre-1972 recordings are in the public domain does not mean that the plain language of Section 980(a)(2) should be ignored, or that the scope of property rights in California are somehow limited, or that the holding of *Capitol Records, LLC v. Bluebeat, Inc.*, 765 F. Supp. 2d 1198 (C.D. Cal. 2010) is aberrational.  Yet, those are Sirius XM's core arguments.  Sirius XM may not like California law, but that is not a reason to ask this Court to legislate it away.  What Sirius XM cannot dispute – and what is fatal to all of its arguments – is that the broad ownership rights in the artistic performance embodied in pre-1972 recordings necessarily includes the right to exclude Sirius XM from using or exploiting that performance in any manner whatsoever.

# II.    SIRIUS XM IS LIABLE FOR ITS UNLICENSED PERFORMANCES.

## A.    California, Not Federal, Law Governs This Case.

While Sirius XM acknowledges that pre-1972 recordings are governed exclusively by state law, it nevertheless devotes large sections of its brief to a discussion of federal law and attempts to change that law.  **(Opposition 15:7-20:18)** In fact, most of the exhibits submitted by Sirius XM consist of the history of the performance right in sound recordings under the federal Copyright Act, Congressional legislative history, Reports to Congress from the U.S. Copyright Office, Congressional testimony, and a study by the U.S. Copyright Office.  All of this so-called "evidence" is not evidence at all as it has nothing to do with California law.[1]  Congress made it very clear in 17 U.S.C. § 301(c) that the States have sole

---

[1] *See* Declaration of Fred Puglisi, Exs. 8-9, 14, 22-38.  These exhibits are irrelevant, non-binding, non-precedential, and inadmissible hearsay.

jurisdiction over the protection of pre-1972 recordings, and that this protection is unburdened by any of the limitations of the Copyright Act.  Thus, while Sirius XM might think "Congress is the proper forum for resolution of this issue," **(Opposition 2:12),** Congress does not share that view -- and neither did the U.S Supreme Court in *Goldstein v. California*, 412 U.S. 546 (1973).

Therefore, legislative history from 1831 discussing the scope of federal rights is of no consequence, neither is testimony given to Congress in support of a ***federal*** performance right for post-1972 recordings, and neither are the opinions of the Copyright Office.[2]  The analysis as to whether a performance right exists in pre-1972 recordings must begin and end with California law.

### B.  Ownership Of The Artistic Performance In A Recording Includes The Right To Exclude All Others From Using That Performance.

There can be no dispute that the artistic performances embodied in pre-1972 recordings are property and that they are entitled to the full protection of California statutory and common law.  Cal. Civ. Code § 980(a)(2); *Capitol Records, Inc. v. Erickson*, 2 Cal. App. 3d 526 (1969); *A&M Records, Inc. v. Heilman*, 75 Cal. App. 3d 554, 564 (1977); *Capitol Records, LLC v. Bluebeat, Inc.*, 765 F. Supp. 2d 1198 (C.D. Cal. 2010).  In fact, the California Legislature was very explicit regarding the breadth of those rights when it enacted § 980(a)(2) which provided the owner of a sound recording with "exclusive" ownership as "against all persons."

---

[2]  Although ultimately irrelevant, it is important to note that Sirius XM misstates the U.S. Copyright Office's position as to whether that Office believes that a performance right exists under state law.  **(Opposition at 17:25-18:2)**  On March 17, 2014, the Copyright Office stated that "[a] person wishing to digitally perform a pre-1972 sound recording cannot rely on Section 112 and Section 114 statutory licenses and ***must instead obtain a license directly from the owner of the sound recording copyright***." (emphasis added) **(Puglisi Decl. Ex. 9, fn. 13)**

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

GRADSTEIN & MARZANO, P.C.
6310 San Vicente Blvd, Suite 510
Los Angeles, California 90048
Telephone: 323-776-3100

1    Despite the fact that § 980(a)(2) does not limit ownership to specific

2    enumerated rights and does not exempt any particular rights from the bundle of

3    rights that comprise "exclusive ownership," Sirius XM is arguing that the California

4    Legislature excluded a public performance right from § 980(a)(2) *sub silentio*.  That

5    is not how statutes are construed.  The use of the terms "exclusive" and "ownership"

6    must be read as written as they express the clear legislative intent to protect sound

7    recording owners from ***any*** unauthorized use or exploitation of their property.  *See*

8    Civ. Code § 654 ("[t]he ownership of a thing is the right of one or more persons to

9    possess and use it to the exclusion of others"); *see also People* v. *Kwak,* 63 Cal.

10   App. 4th 1236,1251-52 (1998) ("property is something that one has the exclusive

11   right to possess and use").[3]

12   Left with the plain and unmistakable language of § 980(a)(2), Sirius XM asks

13   the Court to ignore the statute as it is written and instead look to its legislative

14   history to determine what it means.  Under basic rules of statutory construction, that

15   is improper.  *Esberg v. Union Oil Co.*, 28 Cal. 4th 262, 268 (2002).  The statutory

16   language is the "most reliable indicator of legislative intent" and where a statute is

17   "clear and unambiguous 'there is no need for construction and courts should not

18   indulge in it.'"  *Id*.  (citations omitted)  The all-encompassing language § 980(a)(2)

19   contains ***no*** exclusions or exceptions from the scope of rights granted or the means

20   used to exploit those rights -- and that is precisely how the Court must interpret it.

21   *California School Employees Ass'n v . Travis Unified School Dist.,* 156 Cal. App. 3d

22   242, 247 (1984).

23   _____

24   [3] Sirius XM's only response to the scope of property rights in California is to say

25   that it "is contrary to basic property rights precepts."  **(Opposition 8:11-13)**  The
     precepts that Sirius XM is referring to (which it only included in a footnote) involve

26   adverse possession of real property.  Of course, sound recordings are not real

27   property, and personal property cannot be adversely possessed in California.  *S.F.*
     *Credit Clearing House v. Wells*, 196 Cal. 701, 708 (1925).

28

3
REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1    At bottom, Sirius XM wants the court to change the California Legislature's

2  chosen language in § 980(a)(2) from "exclusive ownership" to a list of enumerated

3  rights.  The Court is not permitted to do that.  *People v. Gipson*, 213 Cal. App. 4th

4  1523, 1530 (2013).  Sirius XM cannot get around this limitation by trying to frame

5  the issue as Flo & Eddie asking the Court to grant a performance right as opposed to

6  simply enforcing an existing right.  Because the grant of exclusive ownership is

7  unqualified and necessarily carries with it the right and ability to exclude others

8  from exploiting the recording, a performance right is already subsumed within §

9  980(a)(2).  Section 980(a)(2) is not a list of enumerated rights like 17 U.S.C. § 106

10  and thus does not need to specifically mention each of the rights that comprise

11  exclusive ownership.  Notably, § 980(a)(2) does not enumerate reproduction and

12  distribution rights, yet, Sirius XM does not dispute that those rights fall within the

13  scope of "exclusive ownership."  When viewed from the proper perspective, the

14  only issue is whether the Legislature specifically excluded the performance right

15  from the bundle of rights that result from the ownership of the artistic performances

16  embodied in pre-1972 recordings – and that answer is no.

17    Although the Legislature's intent is quite clear from the language that it used,

18  it is important to note that when the Legislature wanted to exclude a right from §

19  980(a)(2) or when it wanted to copy from the Copyright Act, it knew how to do that.

20  Indeed, when it enacted § 980(a)(2), the Legislature incorporated one specific

21  exception to those rights from the Copyright Act; namely, an exception for newly

22  created recordings that imitate or simulate the prior sound recording.  *Compare* Civ.

23  Code § 980(a)(2) and 17 U.S.C. § 114(b).  The Legislature did not, however, import

24  into § 980(a)(2) any other limitations from the Copyright Act.  Having shown that it

25  knew how to copy from the Copyright Act when it wanted to, this Court cannot now

26  conclude that it was an oversight for the Legislature not to copy more.  *See, e.g.,*

27

28

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

1   *DiCampli-Mintz* v. *County of Santa Clara,* 55 Cal. 4th 983,992 (2012).[4]

2        Section 980(a)(2) is not the only law in California that protects the owners of

3   pre-1972 sound recordings; the long recognized theories of misappropriation and

4   conversion also provide that protection.  Sirius XM refers to Flo & Eddie's reliance

5   on these theories as "lame[]," "scattershot," and "bromide" **(Opposition at 11:10-**

6   **15)**  However, name calling is not a substitute for legal analysis.  And neither is

7   simply referring to *International News Service* v. *Associated Press,* 248 U.S. 215,

8   239-40 (1918) as bad law.  What Sirius XM ignores is that the fundamental

9   principles of *International News* – including not reaping where you have not sown –

10  have been hardwired into California common law and continue to exist whether or

11  not *International News* is independently viable.  *See Erickson*, 2 Cal. App. 3d at

12  532-33, 537; *Balboa Ins. Co. v. Trans Global Equities*, 218 Cal. App. 3d 1327, 1342

13  (1990); *Hollywood Screentest Of America, Inc.* v. *NBC Universal, Inc.,* 151 Cal.

14  App. 4th 631, 650 (2007).  Misappropriation of property owned by others has long

15  been considered a form of unfair competition and has long been actionable.

16       Sirius XM also does not avoid the restrictions of statutory unfair competition

17  as set forth in Bus. & Prof. Code § 17200 by arguing that Flo & Eddie does not

18  compete with Sirius XM.  **(SXM 56-2 ¶¶ 100-108)**  It is not necessary that Flo &

19  Eddie own a satellite service in order for there to be competition.  The competition

20  occurs in the sale of the performances embodied in the pre-1972 recordings.  Flo &

21  Eddie sells those performances and so does Sirius XM.  The fact that Sirius XM's

22  subscribers can get those performances from Sirius XM necessarily means that they

23  do not have to satisfy their demand for the performances from a licensed source.

24  _____

25  [4] The Legislature also knew how to create an exception for radio broadcasters if it
    wanted to.  Indeed, Cal. Pen. Code § 653h – which criminalizes certain activities

26  with respect to sound recordings – specifically exempts "any person engaged in

27  radio...broadcasting."  *See* Cal. Pen. Code § 653h(g).

28

1    The content that Flo & Eddie is monetizing is the exact same content that Sirius XM
2    is monetizing -- that is competition.  *See e.g.*,  *Dillon v. NBCUniversal Media*, LLC,
3    2013 U.S. Dist. LEXIS 100733 (C.D. Cal. June 18, 2013); *see also Arista Records*
4    *LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 437 (S.D.N.Y. 2011).  Equally
5    spurious is Sirius XM's argument that Flo & Eddie lacks standing to assert such a
6    claim or that it has not adequately proven harm.  Ironically, the case cited by Sirius
7    XM for this proposition supports Flo & Eddie.  *Kwikset Corp. v. Superior Court*, 51
8    Cal. 4th 310, 322-23 (2011).

9         Similarly unavailing is Sirius XM's argument that it is not liable for
10   conversion because its "public performances of Plaintiff's sound recordings" does
11   not dispossess Flo & Eddie of those recordings.  **(Opposition 13:12-15)**  Sirius
12   XM's *ipse dixit* ignores the fact that performance of those recordings dispossesses
13   Flo & Eddie of that performance.  It also ignores the fact that similar conduct in
14   *Capitol Records, LLC v. Bluebeat, Inc.*, 765 F. Supp. 2d 1198 (C.D. Cal. 2010) was
15   found to constitute conversion – as well as the fact that the taking of intangible
16   property can be the subject of a claim for conversion.  *Welco Elecs., Inc. v. Mora*,
17   223 Cal. App. 4th 202, 210-211 (2014).[5]  Sirius XM's contention that conversion of
18   sound recordings has been limited by the court to those instances where it interferes
19   with a sale wrongly suggests that only sales of physical product matter.  Finally,
20   Sirius XM's contention that Flo & Eddie have not suffered harm because they are
21   unable to identify lost sales ignores that the harm in this case is measured by much
22   more than lost sales.  It also includes the revenue that Sirius XM wrongfully

23
24   _____

[5] Sirius XM asserts that *Bluebeat* was wrongly decided because it cited to *Heilman* –
25   a case where a claim for violation of the performance right was not even at issue.
26   Sirius XM's argument ignores that § 980(a)(2) was enacted after *Heilman*.
     Moreover, because certain conduct was not at issue in *Heilman* does not mean that
27   California law is thereafter permanently limited to the conduct that was at issue.
28

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

1  appropriated to itself and the license fees that Sirius XM should have paid had it

2  licensed the recordings instead of simply taking them.[6]

3      Liability for infringement and misappropriation of the performance right in

4  pre-1972 recordings is not the shocking proposition that Sirius XM makes it out to

5  be.  Moreover, enforcement of that right in this case will not upset the delicate

6  balance that Sirius XM claims has existed for decades.  Exploiting the property of

7  another for free is not a balance.  The overblown parade of horribles that Sirius XM

8  foresees if California law regarding the broad protection of artistic performances in

9  pre-1972 recordings is upheld is not a reason for it to ask this Court to ignore that

10  law.

11  **III.    THE DORMANT COMMERCE CLAUSE IS NOT APPLICABLE.**

12      Sirius XM incorrectly argues that the regulation of pre-1972 recordings by

13  California would violate the Dormant Commerce Clause.  While there is over a

14  hundred years of jurisprudence debating whether and when the Dormant Commerce

15  Clause is applicable, there is no dispute that it is never applicable when Congress

16  has spoken.  Indeed, "[w]hen Congress so chooses, state actions which it plainly

17  authorizes are invulnerable to constitutional attack under the Commerce Clause."

18  *Ne. Bancorp v. Bd. of Governors of Fed. Reserve Sys.*, 472 U.S. 159, 174 (1985).  In

19  fact, "[w]here state or local government action is specifically authorized by

20  Congress, it is not subject to the Commerce Clause *even if it interferes with*

21  *interstate commerce*."  *White* v. *Mass. Council of Const. Employers, Inc.,* 460 U.S.

22  204, 213 (1983) (emphasis added).  This is because "Congress may use its powers

23

24  _____

25  [6] Sirius XM also wrongly argues that Flo & Eddie's claim for conversion should be
   dismissed because it has sought damages in an unspecified sum.  However, in its

26  Complaint, Flo & Eddie alleged damages in excess of $100 million.  Also, this case
   has been bifurcated between liability and damages.  As such, it would be unfair to

27  require Flo & Eddie to prove damages at this stage of the case.

28

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

under the Commerce Clause to '[confer] upon the States an ability to restrict the flow of interstate commerce that they would not otherwise enjoy . . . .'" *New England Power Co. v. New Hampshire*, 455 U.S. 331, 340 (1982) (quoting *Lewis v. BT Investment Managers, Inc.*, 447 U.S. 27, 44 (1980); *see also Central Valley Chrysler-Jeep* v. *Witherspoon,* 456 F. Supp. 2d 1160, 1183-84 (E.D. Cal. 2006); *Soto* v. *Tu Phuoc Nguyen*, 634 F. Supp. 2d 1096 (E.D. Cal. 2009).

Here, Congress spoke loudly when it enacted § 301(c) of the Copyright Act wherein it "specifically authorized" protection of rights in pre-1972 recordings under state law by stating that "[a]ny rights or remedies under the common law or statutes of any State shall not be annulled or limited by this title until February 15, 2067." "Any" rights means "all" rights, not simply a subset of rights. *United States v. Gonzales*, 520 U.S. 1, 5 (1997). Despite this clear law, Sirius XM invites the Court to ignore the will of Congress. According to Sirius XM, the only relevant consideration is whether California law protecting pre-1972 recordings somehow burdens interstate commerce. That is not the test when Congress authorizes state action. *Bowers* v. *NCAA, Inc.*, 151 F. Supp. 2d 526, 538 (D.N.J. 2001). Moreover, it is of no consequence that Sirius XM might be required to modify its operations or obtain licenses to continue exploiting pre-1972 recordings. *See Exxon Corp.* v. *Governor of Maryland*, 437 U.S. 117, 127 (1978) (rejecting the "notion that the Commerce Clause protects the particular structure or method of operation in a retail market"); *Arrow Air, Inc.* v. *Port Auth. Of New York and New Jersey*, 602 F. Supp. 314, 321 (S.D.N.Y. 1985) ("If a regulation is otherwise valid under the Commerce Clause, it is not rendered invalid simply because an operator has to change its market structure."); *Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 961 (N.D. Cal. 2006) ("Courts have held that when a defendant chooses to manufacture one product for a nationwide market, rather than target its products to comply with state laws, defendant's choice does not implicate the commerce

GRADSTEIN & MARZANO, P.C.
6310 San Vicente Blvd, Suite 510
Los Angeles, California 90048
Telephone: 323-776-3100

1  clause.")[7]

2  **IV.    SIRIUS XM'S ACQUIESCENCE ARGUMENT IS MERITLESS.**

3         Sirius XM claims that Flo & Eddie acquiesced to Sirius XM conduct because

4  it "never communicated to Sirius XM that it believed that Sirius XM was infringing

5  its rights nor sought compensation of any kind from Sirius XM." **(Opposition 4:13-**

6  **15)**  However, acquiescence is not one of the eleven affirmative defenses raised by

7  Sirius XM in its Answer.  To the extent that Sirius XM is claiming that acquiescence

8  is the same as its defense for laches, it is not.  *Lux v. Haggin*, 69 Cal. 255, 270

9  (1886).  But even if it were, Sirius XM cannot show that Flo & Eddie either

10  acquiesced in Sirius XM's conduct or that laches is available as a defense.

11         As a starting point, laches is an equitable defense that is unavailable as a

12  defense in an action for damages.  *Wells Fargo Bank v. Bank of Am.*, 32 Cal. App.

13  4th 424, 38 Cal. Rptr. 2d 521 (1995).  Acquiescence is also an equitable defense and

14  thus would be similarly limited.  *See Harrison v. Frye*, 148 Cal. App. 2d 626 (1957).

15  Each of the claims in this case seeks damages and is considered to be a legal claim.

16         Equally important is the fact Sirius XM does not contend (nor could it) that

17  Flo & Eddie's claims are untimely under the applicable statute of limitations.  That

18  is fatal since laches is not available as a defense in an action at law that is

19  commenced within the applicable limitations period.  *Unilogic, Inc. v. Burroughs

20  Corp.*, 10 Cal. App. 4th 612 (1992); *G & G Closed Circuit Events, LLC v. Nguyen*,

21  2013 U.S. Dist. LEXIS 81387 * 5 (N.D. Cal. June 10, 2013); *see also Petrella v.*

22

23  ────────────────

24  [7] The cases cited by Sirius XM do not help its cause as they are all inapplicable.
    Indeed, none of them involved a statutory scheme in which Congress authorized
25  states to regulate interstate activities.  *See, e.g., American Booksellers Found. v.
    Dean,* 342 F.3d 96, 104 (2d Cir. 2003); *ACLU* v. *Johnson*, 194 F.3d 1149, 1160-64
26  (10th Cir. 1999); *Partee v. San Diego Chargers Football Co.*, 34 Cal. 3d 378, 668
27  P.2d 674 (1983).

28

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

1   *MGM*, 134 S.Ct. 1962 (2014).[8]  Flo & Eddie had no obligation to sue Sirius XM

2   earlier than it did and is not seeking damages for any period outside of the

3   applicable statute of limitations.  Moreover, the fact that Sirius XM made substantial

4   investments in its systems and services is irrelevant.  It had the full benefit of those

5   systems for all the years outside the limitations period.

6          Finally, Sirius XM cannot show prejudice -- a necessary element of laches.

7   *Lam v. Bureau of Sec. & Investigative Services*, 34 Cal. App. 4th 29, 36 (1995).

8   Sirius XM's assertion that it has been prejudiced consists entirely on the

9   unsupported statements contained in the declaration of Frear wherein he contends

10  that Sirius XM spent billions of dollars based on the expectation of being able to

11  exploit pre-1972 recordings for free.  Given that Sirius XM's systems are exactly the

12  same for both pre-1972 recordings and post-1972 recordings, Frear's insinuations

13  are not credible.  But more importantly, the critical parts of Frear's declaration are

14  barred as a matter of law and contradict his deposition testimony.  **(*See* Evidentiary**

15  **Objections filed concurrently herewith.)**  Having testified that that the only factor

16  considered by Sirius XM was its own legal analysis, Sirius XM cannot now suggest

17  that there were other reasons, such as the conduct Flo & Eddie.  In addition, because

18  Sirius XM has blocked all inquiry into the legal advice and communications it

19  received in connection with its decision not to license pre-1972 recordings, it cannot

20  now testify as to any aspect of its state of mind.  *United States v. Bilzerian*, 926 F.2d

21

22  ───────────────

23  [8] In *Petrella*, the Supreme Court noted that [i]t is hardly incumbent on copyright
    owners…to challenge each and every actionable infringement.  And there is nothing

24  untoward about waiting to see whether an infringer's exploitation undercuts the
    value of the copyrighted work, has no effect on the original work, or even

25  complements it...."  *Id.* at 995.  This is consistent with the fact that an owner of a
    copyright has no obligation to institute legal proceedings against any particular

26  defendant.  *Paramount Pictures Corp.* v. *Carol Pub I 'g Group,* 11 F. Supp. 2d 329,

27  337 (S.D.N.Y. 1998).

28

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

1   1285 (2d Cir. 1991); *see also Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*,

2   552 F.3d 1033 (9th Cir. 2009).

3   **V.     SIRIUS XM IS LIABLE FOR ITS REPRODUCTIONS.**

4          In its Opposition, Sirius XM gives a very cleansed explanation of its

5   reproductions – all in the hope of convincing the Court that it has not made

6   reproductions in California.  That cleansed record consists of Sirius XM describing

7   its activities with respect to The Turtles recordings and no others.  In fact, this case

8   is a class action – and while no motion for class certification has been filed yet –

9   that is solely because Sirius XM requested at the Scheduling Conference a

10  bifurcation of the issues in this case so that the liability issues could be decided

11  before any of the other issues are addressed.  Over Flo & Eddie's objection, the

12  Court granted that request.[9]

13         Sirius XM admits to making reproductions in California but claims in its

14  Opposition that its wholesale reproduction of tens of thousands of pre-1972

15  recordings is not actionable.   Sirius XM does not dispute that it made some

16  unlicensed reproductions of pre-1972 recordings in California.  That is the end of

17  the analysis.  Sirius XM does not avoid this result by describing some of its copies

18  as incidental, non-public, fragmented, or buffered -- which explains why Sirius XM

19  does not cite any California case that recognizes those as exceptions to the law.

20  Attaching descriptive terms does not change the fact a copy was made or that Sirius

21  XM had no right to make those copies.  Moreover, Sirius XM completely glosses

22  over the fact that it authorized Quick Play to cache five hour blocks of its

23  programming for later distribution.  **(Geller Decl., ¶ 16, Ex. 15)**.  The U.S.

24

25  _____

26  [9] Sirius XM now also claims that the "one way intervention" doctrine prevents
    consideration of liability issues before class certification is resolved.  **(Opposition**

27  **5:23-28 fn. 1)**  That, of course, was not its position at the Scheduling Conference.

28

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

1    operations for Quick Play are located in San Diego, California

2    (http://www.quickplay.com/contact/).  In addition, Sirius XM also ignores that it

3    distributes copies of its recordings to residents of California by using streaming

4    technology that is commonly referred to as "progressive downloads."  **(Supp.**

5    **Geller Decl., ¶ 3, Ex. 28 [Smith 2/11/14 Depo. 203:18-204:10])**   That type of

6    technology results in a copy of each performance being downloaded to the end users

7    computer by Sirius XM.  *See* http://en.wikipedia.org/wiki/Progressive_download.

8    In other words, by using "progressive download" technology, Sirius XM is

9    distributing an actual copy of each recording to each subscriber accessing that

10   stream through the Internet.

11        Finally, Sirius XM suggests (but with very little discussion) that its

12   reproductions of pre-1972 recordings are fair use.  **(Opposition 9:2-3 and 24:17-**

13   **25:21)**.  Sirius XM struggles to find a *California* case that accepts fair use as a

14   defense to common law infringement of sound recordings because there is none.

15   The best that Sirius XM can do is to cite to *Kramer v. Thomas*, 2006 U.S. Dist.

16   LEXIS 96714 (C.D. Cal. Sept. 28, 2006).  However, that case contains no analysis

17   of California law and then does the one thing that federal courts are not permitted to

18   do; namely, use the Copyright Act to limit or annul any aspect of California law.

19   17 U.S.C. § 301(c).  There is perhaps nothing more limiting than applying the fair

20   use exception in 17 U.S.C. § 107 to the common law copyrights of the owners of

21   pre-1972 recordings.

22        Instead of focusing on the fact that "fair use" is not available in connection

23   with its reproductions, Sirius XM nevertheless provides the court with a § 107

24   analysis.  Every case cited by Sirius XM relies on § 107 and is thus completely

25   irrelevant.  Significantly, even if the Court was permitted to rely on and the cases

26   decided thereunder, it is nevertheless clear that Sirius XM's so-called "fair use"

27   defense would still fail.  Indeed, the facts and conduct underpinning Sirius XM's

28

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1   claim of fair use have already been found to be insufficient under § 107 in *UMG*

2   *Recordings v. MP3.com, Inc.*, 92 F. Supp. 2d 349 (S.D.N.Y. 2000).

3

4   Dated:  July 14, 2014                    GRADSTEIN & MARZANO, P.C.

5

6

7                                            By:  _____/S/ Harvey W. Geller_____

8                                                  Harvey W. Geller

9                                            Attorneys for Plaintiff
                                             FLO & EDDIE, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100