UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-5693 PSG (RZx) | Date | September 22, 2014 |
|---|---|---|---|
| Title | Flo & Eddie Inc. v. Sirius XM Radio Inc., *et al.* | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy Hernandez | | Not Reported |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiff(s): | | Attorneys Present for Defendant(s): |
| Not Present | | Not Present |

**Proceedings (In Chambers):**   Order GRANTING Plaintiff's Motion for Summary Judgment

   Before the Court is Plaintiff Flo & Eddie Inc.'s ("Flo & Eddie") motion for summary judgment as to liability on all claims. Dkt. # 69 (originally filed as Dkt. # 65). After considering the arguments in the moving, opposing, and reply papers, and the parties' oral arguments on September 15, 2013, the Court GRANTS the motion on all causes of action, but only on the basis of public performance conduct.

I.   Background

   Flo & Eddie is a corporation created in 1971 that is owned and exclusively controlled by Howard Kaylan ("Kaylan") and Mark Volman ("Volman"), two of the founding members of the music group "The Turtles."  *Plaintiff's Statement of Uncontroverted Facts* ("*PSUF*") ¶¶ 2, 7. The Turtles recorded a number of hit songs in the 1960s, including the iconic song "Happy Together."  *Id.* ¶ 4. Today, Flo & Eddie owns all rights to The Turtles' master sound recordings. *Id.* ¶ 7. Over the last four decades, Flo & Eddie has been exploiting The Turtles' master recordings by licensing the rights to make and sell records and licensing the rights for use of the recordings in movies, TV shows, and commercials. *Id.* ¶ 8. However, Flo & Eddie has never licensed a radio station, digital or otherwise, to publicly perform its recordings. *Defendant's Statement of Genuine Issues of Material Fact* ("*DSGF*") ¶ 8.

   Sirius XM Radio Inc. ("Sirius XM") is a company that operates both a subscription based nationwide satellite radio service as well as a subscription based internet radio service. *Id.* ¶ 11. The company claims that it is the largest radio broadcaster in the United States, measured by revenue, and has over 25.8 million paying subscribers. *Id.* ¶ 10. In exchange for monthly fees, subscribers can access, among other things, Sirius XM's broadcasts of commercial-free music. *Id.* ¶ 12. Through its network of satellites, ground based terrestrial repeaters, and command and control earth stations, Sirius XM's satellite radio service broadcasts over 135 full-time channels. *Id.* ¶ 13. Sirius XM also streams music over the Internet to its subscribers. *Id.* ¶ 14. Its music

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-5693 PSG (RZx) | Date | September 22, 2014 |
|---|---|---|---|
| Title | Flo & Eddie Inc. v. Sirius XM Radio Inc., *et al.* | | |

offerings include a number of channels devoted solely to playing "oldies" music recorded prior to 1972, such as "40s on 4," "50s on 5," and "60s on 6." *Id.* ¶ 13.

     Through its satellite and Internet radio services, Sirius XM has publicly performed 15 separate pre-1972 sound recordings that are exclusively owned by Flo & Eddie. *Id.* ¶ 23. Flo & Eddie has not licensed Sirius XM to use these recordings in its radio services and Sirius XM performs these sound recordings without paying royalties to Flo & Eddie. *Id.* ¶ 24. Flo & Eddie has been aware that Sirius XM plays songs by The Turtles for over seven years. *Id.* ¶ 77. Prior to commencing this lawsuit, Flo & Eddie had never asked Sirius XM to stop performing its recordings or to acquire a license from Flo & Eddie for its performances. *Id.* ¶ 78.

     Ever since the songs owned by Flo & Eddie were recorded in the 1960s and 1970s, terrestrial (AM/FM) radio stations have played the recordings and Flo & Eddie has been aware of this practice. *Id.* ¶ 86. Radio stations have never obtained licenses to perform these recordings from Flo & Eddie or otherwise. Id. ¶ 87. However, Flo & Eddie has also never contacted a radio station to request compensation for public performances of its tracks or sued any radio station these performances. *Id.* ¶ 90.

     In addition to broadcasting and streaming Flo & Eddie's sound recordings to its subscribers, Sirius XM has allegedly engaged in some copying of Flo & Eddie's sound recordings in the operation of its business. *Id.* ¶¶ 16, 19, 20-22, 24. This reproduction conduct involves copying recordings to databases and libraries, using small segments of songs in the creation of voice transitions, copying to "play out servers," "buffering" songs, and authorizing third party copying of broadcasts. *Id.*

     Flo & Eddie filed its Complaint in Los Angeles Superior Court on August 1, 2013, alleging violations of California Civil Code § 980(a)(2) and California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), conversion, and misappropriation. Dkt. # 1. Sirius XM filed a timely Notice of Removal and the case was removed on August 6, 2013. *Id.* Flo & Eddie now seek summary judgment on liability as to all of its causes of action. *See* Dkt. # 69.

II.    <u>Legal Standard</u>

     Federal Rule of Civil Procedure 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is genuinely disputed and material if it cannot be reasonably resolved in favor of either party and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-5693 PSG (RZx) | Date | September 22, 2014 |
|---|---|---|---|
| Title | Flo & Eddie Inc. v. Sirius XM Radio Inc., *et al.* | | |

may affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 238 (1986); *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008).

      The party moving for summary judgment bears the initial burden of showing that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) (citation omitted). A party asserting that a fact cannot be genuinely disputed must support that assertion by citing to "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

      If the non-movant will bear the burden of proof on an issue at trial, the moving party can satisfy its summary judgment burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The non-moving party must then "come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). The non-moving party must set forth specific evidence showing that there is a genuine issue for trial, and "may not rest upon the mere allegations or denials of his pleading." *Anderson*, 477 U.S. at 256.

      On summary judgment, the Court may not weigh conflicting evidence or make credibility determinations. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). It must draw all reasonable inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Soremekun*, 509 F.3d at 984.

III.    Discussion

      Flo & Eddie argues that Sirius XM is liable for two distinct unauthorized uses of its sound records: (1) *publicly performing* Flo & Eddie's recordings by broadcasting and streaming the content to end consumers and to secondary delivery and broadcast partners, and (2) *reproducing* Flo & Eddie's recordings in the process of operating its satellite and Internet radio services. *Mot.* 9:7-15, 7:8-10. Flo & Eddie claims that each of these unlicensed uses violates California copyright law and constitutes misappropriation, conversion, and an unlawful and unfair business practice under the UCL. *Mot.* 20:3-4, 9-11. The Court will examine each use in turn.

    A.    Public Performance

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-5693 PSG (RZx) | Date | September 22, 2014 |
|---|---|---|---|
| Title | Flo & Eddie Inc. v. Sirius XM Radio Inc., *et al.* | | |

On the public performance use, the parties do not dispute any of the materials facts regarding whether Sirius XM publicly performed Flo & Eddie's sound recordings. *See DSGF* ¶ 23. Sirius XM does not deny that it routinely publicly performs Flo & Eddie's sound recordings in the course of its business; rather, it argues that the bundle of rights that attaches to copyright ownership of a pre-1972 sound recording does not include the exclusive right to publicly perform the recording. *See Opp.* 6:15-19. Accordingly, once Sirius XM has lawfully purchased a copy of a Flo & Eddie recording, it broadcasts and streams that recording to paying audiences without first obtaining permission from Flo & Eddie to do so. *Mot.* 20:19-21. Flo & Eddie contends that, in California, copyright ownership of a pre-1972 sound recording includes the exclusive right to publicly perform the recording; therefore, if anyone wishes to publicly perform such a recording, they must first seek authorization from the recording's owner. *Id.* 10:20-23. To discern whether ownership of a pre-1972 sound recording includes the exclusive right to publicly perform the recording, the Court will look to copyright law.

      i.    *The Relationship Between Federal and State Copyright Law with Respect to Sound Recordings*

The Federal Copyright Act exclusively governs rights attendant to works of authorship in many areas; however, it explicitly leaves certain segments of copyright law open to state regulation. *See generally,* 17 U.S.C. § 301 (the Federal Copyright Act's preemption section). When Congress passed the Federal Copyright Act in 1976, it carved out pre-1972 sound recordings as a limited area of copyright law unaffected by the new federal law and within the domain of the states: "With respect to sound recordings fixed before February 15, 1972, any rights or remedies under the common law or statutes of any state shall not be annulled or limited by this title until February 15, 2067…no sound recording fixed before February 15, 1972, shall be subject to copyright under this title[.]" *Id.* § 301(c). Accordingly, California statutory and common law presently governs the rights that attach to pre-1972 sound recordings because the Federal Copyright Act does not apply to those earlier recordings and explicitly allows states to continue to regulate them. *Id.* Flo & Eddie's sound recordings were fixed prior to February 15, 1972 (*DSGF* ¶¶ 4,7); therefore, its rights to those recordings depend solely on whatever rights are afforded to sound recording owners under California law.

      ii.    *Copyright Protection of Sound Recordings Under California Law*

California's copyright statute contains a provision that directly addresses pre-1972 sound recordings. *See* Cal. Civ. Code § 980(a)(2). Section 980(a)(2) provides:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-5693 PSG (RZx) | Date | September 22, 2014 |
|---|---|---|---|
| Title | Flo & Eddie Inc. v. Sirius XM Radio Inc., *et al.* | | |

> The author of an original work of authorship consisting of a sound recording initially fixed prior to February 15, 1972, has an exclusive ownership therein until February 15, 2047, as against all persons except one who independently makes or duplicates another sound recording that does not directly or indirectly recapture the actual sounds fixed in such prior recording, but consists entirely of an independent fixation of other sounds, even though such sounds imitate or simulate the sounds contained in the prior sound recording.

*Id.* Sirius XM does not claim that it falls into the statutory exception as an independent maker of another sound recording, thus the crucial point of statutory interpretation for this case is whether "exclusive ownership" of a sound recording carries within it the exclusive right to publicly perform the recording. *See Opp.* 6:20-7:4. If so, Sirius XM is infringing on Flo & Eddie's sound recording ownership rights by public performing the recordings without Flo & Eddie's authorization.

        *a.*       *The Text of § 980(a)(2)*

The role of the courts in construing statutes is "to ascertain the intent of the drafters so as to effectuate the purpose of the law." *Esberg v. Union Oil Co.*, 28 Cal. 4th 262, 268 (2002) (citing *Preston v. State Bd. Of Equalization*, 25 Cal. 4th 197, 213 (2001)). "Because the statutory language is generally the most reliable indicator of legislative intent, [courts] first examine the words themselves, giving them their usual and ordinary meaning and construing them in context." *Id.* (citing *People v. Lawrence*, 24 Cal. 4th 219, 230 (2000)). And "[w]hen statutory language is clear and unambiguous, '"there is no need for construction and courts should not indulge in it."'" *Id.* (citing *People v. Benson*, 18 Cal. 4th 24, 30 (1998), quoting *People v. Overstreet*, 42 Cal. 3d 891, 895 (1986)).

Accordingly, the Court begins its interpretation with the text of § 980(a)(2), giving the words their usual and ordinary meanings. What does it mean to have "exclusive ownership" in a sound recording "as against all persons"? Cal. Civ. Code § 980(a)(2). Commonly, to have "exclusive ownership" in something is to possess and control it and to not share that right to possess and control with others. *See* THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 619, 1260 (Houghton Mifflin Harcourt, 5th ed. 2011) (defining "exclusive" and "ownership"). The California legislature defines "ownership" generally in the Civil Code in a manner consistent with the word's usual and ordinary meaning—"the right of one or more persons to possess and use [a thing] to the exclusion of others." Cal. Civ. Code § 654. Thus, at base, Flo & Eddie has the right to possess and use its sound recordings and prevent others from possessing and using them. The plain meaning of having "exclusive ownership" in a sound recording is having the right to use and possess the recording to the exclusion of others. There is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-5693 PSG (RZx) | Date | September 22, 2014 |
|---|---|---|---|
| Title | Flo & Eddie Inc. v. Sirius XM Radio Inc., *et al.* | | |

nothing in that phrase to suggest that the legislature intended to exclude any right or use of the sound recording from the concept of "exclusive ownership."

The legislature does include a limitation on the ownership right in the statute's text, "the most reliable indicator of legislative intent." *See Esberg*, 28 Cal. 4th at 268. An author has exclusive ownership in his or her sound recording "against all persons *except* one who independently makes or duplicates another sound recording that does not directly or indirectly recapture the actual sounds fixed in such prior recording, but consists entirely of an independent fixation of other sounds, even though such sounds imitate or simulate the sounds contained in the prior sound recording." Cal. Civ. Code § 980(a)(2) (emphasis added). In other words, ownership of a sound recording does not include the exclusive right to make "covers" (i.e., recording the song with new instruments) – any person can make a sound recording based on a copyrighted recording, without the permission of the owner, so long as they produce the sounds independently rather than recapture the actual sounds in the copyrighted recording.

Construing the meaning of "exclusive ownership" in context with the rest of § 980(a)(2), which lists the above exception to the ownership right, the Court infers that the legislature did not intend to further limit ownership rights, otherwise it would have indicated that intent explicitly. Because the statute lists an exception, the Court should enlist the "familiar rule of construction…[that] where exceptions to a general rule are specified by statute, other exceptions are not to be implied or presumed." *Geertz v. Ausonio*, 4 Cal. App. 4th 1363, 1370 (1992) (citing *In re Michael G.*, 44 Cal. 3d 283, 291 (1988). Courts should "presume the Legislature included all the exceptions it intended to create." *Id.* (citing *Reynolds v. Reynolds*, 54 Cal. 2d 669, 681 (1960)). If § 980(a)(2) had granted "exclusive ownership" in sound recordings without a listed exception, the argument that some limitations on property rights were already inherent in the concept of sound recording ownership might have been more persuasive to the Court. *See Opp.* 6:21-7:4, 8:25-9:2. However, by finding it necessary to specify an excepted right to ownership in a sound recording, the legislature conveyed that limitations on ownership did not live within the concept itself, rather they required elucidation.

Accordingly, the Court's textual reading of § 980(a)(2), giving the words "their usual and ordinary meaning and construing them in context[,]" is that the legislature intended ownership of a sound recording in California to include all rights that can attach to intellectual property, save the singular, expressly-stated exception for making "covers" of a recording.

         b.    *Departure from the Common Law*

In California, a different and "well-established" rule of statutory construction applies when a statute conflicts with existing common law. *See Borg-Warner Protective Servs. Corp. v.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-5693 PSG (RZx) | Date | September 22, 2014 |
|---|---|---|---|
| Title | Flo & Eddie Inc. v. Sirius XM Radio Inc., *et al.* | | |

*Super. Ct.*, 75 Cal. App. 4th 1203, 1207-08 (1999). "[S]tatutes are not presumed to alter the common law unless *expressly* stated." *Id.* (citing *Saala v. McFarland*, 63 Cal. 2d 124, 130 (1965)) (emphasis added). Sirius XM appeals to this rule to argue that the Court can only construe § 980(a)(2) as inclusive of a right to public performance if the text of the statute expressly specifies that right, which it does not. *See Opp.* 8:19-24. Sirius XM reasons that this heightened rule of statutory construction applies because California common law in 1982 (when the legislature passed § 980(a)(2)) did not afford owners of sound recordings the exclusive right to publicly perform their recordings. *Id.* 7:20-23. As a statute including that right would necessarily conflict with common law jurisprudence denying it, the Court can only interpret § 980(a)(2) as inclusive of a public performance right if the legislature *expressly* stated the existence of the right.

While Sirius XM's statement of the rule of statutory construction is accurate, it is inapplicable here because there is no pre-1982 (or post-1982) body of California common law denying sound recording owners the exclusive right to publicly perform their recordings. Sirius XM cannot point to a single case in which a judge considered facts implicating this right or even theorized on the right then decided that the right of public performance does not attach to ownership of sound recordings in California. The Court cannot extrapolate a common law rule regarding public performance rights in sound recordings if the facts that would prompt a court to rule on the issue have simply never been presented in a California court. In this judicial void, the rule of statutory construction requiring express statements to alter the common law does not apply because, when the legislature passed § 980(a)(2), there was no common law rule in California rejecting public performance rights in sound recording ownership.

    *c.*   *Beyond the Text of § 980(a)(2)*

"When statutory language is clear and unambiguous, there is no need for construction and courts should not indulge in it." *Esberg*, 28 Cal. 4th at 268 (internal citations omitted); *see also In re Steele*, 32 Cal. 4th 682, 694 (2004) ("[a]lthough legislative history often can help interpret an ambiguous statute, it cannot change the plain meaning of clear language"). As indicated above, in light of (1) the clarity of the plain and ordinary meaning of § 980(a)(2)'s "exclusive ownership…as against all persons" and (2) the legislature's choice to specify one use of recordings to exclude from the grant of ownership, the Court finds that the statute is clear and unambiguous as to the rights that attach to ownership in a sound recording. Under § 980(a)(2), the owner of a sound recording has the exclusive right to possess and use the recording for all purposes, necessarily including the exclusive right to publicly perform the recording, except that the owner does not have the exclusive right to record and duplicate "covers."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-5693 PSG (RZx) | Date | September 22, 2014 |
|---|---|---|---|
| Title | Flo & Eddie Inc. v. Sirius XM Radio Inc., *et al.* | | |

Sirius XM's attempts to insert ambiguity into the textual language fail because Sirius XM relies on information outside the statutory language to find that ambiguity in the first place. *See Opp.* ¶ 7:5-19, 16:20-17:4; *see People v. Hagedorn*, 127 Cal. App. 4th 734, 743 (2005) ("Courts generally resort to legislative history to resolve ambiguities, not to create them"). Regardless, the legislative history of § 980(a)(2) is consistent with the Court's textual reading of the statute.

Sirius XM explains that the legislative history of § 980(a)(2) "makes abundantly clear that the 1982 revision was motivated by the preemption provisions of Section 301(c) of the Copyright Act, which, as of 1978, had made much of Section 980 'obsolete'; consequently, the law needed amendment to clarify what state-level protections *remained*[.]" *Opp.* 7:5-10. The version of § 980(a) of the California copyright law that existed prior to the 1982 amendment was broad and did not distinguish between different types of copyrightable property: "The author or proprietor of any composition in letters or art has an exclusive ownership in the representation or expression thereof as against all persons except one who originally and independently creates the same or a similar composition." Stats. 1947, c. 1107, p.2546, § 1. In response to Congress' preemption of the majority of state copyright law in the 1970s, the California legislature rewrote its sweeping provision to narrow it to the areas of the law that it still had the authority to regulate. Therefore, it replaced the above subsection with § 980(a)(1), pertaining to works "not fixed in any tangible medium of expression," and § 980(a)(2), pertaining to pre-1972 sound recordings. *See* Cal. Civ. Code §§ 980(a)(1-2). This narrowing of state-regulated subject matter tracked the Federal Copyright Act's preemption provisions. *See* 17 U.S.C. § 301(a) ("On and after January 1, 1978, all legal and equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright…in works of authorship that are *fixed in a tangible medium of expression*…are governed exclusively by this title") (emphasis added); *see also id.* § 301(c) (leaving pre-1972 sound recording protection to the states). Accordingly, the legislature did not expand or limit ownership rights in sound recordings by its 1982 amendment, rather, it excluded works of authorship in other mediums of expression from the law because it no longer had authority to regulate copyrights of those works.

As the California legislature clearly considered the Federal Copyright Act when drafting its 1982 amendment, § 980(a)(2)'s similarities to and differences from the federal law can further reveal the legislature's intent regarding sound recording rights. As discussed above, § 980(a)(2) contains one explicit limitation on sound recording ownership rights. That same limitation is found in the Federal Copyright Act's "Scope of exclusive rights in sound recordings," nearly word-for-word. *See* 17 U.S.C. § 114(b) ("The exclusive rights of the owner of copyright in a sound recording…do not extend to the making or duplication of another sound recording that consists entirely of an independent fixation of other sounds, even though such sounds imitate or simulate those in the copyrighted recording). Section 114 contains other expressly stated limitations, including "[t]he exclusive rights of the owner of copyright in a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-5693 PSG (RZx) | Date | September 22, 2014 |
|---|---|---|---|
| Title | Flo & Eddie Inc. v. Sirius XM Radio Inc., *et al.* | | |

sound recording…do not include any right of performance[.]" *See* 17 U.S.C. § 114(a). The California legislature was thus likely aware of this manner of excluding performance rights from sound recording ownership, as well as other limitations listed in the Federal Copyright Act, yet chose to incorporate only one exception into its revised § 980(a)(2). The legislative history of § 980(a)(2) and its comparison to the Federal Copyright Act actually bolsters the Court's plain textual reading of the statute that sound recording ownership is inclusive of all ownership rights that can attach to intellectual property, including the right of public performance, excepting only the limited right expressly stated in the law.

        d.        *Case Law After § 980(a)(2)*

The Court finds further support for its textual reading of the statute as inclusive of the right of public performance from the only two courts that have ruled on or discussed this right under § 980(a)(2). *See Capital Records, LLC et al. v. BlueBeat, Inc. et al.*, 765 F. Supp. 2d 1198 (C.D. Cal 2010); *see also Bagdasarian Prods., LLC v. Capitol Records, Inc.*, No. B217960, 2010 WL 3245795 (Cal. Ct. App. August 18, 2010). These courts agreed that the right exists, albeit either implicitly or in dicta.

In *BlueBeat*, the court was squarely presented with facts implicating a public performance right attendant to sound recording ownership. *Capital Records v. BlueBeat*, 765 F. Supp. 2d at 1200-01. Defendant operated a commercial website that enabled users to download songs (reproduction and distribution of a sound recording) as well as "stream" songs without a download (isolated public performance of a sound recording). *Id.* at 1200-03, 1206 (noting "BlueBeat does not dispute that…it reproduced, sold, and publicly performed the pre-1972 Recordings" without approval from the Recordings' copyright owners). Plaintiffs had alleged "misappropriation in violation of California Civil Code 980(a)(2)" and the court held that for BlueBeat's actions (offering songs for download and for live streaming), it was liable for misappropriation. *Id.* at 1206. Although applying § 980(a)(2), the court does not analyze the "streaming conduct" or public performance allegation any differently than the reproduction and distribution charges related to the downloading function. Thus, the court's treatment of the statute when confronted with public performance facts suggests that the court interpreted "exclusive ownership" under the statute's text to include the right of public performance so unambiguously that the issue did not even warrant analysis beyond repeating the statutory language. *See id.* at 1205.

While the California appellate court in *Bagdasarian Prods.*, did not rule on facts that isolated the public performance right in sound recordings, the court assumed the existence of such a right in its dicta. *Bagdasarian Prods.*, 2010 WL 3245795, at *11. The parties in the case had executed a sales contract regarding certain sound recording rights in pre-1972 Alvin and the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-5693 PSG (RZx) | Date | September 22, 2014 |
|---|---|---|---|
| Title | Flo & Eddie Inc. v. Sirius XM Radio Inc., *et al.* | | |

Chipmunks songs. *Id.* at *1. Their dispute concerned which rights had been sold in that contract. *Id.* at *2. The court's analysis consisted largely of contract interpretation, not statutory interpretation, but the court acknowledged that it was operating in a copyright landscape governed by § 980(a)(2) by citing to the statute when explaining property rights in sound recordings under California law. *Id.* at *7. Examining the parties' contract, the court asked whether the agreement granting Defendant "all rights of every kind" in the physical master recordings "together with such rights to use and control…the performances embodied thereon for the purposes of manufacture and distribution" included conveyance of the right to license the recordings for purposes other than manufacture and distribution, specifically, for use as background music in film and television. *Id.* at *1, 15. While licensing for film and television does not implicate the isolated public performance right like use for radio broadcast does, the court's reasoning suggested that the exclusive right to publicly perform a sound recording was one of the intangible property rights that attaches to a recording. *Id.* at *11. The court summarized that the contract granted Defendant "the right to exploit the intellectual property embodied in the master recordings only for the purpose of 'manufacture and distribution' of reproductions and records" and explained that other rights remained that Plaintiff had never granted to Defendant. *Id.* "Uses not involving the manufacture or distribution of reproductions or records—for example, publicly performing the records, as would occur if a recording of one of the songs was played during a live stage play—are not within [the contract's] grant of rights." *Id.* By mentioning public performance as an example of a property right that Plaintiff had not transferred to Defendant, the court conveyed that a sound recording owner's bundle of intellectual property rights included the exclusive right to publicly perform the recording. *Id.*

Although the breadth and specificity of cases acknowledging that exclusive ownership of a sound recording includes the right to publicly perform the recording are slight, Defendant has not directed the Court to a single case cutting against the right to public performance, even implicitly or in dicta. Therefore, the limited but unopposed case law referencing § 980(a)(2) in a public performance context supports the Court's interpretation of legislative intent based on the text of the statute – that the legislature intended ownership of a sound recording to include the exclusive right to any use of a recording (other than the singular listed exception), including the right to publicly perform it.

The Court finds that copyright ownership of a sound recording under § 980(a)(2) includes the exclusive right to publicly perform that recording. *See* Cal. Civ. Code § 980(a)(2). Accordingly, the Court GRANTS summary judgment on copyright infringement in violation of § 980(a)(2) in favor of Flo & Eddie.[1]

---

[1] Sirius XM's argument that state regulation of sound recording performances would violate the Commerce Clause is without merit. *See Opp.* 21:12-14. "Where state or local government action is specifically authorized by Congress, it is not subject to the Commerce Clause even if it

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-5693 PSG (RZx) | Date | September 22, 2014 |
|---|---|---|---|
| Title | Flo & Eddie Inc. v. Sirius XM Radio Inc., *et al.* | | |

B. *Reproduction*

Much of the facts surrounding Sirius XM's alleged copying are still disputed at this point in the case. As the moving party, Flo & Eddie bears the burden of showing that there are no genuine disputes as to any facts material to the outcome of the case. Fed. R. Civ. P. 56(a); *Anderson*, 477 U.S. at 238. Flo & Eddie argues that the following conduct by Sirius XM constitutes unlawful reproduction of its sound recordings:

(1) copying Flo & Eddie's recordings in creating and backing up libraries and databases (*Mot.* 7:10-18; *DSGF* ¶¶ 16, 18);

(2) copying "tips and tails" of sound recordings to programmers' workstations to add voice transitions then transferring copies of those sequences—tips, tails, and voice transitions—back to Sirius XM's music libraries (*Mot.* 8:7-15; *DSGF* ¶ 19);

(3) copying sound recordings to "play out" servers each time it broadcasts a song (*Mot.* 8:17-20; *DSGF* ¶ 20);

(4) copying sound recordings as "buffer copies" after being transmitted from the "play out" server but before the recording is heard by Sirius XM subscribers (*Mot.* 8:21-24; *DSGF* ¶ 21);

(5) authorizing a third party company, Quickplay Media, to copy all of Sirius XM's broadcasts to maintain a 5-hour cache to enable later on-demand listening (*Mot.* 9:1-3; *DSGF* ¶ 22).

The evidence offered in support of all of this conduct is the deposition transcript of Terrence Smith, a high-ranking Sirius XM officer.

Sirius XM disputes aspects of each of these factual representations, supporting its contestations with evidence of its own. In response to assertions regarding libraries and databases, "play out" servers, buffering, and Quickplay "caching," Sirius XM presents evidence

---

interferes with interstate commerce." *White v. Mass. Council of Constr. Emp'rs, Inc.*, 460 U.S. 204, 213 (1983); *see also S. Pac. Co. v. State of Ariz. ex rel. Sullivan*, 325 U.S. 761, 769 (1945) ("Congress has undoubted power to redefine the distribution of power over interstate commerce. It may…permit the states to regulate the commerce in a manner which would otherwise not be permissible"). Because Congress specifically authorized protection of pre-1972 sound recording rights by the states in 17 U.S.C. § 301(c), the California statute protecting those rights is not subject to the Commerce Clause.

Case 2:13-cv-05693-PSG-RZ   Document 117   Filed 09/22/14   Page 12 of 15   Page ID #:3356

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-5693 PSG (RZx) | Date | September 22, 2014 |
|---|---|---|---|
| Title | Flo & Eddie Inc. v. Sirius XM Radio Inc., *et al.* | | |

that none of this activity as it relates to Flo & Eddie's sound recordings has occurred in California. *Opp.* 6:7-10; *DSGF* ¶¶ 16, 51-54, 58-61, 20-22. Flo & Eddie only counters this showing with evidence that the Quickplay operations are located in San Diego, California, which is not conclusive as to where the alleged acts of copying took place. *Reply* 12:2-3. The location of copying is disputed by the parties and is material to the case because pre-1972 sound recordings are protected by California law alone and "a copyright granted by a particular State has effect only within its boundaries. If one State grants such protection, the interests of States which do not are not prejudiced since their citizens remain free to copy within their borders those works which may be protected elsewhere." *See Goldstein v. Cal.*, 412 U.S. 546, 558 (1973). Thus, for these four types of copying conduct where there is disagreement as to the location of the copying, the Courts find a genuine dispute as to material facts and will deny summary judgment on claims arising from this conduct.

Regarding "tips and tails" copying, the parties characterize the conduct differently. "Tips and tails" are the beginnings and endings (just a few seconds) of recordings that are used by Sirius XM's programmers to bracket the voice transitions that it broadcasts between songs. *Mot.* 8:9-11; *DSGF* ¶ 19. Flo & Eddie allege that these recording segments are copied onto Sirius XM workstations then the copy is transferred to and stored in Sirus XM's libraries and databases for later use. *Mot.* 8:11-15; *DSGF* ¶ 19. Sirius XM disputes which portion of the "tip and tail sequence" is copied and retained. *See DSGF* ¶19. Sirius XM describes the conduct as "caching" the recording segments on a workstation on a very temporary basis, just to make the voice transitions, then only the voice tracks are copied and retained in its libraries and databases. *Id.* The parties genuinely dispute the mechanics of the characterization of the "tips and tails" recordation and storage process. The details as to what is reproduced and retained by Sirius XM is material to the case as it is precisely the conduct that Flo & Eddie argues constitutes unlawful reproduction. Accordingly, the Court will deny summary judgment on Flo & Eddie's claims related to "tips and tails" copying.

At this point in the case, Flo & Eddie has not met its burden to show that material facts as to Sirius XM's reproductions of Flo & Eddie's sound recordings are not genuinely disputed by the parties; therefore, the Court DENIES summary judgment as to any claim premised on Sirius XM's alleged reproduction conduct.

### C. The UCL

The UCL prohibits unfair competition, including unlawful, unfair, or fraudulent business acts. See Bus. & Prof. Code §§ 17200 et seq.; *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003). "Section 17200 'borrows' violations from other laws by making them independently actionable as unfair competitive practices." *Korea Supply*, 29 Cal. 4th at

Case 2:13-cv-05693-PSG-RZ   Document 117   Filed 09/22/14   Page 13 of 15   Page ID #:3357

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-5693 PSG (RZx) | Date | September 22, 2014 |
|---|---|---|---|
| Title | Flo & Eddie Inc. v. Sirius XM Radio Inc., *et al.* | | |

1134 (citing *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)). Flo & Eddie argue that Sirius XM's unauthorized public performance of Flo & Eddie's sound recordings in the course of its business violates the UCL. *Mot.* 20:3-8.

A threshold issue, disputed by Sirius XM, is whether Flo & Eddie has standing to bring this claim. *See Opp.* 15:4-5. Actions under the UCL may be maintained by a corporation that "has suffered injury in fact and has lost money or property as a result of the unfair competition." *See* Bus. & Prof. Code §§ 17201, 17204; *see also Kwikset Corp. v. Super. Ct.*, 41 Cal. 4th 310, 323 (2011) ("lost money or property-economic injury-is itself a classic form of injury in fact"). "There are innumerable ways in which economic injury from unfair competition may be shown." *Id.* For example, standing is established if a plaintiff was "deprived of money or property to which he or she has a cognizable claim." *Id.*; *see also Clayworth v. Pfizer*, 49 Cal. 4th 758, 789 (2010) (warning parties not to "conflate the issue of standing with the issue of the remedies to which a party may be entitled. That a party may ultimately be unable to prove a right to damages…does not demonstrate that it lacks standing to argue for its entitlement to them"). Flo & Eddie has standing under the UCL because it has an exclusive right to publicly perform its sound recordings and every time Sirius XM played those recordings, it used them without paying Flo & Eddie for that use. *DSGF* ¶¶ 23-24. Thus, at minimum, Flo & Eddie suffered economic harm in the form of foregone licensing or royalty payments for the unauthorized performances of its sound recordings.

Having established standing, Flo & Eddie has also proven that Sirius XM's conduct violates the UCL. On undisputed facts, Sirius XM publicly performs Flo & Eddie's sound recordings without authorization to do so. *Id.* The Court found that such public performance constitutes a violation of Cal. Civ. Code § 980(a)(2). Borrowing the violation of § 980(a)(2), the Court finds that this unlawful conduct also constitutes a violation of the UCL and grants Flo & Eddie's motion for summary judgment on UCL liability.

D.  <u>Conversion</u>

"In California, conversion has three elements: ownership or right to possession of property, wrongful disposition of the property right and damages." *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (1992) (citing *Tyrone Pac. Int'l, Inc. v. MV Eurychili*, 658 F.2d 664, 666 (9th Cir. 1981)). Flo & Eddie has an ownership interest in the right to publicly perform its sound recordings under § 980(a)(2). *PSUF* ¶ 7. There was wrongful disposition of that property right every time Sirius XM publicly performed the recordings without Flo & Eddie's permission, in violation of California copyright law. *DSGF* ¶¶ 23-24; *see* Cal. Civ. Code § 980(a)(2); *Capital Records v. BlueBeat*, 765 F.Supp.2d at 1206; *see also Joe Hand Promotions, Inc. v. Albright*, No. CV 11-2260 WBS (CMKx), 2013 WL 2449500 (E.D.

Case 2:13-cv-05693-PSG-RZ   Document 117   Filed 09/22/14   Page 14 of 15   Page ID #:3358

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-5693 PSG (RZx) | Date | September 22, 2014 |
|---|---|---|---|
| Title | Flo & Eddie Inc. v. Sirius XM Radio Inc., *et al.* | | |

Cal. June 5, 2013), at *8 (finding conversion where the owner of a bar intercepted a satellite broadcast of a sporting event and showed it at his bar without Plaintiff's authorization, thus misappropriating plaintiff's exclusive right to distribute the broadcast). On the element of damages, Sirius XM contends that there are none because Flo & Eddie cannot identify a single sale or lost or diminished license fee that it has suffered as a result of Sirius XM's performance of its sound recordings. *See Opp.* 14:2-4. But Sirius XM's unauthorized performances alone establish conversion damages in the form of license fees that Sirius XM should have paid Flo & Eddie in order to publicly perform its recordings. *DSGF* ¶¶ 23-24. Thus, the Court grants Flo & Eddie's motion for summary judgment on conversion liability.

  E. <u>Misappropriation</u>

  "Common law misappropriation presents a final legal theory under the broad unfair competition umbrella." *Balboa Ins. Co. v. Trans Global Equities*, 218 Cal. App. 3d 1327, 1342 (1990). The cause of action has three elements: (1) the plaintiff has invested substantial time and money in development of its…property; (2) the defendant has appropriated the [property] at little or no cost; and (3) the plaintiff has been injured by the defendant's conduct. *Id.* (internal citation omitted). Much of California misappropriation law regarding intellectual property has been preempted by the Federal Copyright Act, but preemption is not at issue here because the Federal Copyright Act leaves copyright protection of pre-1972 sound recordings entirely up to the states until 2067. *See Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434, 1439-40 (9th Cir. 1993) (explaining preemption of common law misappropriation); 17 U.S.C. § 301(c). Regarding Flo & Eddie's investment in the development of the sound recordings, the two individuals who own and control Flo & Eddie, Kaylan and Volman, are former band members who performed on recordings. *DSGF* ¶¶ 2-4. In a 1970 litigation settlement, Kaylan, Volman, and other band members obtained ownership rights in The Turtles' master recordings from the band's record company in exchange for foregoing a large amount of underpaid royalty payments. *Id.* ¶¶ 3, 5. Subsequently, Kaylan and Volman purchased exclusive ownership rights in the sound recordings from the other band members and transferred the rights to their corporation, Flo & Eddie. *Id.* ¶¶ 6-7. By performing on the recordings, foregoing royalties, and making pay-outs to acquire exclusive rights to the sound recordings, Flo & Eddie has demonstrated that it invested substantial time and money in the development of the recordings. Moreover, Sirius XM appropriated the sound recordings at little cost - it simply purchased a first copy of each Flo & Eddie sound recording that it uses in its radio business and performs it as often as it wishes without paying any additional licensing or royalty fees. *Id.* ¶ 24; *see A&M Records, Inc. v. Heilman*, 75 Cal. App. 3d 554, 564 (1977) (finding that duplicating performances owned by plaintiff in order to resell them for profit "presents a classic example of the unfair business practice of misappropriation of the valuable efforts of another"). Flo & Eddie has proven injury to itself by this conduct in that same manner that it demonstrated

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-5693 PSG (RZx) | Date | September 22, 2014 |
|---|---|---|---|
| Title | Flo & Eddie Inc. v. Sirius XM Radio Inc., *et al.* | | |

damages under conversion and the UCL. At minimum, Flo & Eddie was injured by Sirius XM's conduct in the form of foregone licensing or royalty payments that Sirius XM should have paid before publicly performing Flo & Eddie's recordings. Thus, the Court grants Flo & Eddie's motion for summary judgment on misappropriation liability.

F.   Laches

Sirius XM briefly argues that the equitable defense of laches bars this action in its entirety due to Flo & Eddie's delay in making demands for compensation or bringing suit to enforce its rights. *See Opp.* 4:12-14, 9:12-13. "Laches is an unreasonable delay in asserting an equitable right, causing prejudice to an adverse party so as to render the granting of relief to the other party inequitable." *Wells Fargo Bank v. Bank of America*, 32 Cal. App. 4th 424, 439 (1995) (citing *Conti v. Bd. of Civil Serv.Comm'rs*, 1 Cal. 3d 351, 359 (1969). Sirius XM reasons that Flo & Eddie and Sirius XM have been "happy together" for years without any licensing or royalty arrangements, and Flo & Eddie cannot disrupt this practice that Sirius XM has built its "oldies" business around after Flo & Eddie had allowed it for so long. *See Opp.* 9:12-13. It is undisputed that Flo & Eddie has been aware of Sirius XM's public performance of its sound recordings for over seven years and has never demanded payment or sued Sirius XM regarding the performances prior to this lawsuit. *DSGF* ¶¶ 77-78. However, "the laches defense is unavailable in an action at law for damages 'even [if] combined with the cumulative remedy of declaratory relief.'" *Id.* (quoting *Abbott v. City of L.A.*, 50 Cal. 2d 438, 462 (1958)); *see also Unilogic v. Burroughs Corp.*, 10 Cal. App. 4th 612, 619 (1992) ("The equitable doctrine of laches has a legal equivalent in the statutes of limitations. To allow a laches defense in a legal action would be to override a time limit mandated by the Legislature"). This case is, in part, an action at law for damages (*Compl.* 11:23-24); therefore, before reaching the issue of prejudice, the laches defense fails because it is unavailable to Sirius XM in this action.

IV.   Conclusion

For the reasons above, Flo & Eddie's motion for summary judgment is GRANTED on all causes of action, but only so far as the claims are premised on Sirius XM's public performance of Flo & Eddie's recordings, not its alleged reproductions.

**IT IS SO ORDERED.**