GLUSHKO-SAMUELSON INTELLECTUAL PROPERTY LAW CLINIC
BRANDON BUTLER (admitted *pro hac vice*)
bbutler@wcl.american.edu
American University Washington College of Law
4801 Massachusetts Ave NW
Washington, DC 20016
Telephone:   202.274.4165
Attorney for *Amici Curiae*
Prometheus Radio Project &
Consumer Federation of America

 PFEIFFER FITZGIBBON & ZIONTZ LLP
JON A. PFEIFFER Cal. Bar No. 118601
Pfeiffer@pfeifferlaw.com
233 Wilshire Blvd, Suite 220
Santa Monica, CA 90401
Telephone: 310-451-5800
Facsimile: 310-451-1599

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLO & EDDIE, INC., individually and on behalf of all others similarly situated, | Case No.: 13-CV-5693 PSG (RZx) |
| Plaintiff, | |
| vs. | **BRIEF AMICUS CURIAE OF PROMETHEUS RADIO PROJECT AND CONSUMER FEDERATION OF AMERICA IN SUPPORT OF DEFENDANT SIRIUSXM'S MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL AND TO STAY PENDING REVIEW** |
| SIRIUS XM RADIO INC., and DOES 1 through 100, | |
| Defendant | |

## I.    Introduction[1]

Amici Consumer Federation of America (CFA) and Prometheus Radio Project (Prometheus) submit this amicus brief in support of SiriusXM's motion to certify its proposed Order for interlocutory appeal and to stay proceedings if the Order is certified, pending review by the Court of Appeals. Amici write to raise serious concerns about the potential consequences of the court's recent rulings for a wide array of diverse community voices in media and, consequently, for consumer choice and participation in the media landscape. Interlocutory appeal is appropriate to provide guidance to community broadcasters and to consumers on the crucial issue of the existence of a state right of public performance in sound recordings.

## II.    Amici Represent Consumers and Small Broadcasters in California and Throughout the US.

The Consumer Federation of America is a non-profit organization established in 1968 to support consumers' interests through advocacy, research, and education. CFA is the largest consumer advocacy organization in the United States, with nearly 300 nonprofit member organizations and 50 million consumer members. CFA is an advocate for consumer choice and for active consumer participation in the evolving media landscape. Areas of core concern to CFA include monitoring and preventing media concentration and promoting Internet freedom and innovation. Among other activities, CFA investigates consumer issues, publishes rigorous research, participates in proceedings in courts, Congress, and government agencies, and serves consumers directly through a variety of

---

[1] Counsel for the parties have not authored any part of this brief; no party or a party's counsel contributed money for the brief; and no one other than *Amici* and their members and counsel have contributed money for this brief.

1  conferences, events, and newsletters. A CFA study of local media markets in

2  California found that every single media market in the state is concentrated, and

3  that radio markets in particular are either tightly concentrated or "tight oligopolies."

4  *See* CONSUMER FEDERATION OF AMERICA, CONCENTRATION IN CALIFORNIA'S

5  LOCAL MEDIA MARKETS 1 (2003) *available at*

6  http://consumerfed.org/elements/www.consumerfed.org/file/calmediaconcentration

7  .pdf. Media concentration has only accelerated in the intervening years, and CFA is

8  concerned that the Court's decision could exacerbate the problem.

9      The Prometheus Radio Project is a non-profit organization founded by a

10  small group of radio activists in 1998 that builds, supports, and advocates for

11  community radio stations. These stations bring together and empower local,

12  participatory voices and movements for social change. Prometheus' primary focus

13  is building a large community of low-power FM (LPFM) stations and listeners.

14  Prometheus supports community groups at every stage of the process of building

15  community radio stations, facilitates public participation in the FCC regulatory

16  process, and sponsors events promoting awareness and support of media

17  democracy and LPFM radio. As of 2013, 2,800 groups have applied for LPFM

18  licenses with the FCC. The licenses can be difficult to obtain, but 291 LPFM

19  stations are licensed to operate in California. *See* FM Query Results—Audio

20  Division (FCC) USA, http://transition.fcc.gov/fcc-

21  bin/fmq?state=CA&freq=200&fre2=300&serv=FL&list=2&size=9 (last visited

22  Oct. 21, 2014). Prometheus' second ever radio station "barnraising" took place in

23  Oroville, California, just outside Sacramento. With help from Prometheus, an

24  intensive two-day effort took a brand new LPFM community radio station, KOYO,

25  from concept to live-on-the-air. *See* Our Second Barnraising,

26  http://www.prometheusradio.org/KRBS_barnraising (last visited Oct. 22, 2014).

27

28

### III.   Amici and Similarly Situated Groups Need the Clarity of Swift Appellate Review

The question of whether California state law provides for an exclusive public performance right in sound recordings has implications that reach far beyond the parties to this case. The Court's interpretation of Section 980(a)(2) reverses a 75-year consensus that state law does not provide such a right, unsettling the expectations of a wide variety of groups, including community broadcasters and consumers. The Court's decision on this issue needs swift appellate review in a forum where voices like those of *amici* can be heard.

Consumers and small broadcasters are especially threatened by the advent of a new state law performance right in sound recordings. The mere prospect of unprecedented royalty demands and threats of litigation from a virtually endless parade of hitherto unknown sound recording rightsholders could be enough to shut down many small broadcasters. Consumers would be the ultimate losers as a media landscape already dominated by behemoths would become even more concentrated and homogenized by the loss of small broadcasters, podcasters, and other diverse voices.

The potential reach of the Court's decision is another factor favoring swift appellate review. Unfortunately, what happens in California may not stay in California. Protection for older sound recordings varies from state to state, but case law on the scope of that protection is sparse. Rather than attempt to navigate an uncertain legal landscape, broadcasters and others who learn about the existence of a sound recording performance right in California may choose to avoid playing pre-1972 recordings altogether, even outside the state. The Court's ruling could also chill stations broadcasting outside California whose signals, websites, or podcasts are accessible in the state.

The prospect of retroactive damages is even more chilling. Smaller broadcasters, restaurants, and other entities in California that have been playing music from the 1950's, 1960's, and early 1970's could face years of retroactive liability that could result in monumental damages. Smaller content providers, who have made investments in their businesses and otherwise acted in reliance on decades of settled practice, may find themselves owing years of unpaid royalties, a financial burden that could threaten their existence.

Terrestrial broadcasters face even more uncertainty and doubt than digital broadcasters like Defandants SiriusXM. While federal law provides for a public performance right for certain digital broadcasts of sound recordings fixed after February 15, 1972, terrestrial broadcasters have never had to pay royalties of any kind for public performance of any sound recordings, regardless of when they were made. Thus, far from creating parity for older recordings, a state law right of public performance will privilege older recordings, granting them rights that the federal system does not, and creating a completely new form of liability for terrestrial broadcasters. Larger broadcasters may find room in their budgets for this new category of expense, but smaller ones are often operated on a low- or no-budget basis. The exclusion of sound recordings from the public performance right regime created a safe harbor for broadcasters with respect to sound recordings, and it is vitally important that an appellate court promptly review this Court's decision to abrogate that safe harbor for pre-1972 recordings.

As the Court's ruling has far-reaching implications on diverse voices in the media and creates substantial uncertainty for content providers nationwide, Prometheus and CFA urge the Court to grant an immediate interlocutory appeal. CFA and Prometheus plan to file as *amici* in any such appeal to provide a more detailed account of their views of this important issue.

1

2

3

4

5

Dated November 4, 2014.

6

7        GLUSHKO-SAMUELSON
         INTELLECTUAL PROPERTY LAW
8        CLINIC

9
         By_____ /s/ Brandon Butler
10       BRANDON BUTLER (admitted *pro hac*
         *vice*)
11       AMERICAN UNIVERSITY
12       WASHINGTON COLLEGE OF LAW

13
         PFEIFFER FITZGIBBON & ZIONTZ
14       LLP
15       JON A. PFEIFFER

16
         Attorneys for *Amici Curiae*
17       PROMETHEUS RADIO PROJECT &
         CONSUMER FEDERATION OF
18       AMERICA

19

20       _____

21

22

23

24

25

26

27

28