GRADSTEIN & MARZANO, P.C.
HENRY GRADSTEIN (State Bar No. 89747)
hgradstein@gradstein.com
MARYANN R. MARZANO (State Bar No. 96867)
mmarzano@gradstein.com
HARVEY W. GELLER (State Bar No. 123107)
hgeller@gradstein.com
6310 San Vicente Blvd., Suite 510
Los Angeles, California 90048
T: 323-776-3100

EVAN S. COHEN (State Bar No. 119601)
esc@manifesto.com
1180 South Beverly Drive, Suite 510
Los Angeles, California 90035
T: 310-556-9800  F: 310-556-9801

Attorneys for Plaintiff
FLO & EDDIE, INC.

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLO & EDDIE, INC., a California corporation, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>SIRIUS XM RADIO, INC., a Delaware corporation; and DOES 1 through 10,<br><br>    Defendants. | Case No. CV13-05693 PSG (RZx)<br><br>**FLO & EDDIE'S MEMORANDUM OF POINTS AND AUTHORITIES: (1) IN OPPOSITION TO SIRIUS XM'S MOTION FOR RECONSIDERATION, AND (2) IN SUPPORT OF ITS REQUEST FOR SANCTIONS**<br><br>Date:    January 26, 2015<br>Time:   1:30 p.m.<br>Place:  Courtroom 880<br>          Honorable Philip S. Gutierrez |

# **TABLE OF CONTENTS**

I. INTRODUCTION. ...................................................................................1

II. THE COURT PROPERLY CONSTRUED § 980(a)(2). .................................2

  A. Sirius XM'S Reliance on Whiteman and Supreme Records Is Misplaced. .........................................................................2

  B. Sirius XM's Remaining Arguments Are Makeweight. ....................8

III. SIRIUS XM'S DORMANT COMMERCE CLAUSE ARGUMENT IS STILL MERITLESS. ..........................................................................9

  A. Congress Has Authorized the States to Exclusively Protect Pre-1972 Recordings. ........................................................10

  B. California's Protection of Pre-1972 Recordings Does Not "Regulate" Interstate Commerce. ...............................................12

IV. SIRIUS XM DOES NOT HAVE ANY REMAINING LIABILITY AFFIRMATIVE DEFENSES. ..............................................................14

  A. License. ...................................................................................16

  B. Waiver and Estoppel. ..............................................................17

  C. Fair Use. .................................................................................19

  D. Statute of Limitations. .............................................................20

  E. Lack of Ownership. .................................................................21

V. SIRIUS XM'S MOTION WARRANTS SANCTIONS. ................................22

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

i

# TABLE OF AUTHORITIES

## Cases

*A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001) ...................... 16

*American Booksellers Found. v. Dean*, 342 F.3d 96, 104 (2d Cir. 2003)................ 12

*Arrow Air, Inc. v. Port Auth. of New York and New Jersey*,
602 F. Supp. 314, 321 (S.D.N.Y. 1985) ........................................................ 14

*Aryeh v. Canon Business Solutions, Inc.*, 55 Cal. 4th 1185, 1198 (2013)................ 20

*Bowers v. NCAA, Inc.*, 151 F. Supp. 2d 526, 538 (D. N.J. 2001) ............................ 12

*Capitol Records, Inc. et al. v. Sirius XM Radio, Inc.*,
Superior Court of the State of California,
County of Los Angeles, Case No. BC520981 ................................................. 9

*Capitol Records, Inc. v. Mercury Records Corp.*,
221 F.2d 657 (2d Cir. 1955) ............................................................... 1, 3, 4

*Capitol Records, Inc. v. Naxos of Am., Inc.*,
372 F.3d 471, 483 (2d Cir. 2004) ................................................................ 18

*Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir. 1996) ...................... 22

*Conversive, Inc. v. Conversagent, Inc.*,
433 F. Supp. 2d 1079, 1094 (C.D. Cal. 2006)............................................... 15

*Davis v. Trans World Airlines*, 297 F. Supp. 1145 (C.D. Cal. 1969)........................ 7

*DCIPA, LLC v. Lucile Slater Packard Children's Hosp.*,
868 F. Supp. 2d 1042, 1060 (D. Or. 2011)................................................... 15

*Ettore v. Philco Television Broad. Corp.*, 229 F.2d 481(3d Cir. 1956) ................... 4

*Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*,
2014 U.S. App. LEXIS 15395, at *12-14 (9th Cir. 2014) ............................ 13

*Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 127 (1978)........................... 14

*Falcone v. Vill. of Hanover Park*, 2004 U.S. Dist. LEXIS 25293, *27,
(N.D. Ill. Dec. 9, 2004)................................................................................ 23

*Feduniak v. California Coastal Com.*,
148 Cal. App. 4th 1346, 1359-62 (Cal. App. 6th Dist. 2007) ....................... 18

*Ferguson v. FriendFinders, Inc.*, 94 Cal. App. 4th 1255, 1264 (2002) ................... 13

*Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001)................................................... 24

*Flo & Eddie v. Sirius XM Radio, Inc.*, Southern District of New York,
Case No. 13-cv-05784 ........................................................................... 19, 21

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
    2014 U.S. Dist. LEXIS 166492 ..................................................9, 12, 13, 22

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
    2014 U.S. Dist. LEXIS 174907 .............................................................1, 5, 9

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, Southern District of Florida,
    Case No. 13-CV-23182 ...................................................................... 19

*Flood v. Kuhn*, 407 U.S. 258 (1972) ........................................................ 14

*Funk v. United States*, 290 U.S. 371 (1933) ................................................. 5

*Garber v. Embry-Riddle Aeronautical Univ.*,
    259 F. Supp. 2d 979, 981-82 (D. Ariz. 2003) ................................... 15

*Goldstein v. California*, 412 U.S. 546 (1973) ............................................. 10

*Healy v. Beer Inst.*, 491 U.S. 324 (1989)................................................... 12

*Hewlett-Packard Co. v. Pitney Bowes Corp.*,
    1998 U.S. Dist. LEXIS 10936 *23 (D. Or. Mar. 23, 1998) ........................... 17

*In re Brazier Forest Prods., Inc.*, 921 F.2d 221, 223 (9th Cir.1990) .................... 15

*In re Disciplinary Action Boucher*, 837 F.2d 869, 871 (9th Cir. 1988) ................... 23

*In re Marriage of Moore*, 113 Cal. App. 3d 22, 27 (1980) ............................... 18

*International News Service v. Associated Press*, 248 U.S. (1918).......................... 4

*John Doe Co. v. United States*, 350 F.3d 299, 306 (2d Cir. 2003).......................... 19

*Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*,
    552 F.3d 1033 (9th Cir. 2009) .......................................................... 19

*Kramer v. Thomas*, 2006 U.S. Dist. LEXIS 96714
    (C.D. Cal. Sept. 28, 2006) ............................................................... 19

*Lahiri v. Universal Music & Video Distrib. Corp.*,
    606 F.3d 1216, 1218-19 (9th Cir. 2010) ............................................24

*Leviton Mfg. Co. v. Greenberg Traurig LLP*,
    2010 WL 4983183, at *3 (S.D.N.Y. Dec. 6, 2010) ................................. 19

*Marcin Eng'g LLC v. The Founder at Grizzly Ranch, LLC*,
    219 F.R.D. 516, 521 (D. Colo. 2003)..................................................22

*Maryland Casualty Co.*, 80 Cal. App. 4th 1165, 1188
    (Cal. App. 1st Dist. 2000)............................................................... 18

*Mason v. Ariz.*, 260 F. Supp. 2d 807, 810 (D. Ariz. 2003).................................. 15

*Meat Mkt., Inc. v. Am. Ins. Co.*,
    2013 U.S. Dist. LEXIS 38118 *20 (E.D. Cal. Mar. 19, 2013) ....................... 15

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

*Metro. Opera Ass'n v. Wagner-Nichols Recorder Corp.,*
 199 Misc. 786 N.Y.S.2d 483 (Sup. Ct. 1950) ..........................................3, 4, 6

*Moser v. Bret Harte Union High Sch. Dist.,*
 366 F. Supp. 2d 944, 979 (E.D. Cal. 2005).................................................24

*Nat'l Fed'n of the Blind v. Target Corp.,*
 452 F. Supp. 2d 946, 961 (N.D. Cal. 2006) ................................................14

*New England Power Co. v. New Hampshire,* 455 U.S. 331, 341 (1982)...........11, 24

*Paramount Pictures Corp. v. Carol Pub'g Grp.,*
 11 F. Supp. 2d 329, 337 (S.D.N.Y. 1998).................................................18

*Partee v. San Diego Chargers Football Co.,* 34 Cal. 3d 378 (1983)......................14

*People ex rel State Bar Resources Bd. v. Wilmhurst,*
 68 Cal. App. 4th 1332, 1345 (1999)........................................................12

*Petrella v. MGM,* 134 S.Ct. 1962, 1969 (2014) ......................................18, 21

*Pike v. Bruce Church,* 397 U.S. 137 (1970) ...............................................12

*Premier Commercial Corp. v. FMC Corp.,*
 139 F.R.D. 670, 674 (N.D. Cal. 1991) ....................................................23

*RCA Mfg. Co. v. Whiteman,* 114 F.2d 86 (2nd Cir. 1940) ...............................passim

*Salstrom v. Citicorp Credit Services, Inc.,* 74 F.3d 183 (9th Cir. 1996)..................25

*Sea Air Shuttle v. Virgin Islands Port Authority,*
 800 F. Supp. 293, 304 (D.V.I. 1992)........................................................11

*Shamrock Farms v. Veneman,* 146 F.3d 1177, 1179-80 (9th Cir. 1998) ..................12

*Shaw v. Time-Life Records,* 38 N.Y. 2d 201 (1975)........................................7

*Sherlock v. Alling,* 93 U.S. (3 Otto) 99 (1876) ...........................................12

*SHL Imaging, Inc. v. Artisan House, Inc.,*
 117 F. Supp. 2d 301, 317 (S.D.N.Y. 2000)...............................................17

*Sinatra v. Goodyear Tire & Rubber Co.,*
 1968 U.S. Dist. LEXIS 9714 (C.D. Cal. 1968),..........................................7

*SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharms., Inc.,*
 211 F.3d 21, 25 (2d Cir. 2000) .............................................................17

*Soto v. Tu Phuoc Nguyen,* 634 F. Supp. 2d 1096, 1107 (E.D. Cal. 2009) ...............11

*State Dept. of Health Services v. Superior Court,*
 31 Cal. 4th 1026, 1045 (2003)..............................................................15

*Supreme Records, Inc. v. Decca Records, Inc.,*
 90 F. Supp. 904 (S.D. Cal. 1950) ...................................................1, 7, 8, 24

*Thomas v. Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010) ........................................24

*Twentieth Century Fox Film Corp. v. Marvel Enters.*,
2002 U.S. Dist. LEXIS 14682 *6 (S.D.N.Y. Aug. 6, 2002). .........................16

*UMG Recordings v. MP3.com, Inc.*, 92 F. Supp. 2d 349 (S.D.N.Y. 2000) ..............20

*United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991) .........................................19

*United States v. Santiago*, 826 F.2d 499 fn. 1 (7th Cir. 1987) ..................................22

*United States v. Stewart*, 20 F.3d 911, 917-18 (8th Cir. 1994) ...............................23

*Waring v. WDAS Broadcasting Station, Inc.*, 327 Pa. 433 (1937) ..............................3

*White v. Mass. Council of Const. Employers, Inc.*, 460 U.S. 204, 213 (1983) .........10

*Wilchombe v. TeeVee Toons*, Inc., 555 F.3d 949, 956 (11th Cir. 2009) ..................17

*Zimmerman v. Wolff*, 622 F. Supp. 2d 240, 245 (E.D. Pa. 2008)............................11

<u>Statutes</u>

17 U.S.C. § 107.....................................................................................................20

17 U.S.C. § 301(c) .........................................................................................9, 10, 20

28 U.S.C. § 1927...................................................................................................24

Cal. Civ. Code § 3510............................................................................................5

Cal. Civ. Code § 980(a)(2) ..................................................................................1, 8

<u>Other Authorities</u>

5 W.F. Patry, *Patry On Copyright*, § 18:55 at 18-198 (2010 ed.)............................11

*Black's Law Dictionary* at 1461 (9th ed.)..............................................................10

D.G. Baird, *Common Law Intellectual Property
and the Legacy of International News Service v. Associated Press*,
50 Univ. Chi. L. Rev. 411 (1983).........................................................................6

E. Subotnik & J. Besek, *Constitutional Obstacles?
Reconsidering Copyright Protection for Pre-1972 Recordings*,
37 Colum. J. Law & Arts, 327 (2014)..................................................................6

In the Matter of Applications for Consent to the Transfer of Control of Licenses,
2008 FCC LEXIS 7626 at ¶¶ 73, 154, 155 (adopted July 25, 2008) ..............13

GRADSTEIN & MARZANO, P.C.
6310 San Vicente Blvd, Suite 510
Los Angeles, California 90048
Telephone: 323-776-3100

Library of Congress: Copyright Office, *Music Licensing Study:*
    *Second Request for Comments,*
    79 Fed. Reg. 141, at 42, 834 n. 3 (July 23, 2014) ............................................6

R. Bard & L. Kurlantzick, *A Public Performance Right In Recordings:*
    *How to Alter the Copyright System Without Improving It,*
    43 Geo. Wash. L. Rev. 152 (1974)............................................................6

S. Diamond, *Sound Recordings and Phonorecords:*
    *History and Current Law*, 1979 Univ. Ill. L. Forum 337, 346-48 (1979) ........6

<u>Rules</u>

Fed. R. Civ. P. 56(e)(2)......................................................................16

L.R. 56-2 ......................................................................................16

L.R. 56-3 ......................................................................................16

L.R. 7-18(b). ..................................................................................24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GRADSTEIN & MARZANO, P.C.
6310 San Vicente Blvd, Suite 510
Los Angeles, California 90048
Telephone: 323-776-3100

## I.    **INTRODUCTION.**

The showing that Sirius XM Radio, Inc. ("Sirius XM") must make on a motion for reconsideration is not satisfied by simply proclaiming that a 1940 case from New York that was overruled in 1955 is somehow dispositive of the claims in this case.  Yet, that is the basis upon which Sirius XM seeks reconsideration of the Court's ruling that "copyright ownership of a sound recording under [Cal. Civ. Code] § 980(a)(2) includes the exclusive right to publicly perform that recording."

Indeed, after having fully briefed motions for summary judgment in three different jurisdictions and after having already lost two of those motions, Sirius XM changed counsel and immediately claimed in motions for reconsideration that it filed in this case and in the New York action that *RCA Mfg. Co. v. Whiteman*, 114 F.2d 86 (2nd Cir. 1940) was both overlooked and was the definitive case on performance rights in sound recordings.  However, in making this argument, Sirius XM ignores that *Whiteman* was expressly overruled almost sixty years ago in *Capitol Records, Inc. v. Mercury Records Corp.*, 221 F.2d 657, 663 (2d Cir. 1955). As the court in *Mercury Records* held, because *Whiteman* was based on the erroneous assumption that the sale of a recording constituted a publication of that recording thereby extinguishing all common law property rights, it "is not the law of the State of New York." *Id.*  The absurdity of Sirius XM's reliance on *Whiteman* caused Judge Colleen McMahon to not only deny Sirius XM's motion for reconsideration, but to comment that "[t]the only clear error here is O'Melveny's." *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 2014 U.S. Dist. LEXIS 174907 *4 (S.D.N.Y. Dec. 12, 2014).

Compounding this clear error,  Sirius XM also wrongly claims in its motion for reconsideration that *Supreme Records, Inc. v. Decca Records, Inc.*, 90 F. Supp. 904 (S.D. Cal. 1950) stands for the remarkable proposition that California does not even "recognize any ownership interest in sound recordings." *Supreme Records* says no such thing and would be a shock to the California legislature if it did.

1

Two clear errors not being enough, Sirius XM takes another shot at claiming that the dormant Commerce Clause permits it to steal the artistic performances in pre-1972 recordings and prevents each state from enforcing its laws within its own borders simply because Sirius XM has chosen to operate a nationwide business. This argument has now been rejected *five* times by three different courts.  Sirius XM may not know when to stop making an argument, but its counsel should.

Finally, despite failing to support its affirmative defenses in its opposition to the motion for summary judgment, Sirius XM claims that they nevertheless survived the Court's ruling.  They did not.  The time has passed for Sirius XM to establish any defenses it may have had as to issues of liability.  Plus, the defenses do not find support in the facts of this case or the law in California.

## II.    THE COURT PROPERLY CONSTRUED § 980(a)(2).

### A.    Sirius XM'S Reliance on Whiteman and Supreme Records Is Misplaced.

Sirius XM boldy asserts that *Whiteman* "established the longstanding rule that no public performance right exists in sound recordings at common law."  **(Motion fn. 1)**  However, Sirius XM does not cite any cases agreeing with this proposition. Instead, Sirius XM relies on misleading characterizations of irrelevant and inadmissible articles and a statement by the Copyright Office that has since been withdrawn because it was incorrect.  What Sirus XM does not do in its motion is discuss the fact that *Whiteman* was overruled in 1955 by the very same court that had issued the original opinion and, in any event, never stood for the proposition that there was no performance right in sound recordings.

In *Whiteman*, the only issue that the Second Circuit addressed was whether after the sale of a recording, the owner could enforce a restrictive legend contained on the recording's packaging that stated it was "[n]ot Licensed For Radio Broadcast."  *Whiteman*, 114 F.2d at 87.  In addressing this limited issue, Judge Learned Hand had wrongly assumed that, under New York law, the sale of a record

GRADSTEIN & MARZANO, P.C.
6310 San Vicente Blvd, Suite 510
Los Angeles, California 90048
Telephone: 323-776-3100

to the public constituted a "general publication" that ended all common law copyright protection. *Id*. at 88-89. Based on this erroneous conclusion, Judge Hand reasoned that if all "common law property" rights in a musician's performance "ended with the sale of the records" embodying that performance, then the owner of that sound recording could not enforce the restrictive legend on the recording. *Id*. It was on that basis – and that basis alone – that the *Whiteman* court declined to enjoin the public performance of the recordings at issue.[1]

However, in 1950, New York expressed a very different view of its own law. In *Metro. Opera Ass'n v. Wagner-Nichols Recorder Corp.*, 199 Misc. 786, 101 N.Y.S.2d 483 (Sup. Ct. 1950), the New York Supreme Court held that the sale of a record to the public was ***not*** a general publication and did not end common law copyright protection. The holding in *Metro. Opera* was the exact opposite of what Judge Hand in *Whiteman* had assumed the law to be in New York. As such, when the Second Circuit revisited the issue in *Capitol Records, Inc. v. Mercury Records Corp.*, 221 F.2d 657 (2d Cir. 1955), it conceded that its holding in *Whiteman* was wrong and held:

> In [*Whiteman*], this court stated that the common-law property in
> the performances of musical artists which had been recorded
> ended with the sale of the records and that thereafter anyone
> might copy them and use them as he pleased….Our conclusion is
> that the quoted statement from the [*Whiteman*] case is not the
> law of the State of New York. Since its decision the New York
> courts have had close contact with the question in [*Metro*

---

[1] As noted in *Whiteman*, at the time it was decided, the Pennsylvania Supreme Court had reached the opposite conclusion in *Waring v. WDAS Broadcasting Station, Inc.*, 327 Pa. 433 (1937) and found in favor of the artist and enjoined the unlicensed broadcast – *i.e.* public performance – of the recordings.

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

1   *Opera*].  We believe that the inescapable result of that case

2          is that, where the originator, or the assignee of the originator, of

3          records of performances by musical artists puts those records on

4          public sale, his act does not constitute a dedication of the right to

5          copy and sell the records.

6   *Id.*

7          Sirius XM tries to distort this quote by claiming that the court in *Mercury*

8   *Records* was actually only overruling that portion of *Whiteman* that dealt with

9   copying, and nothing else.  **(Motion 5:13-15)**  To the contrary, the overruled

10  statement referred to more than copying.  The overruled statement was "copy them

11  and use them as he pleased."

12         Sirius XM's cramped reading of *Mercury Records* is not even supported by

13  Judge Hand.  Indeed, in his dissent in that case, he recognizes that if the sale of a

14  record is not a publication (and *Metro. Opera* said it was not) then the author of that

15  work would be granted a "perpetual monopoly" and that this monopoly would be

16  "***unlimited both in time and in user.***"  *Id.* at 667 (emphasis added).  In other words,

17  Judge Hand clearly understood that after *Metro. Opera* an author's common law

18  copyright in a recording was unlimited.  *Id.*[2]

19         *Whiteman* is no longer good law because the Second Circuit said it is not

20  good law.[3]  But the same conclusion can be reached as a matter of basic

21  jurisprudence.  Indeed, because the result in *Whiteman* flowed directly from Judge

22  _____

23  [2] Judge Hand made a second error in *Whiteman* when he wrongly concluded that

24  *International News Service v. Associated Press*, 248 U.S. 215 (1918) could not be
    used to support a claim for unfair competition in New York.  *Whiteman*, 114 F.2d at

25  90.  *Metro. Opera* held to the contrary.  *Metro. Opera,* 199 Misc. at 796.

26  [3] The Second Circuit's conclusion was also echoed the next year by Third Circuit

27  when it correctly observed that *Whiteman* was "expressly overruled."  *Ettore v.*
    *Philco Television Broad. Corp.*, 229 F.2d 481, 488 (3d Cir. 1956).

28

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

1   Hand's erroneous conclusion that the publication of a recording ended any common

2   law copyright protection, Sirius XM cannot now suggest that the result in that case

3   nevertheless remains viable.  One of the most basic maxims of jurisprudence is that

4   "where the reason of a rule ceased, the rule also ceased."  *Funk v. United States*, 290

5   U.S. 371, 385 (1933); Cal. Civ. Code § 3510(same).

6         The fact that *Whiteman* had not been the law in New York for over sixty years

7   doomed Sirius XM's motion for reconsideration in the New York action.  In

8   denying that motion, Judge McMahon stated:

9               Sirius argues that *Whiteman* rejected RCA's claims because New

10             York law did not afford public performance rights to holders of

11             common law copyrights in sound recordings.  I disagree.  So

12             does every other court and authority that has considered the

13             issue.

14   *Flo & Eddie, Inc.*, 2014 U.S. Dist. LEXIS 174907 *5.

15         Undaunted by the law, Sirius XM tries to resurrect *Whiteman* by quoting

16   misleadingly from various secondary sources.  **(Motion 6:3-7:6)**  For example,

17   Sirius XM claims that in 2011 the U.S Copyright Office cited *Whiteman* for the

18   proposition that "state law does not appear to recognize a performance right in

19   sound recordings."  **(Motion 6:17-7:3)**  Sirius XM never advises the Court that on

20   July 23, 2014, the Copyright Office stated:

21             [O]thers have misread the Office's observation in its [2011]

22             report on pre-1972 sound recordings that "in general, state law

23             does not appear to recognize a performance right in sound

24             recordings" as an official statement that no such protection is (or

25             should be) available under state law.  This…is a

26             misinterpretation.  While, as a factual matter, a state may not

27             have affirmatively acknowledged a public performance right in

28             pre-1972 as of the Office's 2011 report, the language in the

1      report should not be read to suggest that a state could not

2      properly interpret its law to recognize such a right.

3   *See* Library of Congress: Copyright Office, Music Licensing Study: Second Request

4   for Comments, 79 Fed. Reg. 141, at 42, 834 n. 3 (July 23, 2014).

5          Sirius XM's other secondary sources fare no better.  Three of the four articles

6   cited by Sirius XM actually recognize that *Whiteman* was limited to the

7   enforceability of a restrictive legend, and two of them even acknowledge that

8   *Whiteman* was overruled.  *See* R. Bard & L. Kurlantzick, *A Public Performance*

9   *Right In Recordings: How to Alter the Copyright System Without Improving It*, 43

10  Geo. Wash. L. Rev. 152, 154-55 (1974) (*Whiteman* was overruled in *Metropolitan*

11  *Opera* and hinged on the restrictive legend and on the supposition that "any

12  common law property. . . in the recorded performances ended with the record's sale,

13  thereby making the restrictive legend on the label ineffective"); S. Diamond, *Sound*

14  *Recordings and Phonorecords: History and Current Law*, 1979 Univ. Ill. L. Forum

15  337, 346-48 (1979) (*Whiteman* was based on a federal preemption theory that the

16  sale of a recording divests the owner of any right to control its use and was

17  overruled in *Metropolitan Opera*); D.G. Baird, *Common Law Intellectual Property*

18  *and the Legacy of International News Service v. Associated Press*, 50 Univ. Chi. L.

19  Rev. 411, 419 (1983) (*Whiteman* was based on the enforceability of a restrictive

20  legend).  As for the fourth article cited by Sirius XM, without any analysis, the

21  authors of that student journal cite *Whiteman* in a footnote for the proposition that:

22  "[i]n general, states do not appear to recognize a right of public performance in pre-

23  1972 sound recordings."  *See* E. Subotnik & J. Besek, *Constitutional Obstacles?*

24  *Reconsidering Copyright Protection for Pre-1972 Recordings*, 37 Colum. J. Law &

25  Arts, 327, 338 (2014).  The authors' citation of a single overruled case from 1940

26  for this "general" fifty-state proposition says far more about the journals' editors

27  than it does about the actual state of the law.

28

GRADSTEIN & MARZANO, P.C.
6310 San Vicente Blvd, Suite 510
Los Angeles, California 90048
Telephone: 323-776-3100

Sirius XM concludes its Alice in Wonderland analysis of *Whiteman* by claiming that California not only followed that case (which it did not) but went one step further in *Supreme Records* and held that California "did not recognize any ownership interest in sound recordings." **(Motion at 7:7-10)** *Supreme Records* said no such thing.  The issue in *Supreme Records* was whether the plaintiffs, who "[did] not own the copyright of [the song at issue], and [did] not claim any common law rights in it[,]" could assert a claim for violation of the "particular ***arrangement*** of a song – the special manner in which they recorded it." *Supreme Records*, 90 F. Supp. at 906-07 (emphasis added).  The court held that a plaintiff without such rights could not bring a claim for unfair competition in connection with an arrangement against a company that ***independently created*** its own recording after obtaining a license from the owner of the copyright in the song.  *Id* at 908.

Sirius XM's characterization of *Supreme Records* as meaning that there were "no rights" in sound recordings ignores the fact that the District Court only held that the "arrangement" embodied in the recording was not protectable against a second recording that imitated (but did not copy) the original recording.  That conclusion is the one and only exception that the California Legislature adopted from the federal Copyright Act when it enacted § 980(a)(2) (granting exclusive ownership in pre-1972 recordings "as against all persons except one who independently makes or duplicates another sound recording that does not directly or indirectly recapture the actual sounds fixed in such prior sound recording, but consists entirely of an independent fixation of other sounds, even though such sounds imitate or simulate the sounds contained in the prior sound recording.")  Thus, it is not surprising that the only cases that Sirius XM cites as following *Supreme Records* are all "sound-alike" or "imitation" cases.  *See Davis v. Trans World Airlines*, 297 F. Supp. 1145 (C.D. Cal. 1969), *Sinatra v. Goodyear Tire & Rubber Co.,* 1968 U.S. Dist. LEXIS 9714 (C.D. Cal. 1968), and *Shaw v. Time-Life Records*, 38 N.Y. 2d 201 (1975).

Finally, Sirius XM's interpretation of *Supreme Records* (*i.e.* that California did not recognize any rights in sound recordings) runs head first into the holdings in *Capitol Records, Inc. v. Erickson*, 2 Cal. App. 3d 526, 82 Cal. Rptr. 798 (1969) and *A & M Records, Inc. v. Heilman*, 75 Cal. App. 3d 554, 142 Cal. Rptr. 390 (1977). Sirius XM tries to dismiss this gaping hole in its logic by claiming that the courts in those cases were simply "carving out a limited exception...to prevent unauthorized duplication." **(Motion 8:14-16)** *Erickson* and *Heilman* never mentioned the holding in *Supreme Records* – much less that they were creating an exception to it – because *Supreme Records* never stood for the proposition that California did not recognize rights in sound recordings.

**B.     Sirius XM's Remaining Arguments Are Makeweight.**

Sirius XM makes three additional arguments that not only fall short but essentially ask the Court to rewrite § 980(a)(2). To that end, Sirius XM first revives its failed argument made in opposition to the motion for summary judgment that § 980(a)(2) must mirror the common law as it existed at the time of its enactment. That argument was wrong before and it is wrong again. It is also wrong because Sirius XM is now attempting to define the common law in California in 1981 as *Whiteman* and an erroneous interpretation of *Supreme Records*. **(Motion 10:16-18)**

Sirius XM's second throw-away argument illogically contends that the exception in Section 980(a)(2) permitting making a "cover" record somehow would prohibit playing that same cover record on the radio. **(Motion 11:14-24)** Sirius XM's convoluted interpretation is a head scratcher. The intangible "property" protected by Section 980(a)(2) is limited to the specific performance embodied in the "actual sounds" fixed in that specific recording. Thus, the "exclusive ownership" rights recognized in Section 980(a)(2) would extend to the owner of the cover recording, not to the owner of the original recording.

Finally, Sirius XM argues that the Legislature could not have intended to "enlarge rights in sound recordings to include a performance right" because that

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

8

supposedly "would have attracted attention and been the subject of objections from untold affected stakeholders." **(Motion 11:25-27)**  The existence or nonexistence of presumed "controversy" and objections by third parties after the fact are not evidence of the Legislature's intent when it enacted a statute, nor do they displace this Court's analysis and conclusion.

## III.    <u>SIRIUS XM'S DORMANT COMMERCE CLAUSE ARGUMENT IS STILL MERITLESS.</u>

Even the strongest supporters of the dormant Commerce Clause are not brazen enough to suggest that it can be used to cripple a state's ability to protect property from theft occurring within its own borders.  Yet, according to Sirius XM, the dormant Commerce Clause does exactly that if the thief has chosen to operate a nationwide business.  That is not the law, which explains why Sirius XM has now lost that argument *five* different times: (1) when this Court concluded that 17 U.S.C. § 301(c) authorized state protection of rights in pre-1972 recordings; (2) when Judge Strobel ruled the same way in *Capitol Records, Inc. et al. v. Sirius XM Radio, Inc.*, Superior Court of the State of California, County of Los Angeles, Case No. BC520981, granting plaintiffs' jury instruction motion; (3) when Judge Strobel denied Sirius XM's motion for reconsideration[4]; (4) when Judge McMahon took a different approach and held that the protection of state property rights was not even a "regulation," therefore, the Commerce Clause was not even implicated and was a "red herring;" *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 2014 U.S. Dist. LEXIS 166492 *57 (S.D.N.Y. Nov. 14, 2014), and (5) when Judge McMahon denied Sirius XM's motion for reconsideration. *Flo & Eddie, Inc.*, 2014 U.S. Dist. LEXIS 174907 *12-16.  Sirius XM's current motion for reconsideration is its sixth attempt and should be denied for at least two separate reasons.

---

[4] *See* Request for Judicial Notice.

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GRADSTEIN & MARZANO, P.C.
6310 San Vicente Blvd, Suite 510
Los Angeles, California 90048
Telephone: 323-776-3100

A.      **Congress Has Authorized the States to Exclusively Protect Pre-1972 Recordings**.

As this Court correctly held in its summary judgment ruling, "[w]here state or local government action is specifically authorized by Congress, it is not subject to the Commerce Clause even if it interferes with interstate commerce." *White v. Mass. Council of Const. Employers, Inc.*, 460 U.S. 204, 213 (1983)  Congress did that here in 17 U.S.C. § 301(c) which provides that "[a]ny rights or remedies under the common law or statutes of any State shall not be annulled or limited by this title until February 15, 2067."  Section 301(c) codifies Congressional intent not only to exempt the states from federal preemption but also to affirmatively and expressly provide the states with the unlimited power to impose "rights and remedies under the common law or statutes" in order to protect pre-1972 recordings.  That is consistent with the Supreme Court's holding in *Goldstein v. California*, 412 U.S. 546, 559 (1973) that the State of California can regulate pre-1972 recordings without violating the Copyright Clause or the Commerce Clause.

Sirius XM cannot save its dormant Commerce Clause argument by mischaracterizing § 301(c) as a "savings clause."  A savings clause "is generally used in a repealing act to preserve rights and claims that would otherwise be lost." *Black's Law Dictionary* at 1461 (9th ed.).  Section 301(c) did not repeal anything; it affirmatively cedes to the states the exclusive power to provide protection for pre-1972 recordings.  As explained in one of the leading copyright treatises:

> General preemption is directed toward material that is…protected under the [Copyright] Act.  The purpose of preemption for this material is to prevent state laws from conflicting with federal law.  By contrast, Section 301(c) is directed toward material (pre-1972 sound recordings) which Congress has expressly told the states that they may protect. . . .States are thus free to extend to pre-1972 sound

10

1    recordings the full panoply of rights granted to original works of

2    authorship by the Federal Copyright **and beyond** (**for example, a**

3    **performance right for analog and digital**).

4   5 W.F. Patry, *Patry On Copyright*, § 18:55 at 18-198 (2010 ed.) (emphasis added).

5        Sirius XM's reliance on *New England Power Co. v. New Hampshire*, 455

6   U.S. 331, 341 (1982) does not change the analysis or make § 301(c) a savings

7   clause.  The regulation at issue in *New England Power* (i.e. § 201(b) of the Federal

8   Power Act) provided that its provisions "shall not…deprive a State or State

9   commission of its lawful authority **now exercised** over the exportation of

10  hydroelectric energy which is transmitted across a State line." (emphasis added).  As

11  the Supreme Court noted, this provision "did no more than leave standing whatever

12  valid state laws existed."  *Id*.  By comparison, Section 301(c) is not limited to

13  "lawful authority now exercised."  To the contrary, it contains a broad and unlimited

14  **prospective** grant of power to the states ("any rights or remedies under the common

15  law or statutes of any State shall not be annulled or limited by this title until

16  February 15, 2067").

17       The authorization granted in § 301(c) is the same authorization that has

18  routinely been relied on by Courts in rejecting dormant Commerce Clause

19  arguments.  *See e.g. Sea Air Shuttle v. Virgin Islands Port Authority*, 800 F. Supp.

20  293, 304 (D.V.I. 1992) (Federal Aviation Act provided that it "shall not be

21  construed to limit the authority of any State...to exercise its proprietary powers and

22  rights."); *Soto* v. *Tu Phuoc Nguyen*, 634 F. Supp. 2d 1096, 1107 (E.D. Cal. 2009)

23  (Section 30103(e) of the National Traffic and Motor Vehicle Safety Act statement

24  that "[c]ompliance with a motor vehicle standard under this chapter does not exempt

25  a person from liability at common law" indicated "an express delegation of power to

26  the states"); *Zimmerman v. Wolff*, 622 F. Supp. 2d 240, 245 (E.D. Pa. 2008) (Federal

27  Animal Welfare Act preserved and expressly authorized states to promulgate their

28  own standards with respect to domestic animals); *Bowers v. NCAA, Inc.*, 151 F.

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

11

Supp. 2d 526, 538 (D. N.J. 2001) (Americans with Disabilities Act provided that "[n]othing in this chapter shall be construed to invalidate or limit the remedies, rights, and procedures of any…law of any State…that provides greater or equal protection for the rights of individuals with disabilities than are afforded by this chapter"); *People ex rel State Bar Resources Bd. v. Wilmhurst*, 68 Cal. App. 4th 1332, 1345 (1999) (Federal Clean Air Act "demonstrates an intent by Congress to grant California the broadest possible discretion").

In contrast to these cases, Sirius XM's reliance on *American Booksellers Found. v. Dean*, 342 F.3d 96, 104 (2d Cir. 2003) is of no help to it since that case did not involve a statutory scheme in which Congress authorized states to regulate interstate activities. Moreover, because Congress authorized state protection of pre-1972 recordings, the balancing test described in *Pike v. Bruce Church*, 397 U.S. 137 (1970) is irrelevant. *Shamrock Farms v. Veneman*, 146 F.3d 1177, 1179-80 (9th Cir. 1998). Finally, Sirius XM misstates the holding in *Healy v. Beer Inst.*, 491 U.S. 324 (1989) by using elipses to omit that the objectionable regulation was of conduct "occurring wholly outside that State's borders." *Id*. at 332.

**B.   California's Protection of Pre-1972 Recordings Does Not "Regulate" Interstate Commerce**.

Even if § 301(c) did not exist, Sirius XM's dormant Commerce Clause argument would still fail. Indeed, the grant and protection of exclusive ownership rights in pre-1972 recordings in California does not "regulate" commerce outside of California. *Sherlock v. Alling*, 93 U.S. (3 Otto) 99 (1876). As Judge McMahon held, a public performance right "is not a state-imposed regulation – even when applied to public performances by a national broadcaster." *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 2014 U.S. Dist. LEXIS 166492 *59-60. Therefore, Judge McMahon concluded that Sirius XM's dormant Commerce Clause argument is "nothing more than a red herring." *Id.* *57.

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

12

GRADSTEIN & MARZANO, P.C.
6310 San Vicente Blvd, Suite 510
Los Angeles, California 90048
Telephone: 323-776-3100

Sirius XM has not cited any case that sustained a dormant Commerce Clause challenge based upon a violation of a state-specific property right.  Sirius XM's argument that the Commerce Clause prevents any state from conferring property rights that may be greater than those in other states merely because the application of those rights might have an impact on entities doing business in multiple states would effectively destroy California's ability to confer intangible property rights within its borders (for example, rights of publicity or trademark rights).  It is precisely because states are permitted to confer these property rights that Commerce Clause challenges on such grounds are routinely defeated.  *See Heilman*, 75 Cal. App. 3d at 567-68 (no violation of Commerce Clause where conduct was "carefully circumscribed to restrain only [defendant's] activities in, or aimed at, California"); *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 2014 U.S. App. LEXIS 15395, at *12-14 (9th Cir. 2014) (Washington state laws that recognized post-mortem right of publicity not recognized in other states does not impermissibly burden interstate commerce); *Ferguson v. FriendFinders, Inc.*, 94 Cal. App. 4th 1255, 1264 (2002) (state regulation of internet advertisements does not violate Commerce Clause); *see also Flo & Eddie, Inc.*, 2014 U.S. Dist. LEXIS 166492 *59 (compiling cases).

Unable to undermine the notion that the common law protection of pre-1972 recordings is not a regulation, Sirius XM argues that it is immune from liability because it is "legally prohibited from modifying its progamming to satisfy each state."  **(Motion 14:26-28)**  That is a gross misstatement.  What really occurred is that in order to protect local broadcast stations from Sirius XM's predatory conduct, Sirius XM entered into a private agreement with the FCC which prevents Sirius XM from adding local competitive programming and advertising that "would cause terrestrial broadcasters to lose advertising revenue..."  *See* In the Matter of Applications for Consent to the Transfer of Control of Licenses, 2008 FCC LEXIS 7626 at ¶¶ 73, 154, 155 (adopted July 25, 2008).  Sirius XM's agreement with the

FCC has no bearing on its obligation to delete infringing programming, nor does it shield conduct that violates the property rights of owners of pre-1972 recordings.

Neither its agreement with the FCC nor the law excuses Sirius XM from complying with California law simply because it is a national broadcaster.  Sirius XM's particular structure and method of operation are not entitled to deference.  *See Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 127 (1978) (rejecting "notion that the Commerce Clause protects the particular structure or method of operation in a retail market"); *Arrow Air, Inc. v. Port Auth. of New York and New Jersey*, 602 F. Supp. 314, 321 (S.D.N.Y. 1985) ("If a regulation is otherwise valid under the Commerce Clause it is not rendered invalid simply because an operator has to change its market structure."); *see also Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 961 (N.D. Cal. 2006) ("Defendant's argument – that if this court applies the Unruh Act and the Disabled Persons Acts to Target.com, the practical effect will be to force it to modify its website for all customers nationwide – is not sustainable.")[5]

## IV.   SIRIUS XM DOES NOT HAVE ANY REMAINING LIABILITY AFFIRMATIVE DEFENSES.

In a belated attempt to close the barn door after the horse has left, Sirius XM contends that even though it failed to support its affirmative defenses in response to Flo & Eddie's motion for summary judgment, those defenses somehow survived the Court's ruling and remain to be adjudicated because it "reserved" them.  **(Motion 19:11-12)**  That is not how the summary judgment process works.  *See In re Brazier*

---

[5] Sirius XM argues that *Flood v. Kuhn*, 407 U.S. 258 (1972) and *Partee v. San Diego Chargers Football Co.*, 34 Cal. 3d 378 (1983) require states to stand down whenever national organizations are involved.  Both *Flood* and *Partee* dealt with the special issue of whether state antitrust laws can be applied to regulate the interstate activities of professional sports leagues.  Sirius XM is not a national sports league and this is not an antitrust case.

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

1  *Forest Prods., Inc.*, 921 F.2d 221, 223 (9th Cir.1990) (Where the nonmoving party

2  bears the burden of proof on an issue at trial, such as an affirmative defense, it must

3  make a sufficient showing to establish the existence of evidence as to all elements

4  essential to its defense to avoid summary judgment); *DCIPA, LLC v. Lucile Slater*

5  *Packard Children's Hosp.*, 868 F. Supp. 2d 1042, 1060 (D. Or. 2011) (dismissing a

6  purported reservation of the right to assert additional affirmative defenses and

7  holding that "Defendant's 'reservation' has no basis in law").

8        The time has passed for Sirius XM to satisfy its burden of proof as to its

9  affirmative defenses.  Motions for reconsideration require new facts or new law, not

10  simply "new arguments and new legal theories that could have been made at the

11  time of the original motion."  *Garber v. Embry-Riddle Aeronautical Univ.*, 259 F.

12  Supp. 2d 979, 981-82 (D. Ariz. 2003).  But even if new arguments and theories were

13  permissible, Sirius XM has done nothing more in its motion than provide the Court

14  with a laundry list of the defenses in its Answer.  That list was so indiscriminately

15  prepared that it includes "failure to state a claim," which only applies when a

16  plaintiff can prove no set of facts in support of his claims (*Mason v. Ariz.*, 260 F.

17  Supp. 2d 807, 810 (D. Ariz. 2003)) and lack of harm and failure to mitigate damages

18  defenses, which are not even applicable at the liability phase. *See State Dept. of*

19  *Health Services v. Superior Court*, 31 Cal. 4th 1026, 1045 (2003) (defense of failure

20  to mitigate affects damages, not liability); *Meat Mkt., Inc. v. Am. Ins. Co.*, 2013 U.S.

21  Dist. LEXIS 38118 *20 (E.D. Cal. Mar. 19, 2013) (same); *Conversive, Inc. v.*

22  *Conversagent, Inc.*, 433 F. Supp. 2d 1079, 1094 (C.D. Cal. 2006) (affirmative

23  defense based on lack of harm reserved for damages phase).  As for the remaining

24  affirmative defenses on Sirius XM's list (license, waiver, estoppel, fair use, statute

25  of limitations, and lack of ownership), none of them has merit or survived the

26  summary judgment ruling.

27

28

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

1          A.     <u>License</u>.

2          Undisputed Fact No. 24 in Flo & Eddie's motion for summary judgment

3    stated that "Sirius XM copied, reproduced, and performed the pre-1972 recordings

4    without a license, and without paying royalties."  In response, Sirius XM only

5    disputed that certain of its copying did not take place in California.  **(Dkt. 87, p. 19)**

6    At no point did Sirius XM dispute the portion of Undisputed Fact No. 24 that stated

7    that it did not have licenses.  Sirius XM's failure to do so constituted an admission

8    that the fact was true.  *See* L.R. 56-2 and L.R. 56-3; s*ee also*, Fed. R. Civ. P.

9    56(e)(2).

10         This admission was not an error, but rather has been Sirius XM's position

11   throughout this litigation.  Indeed, in response to Flo & Eddie's Rule 30(b)(6)

12   deposition notice seeking a witness regarding "agreements and licenses" that "grant

13   or give" to Sirius XM the right to reproduce, copy, perform, or distribute pre-1972

14   recordings, including The Turtles' recordings, Sirius XM's designee (David Frear)

15   testified repeatedly that Sirius XM has no licenses.  **(Geller Decl. ¶ 21, Ex. 23, Dkt.**

16   **68)**[6]  Mr. Frear's blanket "no license" responses are binding on Sirius XM.

17   *Twentieth Century Fox Film Corp. v. Marvel Enters.*, 2002 U.S. Dist. LEXIS 14682

18   *6 (S.D.N.Y. Aug. 6, 2002).

19         In its motion for reconsideration, Sirius XM suggests that it can still assert a

20   defense based on an implied license theory.  **(Motion fn. 7)**  Not only is it too late to

21   do that, but the law does not even support that theory.  "Courts have found implied

22   licenses only in 'narrow' circumstances where one party 'created a work at [the

23   other's] request and handed it over, intending that [the other] copy and distribute

24   it.'"  *A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001) (citing

25   *SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharms., Inc.*, 211 F.3d

26   _____

27   [6]  All declarations and exhibits referred to in Sections I-IV were filed by Flo &
     Eddie in support of its motion for summary judgment.

28

                                            16

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

21, 25 (2d Cir. 2000); *see also SHL Imaging, Inc. v. Artisan House, Inc.*, 117 F. Supp. 2d 301, 317 (S.D.N.Y. 2000) ("An implied license can only exist where an author creates a copyrighted work with knowledge and intent that the work would be used by another for a specific purpose."); *Wilchombe v. TeeVee Toons*, Inc., 555 F.3d 949, 956 (11th Cir. 2009) ("An implied nonexclusive license is created when one party creates a work at another party's request and hands it over, intending that the other party copy and distribute it.")

Sirius XM never explains how recordings that were created decades before Sirius XM ever existed could possibly have been created at Sirius XM's request. Similarly, Sirius XM never explains how the authors of those recordings could possibly have created them with the "knowledge and intent" that they were going to be used by a company that did not yet exist in connection with satellite and internet services that had not yet been invented. The unilateral expectations of Sirius XM developed decades after the works in question were created, and after it argued in opposition to summary judgment that no licenses were necessary, cannot give rise to an implied license. *Hewlett-Packard Co. v. Pitney Bowes Corp.*, 1998 U.S. Dist. LEXIS 10936 *23 (D. Or. Mar. 23, 1998).

### B.   <u>Waiver and Estoppel</u>.

In its motion for summary judgment, Flo & Eddie established that Sirius XM could not support its defenses of waiver and estoppel for a number of reasons, not the least of which was that Sirius XM testified that its decision not to license pre-1972 recordings was based solely on Sirius XM's legal analysis (which Sirius XM would not disclose) – *and nothing else*. **(Geller Decl. ¶ 23, Ex. 25, Dkt. 68)**

Sirius XM's testimony was quite clear. Thus, as a factual matter, because the *only* factor considered by Sirius XM was its own legal analysis, Sirius XM could not oppose the motion for summary judgment by suggesting that there were other reasons, such as the conduct or supposed acquiescence of the owners of pre-1972 recordings resulting from their alleged failure to initiate litigation sooner.

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

As importantly, from a legal perspective, waiver and estoppel require specific showings that Sirius XM did not even attempt to make, nor could it ever make. Indeed, Sirius XM cannot show a waiver, which requires a voluntary act, knowingly done, with sufficient awareness of the relevant circumstances and likely consequences. *In re Marriage of Moore*, 113 Cal. App. 3d 22, 27 (1980); *see also Associates Inc. v. Maryland Casualty Co.*, 80 Cal. App. 4th 1165, 1188 (Cal. App. 1st Dist. 2000) ("Waiver requires the intentional relinquishment of a known right upon knowledge of the facts. The burden is on the party claiming a waiver of right to prove it by clear and convincing evidence that does not leave the matter to speculation.")  Similarly, Sirius XM cannot establish estoppel, which also requires knowledge and intent on the party to be estopped, as well as reasonable reliance by the party claiming estoppel. *Feduniak v. California Coastal Com.*, 148 Cal. App. 4th 1346, 1359-62 (Cal. App. 6th Dist. 2007).

What Sirius XM has repeatedly ignored is that waiver and estoppel are not established by the failure to institute litigation sooner.  An owner of a copyright has no obligation to institute legal proceedings against any particular defendant, and any asserted failure to do so is not an abandonment or relinquishment of rights.  *Petrella v. MGM*, 134 S.Ct. 1962, 1976 (2014) ("It is hardly incumbent on copyright owners, however, to challenge each and every actionable infringement."); *see also  Capitol Records, Inc. v. Naxos of Am., Inc.*, 372 F.3d 471, 483 (2d Cir. 2004) ("failure to pursue third-party infringers has regularly been rejected as a defense to copyright infringement or as an indication of abandonment"); *Paramount Pictures Corp. v. Carol Pub'g Grp.*, 11 F. Supp. 2d 329, 337 (S.D.N.Y. 1998).

Sirius XM is also barred for another very basic reason from pursuing a defense based on waiver or estoppel.  In order to establish those defenses, Sirius XM must testify as to its state of mind.  However, because Sirius XM has blocked all inquiry into the legal advice and communications that it admits influenced its state of mind, it cannot now testify as to any aspect of its state of mind.  **(Geller Decl. ¶**

18

**23, Ex. 25 Dkt. 68; Supp. Geller Decl. ¶ 2, Ex. 27, Dkt. 112)**  The law is clear that Sirius XM may not assert reliance (or even that its reliance was reasonable) while at the same time shielding from discovery privileged communications and analysis that bear on its state of mind.  *United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991); *see also Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*, 552 F.3d 1033 (9th Cir. 2009).  The selective disclosure of the information that forms the basis for a good faith assertion is not allowed even if the party is not raising advice of counsel as a defense.  *Leviton Mfg. Co. v. Greenberg Traurig LLP*, 2010 WL 4983183, at *3 (S.D.N.Y. Dec. 6, 2010) (quoting *John Doe Co. v. United States*, 350 F.3d 299, 306 (2d Cir. 2003)).

### C.   <u>Fair Use</u>.

Consistent with its position throughout this litigation and in the New York and Florida actions as well, Sirius XM has never contended that its ***performances*** of pre-1972 recordings were fair use.  **(Dkt 106, fn. 2 and 24:21-25:23)**; *Flo & Eddie v. Sirius XM Radio, Inc.*, Southern District of New York, Case No. 13-cv-05784, Dkt 54 at 37-44 (arguing that incidental copying of pre-1972 recordings is fair use); *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, Southern District of Florida, Case No. 13-CV-23182, Dkt. 101 at 15 (same).  Thus, it is not clear why Sirius XM is now claiming that its fair use defense (which only relates to copying) somehow precludes this Court from granting summary judgment based on Sirius XM's performance of pre-1972 recordings.  This would appear to another situation where Sirius XM paid little attention to the argument it was making.

In any event, fair use is not even a proper defense here.  In its opposition to Flo & Eddie's motion for summary judgment, Sirius XM struggled to find a California case that accepts fair use as a defense to common law infringement of sound recordings.  The best that Sirius XM could do was to cite to *Kramer v. Thomas*, 2006 U.S. Dist. LEXIS 96714 (C.D. Cal. Sept. 28, 2006).  However, that case contains no analysis of California law and then does the one thing that federal

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

1  courts are not permitted to do – use the Copyright Act to limit or annul any aspect of

2  California law.  *See* 17 U.S.C. § 301(c).  There is perhaps nothing more limiting

3  than applying the fair use exception in 17 U.S.C. § 107 to the common law

4  copyrights of the owners of pre-1972 recordings.  Even if the Court was permitted to

5  rely on § 107 and the cases decided thereunder, Sirius XM's so-called "fair use"

6  defense would still fail.  Indeed, the facts and conduct underpinning Sirius XM's

7  claim of fair use have already been found to be insufficient under § 107 in *UMG*

8  *Recordings v. MP3.com, Inc.*, 92 F. Supp. 2d 349 (S.D.N.Y. 2000).

9          **D.**     **Statute of Limitations**.

10         Sirius XM does not explain in its motion how its affirmative defense based on

11  the statute of limitations survived the Court's summary judgment ruling.  It did not,

12  nor could it.  California courts "have long settled that separate, recurring invasions

13  of the same right can each trigger their own statute of limitations." *Aryeh v. Canon*

14  *Business Solutions, Inc*., 55 Cal. 4th 1185, 1198 (2013).  Indeed, that is exactly what

15  the Court found occurred in this case, as "[t]here was wrongful disposition of [Flo &

16  Eddie's] property right every time Sirius XM publicly performed the recordings

17  without Flo & Eddie's permission, in violation of California copyright law." **(Dkt.**

18  **No. 117, p. 14-15)**

19         In *Aryeh,* the California Supreme Court described the purpose of allowing

20  continuous accrual of claims to bar a statute of limitations defense:

21                  The theory is a response to the inequities that would arise if the

22                  expiration of the limitations period following a first breach of

23                  duty or instance of misconduct were treated as sufficient to bar

24                  suit for any subsequent breach or misconduct; parties engaged in

25                  long-standing misfeasance would thereby obtain immunity in

26                  perpetuity from suit even for recent and ongoing misfeasance. In

27                  addition, where misfeasance is ongoing, a defendant's claim to

28

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

GRADSTEIN & MARZANO, P.C.
6310 San Vicente Blvd, Suite 510
Los Angeles, California 90048
Telephone: 323-776-3100

1    repose, the principal justification underlying the limitations

2    defense, is vitiated.

3  *Aryeh*, 55 Cal. 4th at 1198.

4    As the *Aryeh* court made clear, "[g]enerally speaking, continuous accrual

5  applies whenever there is a continuing or recurring obligation." *Id,* at 1199.  And

6  this is true regardless of name of the claim.  *Id*. at 1200 (continuous accrual depends

7  not on a claim's label, but on "the nature of the obligation breached").

8    Sirius XM has never disputed that its performance of pre-1972 recordings

9  (including The Turtles' recordings) occurred during the relevant limitations periods.

10  That conduct violated the rights of the owners of pre-1972 recordings each time it

11  occurred.  As the Court correctly recognized in its summary judgment ruling,

12  California law was violated "every time Sirius XM publicly performed the

13  recordings without Flo & Eddie's permission."  **(Dkt. No. 117, p. 13)**  This is also

14  consistent with how limitations periods are treated with respect to federal copyright

15  infringement claims.  *Petrella v. MGM*, 134 S.Ct. 1962, 1969 (2014) ("Each time an

16  infringing work is reproduced or distributed, the infringer commits a new wrong.

17  Each wrong gives rise to a discrete 'claim' that 'accrue[s]' at the time the wrong

18  occurs.")

19    **E.    Lack of Ownership**.

20    As the undisputed evidence established in connection with the summary

21  judgment briefing, for over **_four decades_**, Flo & Eddie has exclusively owned and

22  exploited The Turtles' recordings.  **(Volman Decl. ¶¶ 2-7, Dkt. 67)**  This was not a

23  controversial proposition.  In fact, Sirius XM made the same point in support of its

24  motion for summary judgment in New York.  *Flo & Eddie v. Sirius XM Radio, Inc.*,

25  Southern District of New York, Case No. 13-cv-05784, Dkt 47 ¶¶ 1-2, 16-20**.**

26  Thus, it was not surprising that this Court had no problem concluding in its

27  summary judgment order that Flo & Eddie owned The Turtles' recordings.  (Dkt.

28  117, p. 1) ("[t]oday, Flo & Eddie owns all rights to The Turtles' master sound

1  recordings.")  Judge McMahon reached the same conclusion in the New York

2  action.  *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 2014 U.S. Dist. LEXIS 166492

3  *3 ("Volman and Kaylan purchased the remaining Turtles' members' interests in the

4  recordings, and ultimately transferred all ownership interests in the recordings to Flo

5  & Eddie.")

6        In the face of these two rulings, it is preposterous for Sirius XM to suggest

7  that ownership has not been established or that its affirmative defense entitled "lack

8  of ownership" is still viable.  There is no evidence that anyone other than Flo &

9  Eddie owns The Turtles' recordings.  Sirius XM's prior counsel did not waste a

10  great deal of time on this issue and, to the extent that Sirius XM's new counsel

11  claims that it needs additional discovery on this issue, that time has passed.  *Marcin*

12  *Eng'g LLC v. The Founder at Grizzly Ranch, LLC*, 219 F.R.D. 516, 521 (D. Colo.

13  2003) ("That new counsel is dissatisfied with the state of the case it inherited is not

14  grounds under this authority for reopening discovery long after the court-ordered

15  deadlines have passed."); *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th

16  Cir. 1996) ("There is no principle that each new attorney for a litigant must have an

17  independent opportunity to conduct discovery.")

18  **V.    SIRIUS XM'S MOTION WARRANTS SANCTIONS.**

19        Sirius XM's motion for reconsideration should never have been filed, and it

20  most certainly should have been withdrawn after Judge McMahon excoriated

21  O'Melveny for its analysis of *Whiteman*.  No matter how displeased Sirius XM is

22  with the law or with the Court's rulings, O'Melveny cannot react recklessly or in

23  bad faith.  However, that is the path O'Melveny knowingly chose when it:

24        •  Claimed that "[o]n the core issue of whether a common law performance

25           right exists in a sound recording, *Whiteman* remains good law and the

26           definitive case on performance rights in sound recordings."  **(Motion 5:22-**

27           **6:2)**  Overruled cases are not good law.  *See United States v. Santiago*, 826

28           F.2d 499 fn. 1 (7th Cir. 1987) ("Reliance on an overruled case manifests

22

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

either incompetence, carelessness or an attempt to mislead the court, any one of which falls far short of acceptable professional conduct."); *United States v. Stewart*, 20 F.3d 911, 917-18 (8th Cir. 1994) (legal argument reliant upon an overruled case fails as a matter of law); *Falcone v. Vill. of Hanover Park*, 2004 U.S. Dist. LEXIS 25293, *27, (N.D. Ill. Dec. 9, 2004) ("The pace of justice for all litigants is harmed by parties who invite detours based on caselaw that has been overruled....")

- Represented to the Court that *Supreme Records* stood for the proposition that California does not "recognize any ownership interest in sound recordings."  **(Motion 7:7-10)**  That misrepresents the holding in that case. *Premier Commercial Corp. v. FMC Corp.*, 139 F.R.D. 670, 674 (N.D. Cal. 1991) (sanctions awarded where an attorney deliberately misrepresented legal authority); *In re Disciplinary Action Boucher*, 837 F.2d 869, 871 (9th Cir. 1988) ("The vice of misrepresentation is not that it is likely to succeed but that it imposes an extra burden on the court.")

- Continued to pursue a dormant Commerce Clause argument that has been rejected five times, and premised its sixth attempt on a misleading record. O'Melveny devoted *six* pages of its brief to the argument that Judge McMahon reached an opposite conclusion from this Court as to whether § 301(c) authorized state action.  O'Melveny then relegated to a footnote **(Motion fn. 4)** the all important fact that Judge McMahon rejected Sirius XM's dormant Commerce Clause argument on alternate grounds and considered it to be a "red herring."  In addition, O'Melveny never mentioned Judge McMahon's alternate ruling in its Notice of Motion, opting instead to simply give the impression that Judge McMahon had adopted Sirius XM's view of the dormant Commerce Clause.  **(Notice of Motion 1:18-2:2)**

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

- Represented that the Copyright Office stated in 2011 that "state law does not appear to recognize a performance right in sound recordings" **(Motion 6:17-7:3)**, but never advised the Court that on July 23, 2014, the Copyright Office issued a statement that this was a misreading of its position.

- Pursued its motion for reconsideration based on cases culled from between 1940 and 1983 (*Whiteman*, *Supreme Records*, *New England Power*) even though none of those cases qualify as a change in the law as required by L.R. 7-18(b).

There can be no doubt that O'Melveny has recklessly and in bad faith multiplied these proceedings by raising frivolous arguments and by misleading the court. That is grounds for sanctions under 28 U.S.C. § 1927.[7]  *See Thomas v. Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010) (noting that sanctions are warranted where attorney recklessly or intentionally misleads the court or where an attorneys recklessly raised a frivolous argument which resulted in the multiplication of the proceedings); *see also Moser v. Bret Harte Union High Sch. Dist.*, 366 F. Supp. 2d 944, 979 (E.D. Cal. 2005) (awarding sanctions where "an attorney repeatedly and vexatiously presents 'facts' and 'law' to the Court that are plainly wrong or misleading, which needlessly prolong and multiply the summary judgment proceedings and materially increase the burden on the Court").

Although O'Melveny has not been in this case very long, its conduct has long since left the realm of zealous advocacy. Whether that conduct is dissected or viewed collectively as the Court is allowed to do, *Salstrom v. Citicorp Credit*

---

[7] It is also grounds for sanctions based on the Court's inherent power. *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001). The Ninth Circuit clarified in *Fink* that recklessness suffices for § 1927, but bad faith is required for sanctions under the court's inherent power. *Id.* at 993; *see also, Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1218-19 (9th Cir. 2010) (same). The distinction is not important here because both are present.

24

*Services, Inc.*, 74 F.3d 183 (9th Cir. 1996), it is reckless and in bad faith and done for the improper purpose of trying to overwhelm Flo & Eddie.  Accordingly, an award of sanctions in the amount of $50,210 is both necessary and appropriate.  *See* Declaration of Harvey Geller filed herewith, ¶¶ 1-5.

Dated:  January 5, 2015                    GRADSTEIN & MARZANO, P.C.


                                           By:  _____/s/ Harvey W. Geller_____
                                                     Harvey W. Geller
                                                   Attorneys for Plaintiff
                                                   FLO & EDDIE, INC.

GRADSTEIN & MARZANO, P.C.
6310 San Vicente Blvd, Suite 510
Los Angeles, California 90048
Telephone: 323-776-3100