GRADSTEIN & MARZANO, P.C.
HENRY GRADSTEIN (State Bar No. 89747)
hgradstein@gradstein.com
MARYANN R. MARZANO (State Bar No. 96867)
mmarzano@gradstein.com
HARVEY W. GELLER (State Bar No. 123107)
hgeller@gradstein.com
DANIEL B. LIFSCHITZ (State Bar No. 285068)
dlifschitz@gradstein.com
6310 San Vicente Blvd., Suite 510
Los Angeles, California 90048
T: 323-776-3100

EVAN S. COHEN (State Bar No. 119601)
esc@manifesto.com
1180 South Beverly Drive, Suite 510
Los Angeles, California 90035
T: 310-556-9800  F: 310-556-9801

Attorneys for Plaintiff
FLO & EDDIE, INC.

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD., SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLO & EDDIE, INC., a California corporation, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SIRIUS XM RADIO, INC., a Delaware corporation; and DOES 1 through 10,<br><br>Defendants. | Case No. CV13-05693 PSG (RZx)<br><br>**FLO & EDDIE, INC.'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**<br><br>Date: May 18, 2015<br>Time: 1:30 p.m.<br>Place: Courtroom 880<br>Honorable Philip S. Gutierrez |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on May 18, 2015 at 1:30 p.m. or as soon thereafter as counsel may be heard in Courtroom 880 of the above entitled Court, located at 255 East Temple Street, Los Angeles, CA 90012, before the Honorable Philip S. Gutierrez, plaintiff Flo & Eddie, Inc. ("Flo & Eddie") will and hereby does move for an Order granting certification of owners of sound recordings fixed prior to February 15, 1972 ("pre-1972 recordings") which have been reproduced, performed, distributed or otherwise exploited by defendant Sirius XM Radio, Inc. ("Sirius XM") in California without a license or authorization to do so during the period from August 21, 2009 to the present.

The motion is made pursuant to Fed. R. Civ. P. §§ 23(a) and 23(b)(3) and is made on the grounds that the proposed class satisfies the requirements of Fed. R. Civ. P. 23(a) (i.e., numerosity, commonality, typicality, and adequacy of representation), as well as the requirement of Fed. R. Civ. P. 23(b)(3) that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

This motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the accompanying declarations of Mark Volman, Michael Wallace, Jonathan Bender, Daniel Lifschitz, Henry Gradstein, and Harvey Geller, and exhibits thereto, all of the pleadings, files, and records in this proceeding, the court file, any matters of which this Court may properly take judicial notice or may otherwise consider, any reply Flo & Eddie may make, and any further evidence and argument that may be presented to the Court prior to or at the hearing on this Motion.

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

Dated:  March 16, 2015

GRADSTEIN & MARZANO, P.C.
HENRY GRADSTEIN
MARYANN R. MARZANO
HARVEY GELLER
DANIEL B. LIFSCHITZ

By:  _____*/s/ Harvey W. Geller*_____
            Harvey W. Geller
Attorneys for Plaintiff
FLO & EDDIE, INC.

GRADSTEIN & MARZANO, P.C.
6310 San Vicente Blvd., Suite 510
Los Angeles, California 90048
Telephone: 323-776-3100

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GRADSTEIN & MARZANO, P.C.
6310 San Vicente Blvd, Suite 510
Los Angeles, California 90048
Telephone: 323-776-3100

# **TABLE OF CONTENTS**

I.      INTRODUCTION................................................................1

II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY.......................2

    A.   Sirius XM Has Broadcast Thousands of Pre-1972 Recordings.............3

    B.   Sirius XM Exploits All Pre-1972 Recordings Without a License and Without Paying Royalties. ...............................................3

    C.   Sirius XM Engaged in the Same Conduct Regardless of Who Owned Any Particular Pre-1972 Recording. ...........................4

    D.   Sirius XM's Revenue Model Is the Same for All Pre-1972 Recordings and Did Not Vary Based Upon the Recording or the Owner of Recording. ........................................................5

III.    THE PROPOSED CLASS SHOULD BE CERTIFIED. ...................6

    A.   Flo & Eddie Satisfies The Requirements Of Rule 23(a). .....7

        1.   The Proposed Class Is So Numerous That Joinder Is Impracticable. ....................................................7

        2.   There Are Common Questions of Law and Fact and Common Answers to Those Questions. ..................9

        3.   Flo & Eddie's Claims and Interest Are Typical of the Class.........................................................12

        4.   Flo & Eddie Will Fairly And Adequately Protect the Interests of the Class................................13

    B.   Flo & Eddie Satisfy the Requirements of Rule 23(b)(3). ....16

        1.   Predominance. ...............................................16

        2.   Superiority. ...................................................19

IV.     CONCLUSION. ...............................................................23

# **TABLE OF AUTHORITIES**

## Cases

*A&M v. Heilman,*
    75 Cal. App. 3d 554 (1977) ..................................................................... 10

*Abdullah v. U.S. Sec. Assocs.,*
    731 F.3d 952 (9th Cir. 2013) ..................................................................... 9

*Amchem Prods. v. Windsor,*
    521 U.S. 591 (1997) ....................................................................... 15, 19

*American Pipe & Constr. Co. v. Utah,*
    414 U.S. 538 (1974) ................................................................................ 19

*Amgen Inc. v. Ct. Retirement Plans and Trust Funds,*
    133 S. Ct. 1184 (2013) ........................................................................... 15

*Avilez v. Pinkerton Gov't Servs.,*
    286 F.R.D. 450 (C.D. Cal. 2012) ............................................................. 7

*Bruno v. Quten Research Inst.,*
    LLC, 280 F.R.D. 524 (C.D. Ca. 2011) ..................................................... 8

*Capitol Records, LLC et al. v. Sirius XM Radio, Inc.,*
    Superior Court of the State of California,
    County of Los Angeles, Case No. BC 520981 ...................................... 18

*Charlebois v. Angels Baseball,* LP,
    U.S. Dist. LEXIS 71452, 2011 WL 2610122 (C.D. Cal. June 30, 2011) ......... 7

*Collins v. Cargill Meat Solutions Corp.,*
    274 F.R.D. 294 (E.D. Cal. 2011) ............................................................. 7

*David v. Showtime/Movie Channel, Inc.*
    697 F. Supp. 752 (S.D.N.Y. 1988) ......................................................... 18

*East Texas Motor Freight Sys. v. Rodriguez,*
    431 U.S. 395 (1977) ................................................................................ 12

*Ellsworth v. U.S. Bank, N.A.,*
    2014 U.S. Dist. LEXIS 81646 (N.D. Cal. June 13, 2014) .................... 19

*Evans v. Linden Research, Inc.,*
    2012 U.S. Dist. LEXIS 166006,
    2012 WL 5877579 (N.D. Cal. Nov. 20, 2012) ....................................... 8

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.,*
    Southern District of New York,
    Case No. 13-cv-05784-CM, Dkt. 112 ................................................... 20

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.,*
    United States District Court, Central District of California,
    Case No. 13-cv-05693 PSG ..................................................................... 4

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

*Gen. Tel. Co. of the Sw. v. Falcon*,
   457 U.S. 147 (1982) ...................................................................... 12

*Gen. Tel. Co. v. Feoc*,
   446 U.S. 318 (1980) ........................................................................ 7

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ..................................... 9, 12, 13, 15, 17

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir.1992) .......................................................... 13

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ......................................................... 13

*In re Nucoa Real Margarine Litig.*,
   2012 U.S. Dist. LEXIS 189901(C.D. Cal. June 12, 2012) ................ 15

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
   2013 U.S. Dist. LEXIS 137946 (N.D. Cal. Sept. 19, 2013) .............. 15

*Jordan v. County of Los Angeles*,
   669 F.2d 1311 (9th Cir. 1982) ....................................................... 12

*Kamar v. Radio Shack Corp.*,
   375 F. App'x 734 (9th Cir. 2010) ................................................... 17

*Leiber v. Bertelsmann AG (In re Napster, Inc. Copyright Litig.)*,
   2005 U.S. Dist. LEXIS 11498
   (N.D. Cal. May 31, 2005) ............................................ 10, 11, 18, 19, 21

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) ........................................................... 9

*Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) ................. 12

*Schwartz v. Harp*,
   108 F.R.D. 279 (C.D. Cal. 1985) ................................................... 12

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010) ........................................................................ 7

*Siegel v. Chicken Delight, Inc.*,
   271 F. Supp. 722 (N.D. Cal. 1967) ................................................ 20

*SoundExchange, Inc. v. Sirius XM Radio, Inc.*,
   United States District Court, District of Columbia,
   Case No. 13-cv-1290 (Dkt. 20) ......................................................... 6

*Tait v. BSH Home Appliances Corp.*,
   289 F.R.D. 466 (C.D. Cal. 2012) ................................................ 9, 19

*Thompson v. Clear Channel Communs., Inc.*,
   247 F.R.D. 98 (C.D. Cal. 2007) ..................................................... 13

GRADSTEIN & MARZANO, P.C.
6310 San Vicente Blvd, Suite 510
Los Angeles, California 90048
Telephone: 323-776-3100

iii

*Wal-Mart Stores, Inc. v. Dukes,*
 131 S. Ct. 2541 (2011) ............................................................................. 9

*Washington v. Joe's Crab Shack,*
 271 F.R.D. 629 (N.D. Cal. 2010) ............................................................. 9

*Weeks v. Bareco Oil Co.,*
 125 F.2d 84 (7th Cir. 1941) ...................................................................... 20

## Statutes

37 C.F.R. § 382.11 ........................................................................................ 6

37 C.F.R. 382.12 ........................................................................................... 6

28 U.S.C. § 1332(d)(2) .................................................................................. 7

28 U.S.C. § 1332(5)(B) ................................................................................. 7

Cal. Bus. & Prof. Code § 17200 .......................................................... 2, 10, 11, 16

Cal. Civ. Code § 3294 .................................................................................. 16

Cal. Civ. Code § 980(a)(2) .................................................................... 2, 10, 11, 16

## Other Authorities

7A Wright & Miller, *Federal Practice & Procedure* § 1778 (2d ed. 1986) ............. 17

Newberg on Class Actions § 3:13 ............................................................... 12

## Rules

Fed. R. Civ. P. 23(a) ..................................................................................... 6

Fed. R. Civ. P. 23(a)(1) ................................................................................ 7

Fed. R. Civ. P. 23(a)(2) ................................................................................ 9

Fed. R. Civ. P. 23(a)(4) ............................................................................... 13

Fed. R. Civ. P. 23(b)(3) ..................................................................... 6, 15, 18

Fed. R. Civ. P. 30(b)(6) ................................................................................ 4

Fed. R. Civ. P. 56(e)(2) ................................................................................ 4

Local Rule 56-2 ............................................................................................. 4

iv

# I.   **INTRODUCTION.**

The class allegations in this case are really quite simple.  Sirius XM Radio, Inc. ("Sirius XM") has treated the tens of thousands of pre-1972 recordings that it has exploited in connection with its satellite and Internet services exactly the same and considers the issues and the law to be identical for all pre-1972 recordings. Sirius XM has one view of pre-1972 recordings – and that view is not affected by any particular artist (to Sirius XM, The Beatles are the same as Tiny Tim) or any particular owner of those recordings (Sirius XM is indifferent to the owner of any particular pre-1972 recordings and, in fact, engaged in all of its conduct without knowing who any of the owners were).  Sirius XM has exploited every single pre-1972 recording in exactly the same way and decided not to obtain licenses for all of those recordings based solely on its analysis of the law and not based on anything else, including the identity or conduct of the owners of those recordings.  Moreover, Sirius XM considers the revenue that is attributable to each performance of a pre-1972 recording to be the same regardless of the recording being exploited (according to Sirius XM, a performance of "Let It Be" generates the same revenue as a performance of "Tiptoe Through the Tulips").  When it comes to Sirius XM's exploitation of pre-1972 recordings, the terms "ditto" and "one size fits all" are the best descriptors.

This is precisely the type of case and conduct that courts in the Ninth Circuit have routinely found to be appropriate for class treatment.  The putative class is large and unified in its claims, with common facts and issues alleged against Sirius XM.  Moreover, the claims of plaintiff and class representative Flo & Eddie, Inc. ("Flo & Eddie") are typical of the class, and questions of law and fact common to members of the class clearly predominate over any questions affecting only individual members.  Finally, Flo & Eddie has capably prosecuted this case on behalf of the class and will continue to do so.  Thus, certification of a class of owners of pre-1972 recordings whose recordings were performed by Sirius XM in

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

1

California from August 21, 2009 to the present is clearly warranted and far superior to other available methods for the fair and efficient adjudication of the controversy.

## II.      STATEMENT OF FACTS AND PROCEDURAL HISTORY.

Pre-1972 recordings (*i.e.* recordings initially fixed before February 15, 1972) comprise the historical backbone of the music industry and include every sound recording that was fixed prior to February 15, 1972.  Among those recordings are Flo and Eddie's iconic hits when they performed as The Turtles, such as "Happy Together," "It Ain't Me Babe," "She'd Rather Be With Me," "You Baby," "She's My Girl," and "Elenore."  But The Turtles recordings are just a few of the tens of thousands of recordings that fall within the category of pre-1972 recordings that Sirius XM has exploited.

As the Court is aware from its summary judgment ruling, as part of its satellite and Internet services, Sirius XM has not obtained licenses or paid any royalties or fees in connection with the pre-1972 recordings that it has exploited. Therefore, on August 1, 2013, Flo & Eddie filed suit against Sirius XM in Los Angeles Superior Court on behalf of itself and a class defined as follows:

> The owners of sound recordings fixed prior to February 15, 1972 ("pre-1972 recordings") which have been reproduced, performed, distributed or otherwise exploited by Defendant Sirius XM in California without a license or authorization to do so during the period from August 21, 2009 to the present.

Flo & Eddie alleged claims for violation of Cal. Civ. Code § 980(a)(2), misappropriation, unfair competition under Cal. Bus. & Prof. Code § 17200 and common law, and conversion, and sought on behalf of itself and the putative class, damages, restitution, and injunctive relief.  On August 8, 2013, Sirius XM removed this case to federal court.

On June 9, 2014, Flo & Eddie moved for summary judgment as to liability on all causes of action.  After extensive briefing, on September 22, 2014, the Court

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

granted that motion in part and denied it in part.  **(Dkt. 117)**  Specifically, the Court granted Flo & Eddie's motion for summary judgment with respect to Sirius XM's public performance of pre-1972 recordings, but found triable issues of fact with respect to Sirius XM's reproduction and distribution of those recordings in California.

### A.   <u>Sirius XM Has Broadcast Thousands of Pre-1972 Recordings</u>.

In connection with broadcasting music through its satellite and Internet services, Sirius XM uses three databases of recordings (Dalet, Dalet Plus, and Prophet) that are populated with at least 18,000 pre-1972 recordings in the Prophet database and 24,000 pre-1972 recordings in the Dalet 5.1 and Dalet Plus databases. Sirius XM performs pre-1972 recordings (including The Turtles recordings) by broadcasting and streaming those recordings to delivery partners who operate content delivery networks **(*See* Declaration of Harvey Geller ["Geller MSJ Decl."] ¶ 17, Ex. 19, Dkt. 68-19)[1], by** broadcasting and streaming those recordings directly to its own subscribers **(Answer Dkt. 38 ¶ 3, Geller MSJ Decl. ¶ 18, Ex. 20, Dkt. 68-20),** and by broadcasting and streaming those recordings to the end users of the Dish Network **(Geller Decl. MSJ ¶ 19, Ex. 21, Dkt. 68-21)**.  In addition, Sirius XM has authorized third parties to broadcast and stream recordings to Sirius XM's end users.  **(Geller MSJ Decl. ¶ 20, Ex. 22, Dkt. 68-22)**

### B.   <u>Sirius XM Exploits All Pre-1972 Recordings Without a License and Without Paying Royalties</u>.

Sirius XM does not dispute that it has not obtained licenses for any of the pre-1972 recordings that it has exploited, or that it has not paid any royalties or fees in connection with the pre-1972 recordings it has exploited.  Indeed, Undisputed Fact No. 24 in Flo & Eddie's Separate Statement in Support of Motion for Summary

---

[1] The Geller MSJ Decl. was filed in connection with Flo & Eddie's Motion for Summary Judgment.  **(Dkt. 68)**

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

1   Judgment stated that "Sirius XM copied, reproduced, and performed the pre-1972

2   recordings without a license, and without paying royalties."  The only portion of this

3   fact that Sirius XM disputed was that certain of its copying did not take place in

4   California.  *See Flo & Eddie, Inc. v. Sirius XM Radio, Inc.,* United States District

5   Court, Central District of California, Case No. 13-cv-05693 PSG (Dkt. 87, Sirius

6   XM's Statement of Genuine Issues, p. 19).  The remaining part of Undisputed Fact

7   No. 24 was admitted as a matter of law.  *See* Local Rule 56-2 (party obligated to set

8   "forth all material facts as to which it is contended there exists a genuine dispute")

9   and Local Rule 56-3 (court may assume that the material facts as claimed are

10  admitted unless controverted); s*ee also,* Fed. R. Civ. P. 56(e)(2) (where a party fails

11  to address another party's assertion of fact properly, the court may "consider the fact

12  undisputed for purposes of the motion").

13       This admission was fully consistent with Sirius XM's position throughout this

14  case.  Indeed, in response to Flo & Eddie's Rule 30(b)(6) deposition notice seeking

15  a witness regarding "agreements and licenses" that "grant or give" to Sirius XM the

16  right to reproduce, copy, perform, or distribute pre-1972 recordings, including The

17  Turtles' recordings, Sirius XM's designee (David Frear) testified repeatedly that

18  Sirius XM has no licenses.  **(Geller MSJ Decl. ¶ 21, Ex. 23, Dkt. 68-23)**

19       **C.    Sirius XM Engaged in the Same Conduct Regardless of Who**

20            **Owned Any Particular Pre-1972 Recording.**

21       Sirius XM's blanket treatment of pre-1972 recordings has not varied based on

22  who owns the recordings.  In fact, as Sirius XM readily admits, it engaged in all of

23  its conduct without any knowledge as to who owned any particular recording.

24  Indeed, in response to all of Flo & Eddie's discovery in this action seeking the

25  names of the owners of the pre-1972 recordings exploited by Sirius XM, each time

26  Sirius XM responded that it does not know who owns any particular recording.

27  **(Declaration of Daniel Lifschitz ["Lifschitz Decl."] ¶¶ 6-7, Exs. E-F [Sirius**

28  **XM's Responses and Objections to Fourth Set of Requests for Production and**

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

4

**First Set of Requests for Admission])**  The only thing that Sirius XM knows is that it does not own any pre-1972 recordings.  **(Lifschitz Decl. ¶ 10, Ex. H [Greenstein Depo. 75:24-76:7])**

> **D.** **Sirius XM's Revenue Model Is the Same for All Pre-1972 Recordings and Does Not Vary Based Upon the Recording or the Owner of Recording.**

Sirius XM considers the revenue attributable to each broadcast of any particular pre-1972 recording on its services to be the same regardless of the popularity of the recording, the method of broadcast, or the channel of distribution. Indeed, in connection with its statutory license for *post*-1972 recordings, Sirius XM calculates, segregates, and then deducts all of the revenue that it has determined is attributable to its exploitation of *pre*-1972 recordings.  In order to do that, Sirius XM has not only created a mathematical formula for determining what portion of its revenue is attributable to its exploitation of pre-1972 recordings, but it has represented to both the federal court and to the Copyright Royalty Board that its formula is a proper and accurate measure of that revenue portion.

That measure is actually quite simple – it is a function of the revenue carve out that Sirius XM uses to determine the payment of royalties for the public performance of post-1972 recordings, which are subject to blanket statutory licenses under the Copyright Act.  The rates and requirements for those statutory licenses are set by the Copyright Royalty Board ("CRB"), an arm of the U.S. Copyright Office. Sirius XM has been involved in two proceedings before the CRB where the rates have been set for Satellite Digital Audio Radio Services ("SDARS").  In each of these proceedings, the adverse party was SoundExchange (a performance rights organization that collects and distributes royalties on the behalf of sound recording copyright owners).  The result of both proceedings was the setting of a royalty rate for the post-1972 recordings that was then multiplied against a defined pool of revenue that excluded the revenue that Sirius XM calculated was attributable to

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

5

1  Sirius XM's exploitation of pre-1972 recordings.  **(Declaration of Michael Wallace**

2  **["Wallace Decl."] ¶¶ 11-16 and Addendum 1])**

3      Sirius XM does not dispute that it has taken advantage of the pre-1972

4  deduction in every royalty period it has accounted to SoundExchange, which it then

5  pockets for itself.  Nor does Sirius XM dispute that the methodology and formula by

6  which it determined its revenues attributable to pre-1972 recordings was developed

7  exclusively by it and consists of the following calculation:

8          Royalty Payment =

9          • Gross Revenues as defined at 37 C.F.R. § 382.11

10              (multiplied by)

11          • The Royalty Rate set forth at 37 C.F.R. 382.12 (multiplied

12              by)

13          • The percentage of its song performances that were pre-

14              1972 recordings (*i.e.*, the percentage resulting from the

15              fraction where the numerator is pre-1972 performances

16              and the denominator is total performances)

17  *SoundExchange, Inc. v. Sirius XM Radio, Inc.*, United States District Court, District

18  of Columbia, Case No. 13-cv-1290 (Dkt. 20); **(Wallace Decl., ¶¶ 14-15, Ex. D)**

19      The mathematical equation used by Sirius XM attributes the exact same

20  amount of revenue to each performance of every single recording regardless of the

21  specific recording being exploited.  **(Wallace Decl., ¶ 16, Addendum 1, and Ex.**

22  **D)**  The revenues that Sirius XM allocated to pre-1972 recordings and deducted

23  from its SoundExchange revenue calculation are the revenues that *it* considers to be

24  attributable to its performance of those recordings.  **(Wallace Decl., ¶ 11 and**

25  **Addendum 1)**  As part of its calculation, Sirius XM treats all pre-1972 recordings

26  exactly the same.  Indeed, while popular recordings may be performed more

27  frequently, Sirius XM considers each performance of all pre-1972 recordings to

28  generate an equal amount of revenue.  **(Wallace Decl., ¶ 16 and Addendum 1)**

GRADSTEIN & MARZANO, P.C.
6310 San Vicente Blvd, Suite 510
Los Angeles, California 90048
Telephone: 323-776-3100

III.   **THE PROPOSED CLASS SHOULD BE CERTIFIED.**

The statutory test for class certification is clear-cut, and so is the suitability of this case under that test.  Indeed, under any analysis, this lawsuit easily satisfies the requirements of Fed. R. Civ. P. 23(a) (*i.e.*, numerosity, commonality, typicality, and adequacy of representation), as well as the requirement of Fed. R. Civ. P. 23(b)(3) that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23 creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action.  *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 406 (2010) ("Rule 23 unambiguously authorizes *an*y plaintiff, in *any* federal civil proceeding, to maintain a class action if the Rule's prerequisites are met.") (emphasis in original).  Flo & Eddie's proposed class easily satisfies the requirements of this rule.

A.   **Flo & Eddie Satisfies The Requirements Of Rule 23(a).**

1.   **The Proposed Class Is So Numerous That Joinder Is Impracticable.**

Numerosity is established when, as is the case here, a represented class is so numerous that joinder of all members is impracticable. *See* Fed. R. Civ. P. 23(a)(1). The analysis under this rule is based on the "specific facts of each case and imposes no absolute limitations," *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980). However, when there are at least forty members in the proposed class, numerosity is presumed.  *See Avilez v. Pinkerton Gov't Servs.*, 286 F.R.D. 450, 456 (C.D. Cal. 2012) ("A proposed class of at least forty members presumptively satisfies the numerosity requirement."); *Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 300 (E.D. Cal. 2011) ("Courts have routinely found the numerosity requirement

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

satisfied when the class comprises 40 or more."); *Charlebois v. Angels Baseball*, LP, U.S. Dist. LEXIS 71452, 2011 WL 2610122 *4 (C.D. Cal. June 30, 2011) (same).[2] This is true even if the exact size of the class cannot be immediately determined. *See Bruno v. Quten Research Inst.*, LLC, 280 F.R.D. 524, 533 (C.D. Ca. 2011) ("Where the exact size of the proposed class is unknown, but general knowledge and common sense indicate it is large, the numerosity requirement is satisfied."); *Evans v. Linden Research, Inc.*, 2012 U.S. Dist. LEXIS 166006, 2012 WL 5877579 at *34 (N.D. Cal. Nov. 20, 2012) (permitting a plaintiff to demonstrate numerosity through sampling evidence "based on a common sense extrapolation" of numerical data).

Here, the proposed class in this case contains hundreds (if not thousands) of different owners of pre-1972 recordings.[3]  Indeed, Sirius XM testified that there were at least 18,000 pre-1972 recordings in its Prophet database and 24,000 pre-1972 recordings in its Dalet 5.1 and Dalet Plus databases.  **(Geller MSJ Decl. ¶ 10, Ex. 12, Dkt. 68-12)**  Sirius XM claimed in discovery that it was unaware of the identities of any of the owners of the pre-1972 recordings that it exploited, **(Lifschitz Decl. ¶ 6-7, Exs. E-F)**; however, it produced its playlists and other information from which some or all of those owners could be identified.  For purposes of this motion, Flo & Eddie used a sample of the data provided by Sirius XM of the pre-1972 recordings that it performed and provided it to SoundExchange who has a partial database of the owners of pre-1972 recordings.  SoundExchange

---

[2] When Sirius XM removed this case, diversity jurisdiction existed under traditional standards as well as under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d)(2) and (5)(B).   Even under CAFA — which requires at least one hundred class members — numerosity is still established.

[3] While the three major record labels (Universal Music Group, Sony Music Entertainment, and Warner Music Group) have the ability and motivation to fund their own litigation (and, in fact, have done so), they are only three members of the proposed class – and until they actually decide to opt out, they are still in the class.

1   then compared the sample of Sirius XM's data provided by Flo & Eddie to its partial

2   database owners and identified at least 273 separate owners of pre-1972 recordings

3   that have been performed by Sirius XM.  **(Lifschitz Decl. ¶¶ 2-6); (Declaration of**

4   **Jonathan Bender ["Bender Decl."] ¶¶ 2-6)**

5          Given the analysis conducted by Flo & Eddie using Sirius XM's own data,

6   there can be no doubt that the proposed class far exceeds the 40-member threshold

7   that "presumptively satisfies the numerosity requirement."  And, in fact, the number

8   of class members very likely exceeds the 273 identified by SoundExchange since

9   SoundExchange's database of owners of pre-1972 recordings is not exhaustive.

10  (**Bender Decl. ¶ 3**) and not all Sirius XM's data was analyzed.  Furthermore, Sirius

11  XM is in no position to make any contentions regarding the number of owners of

12  pre-1972 recordings that it performed as it conceded in discovery that it does not

13  know who the owners are of any of them.  **(Lifschitz Decl. ¶ 6-7, Exs. E-F])**  In

14  fact, Sirius XM admitted in discovery that it is not contending that there are fewer

15  than 40 (or even 100, for that matter) owners of pre-1972 recordings that it has

16  publicly performed in California. **(Lifschitz Decl. ¶ 8, Ex. G [Sirius XM's**

17  **Supplemental Responses and Objections to Interrogatory Nos. 22 and 23])**. In

18  light of Flo & Eddie's evidentiary showing, there can be no reasonable conclusion

19  drawn other than that numerosity has been satisfied.

20          **2.     There Are Common Questions of Law and Fact and**

21          **Common Answers to Those Questions.**

22          The issues in this case not only involve common questions of law and fact,

23  but common answers as well.  It is those common answers that are the hallmark of

24  commonality under Rule 23.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551

25  (2011).  In other words, "commonality" exists under Fed. R. Civ. P. 23(a)(2) when

26  the class members share a common contention of such a nature that it is capable of

27  classwide resolution – which means that determination of its truth or falsity will

28  resolve an issue that is central to the validity of each one of the claims in one

GRADSTEIN & MARZANO, P.C.
6310 San Vicente Blvd, Suite 510
Los Angeles, California 90048
Telephone: 323-776-3100

stroke." *Id.* at 2545; *see also Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 474 (C.D. Cal. 2012) (same).

The Ninth Circuit has construed the commonality requirement permissively. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Thus, not all questions of fact and law need be common in order to satisfy Rule 23(a)(2). *Washington v. Joe's Crab Shack*, 271 F.R.D. 629, 636 (N.D. Cal. 2010). Indeed, the "existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019. In fact, "even a single common question" of fact or law can satisfy Rule 23(a)(2). *Dukes*, 131 S. Ct. at 2556; *Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 957 (9th Cir. 2013) (citing *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012)).

Commonality pervades nearly every aspect of the instant case. From a factual perspective, Sirius XM has treated all pre-1972 recordings the same, exploited all pre-1972 recordings in the same manner, and has used the exact same systems to exploit those recordings. Sirius XM engaged in all of its conduct based solely on its analysis of the law, and nothing else. From Sirius XM's failure to license any pre-1972 recordings to its performance of those recordings, the facts giving rise to the class members' claims are exactly the same.

The same level of commonality exists with respect to the legal issues. Sirius XM's liability is precisely the same for all pre-1972 recordings and the owners of those recordings have the same claims for liability and the same claim for damages. The answers to the questions of whether Sirius XM is liable under Cal. Civ. Code § 980(a)(2), Cal. Bus. & Prof. Code § 17200, and common law conversion and misappropriation are exactly the same regardless of which pre-1972 recording is at issue. In fact, the answer to the legal question of whether Sirius XM's performance

1    of pre-1972 recordings subjects it to liability has already been resolved, and that

2    resolution is the same regardless of the pre-1972 recording that was performed.[4]

3        The commonality that exists in this case is even greater than the commonality

4    that was found to be sufficient in *Leiber v. Bertelsmann AG (In re Napster, Inc.*

5    *Copyright Litig.)*, 2005 U.S. Dist. LEXIS 11498 *14 (N.D. Cal. May 31, 2005).  In

6    that case, Bertelsmann was sued by a class of copyright owners of musical

7    compositions for contributory and vicarious infringement based on its investment in

8    and control over Napster, Inc. and its "peer-to-peer" file-sharing network.  The

9    plaintiffs filed a motion to certify a class that consisted of those who "own or

10   control at least one copyrighted musical work that has without their permission been

11   made available through the Napster service on or after October 30, 2000."  *Id*. at *5.

12       In finding commonality and granting class certification, the *Bertelsmann*

13   court held that the claims of each member of the class "fundamentally arise from the

14   same factual predicate: namely, that Napster users infringed the class member's

15   exclusive rights in one or more copyrighted musical compositions and that

16   Bertelsmann is secondarily liable for those acts of direct infringement by virtue of

17   its investment in Napster and its control of the Napster network."  *Id*. at *14.  The

18   Court also identified a number of subsidiary issues that flowed from this main issue,

19   including: "(1) whether Bertelsmann materially contributed to the unauthorized

20   reproduction and distribution of copyrighted musical works; (2) whether

21   Bertelsmann had actual or constructive knowledge of the acts of direct infringement

22   _____

23   [4] Commonality also exists with respect to damages.  Under Cal. Civ. Code §
     980(a)(2), misappropriation, and conversion, Sirius XM is liable for its gross

24   revenue, without any deduction for costs.  *A&M v. Heilman*, 75 Cal. App. 3d 554,

25   570 (1977).  Those same revenues are also the restitution that is recoverable for
     Sirius XM's violation of Bus. & Prof. Code § 172000.  Sirius XM has calculated

26   and carved out that revenue in connection with its accountings to SoundExchange.

27   In doing so, Sirius XM considers the revenue for the performance of each pre-1972
     recording to be the same.

28

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

1  alleged in the complaint; (3) whether Bertelsmann had the right and ability to

2  supervise or control the Napster service; (4) whether Bertelsmann had a direct

3  financial interest in the allegedly infringing activity; and (5) whether Bertelsmann's

4  conduct amounted to willful copyright infringement." *Id*. at *14-15.

5       As in *Bertelsmann*, the common issues in this case lend themselves perfectly

6  to a common resolution.  Indeed, all of the issues arise from the same factual

7  predicate – Sirius XM's exploitation (including performance) of pre-1972

8  recordings in California without licenses.  From this predicate, the issues become

9  whether Sirius XM's performance, reproduction, or distribution of pre-1972

10  recordings in California constitutes a violation of Civ. Code § 980(a)(2), an unfair

11  business practice in violation of Bus. & Prof. Code § 17200, misappropriation, and

12  conversion.  And these issues are the same across the class.

13            **3.**    **Flo & Eddie's Claims and Interest Are Typical of the Class.**

14       Closely related to the commonality requirement is the typicality requirement,

15  which assures that the interests of the named representatives are aligned with those

16  of the other class members.  *Jordan v. County of Los Angeles*, 669 F.2d 1311 (9th

17  Cir. 1982).[5]  The requirements of Rule 23(a)(3) are met where a class representative

18  is part of the class and "possess[es] the same interest and suffer[s] the same injury as

19  the class members." *Falcon*, 457 U.S. at 156 (citing *East Texas Motor Freight Sys.*

20  *v. Rodriguez*, 431 U.S. 395, 403 (1977)).  Indeed, typicality is generally satisfied

21  when "each class member's claim arises from the same course of events, and each

22  class member makes similar legal arguments to prove the defendant's liability."

23  *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010).  Said differently, "[u]nder

24  _____

25  [5] The "commonality and typicality requirements of Rule 23(a) tend to merge."  *Gen.*
26  *Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  However,
   commonality focuses on the relationship of facts and legal issues common to class
27  members, while typicality focuses on the relationship of facts and issues between
   the class and its representatives.  *See* Newberg on Class Actions § 3:13, at 317.

28

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

12

the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

Flo & Eddie's claims are more than typical of the other class members; they are identical. Flo & Eddie is asserting claims against Sirius XM that arise "from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory." *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985). The factual allegations and the proof necessary to support them arise from the same conduct by Sirius XM. Moreover, none of the conduct at issue in the case is unique to Flo & Eddie and the class members all have a common or similar injury that has resulted from the same conduct. Nothing more is needed for typicality to be satisfied under the Federal Rules. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Flo & Eddie is in precisely the same situation with respect to Sirius XM as the other owners of pre-1972 recordings, and accordingly has the same interests as those other owners.

### 4.  Flo & Eddie Will Fairly And Adequately Protect the Interests of the Class.

In an attempt to right a very serious wrong, Flo & Eddie has simultaneously pursued claims in three different jurisdictions against Sirius XM, a corporation with a market cap in excess of $19 billion and an army of high priced lawyers. There can be no doubt concerning Flo & Eddie's ability, desire, and dedication to "fairly and adequately protect the interests of the class" as required by Fed. R. Civ. P. 23(a)(4). Indeed, the Court need look no further than the docket in this case to conclude that Flo & Eddie will adequately protect the interests of the class and vigorously pursue the asserted claims on behalf of the class – and that Flo & Eddie's counsel are more than qualified to do that. *Thompson v. Clear Channel Communs., Inc.*, 247 F.R.D. 98, 120 (C.D. Cal. 2007) (courts can evaluate the performance of counsel in prior stages of the case in order to determine fitness as class counsel).

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

1    Even beyond the prosecution of the case so far, it is clear that the

2  requirements of Rule 23(a)(4) have been met and will continue to be met.  "The

3  proper resolution of the adequacy issue requires that two questions be addressed: (a)

4  do the named plaintiffs and their counsel have any conflicts of interest with other

5  class members, and (b) will the named plaintiffs and their counsel prosecute the

6  action vigorously on behalf of the class?"  *In re Mego Fin. Corp. Sec. Litig.*, 213

7  F.3d 454, 462 (9th Cir. 2000) (citation omitted); *Hanlon*, 150 F.3d at 1020 (same).

8  Those questions are easily resolved in the affirmative.

9    Flo & Eddie has identical claims to those of its putative class members, and

10  Flo & Eddie seeks the exact same type of relief for its damages against Sirius XM.

11  There is no conflict of interest between Flo & Eddie and the class; indeed, their

12  interests are fully aligned.  Flo & Eddie has willingly become the standard bearer for

13  a cause that is not only critically important to it but also to the artists who depend on

14  the authorized exploitation of their recordings for royalties.  Flo & Eddie's

15  principals have expended considerable time and effort in prosecuting this action,

16  including working with counsel, responding to written and document discovery

17  requests, and traveling to have their depositions taken.[6]  **(Declaration of Mark**

18  **Volman ["Volman Decl."], ¶¶ 1-11)**

19    As for Flo & Eddie's counsel, there also cannot be any dispute that Gradstein

20  & Marzano P.C. are more than qualified, experienced, and able to conduct the

21  litigation on behalf of the class.  **(Declaration of Henry Gradstein ["Gradstein**

22

23

24  [6] This is not the first legal fight for Mr. Volman and Mr. Kaylan or for Flo & Eddie.
As the Court is aware from the summary judgment briefing, Mr. Volman and Mr.

25  Kaylan sued White Whale in order to get back ownership of The Turtles' master
recordings.  In addition, Flo & Eddie was one of the first companies to claim that

26  sampling was actionable when De La Soul looped a small portion of "You Showed

27  Me" in the song "Transmitting Live From Mars."  *See*
http://www.rollingstone.com/music/artists/de-la-soul/biography

28

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

14

**Decl."] ¶¶ 1-21)** Harvey Geller has almost thirty years of litigation experience, twenty-five of which has been handling intellectual property and music industry matters. Mr. Geller was a litigation partner at Mitchell, Silberberg & Knupp and Assistant Chair of the Entertainment Litigation Practice Group at that firm before joining the Universal Music Group ("UMG") – one of the largest entertainment companies in the world with interests in recorded music, music publishing, distribution, artist management, and merchandise. At UMG, Mr. Geller was the Deputy General Counsel and Senior Vice President of Business & Legal Affairs and for seventeen years was the head of UMG's litigation group. During his tenure, Mr. Geller litigated the landmark cases against *MP3.com*, *Napster*, *Aimster*, *Grokster*, and *LimeWire*, in addition to the industry leading cases against "user generated content" websites. He also litigated the groundbreaking case against Napster's investors, and was instrumental in creating one of the largest and most successful nationwide anti-piracy programs ever instituted in the United States. In addition, Mr. Geller has extensive experience with class actions, having litigated numerous cases in connection with antitrust and artist royalty issues. Finally, Mr. Geller has extensive experience litigating issues regarding pre-1972 recordings. In fact, Mr. Geller was instrumental in filing and prosecuting the first case to establish the safe harbors in the DMCA did not immunize the exploitation of pre-1972 recordings. **(Geller Decl. ¶¶ 1-9)**

Henry Gradstein has 35 years of experience litigating and trying a wide variety entertainment, music and intellectual property cases. He has been named by The Hollywood Reporter as one of its Top 100 Power Lawyers and by the Daily Journal as one of California's Top Entertainment Lawyers. His first significant verdict in 1991 concerned national syndication of a radio show in which the jury awarded over $10 million. In 1999 he won California's fifth highest jury verdict of $47 million against PBS on a counter-claim in federal court concerning home video distribution. He has obtained injunctions against AOL and Adobe Systems for

copyright infringement.  He has numerous other settlements and verdicts of note in music and copyright cases.  **(Gradstein Decl.  ¶¶ 1-12)**

Maryann R. Marzano has over 34 years of experience in handling complex federal litigation matters and class action lawsuits.  She is a former partner of Blecher & Collins, P.C. (now Blecher, Collins, Pepperman & Joye).  She has handled numerous complex business and entertainment matters, which have involved breach of contract, unfair competition, copyright infringement, and music royalty claims.  She has successfully represented both plaintiffs and defendants in class action matters, and on the plaintiffs' side achieved a multi-million settlement in 2013 for retired NFL players in a federal class action legal malpractice case against the NFLPA involving the exploitation of players in electronic sports games. **(Gradstein Decl. ¶¶ 13-20.)**

The experience of these attorneys, along with other experienced counsel at the firm, more than satisfies the adequacy of counsel requirement.  *See e.g. In re Nucoa Real Margarine Litig.*, 2012 U.S. Dist. LEXIS 189901 *27-28 (C.D. Cal. June 12, 2012) (finding counsel adequate because they were qualified to handle the type of litigation being prosecuted and were able to do so vigorously).

**B.**     **Flo & Eddie Satisfies the Requirements of Rule 23(b)(3).**

Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) when, as here, the questions of law and fact "predominate over any questions affecting only individual members" and a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  *Hanlon*, 150 F.3d at 1023.

**1.**     **Predominance.**

The touchstone of predominance is whether the proposed class is "sufficiently cohesive to warrant adjudication by representation."  *Hanlon*, 150 F.3d at 1022 (citing *Amchem Prods. v. Windsor*, 521 U.S. 591, 597 (1997)).  This inquiry "focuses on the relationship between the common and individual issues," and "'[w]hen common questions present a significant aspect of the case and they can be

GRADSTEIN & MARZANO, P.C.
6310 San Vicente Blvd, Suite 510
Los Angeles, California 90048
Telephone: 323-776-3100

1   resolved for all members of the class in a single adjudication, there is a clear

2   justification for handling the dispute on a representative rather than on an individual

3   basis.'" *Id.* (citation omitted). "Predominance does not require plaintiffs to prove

4   that every element of a claim is subject to class wide proof: they need only show

5   that common questions predominate over questions affecting only individual class

6   members." *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 U.S. Dist. LEXIS

7   137946 *67 (N.D. Cal. Sept. 19, 2013) (citing *Amgen Inc. v. Ct. Retirement Plans*

8   *and Trust Funds*, 133 S. Ct. 1184, 1196 (2013)).

9       Here, the legal and factual questions do not vary from class member to class

10  member and may be determined without reference to the individual circumstances

11  of any particular class member.  Sirius XM's satellite and Internet services are the

12  same regardless of the recording being exploited by it, Sirius XM has never sought a

13  license or paid compensation for the reproduction and performance of **any** pre-1972

14  recording, Sirius reproduces and performs all pre-1972 recordings in **exactly** the

15  same way, and the revenue that Sirius XM claims is attributable to its conduct is the

16  same for each performance of a pre-1972 recording that it exploits**.**

17      At a minimum, with respect to Sirius XM's satellite and internet services, the

18  following factual and legal issues are the same for all class members:

19  • Whether Sirius XM performed and reproduced pre-1972 recordings in

20      California;

21  • Whether Sirius XM's performance and reproduction of pre-1972

22      recordings in California constitutes a violation of Cal. Civ. Code §

23      980(a)(2);

24  • Whether Sirius XM's performance and reproduction of pre-1972

25      recordings in California constitutes an unfair business practice in violation

26      of Cal. Bus. & Prof. Code § 17200;

27  • Whether Sirius XM's performance and reproduction of pre-1972

28      recordings in California constitutes misappropriation;

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

17

- Whether Sirius XM's performance and reproduction of pre-1972 recordings in California constitutes conversion;

- The basis and method for determining and computing damages and/or restitution and disgorgement;

- Whether, pursuant to Cal. Civ. Code § 3294, Sirius XM's conduct constitutes oppression, fraud, or malice, and;

- Whether Sirius XM's conduct is continuing thereby entitling the members of the class to injunctive relief.

Each of the foregoing issues unites the class, and all class members will have to proffer the exact same evidence and make the exact same legal arguments in order to establish their claims against Sirius XM as Flo & Eddie will.  There are no issues raised by Flo & Eddie and no plausible defenses asserted by Sirius XM that do not apply across the board to all other members of the class, and the same evidence will be used to prove or disprove each element of the claims on a simultaneous, class-wide basis.  There are no unique, unshared, individual or atypical issues of fact or law among the class members.

The Court need look no further than the briefing in connection with Flo & Eddie's motion for summary judgment.  As to any conduct that occurred in California (which is what this case is limited to), the facts and law are the same, and Sirius XM has never contended otherwise.  From the time that Sirius XM decided to exploit pre-1972 recordings as part of its satellite and Internet services, it has taken a "one size fits all" approach to those recordings.  Thus, it necessarily follows that the Court's September 22, 2014, ruling on the motion for summary judgment is as applicable to Flo & Eddie as it is to every other member of the class.  Indeed, the central issue decided in connection with that motion – *i.e.* that Sirius XM must obtain licenses to perform pre-1972 recording in California and is liable for failing to do so – predominates over any questions affecting only individual members of the class.  The summary judgment ruling alone not only establishes that the factual and

GRADSTEIN & MARZANO, P.C.
6310 San Vicente Blvd, Suite 510
Los Angeles, California 90048
Telephone: 323-776-3100

1  legal issues predominate and that they "can be resolved for all members of the class

2  in a single adjudication," but also provides the "clear justification for handling the

3  dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at

4  1022 (citing to 7A Wright & Miller, *Federal Practice & Procedure* § 1778 (2d ed.

5  1986))  Predominance seeks to "achieve judicial economy," *Kamar v. Radio Shack

6  Corp.*, 375 F. App'x 734, 737 (9th Cir. 2010), and adjudicating this case as a class

7  action will do just that.

8         The only factual issue that varies from class member to class member is

9  which pre-1972 recordings they own.  However, these types of individual issues do

10  not defeat or even undermine a finding of predominance.  *Bertelsmann*, 2005 U.S.

11  Dist. Lexis 11498 at *26-27 (rejecting argument that "proving ownership and

12  registration of each of the allegedly infringed musical compositions, showing that

13  each of those works was distributed via the Napster network, and establishing their

14  right to collect actual or statutory damages under the Copyright Act" defeats finding

15  of predominance); *see also David v. Showtime/Movie Channel, Inc.*, 697 F. Supp.

16  752, 757 (S.D.N.Y. 1988) (court certified a class of movie copyright holders and

17  rejected the argument that "incidental differences" such as proof of copyright

18  ownership  defeat commonality).

19         **2.    Superiority.**

20         Not only do the factual and legal issues in this case predominate, but it is

21  clear that a class action is superior to other available methods for the fair and

22  efficient adjudication of the controversy.  In making this determination, Fed. R. Civ.

23  P. 23(b)(3) provides a non-exhaustive list of factors that can be considered by the

24  court, including: (a) the interest of members of the class in individually controlling

25  the prosecution or defense of separate actions; (b) the extent and nature of any

26  litigation concerning the controversy already commenced by or against members of

27

28

19

GRADSTEIN & MARZANO, P.C.
6310 San Vicente Blvd, Suite 510
Los Angeles, California 90048
Telephone: 323-776-3100

the class;[7] (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action.  Ultimately, however, the "point of

the superiority analysis is a focus on efficiency and economy so that appropriate cases may be adjudicated most profitably on a representative basis." *Ellsworth v. U.S. Bank, N.A.*, 2014 U.S. Dist. LEXIS 81646 *98 (N.D. Cal. June 13, 2014) While the superiority requirement is met when individual recoveries would be dwarfed by the cost of litigating on an individual basis, *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 486 (C.D. Cal. 2012), it is also met even if the individual litigants can recover their attorneys' fees.  *Bertelsmann*, 2005 U.S. Dist. LEXIS 11498 at *31 (finding that "many small composers individually lack the time, resources, and legal sophistication to enforce their copyrights").

In this action, class-wide resolution of the issues will reduce litigation costs and promote efficiency for the Court as well as for the current and potential litigants.  *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974) (Rule 23 is designed to avoid the "multiplicity of activity" on the part of courts and litigants.). A multiplicity of litigation presenting the same facts, evidence, and law is neither a good use of the Court's resources or fair to those owners of pre-1972 recordings who are confronted with Sirius XM massive resources and a willingness to spend those resources on lawyers rather than on royalties, particularly since none of the claims at issue permit an award of attorneys' fees.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. at 617 (holding that Rule 23(b)(3) aims to vindicate "the rights of

---

[7] Apart from the action filed by the three major record companies against Sirius XM in California (*Capitol Records, LLC et al. v. Sirius XM Radio, Inc.*, Superior Court of the State of California, County of Los Angeles, Case No. BC 520981), Flo & Eddie is not aware of any other actions filed against Sirius XM.

1  groups of people who individually would be without effective strength to bring their

2  opponent into court at all.")

3      Indeed, Sirius XM sent a clear message to the owners of pre-1972 recordings

4  when it made the corporate decision to devote its massive resources to fighting the

5  claims made on their behalf rather than compensating them.  That message was

6  made even clearer when, within days of losing summary judgment in this case,

7  Sirius XM publicly stated that "[w]e think Judge Gutierrez is wrong [and] we intend

8  to appeal his decision all the way through the appeal process."[8]  There was no

9  ambiguity in Sirius XM's position: it intends to make it cost-prohibitive for any

10 smaller owners (or the owners with smaller claims) to pursue their claims.  Sirius

11 XM reinforced this message when it again made it very clear that every owner of a

12 pre-1972 recording would have to litigate though judgment in order to get Sirius

13 XM to stop performing that owner's recordings.  To be sure, even though the

14 analysis underlying this Court's September 22, 2014, summary judgment ruling

15 applies with the same force to all pre-1972 recordings, Sirius XM's President (Scott

16 Greenstein) testified that in response to this Court's ruling summary judgment

17 ruling, Sirius XM had only stopped performing The Turtles' recordings in

18 California, and no others.  **(Lifschitz Decl. ¶ 10, Ex. I [Greenstein 2/27/15 Depo.**

19 **68:7-72:6 and 116:2-122:23])**  Mr. Greenstein's testimony makes it very clear that

20 despite the fact that Sirius XM has now been told that its view of the law is wrong, it

21 nevertheless intends to make every single owner of a pre-1972 recording sue it in

22 order to obtain relief.[9]

23 _____

24 [8] *See* Ed Christman, "Sirius XM Will Appeal Last Week's Major Copyright Ruling,"

25 Billboard.com (Oct. 2, 2014), available at

26 http://www.billboard.com/articles/business/6273762/siriusxm-appeal-turtles-flo-eddie-copyright-ruling (last accessed January 26, 2015).

27 [9] In fact, Sirius XM has gone even one step further and treated the summary

28

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

Under Sirius XM's "tabula rasa" theory, each owner of pre-1972 recording will have to sue obtain relief and will have to start from scratch in each new case, which would make each new case prohibitively expensive. That is what the class process is intended to prevent. *Weeks v. Bareco Oil Co.*, 125 F.2d 84, 90 (7th Cir. 1941); ("To permit the defendants to contest liability with each claimant in a single, separate suit, would, in many cases give defendants an advantage which would be almost equivalent to closing the door of justice to all small claimants. This is what we think the class suit practice was to prevent."); *Siegel v. Chicken Delight, Inc.*, 271 F. Supp. 722, 725 (N.D. Cal. 1967) (same).[10]

The bottom line is that Sirius XM has treated all of the proposed class members the same and made no distinction among these members when it decided to exploit all of their pre-1972 recordings for free. Having lumped all owners of pre-1972 recordings together for exploitation, it is disingenuous for Sirius XM to now contend that they should be disaggregated for purposes of adjudication and compensation.

Finally, there are no potential management difficulties resulting from certification. However, even if there were, those issues are not to be viewed in the abstract, but rather must be "compared to the alternative method" of adjudicating each one of the class members' claims individually. *Bertelsmann*, 2005 U.S. Dist. LEXIS 11498 at *33. The alternative method here is many separate litigations – all of which would be based upon a common nucleus of operative facts and common

---

judgment ruling as if no portion of it has collateral estoppel effect even as to it. *See Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, Southern District of New York, Case No. 13-cv-05784-CM, Dkt. 112, pp. 1-2.

[10] While the Copyright Act permits an award of attorneys' fees to a prevailing party under federal law, California law does not have such a provision. Thus, Sirius XM is acutely aware that it can use its vast resources as a deterrent to future litigants.

legal theories. A class action provides a far more efficient vehicle for resolution of a controversy affecting all of the class members in a single proceeding.

## IV. **CONCLUSION.**

The question of law, answered in this court's September 22, 2014, ruling – Sirius XM's liability for publicly performing pre-1972 recordings without authorization – is common to all class members. The question of fact – Sirius XM's exploitation of pre-1972 recordings and the revenue attributable to such conduct – is also common to all class members. There are no individual defenses, no unique legal or factual claims, available to Sirius XM as it treats all pre-1972 recordings exactly the same and has never sought a license to exploit those recordings. A class action on behalf of all owners of pre-1972 recordings against Sirius XM would most fairly and efficiently adjudicate this controversy.

Dated: March 16, 2015                    GRADSTEIN & MARZANO, P.C.
                                         HENRY GRADSTEIN
                                         MARYANN R. MARZANO
                                         HARVEY GELLER
                                         DANIEL B. LIFSCHITZ


                                         By: _____ */s/ Harvey W. Geller* _____
                                                  Harvey W. Geller
                                                  Attorneys for Plaintiff
                                                  FLO & EDDIE, INC.