DANIEL M. PETROCELLI (S.B. #97802)
  dpetrocelli@omm.com
ROBERT M. SCHWARTZ (S.B. #117166)
  rschwartz@omm.com
VICTOR H. JIH (S.B. #186515)
  vjih@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
Los Angeles, California  90067-6035
Telephone:  (310) 553-6700
Facsimile:   (310) 246-6779

Attorneys for Defendant
Sirius XM Radio Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLO & EDDIE, INC., a California corporation, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>SIRIUS XM RADIO INC., a Delaware corporation; and DOES 1 through 10,<br><br>    Defendants. | Case No. CV 13-05693 PSG (RZx)<br><br>**SIRIUS XM'S OPPOSITION TO FLO & EDDIE'S MOTION FOR CLASS CERTIFICATION**<br><br>**DECLARATIONS OF STEVEN BLATTER, KEITH UGONE, ELLIOT GOLDMAN, AND CASSANDRA SETO FILED CONCURRENTLY**<br><br>Hon. Philip S. Gutierrez<br><br>**Hearing Date:** May 18, 2015<br>**Hearing Time:** 1:30 p.m.<br>**Hearing Place:** Courtroom 880 |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................1

II.     THE ONE-WAY INTERVENTION RULE BARS PLAINTIFF
        FROM OBTAINING CLASS CERTIFICATION. ........................................3

III.    PLAINTIFF CANNOT SATISFY THE RULE 23 REQUIREMENTS..........5

        A.    The Proposed Class Is Not Ascertainable..............................5

        B.    There Is No Common Issue. ...................................................8

        C.    Even if There Were a Common Issue, Individual Issues Would
              Predominate. ..........................................................................9

              1.     Ownership Cannot Be Litigated on a Classwide Basis. ...........10

                     a.     Ownership Is a Fact-Intensive Inquiry Requiring a
                            Work-by-Work Analysis. ................................................10

                     b.     The Ownership Inquiry Requires Application of
                            Different, and Often Conflicting, State Laws. ...............13

              2.     Authorization Cannot Be Litigated on a Classwide Basis. .......16

              3.     Damages Cannot Be Litigated on a Classwide Basis..............20

        D.    A Class Action Is Not a Superior Method of Adjudication................24

IV.     CONCLUSION. ....................................................................................25

# TABLE OF AUTHORITIES

## CASES

*Allied Ortho. Appliances, Inc. v. Tyco Healthcare Grp. L.P.,*
247 F.R.D. 156 (C.D. Cal. 2007) ...................................................................23

*Am. Master Lease LLC v. Idanta Partners, Ltd.,*
225 Cal. App. 4th 1451 (2014)......................................................................22

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) .........................................................................................9

*Bartsch v. Metro-Goldwyn-Mayer, Inc.,*
391 F.2d 150 (2d Cir. 1968) ..........................................................................15

*Beach Road Music LLC v. Apple Inc.,*
Case No. 3:15-cv-00700 (N.D. Cal.)..............................................................24

*Bridgestone Firestone Tires Prods. Liab. Litig.,*
288 F.3d 1012 (7th Cir. 2002) .......................................................................25

*Broussard v. Meineke Disc. Muffler Shops, Inc.,*
155 F.3d 331 (4th Cir. 1998) .........................................................................10

*Cabot v. Jamie Record Co.,*
1999 WL 236737 (E.D. Pa. Apr. 19, 1999) ...................................................15

*Capitol Records, LLC v. Sirius XM Radio Inc.,*
Case No. BC 520981 (Los Angeles Super. Ct.) .............................................24

*Carrera v. Bayer Corp.,*
727 F.3d 300 (3d Cir. 2013) ............................................................................6

*Chambers v. Time Warner,*
2003 WL 749422 (S.D.N.Y. Mar. 5, 2003) ...................................................11

*Cholakyan v. Mercedes-Benz, USA, LLC,*
281 F.R.D. 534 (C.D. Cal. 2012) .....................................................................5

*Comcast Corp. v. Behrend,*
133 S. Ct. 1426 (2013) .............................................................................*passim*

*Contemporary Mission, Inc. v. Famous Music Corp.,*
557 F.2d 918 (2d Cir. 1977) ..........................................................................15

*Corber v. Xanodyne Pharms., Inc.,*
771 F.3d 1218 (9th Cir. 2014)........................................................................21

*Corns v. Laborers Int'l Union of N. Am.,*
2014 WL 1319363 (N.D. Cal. Mar. 31, 2014) .............................................4, 5

SIRIUS XM'S OPP. TO MOT.
FOR CLASS CERTIFICATION

*David v. Showtime*,
    697 F. Supp. 752 (S.D.N.Y. 1988) ....................................................... 11

*Dow Chem. Co. v. U.S.*,
    32 Fed. Cl. 11 (Fed. Cl. 1994) ............................................................. 15

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ............................................................................. 3

*Elliano v. Assurance Co. of Am.*,
    3 Cal. App. 3d 446 (1970) ............................................................ 16, 20

*EQT Prod. Co. v. Adair*,
    764 F.3d 347 (4th Cir. 2014) ................................................................. 7

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    131 S. Ct. 2179 (2011) ......................................................................... 9

*Estate of Berlin v. Stash Records, Inc.*,
    1996 WL 374176 (S.D.N.Y. June 2, 1996) ......................................... 18

*Falcon Enters. v. Publ'rs Serv.*,
    438 Fed. Appx. 579 (9th Cir. 2011) .................................................... 19

*Field v. Google Inc.*,
    412 F. Supp. 2d 1106 (D. Nev. 2008) ................................................. 19

*Flo & Eddie, Inc. v. Sirius XM Radio Inc.*,
    2015 WL 235241 (S.D.N.Y. Jan. 15, 2015) .................................... 4, 19

*Foad Consulting Grp., Inc. v. Musil Govan Azzalino*,
    270 F.3d 821 (9th Cir. 2001) .............................................................. 16

*Football Ass'n Premier League Ltd. v. YouTube, Inc.*,
    297 F.R.D. 64 (S.D.N.Y. 2013) .................................................... *passim*

*Forcellati v. Hyland's, Inc.*,
    2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) ....................................... 23

*Gessele v. Jack in the Box, Inc.*,
    2012 WL 3686274 (D. Or. Aug. 24, 2012) ........................................... 4

*Gianino v. Alacer Corp.*,
    846 F. Supp. 2d 1096 (C.D. Cal. 2012) .............................................. 16

*Haley v. Medtronic*,
    169 F.R.D. 643 (C.D. Cal. 1996) ........................................................ 25

*Horadam v. Stewart*,
    2008 WL 4491744 (Tenn. Ct. App. Oct. 6, 2008) .............................. 15

*In re Google Inc. Gmail Litig.,*
2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) .............................................. 17, 18

*In re Napster, Inc. Copyright Litig.,*
2005 WL 1287611 (N.D. Cal. June 1, 2005) ................................................. *passim*

*In re NCAA I-A Walk-On Football Players Litig.,*
2006 WL 1207915 (W.D. Wash. May 3, 2006) .................................................. 23

*In re Stec Inc. Sec. Litig.,*
2012 WL 6965372 (C.D. Cal. Mar. 7, 2012) ..................................................... 21

*In re Wellpoint, Inc.,*
2014 WL 6888549 (C.D. Cal. Sept. 3, 2014) ....................................................... 5

*In the Matter of Rhone-Poulenc Rorer Inc.,*
51 F.3d 1293 (7th Cir. 1995) ............................................................................ 25

*Jerry Vogel Music Co. v. Edward B. Marks Music Corp.,*
425 F.2d 834 (2d Cir. 1969) ............................................................................. 16

*Jobim v. Songs of Universal, Inc.,*
732 F. Supp. 2d 407 (S.D.N.Y. 2010) ............................................................... 15

*Johnson v. Cypress Hill,*
2006 WL 2088190 (N.D. Ill. July 20, 2006) ...................................................... 12

*Keane Dealer Servs., Inc. v. Harts,*
968 F. Supp. 944 (S.D.N.Y. 1997) .................................................................... 19

*Kirkman v. N.C. R.R. Co.,*
220 F.R.D. 49 (M.D.N.C. 2004) .................................................................... 7, 11

*Korea Supply Co. v. Lockheed Martin Corp.,*
29 Cal. 4th 1134 (2003) .................................................................................... 22

*Krueger v. Wyeth, Inc.,*
2008 WL 481956 (S.D. Cal. Feb. 19, 2008) ...................................................... 21

*Lantzy v. Centex Homes,*
31 Cal. 4th 363 (2003) ...................................................................................... 19

*Marcus v. BMW of N. Am., LLC,*
687 F.3d 583 (3d Cir. 2012) ...................................................................... 5, 7, 8

*Martin v. Pac. Parking Sys. Inc.,*
583 Fed. Appx. 803 (9th Cir. 2014) ........................................................... 3, 5, 8

*Mazza v. Am. Honda Motor Co.,*
666 F.3d 581 (9th Cir. 2011) ....................................................................... 3, 16

SIRIUS XM'S OPP. TO MOT.
FOR CLASS CERTIFICATION

*Mention v. Gessell*,
    714 F.2d 87 (9th Cir. 1983) ........................................................................13

*Micro Star v. Formgen Inc.*,
    154 F.3d 1107 (9th Cir. 1998) ...................................................................20

*O'Connor v. Boeing N. Am, Inc.*,
    197 F.R.D. 404 (C.D. Cal. 2000) ..................................................................9

*Peritz v. Liberty Loan Corp.*,
    523 F.2d 349 (7th Cir. 1975) ........................................................................4

*Peterson v. Highland Music*,
    140 F.3d 1313 (9th Cir. 1998) ...................................................................13

*Plummer v. Day/Eisenberg*,
    184 Cal. App. 4th 38 (2010) ...............................................................10, 16

*Polygram Records, Inc. v. Legacy Entm't Grp., LLC*,
    205 S.W.3d 439 (Tenn. Ct. App. 2006) ...............................................13, 14

*Pushman v. New York Graphic Soc'y Inc.*,
    287 N.Y. 302 (1942) ....................................................................................14

*Republic Pictures Corp. v. Security-First Nat'l Bank*,
    197 F.2d 767 (9th Cir. 1952) ......................................................................15

*Rodriguez v. AT&T Mobility Servs. LLC*,
    728 F.3d 975 (9th Cir. 2013) ......................................................................21

*Saregama India Ltd. v. Mosley*,
    635 F.3d 1284 (11th Cir. 2011) ...........................................................12, 14

*Schwarzschild v. Tse*,
    69 F.3d 293 (9th Cir. 1995) .....................................................................3, 5

*Shannon-Vail Five, Inc. v. Bunch*,
    270 F.3d 1207 (9th Cir. 2001) ...................................................................14

*Silvester v. Time Warner, Inc.*,
    763 N.Y.S.2d 912 (N.Y. Sup. Ct. 2003) .....................................................12

*Spectrum Creations, L.P. v. Carolyn Kinder Int'l, LLC*,
    2008 WL 416264 (W.D. Tex. Feb. 13, 2008) .............................................15

*Standard Fire Ins. Co. v. Knowles*,
    133 S. Ct. 1345 (2013) ...............................................................................21

*Stone v. Williams*,
    970 F.2d 1043 (2d Cir. 1991) .....................................................................16

SIRIUS XM'S OPP. TO MOT.
FOR CLASS CERTIFICATION

*Tidenberg v. Bidz.com*,
   2010 WL 135580 (C.D. Cal. Jan. 7, 2010)...........................................................6

*U.S. Golf Ass'n v. Arroyo Software Corp.*,
   69 Cal. App. 4th 607 (1999) ..............................................................10, 16

*Vulcan Golf, LLC v. Google Inc.*,
   254 F.R.D. 521 (N.D. Ill. 2008) .................................................*passim*

*W. States Wholesale, Inc. v. Synthetic Indus., Inc.*,
   206 F.R.D. 271 (C.D. Cal. 2002) ...............................................21, 23

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ...........................................................*passim*

*WB Music Corp. v. Rykodisc, Inc.*,
   1995 WL 631690 (E.D. Pa. Oct. 26, 1995) ...............................12, 18

*Williams v. Oberon Media, Inc.*,
   468 Fed. Appx. 768 (9th Cir. 2012) ......................................................5

*Windham v. Am. Brands, Inc.*,
   565 F.2d 59 (4th Cir. 1977)...............................................................21

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010)..........................................................24

*Wright v. Schock*,
   742 F.2d 541 (9th Cir. 1984).............................................................20

*Wu v. Pearson Educ., Inc.*,
   2012 WL 6681701 (S.D.N.Y. Dec. 21, 2011).............................17, 20

*Zellers v. State*,
   134 Cal. App. 2d 270 (1955) .............................................................19

*Zenbu Magazines, LLC v. Sony Computer Entm't Am. LLC*,
   Case No. 3:15-cv-00310-EDL (N.D. Cal.).........................................24

*Zinser v. Accufix Res. Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001)..............................................16, 24, 25

## STATUTES & RULES

Cal. Civ. Code § 1646.........................................................................14

Fed. R. Civ. P. 23 .......................................................................*passim*

Fed. R. Civ. P. 23, Advisory Comm. Note (2003) ...................................4

1

## OTHER AUTHORITIES

2

H.R. Rep. No. 104-274 ............................................................................ 23

3

MELVILLE NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT (2014) ............ 14, 15

4

RESTATEMENT (THIRD) OF RESTITUTION & UNJUST ENRICHMENT
(2011) .......................................................................................................... 22

5

6

U.S. COPYRIGHT OFFICE, FED. COPYRIGHT PROT. FOR PRE-1972 SOUND
RECORDINGS (2011) .......................................................................... 12, 14

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SIRIUS XM'S OPP. TO MOT.
FOR CLASS CERTIFICATION

## I.   INTRODUCTION

Plaintiff's motion seeks to leverage the Court's summary judgment ruling, that California law provides a performance right to the owners of pre-1972 recordings, by asking the Court to extend it to a class of *all* such owners worldwide and to decide—in one swoop—that *every* performance of *every* recording was unauthorized and should be compensated by the disgorgement of *all* Sirius XM revenues loosely related to the recordings.  Plaintiff assures the Court that the issues in this case are "really quite simple."  Mot. at 1.  They are not.  Plaintiff fails to explain how the Court will even *identify* the owners, who number in the "hundreds (if not thousands)," *id.* at 8, verify their ownership, determine which performances were unauthorized, and calculate damages—all without conducting thousands of individual merits trials.  Plaintiff cannot overcome any of these obstacles.

To begin, plaintiff is barred from obtaining class certification now that it has secured a favorable ruling on the merits.  Rule 23 was designed to prevent such "one-way intervention"—*i.e.*, allowing absent class members to intervene only after obtaining a merits ruling in their favor.  Sirius XM objected to plaintiff's summary judgment motion based on the one-way intervention rule, and warned that plaintiff could not seek class certification if it prevailed on that motion.  Plaintiff made the tactical decision to press ahead and cannot now seek to certify a class.

Regardless, plaintiff comes nowhere close to satisfying the requirements of Rule 23.  The class definition and claims require proof that each class member: (1) owns a pre-1972 recording, (2) did not authorize Sirius XM to perform it in California, and (3) was damaged.  These issues cannot be litigated class-wide.

*First*, plaintiff cannot satisfy Rule 23's ascertainability requirement—which its motion does not even mention—because there is no administratively feasible way to determine ownership or authorization.  There is no federal registration scheme, industry repository, or database that aggregates ownership information for pre-1972 recordings.  Nor is there any way to determine whether each owner

expressly or impliedly authorized Sirius XM to perform a given recording without conducting a fact-intensive, merits-based inquiry for each one.

*Second*, none of the supposedly "common" questions plaintiff identifies satisfies the test in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011), which made clear that a question is not "common" unless it is "central to the validity of each one of the claims" *and* susceptible to "common *answers* apt to drive the resolution of the litigation." The only common question in this case is whether California law recognizes a performance right. But that one question has already been decided. The remaining questions—ownership, authorization, and damages—have no common answer because each turns on the particular circumstances of each owner, recording, and performance.

*Third*, even if plaintiff could identify a common question, individualized fact and legal issues would still predominate. Courts considering similar claims against YouTube and Google have recognized that ownership and authorization are inherently individualized issues that preclude certification and make copyright claims "poor candidates for class-action treatment." *Football Ass'n Premier League Ltd., v. YouTube, Inc.*, 297 F.R.D. 64, 66-67 (S.D.N.Y. 2013). These merits issues must be resolved before damages could be calculated and allocated.

Ultimately, plaintiff's motion hangs on a comparison to *In re Napster, Inc. Copyright Litig.*, 2005 WL 1287611 (N.D. Cal. June 1, 2005), but that court's approach has been discredited by the Supreme Court. *Napster* held that the commonality and predominance requirements were met because the class members' infringement claims were premised on "a common core of salient facts." *Id.* at *3. In *Dukes*, the Supreme Court made clear that the existence of a common factual predicate is not enough to justify certification. *Napster* also failed to address whether the class was ascertainable, whether the class claims would require application of other states' laws, or whether the plaintiffs' damages methodology was tied to their theory of liability—any one of which could have prevented

SIRIUS XM'S OPP. TO MOT.
FOR CLASS CERTIFICATION

certification, as subsequent cases have confirmed.  *See Martin v. Pac. Parking Sys. Inc.*, 583 Fed. Appx. 803 (9th Cir. 2014); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2011); *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013).

Moreover, *Napster* is distinguishable because ownership, authorization, and damages were not significant issues in that case.  The class was comprised of copyright owners represented by the Harry Fox Agency, which presumably had already verified their ownership status.  The court relied heavily on the Fox agency's offer to "shoulder[] the administrative burden" associated with the class action, which would eliminate the need for individualized ownership inquiries. 2005 WL 1287611, at *9.  Here, there is *no* source that aggregates ownership information for pre-1972 recordings.  And in *Napster*, authorization was not a disputed issue, so the court could resolve liability and damages on a class-wide basis.  Here, however, authorization is a central question.

Given the lack of a common question and the predominance of individual issues, a class action would be inefficient and unmanageable.  Nor is there any need at this point to certify a class.  Now that the Court has interpreted California law as providing a performance right, those who can establish their ownership of a pre-1972 recording that Sirius XM performed without authorization can sue on their own.  Indeed, the major record companies, who claim to own the vast majority of pre-1972 recordings, have already done so.  And given that this case turns on a novel legal principle, as a policy matter courts prefer to allow the law to develop on a case-by-case basis rather than resolve thousands of claims with one verdict.  For these reasons, and those explained below, the Court should deny plaintiff's motion.

## II.   THE ONE-WAY INTERVENTION RULE BARS PLAINTIFF FROM OBTAINING CLASS CERTIFICATION.

Rule 23 was designed "to prevent 'one-way intervention'—that is, the intervention of a plaintiff in a class action after an adjudication favoring the class." *Schwarzschild v. Tse*, 69 F.3d 293, 295 (9th Cir. 1995); *see also Eisen v. Carlisle*,

417 U.S. 156, 176 (1974) ("Rule [23] was intended to insure that the judgment, whether favorable or not, would bind all class members.").  For that reason, Rule 23(c) provides that: (1) a ruling on class certification must be made "[a]t an early practicable time," (2) class members must be given notice and an opportunity to opt out prior to "judgment," and (3) a judgment is binding on all class members who have not opted out, "[w]hether or not favorable to the class." FED. R. CIV. P. 23(c)(1)-(3); *see* FED. R. CIV. P. 23, Advisory Comm. Note (2003).

It has long been the rule that a plaintiff cannot obtain class certification after the court has ruled on the merits of its claims.  *See id.*; *Peritz v. Liberty Loan Corp.*, 523 F.2d 349, 354 (7th Cir. 1975) (by seeking early "resolution on the merits," plaintiffs "effectively precluded any class certification"); *Gessele v. Jack in the Box, Inc.*, 2012 WL 3686274, at *3 (D. Ore. Aug. 24, 2012) ("The law is clear that the one-way intervention doctrine is alive and well.").  Any other rule would place putative class members in a "no-lose position by knowing the outcome as to liability before deciding to opt in or out." *Corns v. Laborers Int'l Union of N. Am.*, 2014 WL 1319363, at *4 (N.D. Cal. Mar. 31, 2014).

Plaintiff made the tactical decision to pursue summary judgment before class certification.  Sirius XM objected based on the one-way intervention rule, asserting that "[i]n leap-frogging its summary judgment filing ahead of class determination or a motion by Sirius XM, Plaintiff has disregarded the 'one-way intervention doctrine.'"  Dkt. 106 at 5 n.1.  Plaintiff elected to proceed with its motion, and the Court granted summary judgment in its favor.  Dkt. 117.  Having obtained a favorable ruling on the merits, plaintiff cannot now seek to certify a class.[1]

Plaintiff has asserted that Sirius XM cannot invoke the one-way intervention rule because it proposed early summary judgment briefing in the three *Flo & Eddie*

_____

[1] For this reason, the *Flo & Eddie* New York court declined to enter summary judgment in plaintiff's favor unless plaintiff abandoned its request for class certification, or until plaintiff's class certification motion has been resolved.  2015 WL 235241, at *8 (S.D.N.Y. Jan. 15, 2015).

SIRIUS XM'S OPP. TO MOT.
FOR CLASS CERTIFICATION

cases.  Nonsense.  Sirius XM never consented to *plaintiff's* seeking and obtaining summary judgment before moving for class certification.  Rather, to streamline this case with the related cases in New York and Florida, Sirius XM proposed a schedule that would allow *Sirius XM* to file an early summary judgment motion.  *See* Dkt. 50.  Before Sirius XM could do so, plaintiff filed its own motion, without meeting and conferring or giving Sirius XM any notice or opportunity to object.  *See* Dkt. 69-1.  While a *defendant* can waive the rule's protection by seeking and obtaining pre-certification summary judgment, a plaintiff may not.  *See Schwarzschild*, 69 F.3d at 295-97; *Corns*, 2014 WL 1319363, at *4.

## III.   PLAINTIFF CANNOT SATISFY THE RULE 23 REQUIREMENTS.

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Comcast*, 133 S. Ct. at 1432.  To justify a departure from that rule, a plaintiff must affirmatively demonstrate compliance with Rule 23 by a preponderance of the evidence.  *Dukes*, 131 S. Ct. at 2550-51; *Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534, 551 n.88 (C.D. Cal. 2012).  The Court must then conduct a "rigorous analysis" to determine whether the requirements of Rule 23 have in fact been met.  *Comcast*, 133 S. Ct. at 1432.  Plaintiff does not, and cannot, meet these exacting standards.

### A.   The Proposed Class Is Not Ascertainable.

Rule 23 contains a threshold requirement that the proposed class be "presently ascertainable."  *Williams v. Oberon Media, Inc.*, 468 Fed. Appx. 768, 770 (9th Cir. 2012); *see In re Wellpoint, Inc.*, 2014 WL 6888549, at *3, 15-16 (C.D. Cal. Sept. 3, 2014) (Gutierrez, J.).  This means that it must be "administratively feasible" for the Court to identify all class members.  *Martin*, 583 Fed. Appx. at 804.  A proposed class is *not* ascertainable if identifying class members would require individual factual inquiry, merits determinations, or anything beyond a ministerial review of readily accessible records.  *See id.*; *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012).  The ascertainability

SIRIUS XM'S OPP. TO MOT.
FOR CLASS CERTIFICATION

1   requirement is "particularly important" in Rule 23(b)(3) class actions, as it ensures

2   that absent class members receive adequate notice and spares the Court the

3   administrative burdens that would make a class action unmanageable. *Tidenberg v.*

4   *Bidz.com*, 2010 WL 135580, at *2 (C.D. Cal. Jan. 7, 2010) (Gutierrez, J.); *see*

5   *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013) ("Ascertainability

6   mandates a rigorous approach at the outset.").

7       Plaintiff fails to even *mention*—let alone satisfy—the ascertainability

8   requirement.  The proposed class is defined as all "*owners* of [pre-1972] recordings

9   … which have been reproduced, performed, distributed or otherwise exploited by

10  [Sirius XM] in California *without a license or authorization*."  Mot. at 2 (emphasis

11  added).  Ownership and authorization are both individualized merits issues; there is

12  no way to ascertain the class without holding hundreds of individual hearings and

13  making hundreds of individual merits rulings.

14      Plaintiff has not proposed any reasonable means by which the Court could

15  identify owners of pre-1972 recordings, and there is none.  There is no federal

16  registration scheme, since pre-1972 recordings are governed by state law, and there

17  is no industry repository for ownership information. *See* Goldman Decl. ¶¶ 9-10.

18  Indeed, record companies and industry groups have openly lamented the lack of any

19  system for tracking ownership of pre-1972 recordings. *See id.* ¶ 16; *id.* Ex. B at 34

20  (Am. Ass'n of Ind. Music Comments) (no "ownership databases"); *id.* Ex. C at 35,

21  38 (ABKCO Comments) (no "source for accurate ownership information").

22      Plaintiff concedes that this information is not available from Sirius XM.

23  Mot. at 4.  For *some* pre-1972 recordings, Sirius XM's Prophet and Dalet databases

24  list the record label that released the album or CD (based on what the jacket says),

25  but this information is incomplete and unreliable, and in any event does not identify

26  the legal owner of the recording.  Blatter Decl. ¶¶ 13-14; Goldman Decl. ¶ 27.  For

27  example, Sirius XM's databases list seven different record labels that released

28  Turtles albums (*e.g.*, White Whale Records), but do *not* list Flo & Eddie, the

SIRIUS XM'S OPP. TO MOT.
FOR CLASS CERTIFICATION

claimed owner.  Blatter Decl. ¶ 14; Goldman Decl. ¶ 28.  Plaintiff has refused to turn over its communications with SoundExchange concerning its attempts to identify the owners of the tens of thousands of pre-1972 recordings Sirius XM has played.  *See* Dkt. 191.  After six months, SoundExchange was only able to identify 273 "owners," 41 of which appear to be defunct or inactive.  Goldman Decl. ¶¶ 30-31.  Plaintiff admits that SoundExchange's information is "not exhaustive" and that "there are many more owners of pre-1972 recordings exploited by Sirius XM" that SoundExchange was unable to identify.  Bender Decl. ¶ 3; Goldman Decl. ¶ 26; Seto Decl. Ex. E.  Plaintiff's principal testified that he was "not aware" of *any other* resource for identifying owners.  Seto Decl. Ex. A.[2]

Even in cases where there is far more ownership information available, courts have declined to certify proposed classes of owners.  For example, in *Vulcan Golf, LLC v. Google Inc.*, 254 F.R.D. 521, 528 (N.D. Ill. 2008), the court acknowledged that a proposed class of trademark owners could be "initially ascertained through the rolls of the Patent and Trademark Office," but declined to certify given the "possibility of multiple time-consuming inquiries regarding ownership."  *See also YouTube*, 297 F.R.D. at 65 (plaintiffs offered "no explanation of how the worldwide members of this proposed class are to be identified [or could] prove copyright ownership"); *Kirkman v. N.C. R.R. Co.*, 220 F.R.D. 49, 53 (M.D. N.C. 2004) (not administratively feasible to conduct "detailed title searches"); *EQT Prod. Co. v. Adair*, 764 F.3d 347, 359 (4th Cir. 2014) ("heirship, intestacy, and title-defect issues" create "significant administrative barrier[s]").

Even if it were feasible to determine ownership, this would not end the inquiry.  The Court would still have to determine, *for each owner*, whether it

---

[2] Unlike a consumer case where members may have receipts, this is not a case where members can self-identify.  There is no way to notify prospective members in the first place, and no way to verify ownership claims without conducting individualized merits inquiries.  *See Marcus*, 687 F.3d at 594 (accepting "absent persons' declarations that they are members of the class, without further indicia of reliability, would have serious due process implications").

SIRIUS XM'S OPP. TO MOT.
FOR CLASS CERTIFICATION

1    authorized Sirius XM to perform the recording by its conduct, statements, inaction,

2    or otherwise.  There is no administratively feasible way to make this determination

3    for the entire class.  As set forth below, authorization is a fact-intensive inquiry and

4    requires consideration of the merits of plaintiff's claim, which is improper at the

5    certification stage.  *See Martin*, 583 Fed. Appx. at 804; *Marcus*, 687 F.3d at 593.

6        **B.    There Is No Common Issue.**

7        Plaintiff's assertion that the Ninth Circuit takes a "permissive" approach to

8    the commonality requirement, Mot. at 10, is wrong.  In the 2011 *Dukes* decision,

9    the Supreme Court substantially tightened the standard for establishing

10   commonality under Rule 23(a).  As the Supreme Court noted, "[a]ny competently

11   crafted class complaint literally raises common 'questions.'"  131 S. Ct. at 2551.  It

12   is therefore insufficient for a plaintiff to merely "rais[e] common questions—even

13   in droves."  *Id.*  Rather, a plaintiff must demonstrate that there are common

14   questions that are (1) "central to the validity of each one of the claims," and (2)

15   susceptible to "common *answers* apt to drive the resolution of the litigation."  *Id.*

16       Plaintiff lists a litany of supposedly common issues, but none of them

17   satisfies the *Dukes* test.  *First*, plaintiff claims that Sirius XM "exploit[s] all pre-

18   1972 recordings in the same manner" and using the "same systems."  Mot. at 10.

19   This is hardly a "central" issue; the manner and means by which Sirius XM *plays*

20   songs is irrelevant to plaintiff's claims.  *Second*, plaintiff argues there is a common

21   "legal question of whether Sirius XM's performance of pre-1972 recordings

22   subjects it to liability."  Mot. at 10-11.  But as *Dukes* made clear, the fact that class

23   members "have all suffered from a violation of the same provision of law" does not

24   establish commonality.  131 S. Ct. at 2551.  Moreover, this legal question has

25   already been resolved on summary judgment, so certification is not necessary to

26   answer it.  *Third*, plaintiff relies on *Napster* to argue that the class claims "arise

27   from the same factual predicate—Sirius XM's exploitation … of pre-1972

28   recordings."  Mot. at 12.  *Napster* assumed that the mere "existence of shared legal

SIRIUS XM'S OPP. TO MOT.
FOR CLASS CERTIFICATION

issues" or "a common core of salient facts" was sufficient, 2005 WL 1287611, at *3, but that approach was rejected by *Dukes*.  The common issues must be "central" and susceptible to "common answers."  131 S. Ct. at 2551.

The truth is that the central questions that remain in this lawsuit have no common answers.  The class claims require the Court to determine whether each class member owns a pre-1972 recording, whether Sirius XM exploited that recording, whether Sirius XM was authorized to exploit that recording, and whether and how the class member was damaged.  There is no common answer to *any* of these questions, which turn on the particular circumstances of each case.

### C.    Even if There Were a Common Issue, Individual Issues Would Predominate.

Under Rule 23(b)(3), plaintiff bears the burden of establishing that common issues predominate over issues subject to individualized proof—a "far more demanding" requirement than the commonality and typicality requirements of Rule 23(a).  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997).  Because Rule 23(b)(3) "is designed for situations in which class-action treatment is not as clearly called for," the Court must "take a 'close look' at whether common questions predominate."  *Comcast*, 133 S. Ct. at 1432.

The predominance inquiry requires the Court to consider each element of the claims and any defenses, the evidence necessary to litigate each issue, and how each issue would be tried.  *See Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011).  If resolution of these issues would cause the proceeding to "splinter into individual trials, common questions do not predominate."  *O'Connor v. Boeing N. Am, Inc.*, 197 F.R.D. 404, 414 (C.D. Cal. 2000).

In this case, the class claims—for violation of Section 980, misappropriation, conversion, and unfair competition—require each class member to prove that they: (1) own a pre-1972 recording, (2) did not authorize Sirius XM to exploit it in California, and (3) were damaged.  These are not idiosyncratic issues that will apply

to only a handful of class members; they are *essential elements* of the class claims that *each* class member must individually prove. *See Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 345 (4th Cir. 1998) ("It is axiomatic that [class actions] cannot be allowed to expand the substance of [members'] claims.").

Courts have routinely held that certification is improper where the claims require adjudication of who owns certain rights *or* whether the defendant was authorized to engage in the challenged conduct, since these are fact-intensive issues. Here, *both* issues must be adjudicated. Moreover, whether and to what extent each class member was harmed by Sirius XM's exploitation of pre-1972 recordings is an individualized inquiry, and plaintiff's damages theory fails to satisfy the test established by the Supreme Court in *Comcast*. In short, the individual issues in this case would overwhelm any common ones.

**1.      Ownership Cannot Be Litigated on a Classwide Basis.**

Ownership of a pre-1972 recording is an essential element of each class claim. *See U.S. Golf Ass'n v. Arroyo Software Corp.*, 69 Cal. App. 4th 607, 618 (1999) (ownership of "property" prerequisite to misappropriation claim); *Plummer v. Day/Eisenberg*, 184 Cal. App. 4th 38, 45 (2010) ("ownership" prerequisite to conversion claim); Dkt. 1-1 ¶¶ 25, 28 (alleging as basis for unfair competition claim that Sirius XM violated class's "exclusive ownership" rights).

a.      Ownership Is a Fact-Intensive Inquiry Requiring a Work-by-Work Analysis.

Courts have recognized that ownership issues are inherently individualized, and consistently deny certification on that ground. *YouTube* is instructive. In that case, plaintiff sought to certify a class of copyright owners whose works were performed on YouTube without their authorization. The court observed that there were "superficial" commonalities between the class members' infringement claims, including that each member would have to "prove ownership of a copyright" and infringement "by one who had no authorization." 297 F.R.D. at 65. However,

neither issue was truly common under the *Dukes* test, because each issue could only be resolved by "one-by-one adjudication." *Id.* at 66. In particular, ownership was a central issue requiring examination of the "facts peculiar to each protected work" and application of the relevant state or foreign law. *Id.* at 66-67. The court held that these individualized issues would predominate. *Id.* at 66.

The court reached the same conclusion in *Vulcan*. Despite the plaintiff's allegation that Google had engaged in a common scheme of infringement, the court concluded that individualized issues concerning trademark ownership would predominate. 254 F.R.D. at 528; *see also Chambers v. Time Warner*, 2003 WL 749422, at *8 (S.D.N.Y. Mar. 5, 2003) (individualized ownership issues would predominate in trademark infringement action); *Kirkman*, 220 F.R.D. at 52-53 (property ownership "necessarily" individualized issue that must be resolved "before Defendants' conduct is even relevant").

*Napster* is inapposite. Not only did the Supreme Court later reject the district court's approach in *Dukes*, the facts are distinguishable. The class members in *Napster* had delegated the copyrights in their musical works to the Fox agency (which administers mechanical reproduction rights for the vast majority of music publishers). 2005 WL 1287611, at *1. Each class member had evidently already satisfied the Fox agency as to its ownership. *Id.* In granting certification, the *Napster* court relied on the Fox agency's "offer to [help with] shouldering the administrative burden" of the class action, which would "reduce, if not eliminate, any complications that may arise from adjudicating the individual aspects" of the class claims. *Id.* at *9. There is no equivalent to the Fox agency here: No entity has aggregated ownership information for the tens of thousands of pre-1972 recordings. *Vulcan* distinguished *Napster* on these grounds. 254 F.R.D. at 537.[3]

---

[3] The *only* case plaintiff cites besides *Napster* is *David v. Showtime*, 697 F. Supp. 752 (S.D.N.Y. 1988). But that case, which also predates *Dukes*, is off-point because ownership was not at issue. *Id.* at 753. "[T]he central dispute in *David* was the negotiation and licensing processes between [the parties]. The individual

The individualized ownership issues that prevented the *YouTube* and *Vulcan* courts from certifying classes—and that the *Napster* court thought it could manage with the Fox agency's help—are far more complex here. Unlike works protected under the Copyright Act (as in *YouTube* and *Napster*) or the Lanham Act (as in *Vulcan*), there is no federal registration system for pre-1972 recordings that aggregates ownership information and creates a presumption of ownership. *See* Goldman Decl. ¶¶ 9-10. And because these recordings are at least 40+ years old, the documentary evidence is often incomplete or missing altogether. *Id.* ¶¶ 20-24.

The industry groups that represent the putative class members have readily acknowledged that ownership of pre-1972 recordings is a "legal chaos," and involves thorny issues including initial vesting, chain of title, termination of transfers, conflicting claims by owners of the physical "masters," and intestacy:

> [I]nitial ownership [must] be determined on a *case-by-case (likely, a recording-by-recording) basis*, looking to the facts of each recording to evaluate the owner(s), and … whether the work might be a work-for-hire [or] whether a joint ownership scenario might arise between performers, producers and others …. Evaluating initial ownership, and then by transfers, assignments, corporate mergers or other legal circumstances, current ownership [is] an *overwhelming task, ri[f]e with errors, challenges and litigation* …. [T]here have been *decades of litigation and precedent to resolve ownership issues under [the various state] laws*.

*Id.* Ex. D at 65-67 (Comments of Recording Indus. Ass'n of Am. & Am. Ass'n of Indep. Music) (emphasis added); *see also* U.S. COPYRIGHT OFFICE, FED. COPYRIGHT PROT. FOR PRE-1972 SOUND RECORDINGS 142 (2011) ("2011 C.O. REPORT"). These issues are frequently, and heavily, litigated.[4]

---

copyrights were deemed 'collateral' because their individual applicability was not in issue and did not affect the outcome." *WB Music Corp. v. Rykodisc, Inc.*, 1995 WL 631690, at *5 (E.D. Pa. Oct. 26, 1995).

[4] *See, e.g.*, *Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1294-97 (11th Cir. 2011) (conducting clause-by-clause analysis of agreement under Indian copyright law to determine initial ownership of pre-1972 recording); *Johnson v. Cypress Hill*, 2006 WL 2088190, at *4-5 (N.D. Ill. July 20, 2006) (finding disputed factual issues as to which party owned rights in pre-1972 recording after multiple transfers); *Silvester v. Time Warner, Inc.*, 763 N.Y.S.2d 912, 916-17 (N.Y. Sup. Ct. 2003) (dispute over

SIRIUS XM'S OPP. TO MOT.
FOR CLASS CERTIFICATION

Indeed, plaintiff has standing to sue here only because it filed *two previous lawsuits* to settle disputes concerning ownership of pre-1972 recordings of Turtles songs.  In 1970, Turtles band members sued White Whale Records to recover unpaid royalties, which resulted in a settlement transferring rights in the Turtles recordings to certain band members.  Seto Decl. ¶ 8.  Plaintiff claims that these rights were subsequently transferred to Flo & Eddie.  *Id.* ¶ 9.  But in 1997, Flo & Eddie had to sue two former Turtles members to quiet title to those recordings, and obtained a default judgment.  *Id.* ¶ 14.  Even after two lawsuits, substantial questions remain as to whether Flo & Eddie is the sole owner of the recordings; for example, plaintiff has not produced any documents showing a transfer of rights in those recordings to Flo & Eddie, or a relinquishment of rights by all former Turtles members.  *Id.* ¶¶ 7-13.  If plaintiff is in fact "typical," the Court can expect hundreds of similar proceedings if it certifies a class.

> b.  The Ownership Inquiry Requires Application of
> Different, and Often Conflicting, State Laws.

Determining ownership of pre-1972 recordings is not only fact-intensive, it involves application of different state and foreign laws, which are often inconsistent.  The choice-of-law question is itself complex, as the law of the state where the putative copyright owner is domiciled—rather than the state where the pre-1972 recording is performed—controls which choice-of-law rules apply.  *See Mention v. Gessell*, 714 F.2d 87, 89 (9th Cir. 1983).  The choice-of-law question is also unavoidable, as jurisdictions have taken different approaches to many of the key issues that would determine the current owner of a sound recording:

---

scope of transfer of pre-1972 recordings); *Peterson v. Highland Music*, 140 F.3d 1313, 1316-17 (9th Cir. 1998) (band members rescinded contract with record company to obtain ownership of pre-1972 recordings); *Polygram Records, Inc. v. Legacy Entm't Grp., LLC*, 205 S.W.3d 439, 440-41 (Tenn. Ct. App. 2006) (concluding that heirship rights, rather than possession of physical recordings, determined ownership of pre-1972 recordings).

- 13 -

- *Initial Vesting*.  The law of the state or country where a recording is created generally determines with whom ownership rights initially vest.  *See Saregama*, 635 F.3d at 1290.  As a result, "various state statutes and common law provisions vest various rights and provide them to oftentimes different rightsholders for pre-1972 … recordings."  Goldman Decl. Ex. D at 66.  For example, it is far from clear how individual states—let alone other countries—would decide whether initial ownership vests in the author or a corporate owner as a "work for hire."  *Cf. generally* MELVILLE NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 5.03[B] (2014) (explaining divergent approaches to determining whether work is "made for hire" before U.S. Supreme Court chose one approach for federal copyright law).

- Pushman *Doctrine*.  "[I]n some states ownership passes with the possession of the physical master recording," a principle known as the "*Pushman* doctrine," while other states have expressly rejected that doctrine.  2011 C.O. REPORT 107; *compare Pushman v. New York Graphic Soc'y Inc.*, 287 N.Y. 302, 308 (1942) (later abrogated as to fine art by N.Y. ART & CULT. AFFR. § 14.01) *with Polygram*, 205 S.W.3d at 444 (rejecting *Pushman* doctrine under Tennessee law) *and* NIMMER ON COPYRIGHT § 10.09[B][3] (identifying open issues as to various states' application of *Pushman* to old sound recordings).  It is unclear whether the law of the state where the physical master is sold or the law of the state where the alleged infringement occurred governs *Pushman* issues.  NIMMER ON COPYRIGHT § 10.09[B][2].

- *Chain of Title*.  To the extent a class member's ownership of a recording is based on a series of contractual transfers, there is the further issue of whether each transfer conveyed public performance rights for digital broadcast.  Depending on the circumstances, that issue is governed by the law of the state specified in each contract, where each contract was to be performed, or where each contract was made.  *See* CAL. CIV. CODE § 1646; *Shannon-Vail*

*Five, Inc. v. Bunch*, 270 F.3d 1207, 1210 (9th Cir. 2001).  States are not consistent in their approach to these issues.  *E.g.*, *compare Bartsch v. Metro-Goldwyn-Mayer, Inc.*, 391 F.2d 150, 155 (2d Cir. 1968) (holding under New York law that copyright license includes new uses not expressly covered by license) *with Horadam v. Stewart*, 2008 WL 4491744, at *32 (Tenn. Ct. App. Oct. 6, 2008) (holding under Tennessee law that any rights not expressly granted by copyright license are reserved); *see* NIMMER ON COPYRIGHT § 10.10[B] (describing conflicting approaches to "new-use" issues).

- *Termination*.  Even if the chain of title is not in dispute, there is the further question of whether a prior owner can recapture any of the rights, just as Flo & Eddie did from White Whale Records.  State laws often conflict as to what constitutes a material breach sufficient to allow termination of a contract.  *Cf. Jobim v. Songs of Universal, Inc.*, 732 F. Supp. 2d 407, 421-22 (S.D.N.Y. 2010) (under New York law, partial underpayment of royalties does not constitute material breach); *Spectrum Creations, L.P. v. Carolyn Kinder Int'l, LLC*, 2008 WL 416264, at *76 (W.D. Tex. Feb. 13, 2008) (applying Texas law, finding New York cases dealing with "total rescission" inapposite in cases seeking "termination of the license going forward"); *Cabot v. Jamie Record Co.*, 1999 WL 236737, at *6-8 (E.D. Pa. Apr. 19, 1999) (noting but not resolving question of whether it is payment over life of contract or during limitations period that matters for purposes of rescission); *Dow Chem. Co. v. U.S.*, 32 Fed. Cl. 11, 16-17 (Fed. Cl. 1994) (noting that nonpayment of royalties, if long continued, may warrant termination).

- *Intestacy*.  To the extent prior owners of a recording are deceased, there are further complicating choice-of-law issues.  In the absence of a will, the law of the decedent's state of domicile generally governs heirship and intestacy issues.  *See* NIMMER ON COPYRIGHT § 10.06; *Republic Pictures Corp. v. Security-First Nat'l Bank*, 197 F.2d 767, 769-70 (9th Cir. 1952).  There are

SIRIUS XM'S OPP. TO MOT. FOR CLASS CERTIFICATION

material differences between state intestacy laws.  *E.g., compare Stone v. Williams*, 970 F.2d 1043, 1063 (2d Cir. 1991) (holding that, under Alabama law, Hank Williams' illegitimate child could inherit copyright renewal rights) *with Jerry Vogel Music Co. v. Edward B. Marks Music Corp.*, 425 F.2d 834, 835-36 (2d Cir. 1969) (holding that, under New York law, artist's illegitimate child could *not* inherit copyright renewal rights).

The Ninth Circuit has made clear that certification is improper where, as here, the court would be required to apply the laws of multiple states.  *Mazza*, 666 F.3d at 594.  Otherwise, "differences in state law will compound the disparities among class members from the different states" and make a class proceeding unmanageable.  *Zinser v. Accufix Res. Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001); *Gianino v. Alacer Corp.*, 846 F. Supp. 2d 1096, 1103 (C.D. Cal. 2012); *see also YouTube*, 297 F.R.D. at 67 (ownership issues "are better handled in the jurisdictions (often foreign) in which they arise").  *Napster*, which predates *Mazza*, never addressed this problem, which is substantial for pre-1972 recordings.

### 2.    Authorization Cannot Be Litigated on a Classwide Basis.

In addition to ownership, each class member would have to demonstrate that they did not authorize Sirius XM to exploit their pre-1972 recording.  *See U.S. Golf*, 69 Cal. App. 4th at 618 (lack of "authorization or consent" prerequisite to misappropriation claim); *Plummer*, 184 Cal. App. 4th at 45 (wrongful "disposition of property rights" prerequisite to conversion claim); Dkt. 1-1 ¶ 25 (alleging as basis for unfair competition claim that Sirius XM "appropriat[ed] and inva[ded] the property rights of Plaintiff and each Class Member").

Under California law, authorization can be express (*e.g.*, a written or oral license) or implied through conduct (*e.g.*, an implied-in-fact license or estoppel). *See Foad Consulting Grp., Inc. v. Musil Govan Azzalino*, 270 F.3d 821, 826 (9th Cir. 2001) (noting that "copyright license may be granted orally or by implication" and finding implied license under California law); *Elliano v. Assurance Co. of Am.*,

SIRIUS XM'S OPP. TO MOT.
FOR CLASS CERTIFICATION

1   3 Cal. App. 3d 446, 450 (1970) (estoppel may arise "from silence as well as from

2   words or conduct").  The authorization question is inherently individualized and

3   depends on the unique circumstances of each case.  Courts have routinely

4   recognized that such issues cannot be litigated on a class-wide basis.

5        Thus, *YouTube* held that unauthorized use can be resolved only on a work-

6   by-work basis.  297 F.R.D. at 66.  Whether each class member authorized YouTube

7   to exploit its work, "including by way of implied licenses and equitable estoppels,"

8   was an individualized and fact-intensive issue.  *Id.*  Such "dissimilarities within the

9   proposed class prevent the adjudication of claims *en masse*."  *Id.*

10       That is why the court in *Wu v. Pearson Educ., Inc.*, 2012 WL 6681701

11   (S.D.N.Y. Dec. 21, 2011), decertified a class of copyright owners who alleged that

12   defendant used their photographs without authorization.  The court noted that there

13   would be some instances where the parties' course of dealing "may demonstrate the

14   existence of an implied license" or where plaintiffs were aware their works were

15   being used "but routinely accepted payment and are subject to an estoppel defense."

16   *Id.* at *7.  The court concluded that such individualized inquiries "prevent a class-

17   wide proceeding from supplying a common answer to any common question" and

18   made certification improper.  *Id.*

19       Just last year, the court in *In re Google Inc. Gmail Litig.*, 2014 WL 1102660

20   (N.D. Cal. Mar. 18, 2014), declined to certify a proposed class of email users who

21   alleged that Google had engaged in a common scheme to intercept emails in

22   violation of the Wiretap Act.  A "central" issue was whether class members

23   consented to Google's alleged interceptions, either expressly (*e.g.*, by signing

24   Google's terms of service) or impliedly (*e.g.*, by viewing notifications on Google

25   websites or news articles concerning Google's email practices and continuing to use

26   its email services).  *Id.* at *13-15.  Determining the existence of express consent

27   would require the court "to interpret the express terms of any agreements."  *Id.* at

28   15.  And determining the existence of implied consent would involve "a close

SIRIUS XM'S OPP. TO MOT.
FOR CLASS CERTIFICATION

examination of all the circumstances" and "a broad swath of evidence." *Id.* at *16. The court concluded that such "intensely individualized" inquiries would overwhelm any common questions. *Id.* at *21.

Notably, authorization was not at issue in *Napster*, since the only question in that case was whether Napster could be secondarily liable for its users' direct infringement of plaintiffs' musical works. Other courts have declined to certify proposed classes of musical work owners—even where they were represented by the Fox agency—where authorization *was* at issue. In *Estate of Berlin v. Stash Records, Inc.*, 1996 WL 374176, at *1-2 (S.D.N.Y. June 2, 1996), a putative class of owners represented by the Fox agency alleged that a record company had "pursued a general scheme of copyright infringement" and that "the only differences among the class members' claims [were] the songs involved." The court rejected this argument: "[P]roof of defendants' conduct does not assist any putative class member …. Each class member would have to provide independent proof, relevant only to its claim, of what activities defendants engaged in which violated its particular copyright[, including] whether or not defendants obtained a license." *Id.*; *accord Rykodisc*, 1995 WL 631690, at *6 (declining to certify class of owners because "[t]he validity of the copyright, the absence of any valid license, and the specific act of infringement are particular to that one case and no other").

In this case, authorization issues are even more complex than in the cases above because of the long and convoluted relationship between sound recording owners like the putative class members and broadcasters like Sirius XM. It was never a secret that Sirius XM and other broadcasters performed many pre-1972 recordings without obtaining written licenses or paying compensation. Blatter Decl. ¶ 4. Indeed, sound recording owners have acknowledged this to Congress. *See* Dkt. 154 at 9. Even so, they *never* objected to broadcasters' widespread performance of their recordings or asked them to stop. Flo & Eddie's principals

knew that Sirius XM was performing Turtles songs, but never asked Sirius XM to stop, obtain a written license, or pay compensation.  Seto Decl. Exs. B, C.

The reason is clear.  Sound recording owners benefit from the widespread performance of their recordings, which drives record and ticket sales.  To that end, sound recording owners frequently ask Sirius XM to increase their airplay, send Sirius XM copies of their recordings to perform, and collaborate with Sirius XM to promote albums and tours.  Blatter Decl. ¶¶ 6, 11.  Indeed, Flo & Eddie's principals—who claim to be "typical"—have made many promotional appearances on Sirius XM, during which their pre-1972 recordings (and others) were performed, and even thanked Sirius XM.  *Id.* ¶¶ 5, 10-11.  Just *three days* before filing this lawsuit, Kaylan hosted an hour-long segment on Sirius XM's "60s on 6" channel and played several Turtles songs.  *Id.* ¶ 10.

In many cases, such conduct by sound recording owners has given rise to an implied license to Sirius XM to perform and exploit their pre-1972 recordings.  *See Falcon Enters. v. Publ'rs Serv*., 438 Fed. Appx. 579, 581 (9th Cir. 2011) (finding implied license where photographer sent images to publisher without first demanding written license); *Field v. Google Inc*., 412 F. Supp. 2d 1106, 1116 (D. Nev. 2008) (implied license "may be inferred based on silence where the copyright holder knows of the use and encourages it"); *Zellers v. State*, 134 Cal. App. 2d 270, 273 (1955) ("An implied license is one which is presumed to have been given from the words, acts or passive acquiescence of the party authorized to give it.").[5]  In

---

[5] The *Flo & Eddie* New York court opined that an implied license could exist only where one party created a copyrighted work at another's request.  2015 WL 235241, at *3.  Sirius XM does not believe this is an accurate characterization of New York law, *see Keane Dealer Servs., Inc. v. Harts*, 968 F. Supp. 944, 947 (S.D.N.Y. 1997) (implied license may exist where copyright holder fails to object to party's use of work), but in any event, it is clearly not the law in California.  *See Zellers*, 134 Cal. App. 2d at 273; *Falcon*, 438 Fed. Appx. at 581.  Nor does California law require a showing of fraud before estoppel can arise.  *See Lantzy v. Centex Homes*, 31 Cal. 4th 363, 384 (2003).

- 19 -

1   addition, Sirius XM has many direct written licenses with owners that include the

2   right to perform pre-1972 recordings.  Blatter Decl. ¶ 12.[6]

3        And in many cases, such conduct also gives Sirius XM an estoppel or waiver

4   defense.  *See Wu*, 2012 WL 6681701, at *7 (estoppel may apply where "rights

5   holders … understood that their works were used" but accepted payment and failed

6   to object); *Elliano*, 3 Cal. App. 3d at 450 (estoppel can arise where "one's conduct

7   has induced another to take ... a position"); *Micro Star v. Formgen Inc.* 154 F.3d

8   1107, 1114 (9th Cir. 1998) (noting that waiver may be found where plaintiff

9   "encourag[ed]" distribution of works).  As established by *YouTube*, *Wu*, *Gmail*, and

10  *Estate of Berlin*, issues concerning implied license, consent, estoppel, and waiver

11  are individualized and swamp any common issues.

12              **3.      Damages Cannot Be Litigated on a Classwide Basis.**

13       To satisfy the predominance requirement, a plaintiff must establish that

14  "damages are capable of measurement on a classwide basis."  *Comcast*, 133 S. Ct.

15  at 1433.  Plaintiff falls far short.

16       *First*, whether and to what extent each class member was harmed by Sirius

17  XM's exploitation of pre-1972 recordings is necessarily an individualized inquiry.

18  Actual damages—whether in the form of lost royalties, imputed license fees, or

19  some other measure—can be computed only by reference to the unique

20  circumstances of each performance, such as the commercial popularity of the

21  recording, the number of times it was played, the context in which it was played

22  
23  ────────────────
[6] Plaintiff's assertion that Sirius XM "has not obtained licenses," Mot. at 3, is
incorrect.  The testimony and supposedly "undisputed" fact plaintiff cites addressed
24  whether Sirius XM had entered into direct written licenses to exploit pre-1972
recordings, and did not address the separate issue of *implied* licenses.  Seto Decl.
25  Ex. D; Dkt. 87 (Nos. 75-81, 86-108) (identifying triable issues as to existence of
implied licenses).  Moreover, Sirius XM has entered into many written licenses
26  since that testimony was given.  Blatter Decl. ¶ 12.  Although this Court found that
Sirius XM cannot litigate its defenses as to plaintiff because it did not adequately
27  raise them on summary judgment, this does not preclude Sirius XM from litigating
its defenses—let alone predicate liability issues, such as authorization—against
28  absent class members.  *See Wright v. Schock*, 742 F.2d 541, 544 (9th Cir. 1984).

SIRIUS XM'S OPP. TO MOT.
FOR CLASS CERTIFICATION

(*e.g.*, the time of day and particular program), and the relative popularity of the performing artist and music genre.  Ugone Decl. ¶¶ 41-51; Goldman Decl. ¶¶ 32-43.  Such individualized damages issues defeat predominance.  *W. States Wholesale, Inc. v. Synthetic Indus., Inc.*, 206 F.R.D. 271, 277-78 (C.D. Cal. 2002); *see also Windham v. Am. Brands, Inc.*, 565 F.2d 59, 68 (4th Cir. 1977) (certification improper where individual damage claims cannot be established by "virtually … mechanical calculation").

To sidestep these individualized issues, plaintiff truncates its damage claims to one theory: disgorgement of profits.  While some courts have allowed such gamesmanship in the past, the Supreme Court has now made clear that a class representative cannot forfeit damage claims to make its claim more "class worthy." *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1349 (2013) (rejecting plaintiff's effort to cap damages at $5 million to avoid provisions of Class Action Fairness Act and noting that pre-certification damages stipulation does not bind absent class members); *see also Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 978 (9th Cir. 2013) (same); *Corber v. Xanodyne Pharms., Inc.*, 771 F.3d 1218, 1223 n.3 (9th Cir. 2014) (noting that "named plaintiffs cannot stipulate to limit the damages claims of unnamed class members" prior to certification).

Courts have also made clear that a class representative's abandonment of one damage claim in favor of another may create an intra-class conflict and render the representative inadequate.  *See W. States*, 206 F.R.D. at 277 (declining to certify class where plaintiff "abandoned recovery of damages for lost sales or market share" in favor of disgorgement and injunctive relief); *In re Stec Inc. Sec. Litig.*, 2012 WL 6965372, at *6 (C.D. Cal. Mar. 7, 2012) (class representative cannot "refuse to assert certain claims that may be available and advantageous to the absent putative class members"); *Krueger v. Wyeth, Inc.*, 2008 WL 481956, at *3 (S.D. Cal. Feb. 19, 2008) ("by seeking damages only for diminution in market

SIRIUS XM'S OPP. TO MOT.
FOR CLASS CERTIFICATION

value, plaintiffs would effectually be waiving, on behalf of the hundreds of class members, any possible recovery of potentially substantial damages").

*Second*, even plaintiff's truncated damage theory is insufficient because it bears no relationship to plaintiff's theory of liability or class definition.  *See* Ugone Decl. ¶¶ 20-35.  Under *Comcast*, a plaintiff must present a damages model that is "consistent with [his or her] liability case" and that "measure[s] only those damages attributable to [the defendant's conduct]."  133 S. Ct. at 1433.  According to plaintiff's liability theory and class definition, Sirius XM is liable only for *unauthorized* performances of pre-1972 recordings *owned* by the class members.  But plaintiff's damages model, which yields a total amount of revenue that is supposedly attributable to *all* performances of pre-1972 recordings,[7] ignores these predicate issues and assumes that *every* performance was unauthorized and *every* pre-1972 recording is owned by a class member.  Ugone Decl. ¶ 34.

*Third*, plaintiff offers no method for allocating among class members the "pot" of money its expert claims is "attributable" to Sirius XM's performance of the recordings.  *Id.* ¶¶ 36-45.  There is no question that allocation will be a hotly debated issue, given the heterogeneity in the proposed class.  While some may favor a pro rata approach that values each song equally, those who own more commercially successful songs will want an approach that reflects the true market value of each song.  *Id.* ¶¶ 36-40; Goldman Decl. ¶¶ 32-37, Ex. B at 26 (RIAA,

---

[7] Because plaintiff has failed to establish a causal connection between the "pot" of money its expert identified and Sirius XM's performance of pre-1972 recordings, *see* Ugone Decl. ¶¶ 20-33, disgorgement is not an available remedy here.  Even if it were, plaintiff's assertion that it is entitled to gross revenues without any deduction for costs is incorrect, *see Am. Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451, 1488 (2014) (defendant entitled to deduct "costs incurred in producing the revenues … subject to disgorgement"); RESTATEMENT (THIRD) OF RESTITUTION & UNJUST ENRICHMENT § 51 (2011), but this is irrelevant for purposes of class certification.  Plaintiff's assertion that gross revenues are the appropriate measure of damages for its unfair competition claim is also wrong.  *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1152 (2003) ("disgorgement of profits is not an available remedy" for § 17200 claim).

SIRIUS XM'S OPP. TO MOT. FOR CLASS CERTIFICATION

asserting that compensation to recording owners must "reflect[] the fair market value" of recording). To use plaintiff's example, the owner of "Let It Be" will certainly expect to be paid more than the owner of "Tiptoe Through the Tulips."[8]

This exposes a fundamental conflict between class members and raises the question of whether plaintiff can adequately represent the class. The Turtles were a one-hit wonder known almost exclusively for "Happy Together." They will doubtless favor a pro rata approach. But what about the owners of the recordings made by The Beatles or The Rolling Stones? Courts have denied class certification where, as here, the named plaintiff fails to present a method for allocating damages among class members in a way that avoids such intra-class conflicts. *See Allied Ortho. Appliances, Inc. v. Tyco Healthcare Grp. L.P.*, 247 F.R.D. 156, 176 n.30 (C.D. Cal. 2007) (noting that certification improper where plaintiff offers "no method for determining each plaintiffs' particular piece of the damages pie" and plaintiff cannot "averag[e] damages to sweep individual issues under the judicial rug"); *W. States*, 206 F.R.D. at 277 (plaintiff must "put forth a method for apportioning [defendant's] profits" and show how "conflict among class members can be avoided"); *In re NCAA I-A Walk-On Football Players Litig.*, 2006 WL 1207915, at *9 (W.D. Wash. May 3, 2006) (denying certification where plaintiff offered no method "to deal with the problem of intra-class antagonism at the damages calculation and distribution phase").[9]

---

[8] There is no reason to assume the "one-size-fits-all" approach Congress has taken to *post*-1972 recordings should apply here. For post-1972 recordings, Congress designed a complex compulsory licensing scheme designed to balance the interests of all stakeholders, which creates uniform royalty rates and requires that royalties be shared between sound recording owners and artists. *See* H.R. Rep. No. 104-274, at 13-15, 23-24 (1995). There has been no judicial counterpart to this legislative process for *pre*-1972 recordings. Nor is there any reason to assume the putative class members would want a pro rata approach, which would under-compensate many of them. Ugone Decl. ¶¶ 36-40; Goldman Decl. ¶¶ 32-37.

[9] The cases suggesting that a defendant does not have an interest in how damages are allocated, *see Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, at *5 (C.D. Cal. Apr. 9, 2014), do not apply here. Sirius XM has an "undeniabl[e] … interest" in

### D.    A Class Action Is Not a Superior Method of Adjudication.

The superiority requirement ensures "that the class action is the most efficient and effective means of resolving the controversy."  *Wolin v. Jaguar Land Rover N. Am., LLC,* 617 F.3d 1168, 1175 (9th Cir. 2010).  Relevant factors include: (1) class members' interest in individually controlling separate actions, (2) the existence of other lawsuits by class members, (3) the desirability of litigating in the particular forum, and (4) the difficulties of managing a class proceeding.  FED. R. CIV. P. 23(b)(3).  In this case, *none* of these factors favors certification.

As for the first two factors, this is not a case where the putative class members have low-value claims and no incentive or means to sue individually.  The major record companies—who claim to own the vast majority of pre-1972 recordings—have filed an individual lawsuit against Sirius XM asserting the exact same claims.  *See Capitol Records, LLC v. Sirius XM Radio Inc.*, Case No. BC 520981 (Los Angeles Super. Ct.).  And in the past few months, individual sound recording owners have filed copycat lawsuits against Apple, Sony, and other digital broadcasters.  *See, e.g.*, *Zenbu Magazines, LLC v. Sony Computer Entm't Am. LLC*, Case No. 3:15-cv-00310-EDL (N.D. Cal.); *Beach Road Music LLC v. Apple Inc.*, Case No. 3:15-cv-00700 (N.D. Cal.) (dismissed without prejudice).  The pendency of these lawsuits confirms that "some of the interested parties have decided that individual actions are an acceptable way to proceed, and even may consider them preferable to a class action."  *Zinser*, 253 F.3d at 1190-91.

As for the second two factors, the number of individualized issues and application of disparate state laws would make a class action unmanageable and inferior to individual litigation in the putative class members' home states.  A class action is not superior because the Court would be required to conduct thousands of

---

the way damages are calculated and allocated to ensure it is "not paying excess damages"—a very real risk since plaintiff's damage theory is not tied to liability.  *See id.*  Moreover, the Court has an independent duty to consider allocation at the certification stage where, as here, the issue presents a clear intra-class conflict.

SIRIUS XM'S OPP. TO MOT. FOR CLASS CERTIFICATION

1  individual proceedings on ownership, authorization, and damages, and plaintiff

2  offers no plan for managing this.  *See Zinser*, 253 F.3d at 1192; *Haley v. Medtronic*,

3  169 F.R.D. 643, 652 (C.D. Cal. 1996).  Moreover, adjudicating the complex

4  ownership issues would require application of the laws of various states.  Where

5  "claims must be adjudicated under the law of so many jurisdictions, a single

6  nationwide class is not manageable."  *Bridgestone Firestone Tires Prods. Liab.*

7  *Litig.*, 288 F.3d 1012, 1018 (7th Cir. 2002); *accord Zinser*, 253 F.3d at 1189.

8        The only common issue in this case is the legal question that was answered

9  on summary judgment—*i.e.*, whether California law provides a public performance

10  right in pre-1972 recordings.  This is an issue of first impression that has substantial

11  and far-reaching implications.  Courts have recognized that a class action is not a

12  superior method of adjudication where, as here, "plaintiffs seek to resolve relatively

13  novel legal theories in one case with one throw of the dice as to potentially

14  hundreds of thousands of claims."  *Vulcan*, 254 F.R.D. at 535.  The better approach

15  is to allow a consensus to emerge from individual lawsuits with lower stakes.  *See*

16  *id.*; *In the Matter of Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293, 1299-1300 (7th Cir.

17  1995) (courts should not allow "[o]ne jury, consisting of six persons … [to] hold

18  the fate of an industry in the palm of its hand").

19  **IV.**  **CONCLUSION**

20        For the foregoing reasons, the Court should deny plaintiff's motion.

21        Dated:  April 15, 2015           Respectfully submitted,

22                            DANIEL M. PETROCELLI
                          ROBERT M. SCHWARTZ

23                            VICTOR H. JIH
                          O'MELVENY & MYERS LLP

24

25                            By: /s/ Daniel M. Petrocelli

26                                Daniel M. Petrocelli
                          *Attorneys for Sirius XM Radio Inc.*

27

28

SIRIUS XM'S OPP. TO MOT.
FOR CLASS CERTIFICATION