GRADSTEIN & MARZANO, P.C.
HENRY GRADSTEIN (State Bar No. 89747)
hgradstein@gradstein.com
MARYANN R. MARZANO (State Bar No. 96867)
mmarzano@gradstein.com
HARVEY W. GELLER (State Bar No. 123107)
hgeller@gradstein.com
DANIEL B. LIFSCHITZ (State Bar No. 285068)
dlifschitz@gradstein.com
6310 San Vicente Blvd., Suite 510
Los Angeles, California 90048
T: 323-776-3100

EVAN S. COHEN (State Bar No. 119601)
esc@manifesto.com
1180 South Beverly Drive, Suite 510
Los Angeles, California 90035
T: 310-556-9800  F: 310-556-9801

Attorneys for Plaintiff
FLO & EDDIE, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLO & EDDIE, INC., a California corporation, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SIRIUS XM RADIO, INC., a Delaware corporation; and DOES 1 through 10,<br><br>Defendants. | Case No. CV13-05693 PSG (RZx)<br><br>**FLO & EDDIE, INC.'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Date: May 18, 2015<br>Time: 1:30 p.m.<br>Place: Courtroom 880<br>Honorable Philip S. Gutierrez |

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................... 1

II. THE ONE-WAY INTERVENTION RULE IS INAPPLICABLE ............ 2

III. THE REQUIREMENTS OF RULE 23 HAVE BEEN SATISFIED ......... 4

    A.    The Class is Ascertainable and Ownership Issues Do Not Preclude Certification ........................................................................ 4

    B.    Authorization Has Already Been Resolved Class Wide ................... 9

    C.    Damages Are Not An Individual Issue ............................................ 11

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

# TABLE OF AUTHORITIES

**Cases**

*A&M Records, Inc. v. Heilman,*
75 Cal. App. 3d 554, 570 (1977) ................................................................. 12

*A&M Records v. Napster, Inc.,*
239 F.3d 1004 (9th Cir. 2001) ..................................................................... 10

*Ades v. Omni Hotels Mgmt. Corp.,*
2014 U.S. Dist. LEXIS 129689, *20-21 (C.D. Cal. Sept. 8, 2014) ................ 5

*Byrd v. Aaron's Inc.,*
2015 U.S. App. LEXIS 6190 *9-36 (3d Cir. Apr. 16, 2015) ........................... 5

*Capitol Records, Inc. v. Naxos of Am., Inc.,*
372 F.3d 471 (2d Cir. 2004) ......................................................................... 11

*Carrera v. Bayer Corp.,*
727 F.3d 300 (3d Cir. 2013) ........................................................................... 5

*Colvin v. Citigroup Global Mkts., Inc.,*
2009 U.S. Dist. LEXIS 54915 *2 (N.D. Cal. June 11, 2009) ......................... 3

*Corns v. Laborers Int'l Union of N. Am.,*
2014 U.S. Dist. LEXIS 44997, *14 (N.D. Cal. Mar. 31, 2014) ...................... 4

*Doyle v. Chrysler Group LLC,*
2014 U.S. Dist. LEXIS 181177 *14 (C.D. Cal. Oct. 9, 2014) ........................ 5

*EQT Prod. Co. v. Adair,*
764 F.3d 347 (4th Cir. 2014) ...................................................................... 8, 9

*Fisher v. Va. Elec. & Power Co.,*
217 F.R.D. 201, 220 (E.D. Va. 2003) ............................................................. 7

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.,*
2015 U.S. Dist. LEXIS 6101 *3-5 (S.D.N.Y. Jan. 15, 2015) ......................... 6

*Football Ass'n Premier League v. Youtube, Inc.,*
297 F.R.D. 64, 65 (S.D.N.Y. 2013) ................................................................ 7

*Gessele v. Jack in the Box, Inc.,*
2012 U.S. Dist. LEXIS 120377 *6-8 (D. Or. Aug. 24, 2012) ......................... 4

*Hewlett-Packard Co. v. Pitney Bowes Corp.,*
1998 U.S. Dist. LEXIS 10936 *23 (D. Or. Mar. 23, 1998) ........................... 10

*Hipolito v. Alliance Receivables Mgmt.,*
2005 U.S. Dist. LEXIS 48404 *7 (N.D. Cal. July 15, 2005) ......................... 3

*In re Farmers Ins. Co.,*
738 F. Supp. 2d 1180, 1224 (W.D. Okla. 2010) ............................................ 7

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

*In re Nucoa Real Margarine Litig.*,
   2012 U.S. Dist. LEXIS 189901 *18 (C.D. Cal. June 12, 2012) ........................5

*In re Toys "R" Us - Delaware, Inc.*,
   300 F.R.D. 347, 367 (C.D. Cal. 2013) ...................................................................5

*Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*,
   552 F.3d 1033 (9th Cir. 2009)..............................................................................11

*Kirkman v. N.C. R.R.*,
   220 F.R.D. 49 (M.D.N.C. 2003) ............................................................................8

*Koyle v. Level 3 Communs., Inc.*,
   2005 U.S. Dist. LEXIS 47196, *6-7 (D. Idaho Dec. 1, 2005) ...........................7

*Leiber v. Bertelsmann AG*,
   2005 U.S. Dist. LEXIS 11498, *28-29 (N.D. Cal. May 31, 2005)...................7

*Leyva v. Medline Indus. Inc.*,
   716 F.3d 510 (9th Cir. 2013).................................................................................12

*Lone Ranger Television, Inc. v. Program Radio Corp.*,
   740 F.2d 718, 726 (9th Cir. 1984)........................................................................12

*Marcus v. BMW of N. Am.*, LLC,
   687 F.3d 583 (3d Cir. 2012) ...................................................................................5

*McCrary v. Elations Co., LLC*,
   2014 U.S. Dist. LEXIS 8443 *24 (C.D. Cal. Jan. 13, 2014) .......................5, 7

*Oglesby v. Rotche*,
   1994 U.S. Dist. LEXIS 4866 *12 (N.D. Ill. Apr. 15, 1994) ............................3

*Paramount Pictures Corp. v. Carol Pub'g Grp.*,
   11 F. Supp. 2d 329 (S.D.N.Y. 1998)...................................................................11

*Parkinson v. Hyundai Motor Am.*,
   258 F.R.D. 580, 593 (C.D. Cal. 2008) ...................................................................4

*Peritz v. Liberty Loan Corp.*,
   523 F.2d 349 (7th Cir. 1975)..................................................................................4

*Petrella v. MGM*,
   134 S.Ct. 1962 (2014) ..........................................................................................11

*Ries v. Arizona Beverages USA LLC*,
   287 F.R.D. 523, 535 (N.D. Cal. 2012) ..................................................................7

*Ryan v. Carl Corp.*,
   1999 U.S. Dist. LEXIS 366 *13 (N.D. Cal. Jan. 12, 1999) .............................3

*Schwarzschild v. Tse*,
   69 F.3d 293 (9th Cir. 1995)....................................................................................4

*Shein v. Canon U.S.A., Inc.*,
   2010 U.S. Dist. LEXIS 91160 *24, fn. 13 (C.D. Cal. Aug. 10, 2010) .............4

*SHL Imaging, Inc. v. Artisan House, Inc.*,
    117 F. Supp. 2d 301 (S.D.N.Y. 2000) .............................................................. 10

*Sobel v. Hertz Corp.*,
    2013 U.S. Dist. LEXIS 154936 *13 (D. Nev. Oct. 28, 2013) .......................... 3

*Tchoboian v. Parking Concepts, Inc.*,
    2009 U.S. Dist. LEXIS 62122 *4-5 (C.D. Cal. July 16, 2009) ........................ 5

*Thompson v. Clear Channel Communs., Inc.*,
    247 F.R.D. 98 (C.D. Cal. 2007) ...................................................................... 11

*United States v. Bilzerian*,
    926 F.2d 1285 (2d Cir. 1991) .......................................................................... 11

*Vulcan Golf, LLC v. Google Inc.*,
    254 F.R.D. 521, 530-31 (N.D. Ill. 2008) ........................................................... 8

*Waldmann v. Cingular Wireless LLC*,
    2007 U.S. Dist. LEXIS 96461 *10, fn. 4 (C.D. Cal. Nov. 15, 2007) ............... 4

*Walker v. Life Ins. Co. of the Southwest*,
    2012 U.S. Dist. LEXIS 186296 *63, fn. 20 (C.D. Cal. Nov. 9, 2012) ............. 5

*Wilchombe v. TeeVee Toons, Inc.*,
    555 F.3d 949 (11th Cir. 2009) ........................................................................ 10

*Wright v. Schock*,
    742 F.2d 541 (9th Cir. 1984) ........................................................................ 3, 4

*Wu v. Pearson Educ., Inc.*,
    277 F.R.D. 255, 270 (S.D.N.Y. 2011) .............................................................. 7

**<u>Other Authorities</u>**

5 James W. Moore, Moore's Federal Practice, § 23.21[1] (2001) ............................ 4

## I. INTRODUCTION.

Until it lost summary judgment, Sirius XM readily admitted that it used and treated every single pre-1972 recording in exactly the same way, that it did so without *any* licenses, and that it attributed the exact same revenue to each individual performance of a pre-1972 recording. Now, when faced with class certification, Sirius XM disavows its prior testimony and its own internal revenue calculations. Instead, it seeks to create a false narrative based on: (a) an entirely new set of conflicting facts, (b) an untimely "music industry" expert report from someone who has not been in the music business for the last 28 years and who admittedly did absolutely no investigation or research prior to signing his declaration, yet still contends to be qualified to speculate wildly about the current state of the industry, and (c) a "damages" expert who contradicts Sirius XM's own methodology for calculating revenues attributable to its performances of pre-1972 recordings.

From this, Sirius XM argues that three issues (authorization, ownership, and damages) prevent class certification because those issues supposedly overwhelm the common, typical, and predominate issues. Sirius XM is wrong.

*First*, authorization ceased to be an issue on a class-wide basis when Sirius XM testified that *all* pre-1972 recordings were in the public domain, that it had no licenses, and that it engaged in its activity based solely on its legal analysis and nothing else. Authorization was always a non-issue for Sirius XM because it never thought it needed it.

*Second*, ownership is not the complicated process or issue that Sirius XM posits. Sirius XM's trumped-up theories about this issue emanate from Mr. Goldman's inadmissible declaration (see Evidentiary Objections) which Sirius XM then weaves through a hypothetical discussion of irrelevant, inapposite, and outdated legal principles. In doing so, Sirius XM skips over the threshold issue that who owns a recording ultimately has no bearing on the liability issues here, as Sirius XM has already identified which pre-1972 recordings it performed in California and

1

admitted that it does not own or have licenses to perform any of them. In any event, establishing who owns each recording and thus is entitled to be a class member can be easily established by any one a number of different methods, including the most basic way (which even Sirius XM's expert testified is the usual way in the music business); namely, by obtaining a written confirmation of ownership that is backed by appropriate warranties and representations affirming that ownership. Here, beyond using SoundExchange's database, the initial task of identification and verification can be accomplished through various additional methods, including: (a) by publicizing on a website the list of pre-1972 recordings that were performed by Sirius XM and setting up a claiming process, (b) by providing Sirius XM's list of pre-1972 recordings to Music Reports, Inc., a company that maintains "the largest and most accurate database of sound recording and musical work copyright ownership information in the United States," or (c) by using music licensing services. Any of these of options results in a manageable and reliable process.

*Third*, damages are quite simple and are based on a model that was not only developed by Sirius XM but it is the best model for class-wide distribution of the revenues recoverable from Sirius XM. Indeed, Sirius XM's own methodology for determining the revenue attributable to each individual play or performance of a pre-1972 recording results in an amount that can then multiplied by the number of plays or performances already disclosed by Sirius XM to arrive at a damages amount for each pre-1972 recording. This method results in the highest award for the entire class and necessarily results in the highest allocation for each class member as it is based on the number of plays or performances of each recording by Sirius XM, which accounts for all of the variables that Sirius XM raises in its opposition.

## II. THE ONE-WAY INTERVENTION RULE IS INAPPLICABLE.

Before Sirius XM even addresses the merits of class certification, it attempts an end run around the entire process by invoking the one-way intervention rule. In doing so, however, it first invokes the one-way amnesia rule. From the inception of

1  this case, Sirius XM sought bifurcation so that "a determination on *any* motions for
2  summary judgment on issues of liability" could be precede class certification. **(Dkt.**
3  **48-1, ¶¶ 3-6, Exs. 1, 3)** It achieved its goal at the March 24, 2014, scheduling
4  conference in this case after stating that "[w]e think [liability is] dispositive…That's
5  why we proposed doing the summary judgment on liability early and then pushing
6  everything else after…" **(Supp. Lifschitz Decl., ["SLD"] ¶ 7, Ex. 56)**

7       This record completely contravenes Sirius XM's fabrication that Flo & Eddie
8  "made the tactical decision to pursue summary judgment before class certification."
9  **(Dkt. 193, p. 4)** Instead, it makes it clear that Sirius XM waived any objection to
10 having liability addressed before class certification – which ends its argument.
11 *Oglesby v. Rotche*, 1994 U.S. Dist. LEXIS 4866 *12 (N.D. Ill. Apr. 15, 1994);
12 *Hipolito v. Alliance Receivables Mgmt.*, 2005 U.S. Dist. LEXIS 48404 *7 (N.D. Cal.
13 July 15, 2005). Sirius XM not only demanded this sequencing from the Court, but
14 also admitted at the September 15, 2014, hearing on Flo & Eddie's motion for
15 summary judgment that it understood issue joinder rendered meaningless which
16 party had actually filed that motion. **(SLD, ¶ 8, Ex. 57)** In fact, the sequencing was
17 such a non-issue that, after losing summary judgment on liability, Sirius XM
18 stipulated to the class certification briefing schedule and process. **(Dkt. 122)**

19      Sirius XM's rigid view of one-way intervention also lacks support in the law.
20 "Ninth Circuit law is clear that a district court may rule on the merits before ruling
21 on a motion for class certification." *Colvin v. Citigroup Global Mkts., Inc.,* 2009
22 U.S. Dist. LEXIS 54915 *2 (N.D. Cal. June 11, 2009) (citing *Wright v. Schock*, 742
23 F.2d 541, 544 (9th Cir. 1984)); *Arnold v. Ariz. Dep't of Pub. Safety*, 233 F.R.D. 537,
24 541 (D. Ariz. 2005). In fact, it "is now common" to delay certification of a class
25 until after a determination of the underlying merits  *Sobel v. Hertz Corp.*, 2013 U.S.
26 Dist. LEXIS 154936 *13 (D. Nev. Oct. 28, 2013); *Ryan v. Carl Corp.*, 1999 U.S.
27 Dist. LEXIS 366 *13 (N.D. Cal. Jan. 12, 1999).
28

This Court had the absolute discretion to do as it did and sequence the case to determine liability before class certification. "The 'one-way intervention' rule was designed to prevent a defendant from being 'pecked to death by ducks,' or, in other words, being subjected to lawsuit after lawsuit until a plaintiff prevails." *Waldmann v. Cingular Wireless LLC*, 2007 U.S. Dist. LEXIS 96461 *10, fn. 4 (C.D. Cal. Nov. 15, 2007). It was not designed to relieve a defendant of its strategic decision to accept the risk of *stare decisis* as to members of the class by pushing for summary judgment on the merits prior to certification taking place. *Wright*, 742 F.2d at 544.[1]

## III. THE REQUIRMENTS OF RULE 23 HAVE BEEN SATISFIED.

### A. The Class is Ascertainable and Ownership Issues Do Not Preclude Certification.

Based on incorrect law, unsubstantiated hypotheticals, and an untimely "expert" declaration that relies purely on conjecture, Sirius XM argues that a class of owners of pre-1972 recordings cannot be ascertained and, even if it could, ownership issues cannot be litigated on a class-wide basis. Sirius XM is wrong, which is why it misstates the law and then meanders down a path of imaginary obstacles.

The law is very clear that "[a]n identifiable class exists if its members can be ascertained by reference to objective criteria." *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 593 (C.D. Cal. 2008). Flo & Eddie's class members are identifiable by just such an objective criteria; namely, ownership. *See Shein v. Canon U.S.A., Inc.*, 2010 U.S. Dist. LEXIS 91160 *24, fn. 13 (C.D. Cal. Aug. 10, 2010) (citing 5 James W. Moore, Moore's Federal Practice, § 23.21[1] (2001)). Contrary to Sirius

---

[1] None of the one-way intervention cases relied on by Sirius XM have any application here. In *Peritz v. Liberty Loan Corp.*, 523 F.2d 349 (7th Cir. 1975), no waiver was ever alleged. In *Gessele v. Jack in the Box, Inc.*, 2012 U.S. Dist. LEXIS 120377 *6-8 (D. Or. Aug. 24, 2012), the only conduct was agreeing to an *initial* briefing schedule. In *Corns v. Laborers Int'l Union of N. Am.*, 2014 U.S. Dist. LEXIS 44997, *14 (N.D. Cal. Mar. 31, 2014), no class was alleged prior to the entry of judgment. And nowhere does *Schwarzschild v. Tse*, 69 F.3d 293 (9th Cir. 1995) suggest that ***only*** a defendant's motion for summary judgment can trigger a waiver.

4

XM's argument, how easy or difficult it may be for any particular class member to substantiate his or her ownership is irrelevant. *See In re Nucoa Real Margarine Litig.*, 2012 U.S. Dist. LEXIS 189901 *18 (C.D. Cal. June 12, 2012). All that is required is that the ownership be capable of objective substantiation. *See Doyle v. Chrysler Group LLC*, 2014 U.S. Dist. LEXIS 181177 *14 (C.D. Cal. Oct. 9, 2014); *In re Toys "R" Us - Delaware, Inc.*, 300 F.R.D. 347, 367 (C.D. Cal. 2013); *Tchoboian v. Parking Concepts, Inc.*, 2009 U.S. Dist. LEXIS 62122 *4-5 (C.D. Cal. July 16, 2009). Even the need for "substantial" document review to verify these claims and the possibility that not all members will be identifiable does not preclude ascertainability. *Walker v. Life Ins. Co. of the Southwest*, 2012 U.S. Dist. LEXIS 186296 *63, fn. 20 (C.D. Cal. Nov. 9, 2012) (citation omitted).

Sirius XM does not argue that the members of Flo & Eddie's proposed class cannot be ascertained by reference to objective criteria. Instead, based upon two Third Circuit cases, it suggests that if this process requires "individual factual inquiry, merits determinations, or anything beyond a ministerial review of readily accessible records," then it violates the requirements of ascertainability.[2] That has never been the law in the Ninth Circuit, *McCrary v. Elations Co., LLC*, 2014 U.S. Dist. LEXIS 8443 *24 (C.D. Cal. Jan. 13, 2014), ***and it is no longer the law in the Third Circuit either***. *Byrd v. Aaron's Inc.*, 2015 U.S. App. LEXIS 6190 *9-36 (3d Cir. Apr. 16, 2015). Ascertainability only requires that "the class definition describes a set of common characteristics sufficient to allow a prospective plaintiff to identify himself or herself as having a right to recover based on the description." *Ades v. Omni Hotels Mgmt. Corp.*, 2014 U.S. Dist. LEXIS 129689, *20-21 (C.D. Cal. Sept. 8, 2014) (citation omitted).

In the context of this case, the process of identifying owners is actually quite simple and is nowhere near the complicated process Sirius XM speculates about.

---

[2] *Marcus v. BMW of N. Am.*, LLC, 687 F.3d 583 (3d Cir. 2012) and *Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013).

5

Contrary to Sirius XM's argument, there are reasonable methods by which the owners of pre-1972 recordings performed by Sirius XM can be identified.  Even Mr. Goldman thought that starting with SoundExchange's database was reasonable.  **(SLD ¶ 3, Ex. 24)**  Expanding the process beyond SoundExchange will yield a more complete list of owners, but Sirius XM must first de-designate the list of pre-1972 recordings that it performed so that the list can be published and the claiming process can be completed.  Once de-designated, there are multiple services that can assist in completing the analysis necessary to identify the owners.  In fact, one of those services – Music Reports, Inc. ("MRI") – is already used by Sirius XM to make its royalty payments under its direct licenses.  **(SLD ¶ 6, Ex. 55)**  As Sirius XM knows, MRI is "the leading provider of music rights administration services in the United States."  **(SLD ¶ 9, Ex. 58)**  MRI's "core asset" is Songdex, which it holds out to be "the world's largest independent relational database of music copyright and related business information."  *Id*.  This database includes both "sound recording and musical work copyright ownership information" and is particularly heralded by the company for its accuracy.  **(SLD ¶ 10, Ex. 59)**  Songdex has been developed on a "song-by-song" basis, "covers virtually all of the commercially significant music in existence," and is constantly updated.  **(SLD ¶¶ 9 and 10, Exs. 58 and 59)**.  MRI is not the only one that can accomplish this task.  Any recognized music licensing service who regularly identify owners of recordings as part of their services can do it, such as Evan M Greenspan, Inc.  **(SLD ¶ 3, Ex. 60)**

  As for establishing ownership, once again, the elaborate process that Sirius XM envisions is not required.  At its most basic level, ownership can be established by declaration or affidavits.  In fact, this is exactly what Judge McMahon found to be adequate in the New York action when Sirius XM questioned Flo & Eddie's ownership rights.  *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 2015 U.S. Dist. LEXIS 6101 *3-5 (S.D.N.Y. Jan. 15, 2015).  A declaration or affidavit is quite reliable and is not dissimilar from the custom and practice used in the music

6

1 business to establish ownership; namely a written confirmation of ownership that is
2 backed by appropriate warranties and representations affirming that ownership.  This
3 method was even endorsed by Sirius XM's own expert, **(SLD ¶ 3, Ex. 52)**, and is a
4 process that Sirius XM is quite familiar with as it is what it does when it enters into
5 direct licenses for recordings.  **(SLD ¶ 11, Ex. 61)**   Sirius XM never explains why
6 this process is appropriate for running its business, but not for class purposes.  The
7 same process will yield reliable results and fully protect Sirius XM from the
8 imaginary "conflicting ownership" claims that it asks this court to believe exist.

9 Contrary to Sirius XM's arguments, this process neither overwhelms the
10 common questions nor renders certification inappropriate. *See Leiber v.*
11 *Bertelsmann AG,* 2005 U.S. Dist. LEXIS 11498 *28-29 (N.D. Cal. May 31, 2005);
12 *Wu v. Pearson Educ., Inc.*, 277 F.R.D. 255, 270 (S.D.N.Y. 2011); *In re Farmers Ins.*
13 *Co.*, 738 F. Supp. 2d 1180, 1224 (W.D. Okla. 2010); *Koyle v. Level 3 Communs.,*
14 *Inc.*, 2005 U.S. Dist. LEXIS 47196 *6-7 (D. Idaho Dec. 1, 2005); *Fisher v. Va. Elec.*
15 *& Power Co.*, 217 F.R.D. 201, 220 (E.D. Va. 2003).  And it does not require mini-
16 trials, does not amount to individualized fact-finding, and is routinely done in most
17 successful class actions. *McCrary* at *22; *Ries v. Arizona Beverages USA LLC*, 287
18 F.R.D. 523, 535 (N.D. Cal. 2012)).  It is only when ownership is coupled with a
19 significant amount of other individualized issues that courts raise objections – and
20 the cases relied on by Sirius XM prove this point.

21 For example, in *Football Ass'n Premier League v. YouTube, Inc.*, 297 F.R.D.
22 64, 65 (S.D.N.Y. 2013), the putative class sued YouTube for contributory and
23 vicarious infringement relating to the posting of videos to YouTube by third-parties.
24 In order to prove their claims, the court held that each member of the proposed class
25 would need to establish for each video posted to YouTube ownership of a copyright
26 ***plus*** direct infringement of that copyright (*i.e.* a substantially similar unauthorized
27 and non-fair use reproduction or distribution by each direct infringer) ***plus***
28 contributory infringement by YouTube (*i.e.* proof of YouTube's knowledge of each

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

1 direct infringement and failure to act on that knowledge) or vicarious infringement
2 (*i.e.* proof that YouTube had the right and ability to control the direct infringement
3 and received a financial benefit directly attributable to that infringement).

4      Similarly, in *Vulcan Golf, LLC v. Google Inc.*, 254 F.R.D. 521, 530-31 (N.D.
5 Ill. 2008), the plaintiffs (on behalf of a class of ***millions***) asserted various trademark
6 claims against Google, arguing that it wrongly received advertising revenue by
7 knowingly registering, licensing and monetizing domain names containing the
8 plaintiffs' trademarks. In order to prove their claims, the court held that the class
9 members would each need to establish ownership of their mark ***plus*** proof that the
10 mark is distinctive or famous (which requires a multi-faceted, fact-specific inquiry
11 as to whether the mark is generic, descriptive and has achieved secondary meaning,
12 suggestive, arbitrary, or fanciful) ***plus*** proof that Google used a domain name that is
13 confusingly similar to the mark and was not a fair use ***plus*** proof that Google had a
14 bad faith intent to profit from the mark. *Id*. at 527-530.

15      Likewise, in *Kirkman v. N.C. R.R.*, 220 F.R.D. 49, 53 (M.D.N.C. 2003), the
16 trespass issues in that case not only required detailed title searches for the current
17 owners of every parcel of property ***in a 300 mile stretch of land*** but also an analysis
18 as to the type of interest held in each individual parcel of property by the alleged
19 trespasser (easement or fee) and the source of that interest (deed or governmental
20 act).  Finally, in *EQT Prod. Co. v. Adair*, 764 F.3d 347, 359 (4th Cir. 2014), the
21 proposed classes consisted of current ***and*** prior owners of rights to coalbed methane
22 gas estates – an issue that the court acknowledged hampered commercial
23 development in Virginia due to complicated issues involving tracts of land where
24 different persons own different types of rights and where severance deed transfers
25 did not typically mention or assign coalbed methane gas rights.  Even with these
26 difficult rights issues, the Fourth Circuit did not say that the various classes could
27 never be certified, only that the analysis was not thorough enough. *Id*. at 371.
28

1    Unable to find apposite cases, Sirius XM instead speculates in the abstract
2 about a number of irrelevant concepts.  For example, Sirius XM questions how the
3 *federal* concept of "work for hire" might affect ownership.  It does not as federal law
4 does not apply.  Sirius XM then dredges up the "Pushman Doctrine," which has
5 largely been repealed and even its short existence only applied to the transfer of
6 certain unpublished works.  Every work in this case according to Sirius XM was
7 published.  Sirius XM also questions whether transfers of certain unidentified pre-
8 1972 recordings conveyed public performance rights.  This is an odd argument for
9 Sirius XM to make as it admits away its entire defense that there is no performance
10 right.  In any event, a performance right is inherent in ownership, thus, looking for a
11 separate grant of that right would be an unproductive endeavor.  Equally unavailing
12 is Sirius XM's speculation about inchoate rights of termination.  Unexercised
13 termination rights are irrelevant.  Finally, Sirius XM speculates about intestacy and
14 uses as its examples two cases dealing with renewal rights under *federal* copyright
15 law which obviously have no relevance to pre-1972 recordings

16    **B.    Authorization Has Already Been Resolved Class Wide.**

17    In making the argument that authorization cannot be resolved on a class wide
18 basis, Sirius XM ignores one very important thing – its own testimony.  Sirius XM
19 testified that all pre-1972 recordings were in the public domain **(Dkt. 68 [Geller**
20 **Decl. ¶ 4, Ex. 3])**, that it did not have *any* licenses for any of them **(Dkt. 87**
21 **[Response to Undisputed Fact No. 24]); Dkt. 68 [Geller Decl. ¶ 21, Ex. 23])**, and
22 that it engaged in all of its conduct based on its legal analysis (which it would not
23 disclose) *and nothing else*.  **(Dkt. 68 [Geller Decl. ¶ 23, Ex. 25])**  In light of this
24 testimony, it is not surprising that Sirius XM only speculates about authorization in
25 its opposition and does not identify a single pre-1972 recording for which it actually
26 had authorization – something it would have knowledge of if it had ever occurred.
27    The bottom line is that authorization long ago ceased to be an issue in this
28 case with respect to any pre-1972 recording and cannot now be used to defeat class

9

1 certification – and neither can Sirius XM's argument that it has implied licenses.
2 That theory is not only barred by its testimony but is barred by the law. "Courts
3 have found implied licenses only in 'narrow' circumstances where one party 'created
4 a work at [the other's] request and handed it over, intending that [the other] copy and
5 distribute it.'" *A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001)
6 (citation omitted); *SHL Imaging, Inc. v. Artisan House, Inc.*, 117 F. Supp. 2d 301,
7 317 (S.D.N.Y. 2000); *Wilchombe v. TeeVee Toons*, Inc., 555 F.3d 949, 956 (11th
8 Cir. 2009). Sirius XM never explains how recordings that were created decades
9 before Sirius XM ever existed could possibly have been created at Sirius XM's
10 request, or how the authors of those recordings could possibly have created them
11 with the requisite "knowledge and intent" that they were going to be used by a
12 company that did not yet exist in connection with services that had not yet been
13 invented. The unilateral expectations of Sirius XM developed decades after the
14 works in question were created, and after it argued in opposition to summary
15 judgment that no licenses were necessary and that it had never paid for such
16 licenses, cannot give rise to an implied license. *Hewlett-Packard Co. v. Pitney*
17 *Bowes Corp.*, 1998 U.S. Dist. LEXIS 10936 *23 (D. Or. Mar. 23, 1998).
18    Sirius XM also cannot revive the authorization issue by speculating about
19 waiver and estoppel. As a factual matter, because the ***only*** factor considered by
20 Sirius XM in arriving at its decision not to license pre-1972 recordings was its own
21 legal analysis, Sirius XM is barred from arguing that there were other reasons, such
22 as the conduct or authorization of the owners of pre-1972 recordings that gives rise
23 to waiver and estoppel. In addition, waiver and estoppel cannot be established by
24 the failure to institute litigation sooner. An owner of a copyright has no obligation
25 to institute legal proceedings against any particular defendant, and any asserted
26 failure to do so is not an abandonment or relinquishment of rights. *Petrella v. MGM*,
27 134 S.Ct. 1962, 1976 (2014); *Capitol Records, Inc. v. Naxos of Am., Inc.*, 372 F.3d
28 471, 483 (2d Cir. 2004); *Paramount Pictures Corp. v. Carol Pub'g Grp.*, 11 F. Supp.

2d 329, 337 (S.D.N.Y. 1998). Finally, Sirius XM is barred from pursuing waiver or estoppel defenses because it blocked all inquiry into the legal advice that it admits influenced its state of mind. **(Dkt. 68 [Geller Decl. ¶ 23, Ex. 25]; Dkt. 112 [Supp. Geller Decl. ¶ 2, Ex. 27])** Thus, it cannot now testify as to any aspect of its state of mind. *United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991); *Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*, 552 F.3d 1033 (9th Cir. 2009).

### C. <u>Damages Are Not An Individual Issue.</u>

At class certification, the question of damages requires only common proof of Sirius XM's impact on the class members. *Thompson v. Clear Channel Communs., Inc.*, 247 F.R.D. 98, 135 (C.D. Cal. 2007). Flo & Eddie did just that with a damages model that is consistent with both Sirius XM's internal methodology for segregating its revenue attributable to pre-1972 recordings as well as California law which permits recovery of those revenues without a deduction for costs. **(Motion II(D))** As Mr. Wallace makes clear in his declaration and in his supplemental declaration, from an economic perspective, the model he uses is the most reliable way to calculate the highest award for the class as a whole. The same methodology used in that model also results in the highest allocation for each class member. Indeed, because the model is based on the number of plays or performances of each recording by Sirius XM, the model results in an amount which, when multiplied by the number of plays or performances of each recording, automatically allocates a proportional amount of the recovery to each class member.

Despite the fact that Sirius XM created its model, has relied on it internally for years in segregating its revenues, Sirius XM has now paid an expert (Keith Ugone) to help distance itself from it. To that end, Mr. Ugone contends that Mr. Wallace:

- Failed to deduct Sirius XM's costs from the revenue calculation. However, the measure of damages is gross revenues. *A&M Records, Inc. v. Heilman*, 75 Cal. App. 3d 554, 570 (1977); *Lone Ranger Television, Inc. v. Program Radio Corp.*, 740 F.2d 718, 726 (9th Cir. 1984).

11

- Failed to account for those situations where Sirius XM has an express or implied license. However, Sirius XM testified that it had no licenses.
- Failed to create a damages model for "lost royalty payments." However, that is not the measure of damages, nor should it be as it would create a perverse incentive to infringe.
- Failed to create a damages model that separately values each recording. However, Mr. Ugone ignores that the value of the recording is reflected in the number of times a recording is played or performed.
- Failed to recognize as an offset the "benefits" that the owners of pre-1972 recordings receive from their performance by Sirius XM. However, Mr. Ugone ignores that there are no offsets under California law. He also ignores that the President of Sirius XM testified that infringing conduct is not beneficial to the owners of pre-1972 recordings. **(SLD ¶ 4, Ex. 53)**

Sirius XM's other arguments fare no better than Mr. Ugone. Sirius XM wrongly claims that individual damages issues can defeat predominance even though the Ninth Circuit has long held otherwise. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013). Sirius XM cites a trio of cases standing for the proposition that plaintiffs cannot stipulate to a damages cap even though Flo & Eddie did not do this. Sirius XM argues that Flo & Eddie – who is seeking 100% of Sirius XM's revenues attributable to pre-1972 recordings – has abandoned other measures of class damages. These so-called other measures are not the measure of damages in California and would result in a much lower recovery.

Sirius XM's real problem with Flo & Eddie's damages model is that it lines up too well with the evidence in this case and the law. It relies on a segregation of revenues that Sirius XM prepares. It "assumes that every performance was unauthorized and every pre-1972 recording is owned by a class member" because Sirius XM already testified this to be the case. It "assume[s a] 'one-size-fits-all' approach not because of how Congress treats recordings, but because of how *Sirius*

12

1  *XM* does.  And because it mathematically ensures that all class members are
2  compensated based on the number of times their recordings have been played or
3  performed, it dispenses with any intra-class antagonism.

Dated:  May 6, 2015                    GRADSTEIN & MARZANO, P.C.


                                       By:      /s/ Harvey W. Geller
                                                Harvey W. Geller
                                             Attorneys for Plaintiff
                                             FLO & EDDIE, INC.

13