## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 13-5693 PSG (RZx) | Date | May 27, 2015 |
| Title | Flo & Eddie, Inc. v. Sirius XM Radio, Inc. | | |

Present: The Honorable   Philip S. Gutierrez, United States District Judge

| Wendy Hernandez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):   Order GRANTING Motion for Class Certification and APPOINTING Gradstein & Marzano P.C. as Class Counsel**

Before the Court is Plaintiff Flo & Eddie, Inc.'s ("Flo & Eddie") motion for class certification. Dkt. # 180. After considering the arguments in the moving, opposing, and reply papers, as well as those presented at a hearing on May 22, 2015, the Court GRANTS the motion for class certification and APPOINTS Gradstein & Marzano P.C. as class counsel.

I.   Background

Flo & Eddie is a corporation that owns the rights to the sound recordings of "The Turtles," a music group that recorded many of its songs in the 1960s. Dkt. # 66, *Plaintiff's Statement of Uncontroverted Facts* ("*PSUF*") ¶¶ 2, 4, 7. Although Flo & Eddie has exploited The Turtles' master recordings by licensing the rights to make and sell records and licensing the rights for use of the recordings in movies, TV shows, and commercials, it has never licensed any radio station, digital or otherwise, to publicly perform its recordings. Dkt. # 83, *Defendant's Statement of Genuine Issues of Material Fact* ("*DSGF*") ¶ 8. Defendant Sirius XM Radio Inc. ("Sirius XM") is a company that operates subscription-based satellite and internet radio services. *Id.* ¶ 11. It claims to be the largest radio broadcaster in the United States, measured by revenue, and has over 25.8 million paying subscribers. *Id.* ¶ 10. In exchange for monthly fees, Sirius XM subscribers can access the company's satellite broadcasts of commercial-free music on various channels and stream music over the internet. *Id.* ¶ 12-14.

As part of its satellite and internet radio services, Sirius XM performs pre-1972 recordings, including, until recently, pre-1972 recordings owned by Flo & Eddie. *Id.* ¶ 23. For example, its music offerings include channels devoted solely to playing "oldies" music recorded prior to 1972, such as "40s on 4," "50s on 5," and "60s on 6." *Id.* ¶ 13. Vital to this lawsuit, Sirius XM performs pre-1972 recordings without obtaining licenses from or paying royalties to owners of the recordings. *See id.* ¶ 24; Dkt. # 68 [*Geller Decl.* ¶ 21, Ex. 23 (excerpts from Frear

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 13-5693 PSG (RZx) | Date | May 27, 2015 |
|---|---|---|---|
| Title | Flo & Eddie, Inc. v. Sirius XM Radio, Inc. | | |

Depo.)].[1]  Sirius XM's decision to perform pre-1972 recordings without first seeking licenses or paying royalties was based on its interpretation of the applicable law.  *See* Dkt. # 68 [*Geller Decl.* ¶ 23, Ex. 25 (excerpts from Frear Depo.)].

On August 1, 2013, Flo & Eddie filed a class action complaint in Los Angeles Superior Court, defining its class as follows:

> The owners of sound recordings fixed prior to February 15, 1972 ("pre-1972 recordings") which have been reproduced, performed, distributed, or otherwise exploited by Defendant Sirius XM in California without a license or authorization to do so during the period from August 21, 2009 to the present.

Dkt. # 1, Ex. 1 ¶ 9; *see also Mot.* 2:15-21.  The complaint asserts four causes of action against Sirius XM: (1) violation of California Civil Code § 980(a)(2); (2) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"); (3) misappropriation; and (4) conversion. Dkt. # 1, Ex. 1.  Sirius XM subsequently removed the case to this Court.  Dkt. # 1.

The Court has already granted summary judgment as to liability in favor of Flo & Eddie in this case.  *See* Dkt. # 117.  Because Sirius XM argues that this pre-certification judgment precludes class certification, the Court will summarize the procedural history of this ruling in some detail.  A summary judgment ruling on liability preceded a class certification motion in this case because the Court adopted Sirius XM's preferred motion sequence for the litigation. On March 3, 2014, the parties submitted a Joint Case Management Statement in advance of their Scheduling Conference.  *See* Dkt. # 50 ["Joint Statement"].  In the Joint Statement, the parties disagreed as to how the case should proceed.  Flo & Eddie proposed a schedule in which class certification preceded "[f]iling of all motions for summary judgment," *id.* at 5-7, and Sirius XM proposed that the Court should allow Sirius XM to file an early summary judgment motion as to liability prior to Flo & Eddie's motion for class certification.  *Id.* at 7-8.

At the March 24, 2014 Scheduling Conference, Sirius XM explained that it preferred an early motion for summary judgment on liability because it suspected that the Court and the parties "may not need to reach damages or class certification issues at all if Sirius XM is correct on the issue of liability."  *See Supp. Lifschitz Decl.*, Ex. 56 at 4:10-21, 9:16-20.  Although Sirius

---

[1] Sirius XM now represents that, during the course of this litigation, it has "entered into many written licenses" with pre-1972 recording owners.  *See Opp.* 20:2 n.6 (citing *Blatter Decl.* ¶ 12); *see also Supp. Wallace Decl.* ¶ 5 ("Based on documents produced in April 2015, Sirius XM now claims that is has entered into approximately eight of those [direct] licenses.").  The Court addresses this development where relevant in its analysis.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 13-5693 PSG (RZx) | Date | May 27, 2015 |
|---|---|---|---|
| Title | Flo & Eddie, Inc. v. Sirius XM Radio, Inc. | | |

XM's representations in the Joint Statement and at the Scheduling Conference suggest that Sirius XM anticipated that it would be the party moving for a liability judgment, the Court's take-away from that conference was that Sirius XM wanted the Court to resolve liability first, regardless of which party moved for that decision. *See id.* at 11:19-22 (THE COURT: "So it seems to me from both perspectives before plaintiffs spend a lot of money on certification and damages issue, that the legal issue be resolved once and for all for or against"). After the Scheduling Conference, the Court issued an order bifurcating liability and damages discovery, anticipating an early summary judgment motion or motions as to liability. *See* Dkt. # 58.

Sirius XM's conduct after *Flo & Eddie* acted first and filed a motion for summary judgment comported with the Court's understanding that Sirius XM simply desired a liability judgment, without particular regard as to the vehicle for that ruling. A week after Flo & Eddie filed its motion (Dkt. # 65), Sirius XM filed an *ex parte* application complaining that Flo & Eddie had not formally participated in a Local Rule 7-3 conference or given Sirius XM sufficient notice of the motion and requesting an altered briefing schedule that extended deadlines and coordinated responsive briefing on the Flo & Eddie motion with Sirius XM's forthcoming cross-motion for summary judgment. *See* Dkt. # 75. Notably, Sirius XM did not object on the ground that it had not consented to *Flo & Eddie*, rather than Sirius XM, moving for summary judgment at this point in the case. *Id.* The Court denied the application, and briefing proceeded pursuant to the Local Rules.

Sirius XM never filed a cross-motion. In Sirius XM's opposition brief to Flo & Eddie's summary judgment, Sirius XM inserted a footnote at the beginning of its argument section noting that Flo & Eddie's motion incorrectly referenced class claims and that the timing of the motion "disregard[s] the 'one-way intervention doctrine[.]'" Dkt. # 95 at 5 n.1. At the hearing on Flo & Eddie's motion, Sirius XM explained that it did not file its own motion for summary judgment because it would have addressed the same issues and Sirius XM "didn't want to burden the Court at the end of the day with multiple sets of filings." *See Supp. Lifschitz Decl.*, Ex. 57, 6:6-17. On September 22, 2014, the Court granted summary judgment in favor of Flo & Eddie as to all causes of action. Dkt. # 117 ("Summary Judgment Order").

Subsequently, Sirius XM moved to certify the Summary Judgment Order for interlocutory appeal, *see* Dkt. # 123, and for the Court to reconsider the Summary Judgment Order, *see* Dkt. # 154. The Court denied both motions. Dkts. # 159, 175.

On March 16, 2015, Flo & Eddie filed this motion for class certification. *See* Dkt. # 180.

II.    <u>Legal Standard</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 13-5693 PSG (RZx) | Date | May 27, 2015 |
|---|---|---|---|
| Title | Flo & Eddie, Inc. v. Sirius XM Radio, Inc. | | |

A plaintiff seeking class certification must affirmatively demonstrate that it meets the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997). To satisfy Rule 23(a), the plaintiff must show that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). To certify a class under Rule 23(b)(3), as Flo & Eddie seeks to do here, *see Mot.* 7:5-8, the plaintiff must also show that: (5) "questions of law or fact common to class members predominate over any questions affecting only individual class members," and (6) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are often referred to, respectively, as numerosity, commonality, typicality, adequacy, predominance, and superiority.

The Court must conduct a "rigorous analysis" to confirm that the Rule 23 standard is met. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982); *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). As the Supreme Court has explained: "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (emphasis in original).

III.   Discussion

At the outset of its opposition brief, Sirius XM raises a threshold issue that it claims precludes Flo & Eddie from certifying a class at this stage of the litigation. *See Opp.* 3:24-5:9. Thus, before engaging in any analysis under Rule 23(a) and (b)(3), the Court addresses the applicability of the "one-way intervention rule." Because the Court concludes that Sirius XM has waived the protection of the rule in this case, the Court then examines the necessary certification requirements of Rule 23 in turn.

A.   One-Way Intervention Rule

Sirius XM contends that, because Flo & Eddie has already obtained a favorable ruling on the merits, certifying Flo & Eddie's class would violate the one-way intervention rule. *See Opp.* 4:17-23. While the sequence of the motions in this case does evoke the doctrine, the Court concludes that the rule does not bar certification because Sirius XM consented to Flo & Eddie's early summary judgment motion, thus waiving the protections of the one-way intervention rule.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 13-5693 PSG (RZx) | Date | May 27, 2015 |
|---|---|---|---|
| Title | Flo & Eddie, Inc. v. Sirius XM Radio, Inc. | | |

In 1966, Rule 23 governing class actions underwent "extensive amendment" and the Supreme Court has explained that these amendments were designed, in part, specifically to preclude "one-way intervention," a "perceived defect in the former Rule[.]" *See Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 545, 547 (1974). One-way intervention is "the intervention of a plaintiff in a class action after an adjudication favoring the class ha[s] taken place." *Schwarzschild v. Tse*, 69 F.3d 293, 295 (9th Cir. 1995). "Such intervention is termed 'one way' because the plaintiff would not otherwise be bound by an adjudication in favor of the defendant" occurring at that point in the litigation. *Id.* (citing *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 759 (3d Cir. 1974) (en banc)). If defendants obtain summary judgment prior to class certification, "defendants have prevailed only against the named plaintiffs" – "[t]he judgment will not be res judicata as to other individual plaintiffs or other members of any class that may be certified." *Wright v. Schock*, 742 F.2d 541, 542, 544 (9th Cir. 1984). Likewise, plaintiffs' pre-certification summary judgment only binds the parties at bar, *unless* the court subsequently allows certification. A system that permits one-way intervention "allow[s] members of a Rule 23(b)(3) class the option of joining an action as plaintiffs after a favorable judgment on the merits while avoiding the res judicata effect of an adverse decision by not joining if the named plaintiffs have been unsuccessful." *Postow v. OBA Fed. Sav. & Loan Ass'n*, 627 F.2d 1370, 1381 (D.C. Cir. 1980).

The one-way intervention rule exists to protect defendants from two ills –continued exposure to lawsuits even after a favorable judgment and the risk imbalance in a system that allows non-mutual estoppel. *See Schwarzschild*, 69 F.3d at 297 ("'the strongest argument for [forbidding] post-judgment class certification is that pre-judgment certification and notice to the class are necessary to protect the defendant from future suits by potential members of the class'") (quoting *Postow*, 627 F.2d at 1382 (internal quotation omitted)); *Am. Pipe*, 414 U.S. at 547 (one-way intervention "aroused considerable criticism on the ground that it was unfair to allow members of a class to benefit from a favorable judgment without subjecting themselves to the binding effect of an unfavorable one"). Thus, under the current version of Rule 23, "district courts generally do not grant summary judgment on the merits of a class action until the class has been properly certified and notified." *Schwarzschild*, 69 F.3d at 295.

However, because the one-way intervention rule is designed to protect defendants, most courts recognize that defendants can waive its protections. *See Wright*, 742 F.2d at 544 (holding that the "proper approach" to the one-way intervention rule is to permit "a defendant [to] waive the protection afforded by an early ruling on class certification"); *see also Gessele v. Jack in the Box, Inc.*, No. 3:10-CV-960-ST, 2012 WL 3686274, at *2 (D. Or. Aug. 24, 2012) ("only the defendant, and not the plaintiffs, can waive the right to class certification prior to dispositive motions"). In the Ninth Circuit, it is uncontroversial for courts to permit defendants to move for a judgment on the merits prior to class certification because, in doing so, defendants

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 13-5693 PSG (RZx) | Date | May 27, 2015 |
|---|---|---|---|
| Title | Flo & Eddie, Inc. v. Sirius XM Radio, Inc. | | |

affirmatively accept that the resulting judgment will only bind the parties at bar and will leave defendants vulnerable to additional lawsuits. *See Wright*, 742 F.2d at 544 ("[w]here the defendant assumes the risk that summary judgment in his favor will have only stare decisis effect on the members of the putative class, it is within the discretion of the district court to rule on the summary judgment motion first").

But an early merits judgment in favor of *plaintiff*, followed by certification, presents a different issue. *See Postow*, 627 F.2d at 1380-81 ("the question of the propriety of class certification after a judgment on the merits of a class is a difficult one"). If the court allows post-judgment certification, absent class members can opt-in to a risk-free predetermined judgment, a situation that implicates the imbalance of non-mutual estoppel rather than defendants' exposure to multiple suits. The Ninth Circuit has not weighed in on the permissibility of class certification after a judgment in favor of plaintiffs. *See Schwarzschild*, 69 F.3d at 297 n.4 (the D.C. Circuit has "concluded that 'equitable reasons' may allow post-judgment certification and notice in cases in which the *plaintiffs* have succeeded on summary judgment in certain circumstances[,]" but "[w]e need not address the merits of that holding here and reserve judgment on that question") (emphasis in original) (citing *Postow*, 627 F.2d at 1383); *Weir v. Joly*, No. CV-10-898-HZ, 2011 WL 6043024, at *1 (D. Or. Dec. 2, 2011) ("the *Schwarzschild* court . . . reserved ruling on the issue before [this court] – whether a *plaintiff* must certify a class before moving for summary judgment") (emphasis in original).

Without clear direction from the Ninth Circuit, the Court concludes that the correct approach to plaintiff-side post-judgment certification is to analyze whether defendant consented to plaintiff's motion, thus waiving the protections of the one-way intervention rule. *See, e.g., Oglesby v. Rotche*, No. 93 C 4183, 1994 WL 142867, at *1, 3-5 (N.D. Ill. Apr. 18, 1994) (recognizing that certification after granting Plaintiff's motion for summary judgment is permissible where "Defendants expressly waived their right to object to certification of the Plaintiffs' class in exchange for an early ruling on liability"). If defendant consented to the timing of plaintiff's motion, defendant accepted the risk of being bound to future class members if the court ruled in favor of plaintiff and cannot subsequently, upon an unfavorable ruling, invoke the one-way intervention rule to preclude certification.

In this case, the Court understood Sirius XM to be fully in favor of early summary judgment on liability, without distinction as to whether Sirius XM, Flo & Eddie, or both parties brought the substantive motions. Sirius XM simply wanted this Court to issue a ruling on the merits of the case before proceeding any further because it was confident that a liability ruling would resolve the case (that the Court would rule in favor of Sirius XM). Sirius XM represented as much to Flo & Eddie when planning the course of litigation, stating the following in a November 21, 2013 letter memorializing the parties' Rule 26(f) conference: "We proposed a

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 13-5693 PSG (RZx) | Date | May 27, 2015 |
|---|---|---|---|
| Title | Flo & Eddie, Inc. v. Sirius XM Radio, Inc. | | |

timeline for discovery in both actions [California and New York] and deferral of class certification briefing . . . until after a determination on *any* motions for summary judgment on issues of liability."  *See* Dkt. # 48-1, Ex. 3 (emphasis added).

Sirius XM's conduct following the filing of Flo & Eddie's motion was consistent with the Court's understanding of Sirius XM's position and distinguishes this case from other district court decisions finding no waiver of the one-way intervention rule and precluding plaintiffs' pre-certification motions accordingly.  *See Gessele*, 2012 WL 3686274; *Weir*, 2011 WL 6043024. After Flo & Eddie filed its motion, Sirius XM did not object to the fact that the motion was filed. While Sirius XM did submit an *ex parte* application complaining about many aspects of *how* Flo & Eddie filed its motion, such as without formally meeting and conferring beforehand, committing administrative filing errors, and filing such that Sirius XM's opposition brief was due just after a holiday weekend, Sirius XM did not invoke the one-way intervention doctrine and object based on the pre-certification timing of the motion, contending that it had not consented to this sequencing of the case.  *See* Dkt. # 75.  Sirius XM did not object because it *had* consented to this sequencing.  *Cf. Gessele*, 2012 WL 3686274, at *1-3 (finding no waiver where, although defendant initially agreed to a briefing schedule permitting early summary judgments motions, defendant subsequently filed a "Motion to Revise Case Schedule to require class certification before any substantive rulings in the case" and did so before the court issued any substantive rulings); *Weir*, 2011 WL 6043024, at *1-2 (concluding that agreement to a briefing schedule, by itself, is not waiver where defendants contested plaintiff's early summary judgment motion on one-way intervention grounds in an opposition brief in response to a "motion to determine the status of class certification" prior to the court issuing any substantive rulings).

If Sirius XM had, like the plaintiffs in *Gessele* and *Weir*, genuinely objected to Flo & Eddie's early summary judgment motion prior to the Court's ruling on it, the Court may have deemed Sirius XM's representations in its letter to Flo & Eddie's counsel, in the Joint Report, and at the Scheduling Conference insufficient to constitute waiver of the one-way intervention rule.  Sirius XM's mentioning the doctrine in a footnote in its opposition brief to summary judgment does not override the other statements and conduct indicative of consenting to Flo & Eddie's motion, particularly Sirius XM's failure to mention the doctrine at the hearing on the motion and its statement that it decided to use the motion to make its own arguments.  *See* Dkt. # 95 at 5 n.1; *Supp. Lifschitz Decl.*, Ex. 57, 6:6-17; *see also Estate of Saunders v. C.I.R.*, 745 F.3d 953, 962 n.8 (9th Cir. 2014) ("Arguments raised only in footnotes…are generally deemed waived."); *City of Emeryville v. Robinson*, 621 F.3d 1251, 1262 n.10 (9th Cir. 2010) (deeming an issue waived where the party "fail[ed] to address the issue in its opening brief except in a footnote").  Because Sirius XM requested early summary judgment briefing, failed to raise a firm pre-judgment objection to Flo & Eddie's motion, and actually decided to adopt Flo & Eddie's motion as its own early liability decision vehicle, the Court concludes that Sirius XM

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 13-5693 PSG (RZx) | Date | May 27, 2015 |
|---|---|---|---|
| Title | Flo & Eddie, Inc. v. Sirius XM Radio, Inc. | | |

consented to Flo & Eddie's bringing a motion for summary judgment prior to certifying a class. As a result of Sirius XM's waiver, the Court holds that the one-way intervention rule does not preclude certification of Flo & Eddie's class.

    B.    <u>Ascertainability</u>

    Entering the merits of the class certification analysis, Sirius XM contends that Flo & Eddie's class is not "ascertainable" and thus cannot be certified. *See Opp.* 5:19-8:5. Most courts addressing ascertainability describe the concept as an additional or implied requirement outside of Rule 23. *See, e.g., Doyle v. Chrysler Grp. LLC*, No. SACV 13-00620 JVS, 2014 WL 7690155, at *5 (C.D. Cal. Oct. 9, 2014) ("In addition to more precisely articulated provisions of Rule 23(a) and (b), there is the implied prerequisite that the class be sufficiently definite and ascertainable.") (citing *Xavier v. Philip Morris USA Inc.*, 787 F.Supp.2d 1075, 1089-90 (N.D. Cal. 2011)); *McCrary v. Elations Co., LLC*, No. EDCV 13-00242 JGB OP, 2014 WL 1779243, at *3 (C.D. Cal. Jan. 13, 2014) ("Although not mentioned in Rule 23(a), the moving party must also demonstrate that the class is ascertainable.") (citing *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 521 (C.D. Cal. 2012)).[2] In this Court's view, the proposed class is readily ascertainable.

    Courts in the Central District counsel that "[a]n ascertainable class exists if it can be identified 'by reference to objective criteria.'" *Steven Ades & Hart Woolery v. Omni Hotels Mgmt. Corp.*, No. 2:13-CV-02468-CAS (MANx), 2014 WL 4627271, at *6 (C.D. Cal. Sept. 8, 2014) (quoting *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 593 (C.D. Cal. 2008)). "In [the Ninth] Circuit, it is enough that the class definition describes 'a set of common characteristics sufficient to allow' a prospective plaintiff to 'identify himself or herself as having a right to recover based on the description.'" *See McCrary*, 2014 WL 1779243, at *8 (quoting *Moreno v. AutoZone, Inc.*, 251 F.R.D. 417, 421 (N.D. Cal. 2008) (citation and internal quotations omitted)). While some courts discuss ascertainability from the perspective of the court, rather than that of a prospective plaintiff, the choice of phraseology does not appear to affect the analysis. *See, e.g., In re Toys R Us-Delaware, Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 300 F.R.D. 347, 366-67 (C.D. Cal. 2013) ("A class is sufficiently definite and ascertainable if it is administratively feasible for the court to determine whether a particular individual is a member.") (internal quotation omitted); *see also McCrary*, 2014 WL 1779243, at *7-8 (reciting the standard from the perspective of the court then explaining "it is enough that the class definition…allow[s] a prospective plaintiff to identify himself or herself") (internal quotation omitted).

---

[2] Some courts address ascertainability during analysis of the numerosity requirement. *See, e.g., Tchoboian v. Parking Concepts, Inc.*, No. SACV 09-422 JVS (ANX), 2009 WL 2169883, at *4-5 (C.D. Cal. July 16, 2009).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 13-5693 PSG (RZx) | Date | May 27, 2015 |
|---|---|---|---|
| Title | Flo & Eddie, Inc. v. Sirius XM Radio, Inc. | | |

The "purpose of the implied ascertainability requirement [is] the need for certainty as to whom the resulting class judgment is binding and preclusive[.]" *See Walker v. Life Ins. Co. of the Sw.*, No. CV 10-9198 JVS RNBX, 2012 WL 7170602, at \*22 (C.D. Cal. Nov. 9, 2012). "'Ascertainability is needed for properly enforcing the preclusive effect of final judgment. The class definition must be clear in its applicability so that it will be clear later on whose rights are merged into the judgment, that is, who gets the benefit of any relief and who gets the burden of any loss . . . Indeed, courts of appeal have found class certification to be inappropriate where ascertaining class membership would require unmanageable individualized inquiry.'" *See Doyle*, 2014 WL 7690155, at \*5 (quoting *Xavier,* 787 F.Supp.2d at 1089).

Flo & Eddie defines its proposed class by reference to the following criteria: (1) ownership of pre-1972 sound recordings (2) that were performed by Sirius XM on or after August 21, 2009, (3) without authorization. *See Mot.* 2:15-21. Defining class membership in terms of ownership of a particular item is generally sufficiently objective and specific. *See, e.g., Shein v. Canon U.S.A., Inc.*, No. CV 08-7323 CAS EX, 2010 WL 3170788, at \*6 n.13 (C.D. Cal. Aug. 10, 2010) ("the identity of class members is ascertainable by reference to an objective criteria – namely ownership of certain Canon brand printers"); *Parkinson*, 258 F.R.D. at 593-94 ("potential class members will be able to objectively determine whether they are a 'current [or] former owner[] or lessee[] of a manual-transmission 2003 Tiburon GT, produced on or before April 1, 2003, who paid for a replacement [clutch] . . . within the applicable warranty period'"); *cf. Tidenberg v. Bidz.com*, No. CV 08-5553 PSG (FMOx), 2010 WL 135580, at \*2 (C.D. Cal. Jan. 7, 2010) (defining a class by reference to winners of Bidz.com auctions in which "shill bidders" participated was not objectively ascertainable because "evidence of shill bidding by Defendant is entirely circumstantial" and depends on scouring bidding histories for "the supposed telltale signs of a shill bidder"); *Adashunas v. Negley,* 626 F.2d 600, 603-04 (7th Cir. 1980) (a class of "children entitled to a public education who have learning disabilities and 'who are not properly identified and/or who are not receiving' special education" is not ascertainable because the class was "highly diverse" and required a "'battery' of tests" to identify).

Sirius XM challenges ascertainability on two fronts: ownership and authorization. *See Opp.* 5:19-8:5. Sirius XM claims these characteristics are "individualized merits issues" that the Court cannot discern without "holding hundreds of individual hearings and making hundreds of individual merits rulings." *Id.* 6:11-13. Regarding ownership, Sirius XM argues that because pre-1972 recordings lack a corresponding federal registration scheme, Sirius XM does not maintain a reliable record of ownership, and the ownership information Flo & Eddie received from the vendor "SoundExchange" was non-exhaustive, Flo & Eddie "has not proposed any reasonable means by which the Court could identify owners of pre-1972 recordings." *Id.* 6:14-7:10. Sirius XM also broadly states that there is "no industry repository for ownership information" for these early recordings. *Id.* 6:17-21. As to authorization, Sirius XM claims that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 13-5693 PSG (RZx) | Date | May 27, 2015 |
|---|---|---|---|
| Title | Flo & Eddie, Inc. v. Sirius XM Radio, Inc. | | |

there is no administratively feasible way to determine on a class-wide basis whether the numerous owners authorized Sirius XM to perform their recordings. *Id.* 7:23-8:5.

First, Flo & Eddie refutes Sirius XM's characterization of the resources available for identifying pre-1972 recording owners. *Reply* 5:25-6:21. It is significant to note that, despite the fact that pre-1972 recording owners may not be presently exploiting their *public performance* rights in California, many owners surely exploit their other rights in the same pre-1972 recordings, such as the rights to make and sell records or to use the recordings in movies, TV shows, and commercials. *See, e.g., DSGF* ¶ 8 (Flo & Eddie have actively exploited these other rights in their pre-1972 recordings). Thus, Flo & Eddie explains that there is a need for, and thus the existence of, "music licensing service[s] who regularly identify owners of recordings as part of their services[.]" *Reply* 6:19-21. Beyond SoundExchange, Flo & Eddie lists Evan M. Greenspan, Inc. and Music Reports, Inc. ("MRI"), a leading provider of "music rights administration services" with a "song-by-song" ownership database covering "virtually all of the commercially significant music in existence," as licensing services that can assist in identifying owners of the pre-1972 recordings at issue. *Id.* 6:1-21 (citing *Supp. Liftschitz Decl.* ¶¶ 3, 6, 9-10, Ex. 55, 58-60). At this point, adequately demonstrating that class members *can* be identified is sufficient for ascertainability because, "'[i]n the Ninth Circuit[,] there is no requirement that the identity of the class members . . . be known at the time of certification.'" *Steven Ades*, 2014 WL 4627271, at *7 (quoting *Werdebaugh v. Blue Diamond Growers,* No. 12–CV–2724–LHK, 2014 WL 2191901, at *11 (N.D. Cal. May 23, 2014)).

Moreover, even without these third-party licensing resources, courts in the Central District permit class members to self-identify under reliable circumstances. *See Galvan v. KDI Distribuation Inc.,* SACV 08–0999–JVS ANX, 2011 WL 5116585, at *3-5 (C.D. Cal. Oct. 25, 2011); *McCrary*, 2014 WL 1779243, at 7-9.[3] In *Galvan*, the court certified a class of purchasers of pre-paid calling cards over defendant's objection that 'most customers discard calling cards after use' and 'customers likely will not remember where they purchased a card, and likewise, [defendant] does not know to whom these cards were sold.'" *Galvan*, 2011 WL 5116585 at *3. Because the defendant could identify the relevant retailers, the court explained that this narrowing information would enable prospective class members to discern whether they purchased the subject cards, even in a market crowded with similar pre-paid calling card options.

---

[3] In response to Sirius XM's reliance on two Third Circuit cases on ascertainability, Flo & Eddie highlights that the Third Circuit recently clarified that, contrary to the manner in which some of its cases have been interpreted, ascertainability does not demand documentary proof of each membership criterion. *See Byrd v. Aaron's Inc.*, 2015 WL 1727613, at *4 (3d Cir. Apr. 16, 2015) (while plaintiffs must show that class members can be identified, "there is no records requirement"); *cf. Opp.* 5:25-28 ("A proposed class is not ascertainable if identifying class members would require . . . anything beyond a ministerial review of readily accessible records").

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 13-5693 PSG (RZx) | Date | May 27, 2015 |
|---|---|---|---|
| Title | Flo & Eddie, Inc. v. Sirius XM Radio, Inc. | | |

*Id.* at *4.  Likewise, in *McCrary*, the court focused on "reduc[ing] consumer confusion about class membership" and held that the absence of sales records did not render a consumer class unascertainable when defendant had a list of retailers that sold the consumer good in the defined time period.  *McCrary*, 2014 WL 1779243, at *8.  The reliability of the self-identified class was further enhanced in *McCrary* because the relevant product representation at issue in the case "appeared on the actual packages of the products purchased, [so] there [wa]s no concern that the class include[d] individuals who were not exposed to the misrepresentation."  *Id.* at *7, 9.

In this case, class members can reliably identify themselves because Sirius XM has a record of the individual pre-1972 recordings that it has performed since August 21, 2009 (the "Pre-1972 Playlist").  *See Reply* 6:4-7.  Because ownership and membership in the class is defined by reference to such a specific objective reference point – the named recordings themselves – the risk of confusion or accidental claiming of ownership is low.  As explained above, ownership in a pre-1972 recording has value outside of the exclusive public performance right; therefore, owners are likely aware of their ownership.  On this record, owners of the listed recordings can easily self-identify as such.  Here, the "memory jog" is far more precise than a list of stores where the class members could have bought the subject item among various similar options; it is a list of the specific recordings that the members actually own.  Accordingly, Flo & Eddie's alternative or cumulative proposal for identification of class members – "publicizing on a website the list of pre-1972 recordings that were performed by Sirius XM and setting up a claiming process" – is also a viable method.  *See id.* 2:8-10.

To the extent that Sirius XM's concern is actually about the substantiation of ownership and unauthorized use, the ascertainability requirement concerns identification rather than verification.  *See In re Nucoa Real Margarine Litig.*, No. CV 10-927 MMM (AJWx), 2012 U.S. Dist. LEXIS 189901, at *18 (C.D. June 12, 2012) ("[A]lthough class members may have difficulty establishing that they are purchasers of [the product], the class definition itself is clearly defined.  As a result, the ascertainability requirement is met."); *McCrary*, 2014 WL 1779243, at *7 ("Essentially, Defendant's concern is that class members do not have actual proof that they belong in the class.  If Defendant's argument were correct, there would be no such thing as a consumer class action.") (internal quotation omitted).

Moreover, regarding the authorization criterion in the class definition, owners will have personal knowledge as to whether they authorized or licensed Sirius XM to perform their recordings over the past six years.  In fact, because Sirius XM only began pursuing authorization from pre-1972 recording owners in the past few months, *see Supp. Wallace Decl.* ¶ 5, prospective members will have very recent memories of relevant dealings with Sirius XM on this issue.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 13-5693 PSG (RZx) | Date | May 27, 2015 |
|---|---|---|---|
| Title | Flo & Eddie, Inc. v. Sirius XM Radio, Inc. | | |

Accordingly, the Court concludes that Flo & Eddie's proposed class is sufficiently ascertainable and proceeds to Rule 23 analysis.

C.    Rule 23(a)

Sirius XM does not contest most of the Rule 23(a) requirements, but briefly challenges the commonality of the proposed class and alludes to problems with Flo & Eddie's adequacy to represent the class. *See Opp.* 8:6-9:9, 21:19-22:2. The thrust of Sirius XM's opposition is grounded in its predominance and superiority contentions. *Id.* 9:10-23:20. First, the Court will step through the numerosity, typicality, commonality, and adequacy requirements in turn.

    i.    *Numerosity*

Under Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Although there is no magic number that breathes life into a class, when the number of members exceeds 40, the numerosity requirement is generally met. *See In re Cooper Co. Inc., Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009); *see also Jordan v. Cnty. of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982). Here, Flo & Eddie represents that the proposed class contains "hundreds (if not thousands) of different owners of pre-1972 recordings" and preliminarily, through SoundExchange's music ownership database service, Flo & Eddie has identified 273 separate owners of pre-1972 recordings that Sirius XM has performed. *See Mot.* 8:10-9:4.[4] Sirius XM does not contest numerosity. *See generally Opp.* On this showing, the Court concludes Flo & Eddie's proposed class satisfies Rule 23(a)(1)'s numerosity requirement.

    ii.    *Typicality*

Rule 23(a)(3) requires a named plaintiff's claims to be typical of the claims of the class. Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; [but] they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). The danger that this requirement is meant to guard against is whether "absent class members will suffer if their representative is preoccupied with [claims or defenses] unique to it." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (internal quotations and citations omitted). To meet the typicality requirement, plaintiffs must therefore establish that other class members have the same or similar injury as them; the action is based on conduct that is not unique to them as the named plaintiffs; and other class members have been injured by the same

---

[4] Sirius XM's position that 41 of those 273 owners appear to be defunct or inactive does not change the numerosity result. *See Opp.* 7:7:4-6 (citing *Goldman Decl.* ¶¶ 30-31).

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 13-5693 PSG (RZx) | | Date | May 27, 2015 |
|---|---|---|---|---|
| Title | Flo & Eddie, Inc. v. Sirius XM Radio, Inc. | | | |

course of conduct. *See id.*; *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).

Sirius XM also does not oppose class certification on typicality grounds. *See generally Opp.* Flo & Eddie and the members of the proposed class will each claim injury based on Sirius XM's performing their pre-1972 recordings without authorization. Sirius XM's unauthorized performance of Flo & Eddie's recordings, the wrongful conduct at issue in this litigation, is not unique to Flo & Eddie; rather, it is consistent with Sirius XM's general practice as to pre-1972 recordings. Thus, Flo & Eddie easily satisfies Rule 23(a)(3)'s typicality requirement because its claimed injury is identical to that of each member of the proposed class.

    *iii.*  *Commonality*

Under Rule 23(a)(2), Plaintiffs must show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The class claims must depend on a common contention that "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 131 S. Ct. at 2551. "What matters to class certification . . . is not the raising of common 'questions' – even in droves – but rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* But "[t]he commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3)." *Hanlon*, 150 F.3d at 1019. For the purposes of Rule 23(a)(2) commonality analysis, "even a single common question" satisfies the requirement. *See Wal-Mart*, 131 S. Ct. at 2556 (internal quotation omitted); *Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 957 (9th Cir. 2013) (citing *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012)).

Here, Sirius XM states that it opposes commonality while simultaneously admitting the existence of at least one common question – "[t]he only common question in this case is whether California law recognizes a performance right." *See Opp.* 2:7-8. Sirius XM urges the Court to ignore this commonality because it has already decided the question, but does not support this urging with any legal authority. *Id.* 2:8-9, 8:20-26. Moreover, this case presents additional factual and legal analytical parallels among class members that the Court can address and resolve as to the entire class members in "one stroke" because class members argue that Sirius XM engaged in the same exploitative conduct against them (broadcasting and streaming their pre-1972 recording without authorization). Further, Sirius XM admits that, prior to this lawsuit, it did not seek authorization from or pay any pre-1972 owners to perform their recordings.

In light of the shared factual circumstances and legal theory of harm, the class easily satisfies the commonality requirement.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 13-5693 PSG (RZx) | Date | May 27, 2015 |
|---|---|---|---|
| Title | Flo & Eddie, Inc. v. Sirius XM Radio, Inc. | | |

      *iv.*    *Adequacy*

     Rule 23(a)(4) requires plaintiffs to show that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is adequate when the class representative and counsel do not have any conflicts of interest with other class members, and the representative plaintiff and counsel will prosecute the action vigorously on behalf of the class. *See, e.g.*, *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012).

     Sirius XM does not contest the adequacy of Flo & Eddie's counsel to protect the interests of the proposed class and counsel's extensive experience with intellectual property, music rights, and class action matters as well as its vigorous advocacy in this case thus far has demonstrated that counsel will adequately protect the interests of the proposed class.

     While Sirius XM does not address the adequacy of Flo & Eddie to represent the class under a separate heading in its opposition brief, in its arguments against predominance by way of damages, Sirius XM contends that Flo & Eddie's damages model may present intra-class conflicts that render Flo & Eddie's representation of the class inadequate. *See Opp.* 21:19-22:2, 22:16-23:20. Because Sirius XM raises its adequacy arguments in the predominance section, the Court addresses these issues in the predominance analysis and ultimately concludes that Flo & Eddie's approach to damages is consistent with fair and adequate representation of the proposed class.

    D.    <u>Rule 23(b)(3)</u>

     Flo & Eddie seeks to certify its class under Rule 23(b)(3). *See Mot.* 16:18-23:2. Certification of a Rule 23(b)(3) class is appropriate when "questions of law and fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

     *i.*    *Predominance*

     The predominance test gauges "whether proposed classes are sufficiently cohesive to warrant adjudication by representation . . . [and] focuses on the relationship between the common and individual issues. 'When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis.'" *Hanlon*, 150 F.3d at 1022 (citation omitted). "[P]redominance does not require

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 13-5693 PSG (RZx) | Date | May 27, 2015 |
|----------|-------------------|------|--------------|
| Title | Flo & Eddie, Inc. v. Sirius XM Radio, Inc. | | |

plaintiffs to prove that every element of a claim is subject to class wide proof: they need only show that common questions predominate over questions affecting only individual class members." *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2013 WL 5391159, at *2 (N.D. Cal. Sept. 24, 2013) (citing *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013)).

Sirius XM challenges predominance by arguing that three issues – ownership, authorization, and damages – necessarily entail individualized inquiries that collectively overwhelm the common issues in the case.

     1.     Ownership

Ownership of the subject recordings in this case is an individual issue. Each class member must demonstrate ownership over a specific recording from the Pre-1972 Playlist, and a finding as to one class member does not affect a finding as to another member. However, the Court does not agree with Sirius XM that class members' establishing ownership will require time-consuming one-by-one adjudication of complex ownership disputes. *See Opp.* 10:13-16:15.

Sirius XM contends that establishing ownership of pre-1972 recordings will be difficult because there is no federal registration system creating a presumption of ownership, documentary proof of ownership of these older recordings is often incomplete or missing, and the legal doctrines governing sound recording ownership are "thorny" and differ from state-to-state. *Id.*

First, the Court pauses to consider the likelihood that ownership will need to be contentiously "adjudicated" at all. As explained above, owners of the recordings at issue in this case are likely already exploiting other rights attendant to their ownership; thus, they are aware of and have established that ownership in other contexts. Flo & Eddie proposes that, after identifying the relevant owners of pre-1972 recordings via third-party licensing databases, a self-claiming process, or both, class members will establish ownership by affidavit or declaration. *See Reply* 6:4-7:8. Flo & Eddie notes that written confirmations backed by appropriate warranties and representations affirming ownership is a verification method that Sirius XM's own expert endorsed and that Sirius XM itself uses when entering into direct licenses for recordings. *Id.* 7:1-6 (citing *Supp. Lifschitz Decl.* ¶¶ 3, 11, Ex. 52, 61). This process for establishing ownership is individualized, as each class member must attest to ownership, but it is just one element of the claims at issue in this case, the process is streamlined, and it is not the sort of inquiry that would predominate common issues of fact and law. *See In re Napster, Inc. Copyright Litig.*, Nos. C MDL-00-1369 MHP, C 04-1671 MHP, 2005 WL 1287611, at *7 (N.D.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 13-5693 PSG (RZx) | Date | May 27, 2015 |
|---|---|---|---|
| Title | Flo & Eddie, Inc. v. Sirius XM Radio, Inc. | | |

Cal. June 1, 2005) (finding predominance of common issues because "while it is true that proof of ownership, registration, and actual damages ultimately requires a work-by-work inquiry, viewing these determinations as purely 'individual issues' ignores the fact that the claims of every member of the class are uniformly premised upon the uploading or downloading of a copyrighted work by Napster users [and . . . defendant's] involvement in the operation of the Napster network").

    The contentious ownership inquiries described by Sirius XM could only arise if a prospective class member's ownership is actually contested, either by Sirius XM or by another prospective member.  The Court suspects that challenges by Sirius XM will be rare because Sirius XM itself does not own recording rights or track pre-1972 recording ownership rights. *See Blatter Decl.* ¶ 13 ("Sirius XM does not maintain a database identifying the owners of the pre-1972 sound recordings that it performs.  Because Sirius XM does not have to pay royalties to perform pre-1972 sound recordings, Sirius XM has never had a business reason to spend the time and money required to identify all the legal owners of those recordings.").  Based on this lack of knowledge, Sirius XM would not have an immediate reason to challenge class members' declarations of ownership.  In the event that multiple persons or entities claim ownership of the same pre-1972 recordings, some evidentiary showing will be necessary to determine the rightful owner, but Sirius XM has not demonstrated with evidence that these occurrences will be common or that the verification process will be drawn-out.[5]

    It is telling of the strained nature of Sirius XM's attack that it resorts entirely to out-of-circuit cases to support its argument that "ownership issues are inherently individualized, and

---

[5] Sirius XM notes that resolution of an ownership dispute might involve the application of out-of-state laws because the law of the state of the copyright owner's domicile controls the ownership inquiry.  *See Opp.* 13:16-20 (citing *Mention v. Gessell*, 714 F.2d 87 (9th Cir. 1983)); *see also Fantasy, Inc. v. La Face Records*, No. C 96-4384 SC ENE, 1997 WL 627544, at *3 (N.D. Cal. Aug. 14, 1997).  Sirius XM contends that "[t]he Ninth Circuit has made clear that certification is improper where, as here, the court would be required to apply the laws of multiple states."  *Opp.* 16:7-9 (citing *Mazza*, 666 F.3d at 594).  But in *Mazza* and the other cited authority, the actual causes of action themselves (i.e., misappropriation or conversion) required the application of different laws depending on the specific class member, not an element of the cause of action.  *Mazza*, 666 F.3d at 594 (vacating certification after ruling that each member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the consumer transaction took place); *Zinser*, 253 F.3d at 1189-90 (holding that to the extent the negligence laws of forty-eight states needed to be consulted in a products liability class action, there was no manageable trial plan to deal with the individualized issues and variances in state law).  Further, courts do certify classes although the action may require some application of differing state laws.  *See In re Abbott Laboratories Norvir Anti-Trust Litig.*, Nos. C 04-1511 CW, C 04-4203 CW, 2007 WL 1689899, at *9 (N.D. Cal. June 11, 2007).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 13-5693 PSG (RZx) | Date | May 27, 2015 |
|---|---|---|---|
| Title | Flo & Eddie, Inc. v. Sirius XM Radio, Inc. | | |

[courts] consistently deny certification on that ground." *See Opp.* 10:22-11:13 (citing *Football Ass'n Premier League Ltd. v. YouTube, Inc.*, 297 F.R.D. 64 (S.D.N.Y. 2013); *Vulcan Golf, LLC v. Google Inc.*, 254 F.R.D. 521 (N.D. Ill. 2008); *EQT Prods. Co. v. Adair*, 764 F.3d 347 (4th Cir. 2014); *Chambers v. Time Warner*, No. 00 Civ. 2839 (JSR), 2003 WL 749422 (S.D.N.Y. Mar. 5, 2003); *Kirkman v. N.C. R. Co.*, 220 F.R.D. 49 (M.D.N.C. 2004)).  As Flo & Eddie points out, these cases do not rely on similar ownership issues to defeat certification and "[i]t is only when ownership is coupled with a significant amount of other individualized issues that courts raise objections[.]" *Reply* 7:18-20; *see, e.g., YouTube*, 297 F.R.D. at 65-66 (describing the case as a "Frankenstein monster posing as a class action" and identifying "some of the issues" as "plaintiff must prove ownership of a copyright and the copyrighted work infringed by a clip posted on YouTube by one who had no authorization from the copyright owner or licensee to post it, which is substantially similar to the copyrighted work and does not constitute a fair use of it, under circumstances in which YouTube had such knowledge and awareness of the infringing action that it should have expeditiously removed it, and failed to do so"); *Vulcan*, 254 F.R.D. at 528-31 (individual issues predominated in trademark infringement claim where ownership, distinctiveness of the mark, and multiple viable affirmative defenses required individual determination).[6]

Although ownership necessarily requires some individualized showing as to each class member, this observation alone does not predominate over the nearly identical legal issues and pattern of exploitation in this case, and the Court anticipates that the ownership verification procedure will be largely administrative.

2.      Authorization

Sirius XM also casts class members' "authorization" of Sirius XM to publicly perform the pre-1972 recordings as an issue of law and fact that will entail member-by-member analysis. *See Opp.* 16:16-20:11.  Liability has already been determined in this case. Dkt. # 117.  In opposition to Flo & Eddie's motion for summary judgment on liability, Sirius XM did not argue that Flo & Eddie had authorized Sirius XM to perform its pre-1972 recordings.  *See* Dkt. # 95. When Sirius XM subsequently tried to raise authorization, waiver, and estoppel arguments on a reconsideration motion, the Court rejected the attempt because Sirius XM had failed to present the arguments at summary judgment.  *See* Dkts. # 154, 175.  Now, although liability has been

---

[6] Throughout its decision, the *Vulcan* court cited two California district court cases and chose not to follow either.  *See Vulcan*, 254 F.R.D. at 533, 537 (citing *In re Abbott Laboratories Norvir Anti-Trust Litig.*, 2007 WL 1689899 (N.D. Cal. June 11, 2007); *In re Napster*, 2005 WL 1287611).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 13-5693 PSG (RZx) | Date | May 27, 2015 |
|---|---|---|---|
| Title | Flo & Eddie, Inc. v. Sirius XM Radio, Inc. | | |

determined and the trial in this case will be "damages-only," Sirius XM is seeking an opportunity to litigate liability defenses as to other class members that it did not assert against Flo & Eddie. *See Opp.* 20:2 n.6. Sirius XM envisions a series of pre-trial challenges to individual class members, arguing that these members have granted Sirius XM implied licenses to perform their recordings or are barred from bringing suit by waiver or equitable estoppel due to conduct such as failing to object to Sirius XM's widespread performance practices, sending Sirius XM promotional recordings, and appearing personally on Sirius XM programming. *See Opp.* 18:20-20:11.

Based on Sirius XM's admissions as to its conduct to-date and analysis of the doctrines of implied license, waiver, and estoppel, the Court concludes that it is highly unlikely that Sirius XM can successfully raise these defenses as to any class member. Prior to this litigation, Sirius XM performed pre-1972 recordings without obtaining licenses or paying royalties. *See DSGF* ¶ 24; Dkt. # 68 [*Geller Decl.* ¶ 21, Ex. 23 (excerpts from Frear Depo.)]. Sirius XM explained that its decision to perform pre-1972 recordings without first seeking licenses or paying royalties was based on its interpretation of the applicable law. *See* Dkt. # 68 [*Geller Decl.* ¶ 23, Ex. 25 (excerpts from Frear Depo.)]. Now, Sirius XM asserts that its "no-licenses" admission only referred to *written* licenses and that, "[i]n many cases," it has implied licenses with pre-1972 recording owners. *See Opp.* 19:13-14, 20:2 n.6. However, it is clear from Sirius XM's testimony that these alleged licenses were never sought out or relied upon by Sirius XM in its practice of performing pre-1972 recordings without formal licensing because Sirius XM decided not to formally license these recordings for performance based on its interpretation of the law, not an understanding that owners had already impliedly authorized performance.

"Courts have found implied licenses only in 'narrow' circumstances where one party 'created a work at [the other's] request and handed it over, intending that [the other] copy and distribute it.'" *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001) (citing *SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharms., Inc.*, 211 F.3d 21, 25 (2d Cir. 2000) (quoting *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 558 (9th Cir. 1990), *cert. denied*, 531 U.S. 872 (2000))). Sirius XM does not even allude to an argument that any class members created their pre-1972 recordings at Sirius XM's request, and such an argument would be foolhardy as the recordings were created before Sirius XM existed. *Reply* 9:27-10:17; *accord Flo & Eddie, Inc. v. Sirius XM Radio Inc.*, No. 13 Civ. 5784 (CM), 2015 WL 235241, at *2-3 (S.D.N.Y. Jan. 15, 2015) (rejecting Sirius XM's implied license argument asserted against Flo & Eddie for its principals' failure to object to the performances and appearances on Sirius XM programs, citing to the Ninth Circuit's standard).

Sirius XM's attempts to stretch the doctrine to cover broader circumstances such as passive acquiescence or sending recordings to Sirius XM are unconvincing because the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 13-5693 PSG (RZx) | Date | May 27, 2015 |
|---|---|---|---|
| Title | Flo & Eddie, Inc. v. Sirius XM Radio, Inc. | | |

supporting cases are both nonbinding and distinguishable. *See Opp.* 19:13-21; *see, e.g., Falcon Enters, Inc. v. Publishers Serv., Inc.*, 438 Fed. Appx. 579, 581 (9th Cir. 2011) (publisher had an implied license to use a photographer's images when the publisher paid a fee and the photographer sent images to satisfy the publisher's ongoing demand for the images); *Field v. Google Inc.*, 412 F.Supp.2d 1106, 1115-16 (D. Nev. 2006) (relying on New York and Michigan district court cases to conclude that plaintiff's choosing not to block Google's access to copyrighted works on his website, when he knew how to easily do so, granted an implied license to Google to use the works). Here, Sirius XM did not pay fees to use pre-1972 recordings and owners could not halt public performance at the click of a mouse. Most importantly, binding Ninth Circuit precedent supplies the standard here, and as class members own recordings created over four decades ago, they did not create those recordings at Sirius XM's direction; therefore, Sirius XM will not have credible implied license arguments as to any class members.

The waiver and equitable estoppel arguments are likewise implausible. *See Opp.* 20:3-9. "'Waiver is the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it.'" *A&M Records*, 239 F.3d at 1026 (quoting *U.S. v. King Features Entm't, Inc.*, 843 F.2d 394, 399 (9th Cir. 1988)). Thus, Sirius XM must establish that class members knew Sirius XM needed their permission to publicly perform their recordings, but chose to forego payments and freely permit Sirius XM to perform their recordings. As Sirius XM's position throughout this litigation has been that pre-1972 recording owners never knew or expected that they had any control over the public performance of their recordings, Sirius XM would have great difficulty establishing the "known right" portion of this defense.

While waiver "depends on the intention of one party only[,] [e]quitable estoppel is based upon the fundamental principle that 'one's conduct has induced another to take such a position [and] he will be injured if the first party is permitted to repudiate his acts.'" *Elliano v. Assurance Co. of Am.*, 3 Cal. App. 3d 446, 450-51 (1970) (quoting *Bastanchury v. Times Mirror Co.*, 68 Cal App. 2d 217, 240 (1945)). Sirius XM cannot assert that class members' sending promotional albums, appearing on programming, or failing to object to Sirius XM's practices "induced" it to perform pre-1972 recordings without seeking authorization or paying royalties because Sirius XM testified that its practice of performing pre-1972 recordings without first seeking licenses or paying royalties was based on its interpretation of the applicable law. *See* Dkt. # 68 [*Geller Decl.* ¶ 23, Ex. 25 (excerpts from Frear Depo.)].

As a general matter, Sirius XM's odds of successfully objecting to a class member's claims on implied license, waiver, or estoppel theories are very slight and thus do not raise plausible concerns about individualized inquiries into these defenses as to certain class members overwhelming the common thrust of the case.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 13-5693 PSG (RZx) | Date | May 27, 2015 |
|---|---|---|---|
| Title | Flo & Eddie, Inc. v. Sirius XM Radio, Inc. | | |

Sirius XM also notes that, during the course of this litigation, it has "entered into many written licenses" with pre-1972 recording owners. *See Opp.* 20:2 n.6 (citing *Blatter Decl.* ¶ 12). Flo & Eddie recognizes that some written licenses may now exist. *See Supp. Wallace Decl.* ¶ 5 ("Based on documents produced in April 2015, Sirius XM now claims that is has entered into approximately eight of those [direct] licenses."). Owners of these recordings do not threaten that individual issues and analysis regarding authorization will predominate over common issues and analysis because those owners will not be a part of the class. If Sirius XM indicates that certain recordings on the Pre-1972 Playlist are subject to written licensing agreements, Flo & Eddie will not seek to identify and include those recordings' owners in the class and the owners would not self-identify as owners whose recordings were played by Sirius XM without authorization.

In light of the foregoing analysis, the Court concludes that issues pertaining to class members' authorization of Sirius XM to perform their recordings will not entail much individualized inquiry given Sirius XM's admissions regarding its practice not to seek authorization and the state of the law on implied licenses, waiver, and estoppel.

### 3. Damages

Sirius XM also argues that damages cannot be litigated on a class-wide basis on three theories: (1) Flo & Eddie's choice of damages does not maximize recovery for each class member; (2) the damages model is overinclusive; and (3) there is no uncontroversial method for distributing the damages pot among members. *See Opp.* 20:12-23:20.

Before addressing these theories, the Court will outline Flo & Eddie's damages model. In connection with Sirius XM's statutory license for *post*-1972 recordings, Sirius XM calculates, segregates, and then deducts all revenue that it has determined is attributable to its exploitation of *pre*-1972 recordings – that pre-1972 recording revenue is the measure that Flo & Eddie seeks as damages. *Mot.* 5:10-12. As part of pre-1972 revenue calculation, Sirius XM treats all recordings the same. While popular recordings may be performed more frequently, Sirius XM considers each performance of all pre-1972 recordings to generate an equal amount of revenue. *Id.* 6:25-28.

Adopting Sirius XM's own method for determining revenue generated by play of pre-1972 recordings, Flo & Eddie's damages formula calculates revenue attributable to the performance of pre-1972 recordings in California is as follows:

Sirius XM's Gross Revenues as defined at 37 C.F.R. § 382.11

(multiplied by)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 13-5693 PSG (RZx) | Date | May 27, 2015 |
|---|---|---|---|
| Title | Flo & Eddie, Inc. v. Sirius XM Radio, Inc. | | |

The percentage of performances of pre-1972 recordings on Sirius XM's service

(multiplied by)

The percentage of Sirius XM's subscribers located in California

*Wallace Decl.* ¶ 20.

On Sirius XM's first theory against class-wide litigation of damages, Sirius XM explains that the extent to which each class member was harmed by Sirius XM's exploitation of pre-1972 recordings is necessarily an individualized inquiry, casting the appropriate damages measure as "lost royalties" or "imputed license fees" that take into account the popularity of the recording and the time it was played on Sirius XM programming. *Opp.* 20:16-21:2. Sirius XM states that "[s]uch individualized damages issues defeat predominance[,]" *id.* 21:3, but the Ninth Circuit has held otherwise. *See Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513-14 (9th Cir. 2013) ("individualized monetary claims belong in Rule 23(b)(3)[,] [t]hus, the presence of individualized damages cannot, by itself, defeat class certification") (internal quotation omitted). Nonetheless, Sirius XM claims that "[t]o sidestep these individualized issues" inherent in calculating lost royalties for each class member, Flo & Eddie "truncate[d]" its damage claim, opting for disgorgement of Sirius XM's profits from pre-1972 recordings rather than actual damage to the class members. *Opp.* 21:8-9. Sirius XM argues that this selection of profit or revenue damages renders Flo & Eddie an inadequate representative because it abandoned more preferable damages measures. *Id.* 21:19-22:2; *W. States Wholesale, Inc. v. Synthetic Indus., Inc.*, 206 F.R.D. 271, 277 (C.D. Cal. 2002) ("A class representative is not an adequate representative when the class representative abandons particular remedies to the detriment of the class.") (citation omitted).

Flo & Eddie retorts that its requested damages measure – 100% of Sirius XM's revenues attributable to pre-1972 recordings, without deduction for costs – is the appropriate measure of damages in California and that Sirius XM's suggested forms would result in much lower recovery for the class. *Reply* 12:19-22; *A&M Records, Inc. v. Heilman*, 75 Cal. App. 3d 554, 570 (1977) (upholding judgment "in an amount equal to the gross proceeds attributable to the sale of recorded performances which were the property of [plaintiff] . . . [without] deduct[ing] any of the costs of the transactions by which [defendant] accomplished his wrongful conduct"); *Lone Ranger Television, Inc. v. Program Radio Corp.*, 740 F.2d 718, 726 (9th Cir. 1984). Flo & Eddie represents that its damages expert indicates that the current model is "the most reliable way to calculate the highest award for the class as a whole" and "also results in the highest allocation for each class member." *Reply* 11:14-17. Contrary to situations in which representatives limit damages to streamline cases for the class action format to the detriment of

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 13-5693 PSG (RZx) | Date | May 27, 2015 |
|---|---|---|---|
| Title | Flo & Eddie, Inc. v. Sirius XM Radio, Inc. | | |

certain class members, Flo & Eddie's pursuit of gross revenue attributable to pre-1972 recording performances does not create intra-class conflict because it does not prejudice the members of the class. Sirius XM does not demonstrate that its alternative measures of damages are either available under the law or that they would enable greater class and class member recovery.

Secondly, contrary to Sirius XM's contention, Flo & Eddie's damages model is not overinclusive such that the model is inconsistent with the case's theory of liability. *See Opp.* 3-13 (citing *Comcast Corp. v. Behrand*, 133 S. Ct. 1426, 1432 (2013) ("at the class-certification stage (as at trial), any model supporting a plaintiff's damages case must be consistent with its liability case") (internal quotation omitted)). Sirius XM argues that the pre-1972 revenue model is overinclusive because it comprises revenue from *all* performances of pre-1972 recordings, necessarily including authorized performances and performances of recordings without identified owners ("unclaimed recordings"). Flo & Eddie's damages expert explains that the existence of some licenses authorizing performance "does not alter the fundamental workability of [his] methodology, which can be used to calculate and then exclude any revenues attributable to those licenses based on the relative number or plays or performances of any pre-1972 recordings that they encompass." *Supp. Wallace Decl.* ¶¶ 5-6. In the same way, given the mechanical functioning of this damages formula, the Court perceives that it would be easy to calculate and exclude revenues attributable to performances of unclaimed recordings as well.

Lastly, Sirius XM challenges the method for allocating the damages pot among class members, arguing that some members will favor a pro rata approach that values each song equally while members owning more popular recordings will desire an approach that reflects the true market value of each song. *Opp.* 22:14-20. Sirius XM presents this issue as a source of intra-class conflict that undercuts Flo & Eddie's adequacy to represent the class. *Id.* 23:4-20. Sirius XM ignores that "because the model is based on the number of plays or performances of each recording by Sirius XM, the model results in an amount which, when multiplied by the number of plays or performances of each recording, automatically allocates a proportional amount of the recover to each class member." *Reply* 11:17-21; *see also Supp. Wallace Decl.* ¶ 4 ("The method I used automatically takes popularity into account by attributing revenue to recordings based on the number of plays or performances of each recording . . . "). Thus, members owning popular recordings will still reap the value of that popularity through this damages model and do not have grounds to object to the model on that basis.

Sirius XM's contention that damages cannot be litigated on a class-wide basis is premised on two theories attacking the adequacy of the damages measure and model to protect the class and an allegation that the model is fatally overinclusive. The attacks are meritless. Flo & Eddie pursues recovery of gross revenues attributable to Sirius XM's unauthorized performance of pre-1972 recordings and this figure can be calculated in a mechanical and reliable way, even if the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 13-5693 PSG (RZx) | Date | May 27, 2015 |
|---|---|---|---|
| Title | Flo & Eddie, Inc. v. Sirius XM Radio, Inc. | | |

Court later concludes that certain pre-1972 recordings should be excluded from the model. Moreover, the proposed manner of allocating the damages pot is unlikely to cause intra-class conflict because it takes into account the respective popularity of the individual recordings. This damages model will not entail much individualized inquiry at all, and even if it did, the Ninth Circuit has clearly held that denying certification on the basis of individualized damages issues is an abuse of discretion. *See Leyva*, 716 F.3d at 513-14.

The Court concludes that questions of law and fact common to class members predominate over any questions affecting only individual members. Sirius XM's arguments that ownership, authorization, and damages present extensive individualized issues that overwhelm the commonalities in this case are unpersuasive. While ownership is an individual issue, the process of identifying and establishing ownership will not be complex or drawn-out for the majority of class members. Authorization is unlikely to entail much individualized inquiry given Sirius XM's admissions regarding its business practice and the uncommon factual showings necessary to assert implied license, waiver, and estoppel theories. If a pre-1972 recording owner authorized Sirius XM to perform its recordings, it will not seek admittance to the class, and if an owner contests authorization, Sirius XM will be unlikely to prove authorization absent a written license. Lastly, damages in this case are well-suited to streamlined determination via application of a mechanical formula and will not require factual investigation beyond reviewing Sirius XM's records. Accordingly, Flo & Eddie's class satisfies the predominance requirement of Rule 23(b)(3).

       *ii.*    *Superiority*

Rule 23(b)(3) also requires courts to determine whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." In the superiority analysis, courts consider the following non-exhaustive factors: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

Sirius XM argues that none of the factors favor certification. *Opp.* 24:8. Regarding the first two factors, Sirius XM first asserts that this is not a case in which class members need the class mechanism because they have low value claims and no incentive or means to sue individually. *Id.* 24:9-10. Sirius XM also notes that three major record companies – who claim to own the majority of pre-1972 recordings – have filed a lawsuit against Sirius XM in state court asserting the same claims, *id.* 24:10-14 (*Capital Records, LLC v. Sirius XM Radio Inc.*, Case No. BC520981 (L.A. Super. Ct.)), and individual sound recording owners have filed two *class action* copycat suits (one has been dismissed without prejudice and the other recently

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 13-5693 PSG (RZx) | Date | May 27, 2015 |
|---|---|---|---|
| Title | Flo & Eddie, Inc. v. Sirius XM Radio, Inc. | | |

settled) against other digital broadcasters in the Northern District of California, *see id.* 24:14-18. These showings do not automatically defeat the superiority of the class action as a method for adjudicating this controversy. Even if class members have valuable claims *and* further "incentives to bring such claims . . . in the form of statutory damages and attorneys' fees," a class action can nonetheless be a superior method of adjudication where individuals "lack the time, resources, and legal sophistication to enforce their copyrights." *See In re Napster*, 2005 WL 1287611, at *8. Attorneys' fees are unavailable in this case and the Court agrees that, given Sirius XM's aggressive litigation tactics thus far, its public statements about intent to appeal adverse decisions, and its decision to continue to perform pre-1972 recordings without authorization, it may be cost-prohibitive for owners with smaller value claims to pursue their claims against Sirius XM in this environment. *See Mot.* 21:3-22. That three powerful record labels have the resources to launch their own lawsuit against Sirius XM does not indicate that the individual lawsuit alternative is also a workable or preferable method for small owners.

As to the second two factors on forum desirability and management difficulties, Sirius XM repeats its arguments about the individualized nature of ownership, authorization, and damages determinations that would sometimes require the application of out-of-state law. *See Opp.* 24:22-25:7. For the reasons discussed extensively above, the Court is not convinced that the nature and degree of individual analysis that these issues would entail in this case are significant. Comparing the class action format to the alternative method of individual litigation, given that Sirius XM has treated pre-1972 recordings the same, recording owners have been harmed in the same way, and damages can be determined in a common mechanical way, the Court concludes that it would be inefficient for recording owners, Sirius XM, and the courts to litigate these similar factual and legal circumstances a thousand times separately. Further, it would be unfair to deprive pre-1972 recordings owners of the class mechanism in this circumstance because, due to the cost of litigating against Sirius XM, precluding the class mechanism would chill vindication of rights.

In closing, Sirius XM cites two out-of-district cases that caution that a class action may not be a superior method of adjudication for cases confronting issues of first impression with substantial and far-reaching implications, like the public performance issue in the present case. *See Vulcan*, 254 F.R.D. at 535; *In the Matter of Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293, 1299-1300 (7th Cir. 1995). The Court declines to adopt this position that class actions are only suitable for carrying out routine and tested applications of law because the other requirements of Rule 23(a) and (b)(3) ensure that the class action mechanism adequately and fairly protects the rights of the involved parties. Further, the high stakes nature of class action litigation often motivates parties to take particular care in litigating the dispute, an attribute that is acutely desirable when the parties and courts confront issues of first impression with far-reaching implications.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 13-5693 PSG (RZx) | Date | May 27, 2015 |
|---|---|---|---|
| Title | Flo & Eddie, Inc. v. Sirius XM Radio, Inc. | | |

Thus, the Court concludes that a class action is superior to individual litigation to the fair and efficient adjudication of the present controversy.

IV.   Conclusion

For the foregoing reasons, the Court GRANTS the motion for class certification and APPOINTS Gradstein & Marzano P.C. as class counsel.

**IT IS SO ORDERED.**