Russell J. Frackman (SBN 49087) rjf@msk.com
Marc E. Mayer (SBN 190969) mem@msk.com
Daniel A. Kohler (SBN 285501) dxk@msk.com
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, CA  90064-1683
Telephone:  (310) 312-2000
Facsimile:  (310) 312-3100

Peter Ostroff (SBN 45718) postroff@sidley.com
Rollin Ransom (SBN 196126) rransom@sidley.com
Sean Commons (SBN 217603) scommons@sidley.com
Geoffrey Kehlmann (SBN 298967) gkehlmann@sidley.com
SIDLEY AUSTIN LLP
555 W. 5th Street, Suite 4000
Los Angeles, California  90013
Telephone: (213) 896-6010
Facsimile: (213) 896-6600

Attorneys for Intervenors
Capitol Records, LLC, Sony Music Entertainment,
UMG Recordings, Inc., Warner Music Group Corp.,
and ABKCO Music & Records, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLO & EDDIE, INC., a California corporation, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SIRIUS XM RADIO INC., a Delaware Corporation; and DOES 1 through 10,<br><br>Defendants. | Case No. 13-CV-5693 PSG (RZx)<br><br>**INTERVENORS CAPITOL RECORDS, LLC, SONY MUSIC ENTERTAINMENT, UMG RECORDINGS, INC., WARNER MUSIC GROUP CORP., AND ABKCO MUSIC & RECORDS, INC.'S OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION**<br><br>Date:        N/A<br>Time:        N/A<br>Location:    Courtroom 880<br>Judge:       Hon. Philip S. Gutierrez |

# **TABLE OF CONTENTS**

**PAGE**

I.    INTRODUCTION ...................................................................................... 1

II.   STATEMENT OF FACTS ......................................................................... 3

    A.   Intervenors Have Pursued Their Own State Court Action Since 2013. .............................................................................................. 4

    B.   Plaintiff's Counsel Were Advised in May 2015 That Intervenors Intended To Mediate With Sirius XM. ...................................... 4

    C.   Plaintiff's Counsel Has A Conflict That Disqualifies Them From Pursuing This Application............................................................ 5

III.  *EX PARTE* TEMPORARY RESTRAINING ORDERS REPRESENT AN EXTRAORDINARY REMEDY THAT IS NOT WARRANTED HERE. ......... 6

IV.  THE PREMISE OF PLAINTIFF'S *EX PARTE* APPLICATION IS LEGALLY AND FACTUALLY MERITLESS. ...................................... 7

    A.   Rule 2-100(A) Applies To Unconsented Communications Between Counsel For One Party Directly To Another Party Represented By Counsel; It Does Not Apply To Communications Between Lawyers. ...................................................................... 7

    B.   The Record Companies Have A Right To Counsel Of Their Choice.......................................................................................... 8

    C.   Class Certification Cannot Undermine and Displace Existing Lawyer-Client Relationships.................................................. 10

    D.   The Failure of Plaintiff's Counsel To Timely Raise The Alleged Ethical Violation Constitutes Consent and Waiver. ............. 11

V.   Plaintiff's Contention That Extraordinary Relief Is Warranted Because The Record Companies Purportedly Settled Based On Works They Do Not Own Is Wrong. ................................................................... 12

VI.  The Application Creates Or Reveals A Disqualifying Conflict That Precludes Plaintiff's Counsel From Obtaining, or Even Seeking, Any Of The Relief Sought. .................................................................. 12

VII. Plaintiff's Counsel Has Not Demonstrated An Immediate Risk Of Irreparable Harm. ................................................................. 14

VIII. CONCLUSION ................................................................................ 16

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5

*In re Airline Ticket Comm'n Antitrust Litig.*,
  1996 WL 585301 (D. Minn. Aug. 12, 1996) ........................................10

6

7

*Avila-Martinez v. Wells Fargo Bank, N.A.*,
  2011 WL 3876000 (E.D. Cal. 2011) ...................................................15

8

9

*Bobryk v. Durand Glass Mfg. Co.*,
  2013 WL 5574504 (D.N.J. Oct. 9, 2013) .............................................11

10

11

*City and County of San Francisco v. Cobra Solutions, Inc.*,
  38 Cal. 4th 839 (2006) ........................................................................13

12

13

*In re Community Bank of Northern Virginia*,
  418 F.3d 277 (3d Cir. 2005) ..................................................................9

14

15

*Dodona I, LLC v. Goldman, Sachs & Co.*,
  300 F.R.D. 182 (S.D.N.Y. 2014) ............................................................8

16

*Global Van Lines, Inc. v. Superior Court*,
  144 Cal. App. 3d 483 (1983) ...............................................................14

17

18

*Gustafson v. US Bank*,
  CV 14-1772 PSG (FFMx), Dkt. 16 at 3-4 (C.D. Cal. March 20, 2014) ....6

19

20

*Hernandez v. Vitamin Shoppe Indus. Inc.*,
  174 Cal. App. 4th 1441 (2009) ............................................................11

21

22

*Jessen v. Hartford Cas. Ins. Co.*,
  111 Cal. App. 4th 698 (2003) ..............................................................13

23

24

*Krzesniak v. Cendant Corp.*,
  2007 WL 4468678 (N.D. Cal. Dec. 17, 2007) ......................................11

25

26

*La Jolla Cove Investors, Inc. v. GoConnect Ltd.*,
  2012 WL 1580995 (S.D. Cal. 2012) .....................................................15

27

*Mission Power Eng'g Co. v. Continental Cas. Co.*,
  883 F.Supp. 488 (C.D. Cal. 1995) .........................................................7

28

ii

*Nuttall v. Juarez*,
   Case No. 2:13-cv-08885-PSG-AS, Dkt. 150 (C.D. Cal. July 24, 2014) ................ 14

*Rent–A–Center, Inc. v. Canyon Television & Appliance Rental, Inc.*,
   944 F.2d 597 (9th Cir.1991) ........................................................................... 15

*In re Shell Oil Refinery*,
   152 F.R.D. 526 (E.D. La. 1989) ...................................................................... 10

*U.S. Legal Support, Inc. v. Hofioni*,
   2015 WL 110884 (E.D. Cal. 2015) ................................................................. 15

*Winter v. Natural Resources Defense Council, Inc.*,
   555 U.S. 7 (2008)............................................................................................ 6, 7

**Other Authorities**

ABA Formal Opinion 06-443 (2006) .......................................................................... 8

ABA Formal Opinion 07-445 (2007) ........................................................................ 10

California Rules of Professional Conduct
   Rule 2-100 ........................................................................................... 3, 7, 8, 11
   Rule 3-310(E) ..................................................................................... 3, 6, 13, 14

INTERVENORS' OPPOSITION TO *EX PARTE*

Intervenors Capitol Records, LLC, Sony Music Entertainment, UMG Recordings, Inc., Warner Music Group Corp., and ABKCO Music & Records, Inc. (the "Record Companies") oppose plaintiff's *ex parte* application (Dkt. 241) on the following grounds.

## I.   INTRODUCTION

There is no basis for any aspect of plaintiff's counsel's application.  There is no basis for lifting the stay and certainly no basis for the extraordinary relief sought. Unfortunately, plaintiff's counsel have allowed their self-interest in maximizing their own fees to cause them to contrive a baseless argument and, in the process, to violate the California Rules of Professional Conduct by acting adversely to a party that one of them represented for over a decade.  No valid grounds exist for elevating plaintiff's counsel's attempt to extract legal fees from a settlement independent from their lawsuit into relief that would be truly extraordinary.  The settlement between the Record Companies and Sirius XM resolved a lawsuit that the Record Companies have been litigating with Sirius XM for more than 18 months.

The application should be denied for several independently dispositive reasons.

First, no ethical violation of the rule against communicating with a represented party – the underlying premise of the application – occurred.  At all times, Sirius XM communicated with counsel for the Record Companies and did so to litigate and resolve the lawsuit between them – a lawsuit separate from the one brought by plaintiff's counsel.  The rule against lawyers communicating with parties has no possible application here.  Furthermore, even if there were any requirement that plaintiff's counsel had to consent to any such communications (and there plainly is not), such consent occurred.

Second, the settlement does not purport to – and as a matter of law could not – release the claims of anyone other than the Record Companies and persons who have granted the Record Companies control over their recordings.  No one has suggested otherwise, confirming that this issue is one invented solely by plaintiff's counsel to

manufacture a dispute where none exists.  Regardless, even if the Record Companies had demanded and received monies from Sirius XM for recordings they do not own or control or have the right to contract with respect to or license (which they did not do), such action could not affect the ownership rights of third parties.

Third, the application should be denied because of a disabling conflict that precludes plaintiff's counsel from being adverse to at least Record Company UMG Recordings, Inc. ("UMG").  One of the lawyers at the firm representing plaintiff, Harvey Geller, served as in-house counsel at UMG for nearly two decades.  He regularly advised UMG on matters respecting ownership and control of sound recordings, performance rights in pre-1972 recordings and consideration of litigation regarding such rights – matters about which plaintiff's counsel now takes positions directly adverse to the interests of UMG.

Finally, plaintiff's counsel has no possible basis for seeking injunctive or other extraordinary relief.  Plaintiff's counsel knew no later than May 7, 2015 that the Record Companies would be mediating with Sirius XM – and that Sirius XM did not want plaintiff's counsel to participate – yet they waited until July 6, 2015 to raise concocted ethical violations.  Moreover, the only theoretical harm that plaintiff's counsel is able to articulate relates to their attorneys' fees.  However, the law is clear that money is not a basis for extraordinary relief.  There is no suggestion, nor could there by, that Sirius XM will be unable to pay fees to which plaintiff's counsel may be entitled.[1]  Of course, any extraordinary relief of the type applied for would necessarily be conditioned on the posting of a very sizable bond.

For each of these reasons, and the grounds set forth below, the Court should deny plaintiff's counsel's request for an *ex parte* temporary restraining order.

---

[1] *See* Sirius XM 2014 Annual Report (revenues in excess of $4 billion with free cash flow of approximately $1.16 billion), *available at* http://files.shareholder.com/downloads/SIRI/421523927x0x819474/FCEDCCA3-211B-4E97-B4D5-6E66DC442071/siri_annual_report_and_proxy.pdf.

INTERVENORS' OPPOSITION TO *EX PARTE*

## II.   STATEMENT OF FACTS

Plaintiff's counsel purport to recite the background of a separate state court lawsuit filed by the Record Companies.  Simply stated, their self-serving description exalts and distorts their role far beyond recognition.  That aside, because of facts not reasonably subject to dispute, plaintiff's counsel is not entitled to the extraordinary relief requested, or any relief.

In summary, the critical facts are set forth in the following four declarations that accompany this opposition:

(1)     *George Borkowski of the Recording Industry Association of America* ("RIAA") – detailing the background of the litigation and mediation between the Record Companies and Sirius XM;

(2)     *Peter Ostroff, counsel to the Record Companies* – setting forth the lack of objection by plaintiff's counsel to the mediation on the grounds that it would purportedly involve unethical communication by Sirius XM counsel with the Record Companies if class counsel were not present and refuting comments attributed to him by one of plaintiff's counsel;

(3)     *Darren Schmidt, in house counsel to UMG* – detailing the nature and substance of the legal services provided to UMG by plaintiff's counsel Harvey Geller while Mr. Geller was a UMG lawyer for a number of years until May 2012; and

(4)     *Professor Paul T. Hayden, expert on legal ethics* – setting forth his opinions that: (a) there were no contacts made impermissible by Rule 2-100 of the California Rules of Professional Conduct; and (b) the adversity created by plaintiff's counsel's application reveals a serious violation of Rule 3-310(E) of the California Rules of Professional Conduct that precludes plaintiff's counsel or anyone acting in concert with them from pursuing this application.

The following are the details.

INTERVENORS' OPPOSITION TO *EX PARTE*

**A.**    <u>Intervenors Have Pursued Their Own State Court Action Since 2013.</u>

The Record Companies filed a state court action against Sirius XM in Los Angeles Superior Court on September 11, 2013, alleging, among other things, that Sirius XM has been performing sound recordings created before February 15, 1972 without authorization from, or payment to, the Record Companies.  Borkowski Decl. ¶¶ 3-4.  Contrary to what plaintiff's counsel's motion implies (Pl.'s Memo. at 11-13), the state court action  seeks relief for any direct or indirect infringement of "any right in any and all Pre-72 Recordings in which any [Record Company] Plaintiff ***owns or controls*** an exclusive right under statutory or common law…." *See* Compl. Prayer No. 1 (attached as Ex. 1 to Decl. of Harvey Geller, Ex. 1 p. 15 (Dkt. 243-1)) (emphasis added).   Moreover, the injunctive and other relief that the Record Companies seek in their California action is not limited to California.  Borkowski Decl. ¶¶ 4-5.

**B.**    <u>Plaintiff's Counsel Were Advised in  May 2015 That Intervenors Intended To Mediate With Sirius XM.</u>

Around March 18, 2015, the Record Companies scheduled a mediation with Sirius XM before Antonio Piazza for June 15-16, 2015 in New York, New York. Borkowski Decl. ¶ 8.  Plaintiff's counsel was advised of the mediation no later than May 7, 2015. *Id.* ¶¶ 9-10.  Sirius XM declined to allow plaintiff's counsel to participate in that mediation, but offered to mediate with them on June 17, 2015. *Id.* ¶ 12.

At no time prior to the mediation did plaintiff's counsel advise the Record Companies that it would be improper for Sirius XM to mediate with them without the participation of plaintiff's counsel.  Borkowski Decl. ¶ 17; Ostroff Decl. ¶ 2.  In fact, plaintiff's counsel joined a dinner on the evening of June 15th with inside and outside counsel for the Record Companies, yet never even so much as suggested that Sirius XM's counsel was engaged in unethical conduct or that plaintiff's counsel would be

entitled to a share or fees based upon any settlement between the Record companies and Sirius XM.  Borkowski Decl. ¶¶ 15, 17.

The first time plaintiff's counsel advised the Record Companies of alleged professional misconduct by Sirius XM's counsel or anyone else was weeks later, in connection with this *ex parte* application, on July 6, 2015.  Borkowski Decl. ¶ 17; Ostroff Decl. ¶ 2.

### C.    Plaintiff's Counsel Has A Conflict That Disqualifies Them From Pursuing This Application.

By filing this application, plaintiff's counsel has created a disqualifying conflict that prevents them from seeking the relief requested.  *See generally* Hayden Decl. ¶¶ 19-23.  Specifically, one of the lawyers in the firm representing plaintiff, Harvey Geller, who offers a declaration in support of the application, served as in-house counsel for a Record Label Plaintiff for nearly two decades (1995 to 2012).  *See* Declaration of Darren Schmidt ¶ 3, Ex. 3.  Before leaving UMG Records, Inc. ("UMG"), Mr. Geller served as the head of the litigation department.  *Id.*  As Mr. Geller stated under oath in a declaration he submitted on behalf of UMG, Mr. Geller's responsibility as head of litigation was to "supervise and manage UMG's litigation" and "provide legal advice and counseling to the various companies comprising UMG." *Id.*, Ex. 3.  Mr. Geller explained further that he had "senior responsibility for all of UMG's significant copyright litigations in the United States, including planning its strategy and implementing that strategy with outside counsel." *Id.*, Ex. 3.

Among the innumerable issues that Mr. Geller worked on while serving as in house counsel at UMG, Mr. Geller advised UMG on issues relating to public performance rights under state laws for pre-1972 sound recordings, including consideration of litigation against specific entities, including Sirius XM.  Schmidt Decl. ¶ 5.  In particular, Mr. Geller regularly analyzed for UMG the same legal issues and arguments raised in this suit as well as the Los Angeles County Superior Court case that gave rise to the settlement with UMG and the other Record Companies that

Mr. Geller and his co-counsel now seek to disrupt.  *Id.*  For example, under Mr. Geller's direction and supervision, UMG brought several lawsuits for violations of its rights in pre-72 recordings.  *Id.* ¶ 6.  These included major lawsuits against LimeWire and Grooveshark, during which Mr. Geller, on behalf of UMG, closely oversaw analysis of issues relating to pre-72 recordings.  *Id.*

In addition, during his lengthy tenure at UMG, Mr. Geller regularly oversaw and supervised issues concerning the ownership and chain of title of recordings on behalf of UMG.  Schmidt Decl. ¶ 7.  Such issues frequently arose because UMG would not (and generally does not) sue only with respect to sound recordings that it owns, but also sues with respect to sound recordings in which it has exclusive U.S. rights (typically through a foreign affiliate).  *Id.* ¶¶ 8-9.  UMG is a U.S.-based company, but it is part of the Universal Music Group, a global music company.  *Id.* ¶ 8.  Universal Music Group has record companies like UMG throughout the world. *Id.*  Pursuant to an intercompany agreement, UMG is the exclusive U.S. licensee with respect to sound recordings owned by its foreign affiliates.  *Id.*  While UMG "controls" these rights, it does not "own" them.

Given the substantial relationship between Mr. Geller's representation of UMG, counsel for the Record Companies promptly notified plaintiff's counsel that filing this *ex parte* would violate the rule against taking positions adverse to former clients. Ostroff Decl. ¶ 5; Cal. Prof. Resp. Rule 3-310(E).  Plaintiff's counsel nonetheless proceeded with the motion.  *Id.*

## III.   *EX PARTE* TEMPORARY RESTRAINING ORDERS REPRESENT AN EXTRAORDINARY REMEDY THAT IS NOT WARRANTED HERE.

An injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008).  Plaintiff must make a "clear showing" of each of the following elements: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm if injunctive relief is not granted, (3) a balance of

hardships favoring the plaintiff, and (4) an advancement of the public interest. *See Gustafson v. US Bank*, CV 14-1772 PSG (FFMx), Dkt. 16 at 3-4 (C.D. Cal. March 20, 2014) (citing *Winter*, 555 U.S. at 20).  An injunction may not be granted based on a *possibility* of irreparable harm.  *Winter*, 555 U.S. at 22.  Furthermore, because this application is brought by way of an *ex parte* application, plaintiff must establish (1) that its cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures, and (2) that it is without fail in creating the crisis that requires *ex parte* relief, or that the crisis occurred as a result of excusable neglect.  *See Mission Power Eng'g Co. v. Continental Cas. Co.*, 883 F.Supp. 488, 492 (C.D. Cal. 1995).  The instant application fails to meet any of these standards.

## IV.    THE PREMISE OF PLAINTIFF'S *EX PARTE* APPLICATION IS LEGALLY AND FACTUALLY MERITLESS.

Plaintiff's counsel improperly seek to use Rule 2-100(A) of the California Rules of Professional Conduct – a rule designed to prevent lawyers from taking advantage of represented parties by communicating with them directly and circumventing their lawyers – to deprive the Record Companies of the full benefit of a settlement *negotiated by their inside and outside counsel*.  Rule 2-100 has no possible application here and does not support plaintiff's attempts to interfere with the settlement and claim a portion of the settlement as their own as fees.

### A.    <u>Rule 2-100(A) Applies To Unconsented Communications Between Counsel For One Party Directly To Another Party Represented By Counsel; It Does Not Apply To Communications Between Lawyers.</u>

Recasting greed as righteous indignation, plaintiff's counsel contorts Rule 2-100(A) to argue that enforcement of the settlement should be halted.  Their arguments are meritless.

California Rule of Professional Conduct 2-100(A) states that "while representing a client, a member shall not communicate directly or indirectly about the

subject of the representation with a party the member knows to be represented by another lawyer in the matter, unless the member has the consent of the other lawyer."

The purpose of this rule is to prevent lawyers from taking unfair advantage of non-lawyers, not to prohibit communications between counsel. *See* ABA Formal Opinion 06-443 (2006) (noting that the purpose "is to prevent a skilled advocate from taking advantage of a non-lawyer"); Hayden Decl. ¶¶ 11-13. It does not apply to communications between outside counsel. *See* Cal. Rule of Prof. Conduct Rule 2-100; Hayden Decl. ¶ 11. Even if (contrary to what occurred here) Sirius XM had invited only in-house counsel to the mediation, "[w]hen communications occur lawyer-to-lawyer, it is not likely that the inside counsel would inadvertently make harmful disclosures," rendering any objection under the anti-contact rule attenuated at best. ABA Formal Opinion 06-443.

For these reasons, the notion that Sirius XM took advantage of the Record Companies in the absence of counsel in violation of Rule 2-100(A) is silly. *See Dodona I, LLC v. Goldman, Sachs & Co.*, 300 F.R.D. 182, 187 (S.D.N.Y. 2014) (finding it "difficult to see how Defendants' communications with sophisticated, institutional class members, especially communications made through their counsel, would create any risk of actual abuse"). The Court therefore should reject the attempt by plaintiff's counsel to misuse a rule designed to protect a party from agreeing to accept an ***under***payment to justify extraordinary relief to prevent the Record Companies from receiving an alleged ***over***payment.

## B.  The Record Companies Have A Right To Counsel Of Their Choice.

Unnamed class members can pursue individual actions using separate counsel, even if an individual action overlaps in whole or in part with claims asserted in a class action, as well as retain separate counsel in connection with a class action. Fed. R. Civ. Proc. 23(c)(2)(B)(iv). As a result, a putative class action defendant can ethically communicate with counsel for an absent class member without including class counsel in those discussions. *See Dodona I, LLC v. Goldman, Sachs & Co.*, 300 F.R.D. 182,

8

187 (S.D.N.Y. 2014) (rejecting allegations of unethical conduct and upholding right of defendant to contact "class members through the class members' attorneys (even if not class counsel)").

Plaintiff's counsel ask the Court to invent a prohibition that would require absent class members pursuing individual actions to use class counsel to participate in settlement discussions. Plaintiff's counsel cannot point to any authority for such a prohibition. This is not surprising, given that the assertion is contrary to law, contrary to practice, and contrary to common sense. *See* Hayden Decl. ¶¶ 14-16. In particular, plaintiff's counsel fail to cite a single authority involving absent class members who filed and pursued an independent action long before class certification where a court either (1) prohibited a defendant from communicating with the absent class members about settlement or (2) required a defendant to invite class counsel to join in settlement discussions.

The reason for this is simple: Plaintiff's counsel's position runs directly afoul of the Federal Rules of Civil Procedure. Rule 23 expressly provides that "a class member may enter an appearance through an attorney if the member so desires," rather than use or rely upon class counsel. Fed. R. Civ. P. 23(c)(2)(B)(iv). The model class action notices promulgated by the Federal Judicial Center likewise state that, "If you want to be represented by your own lawyer, you may hire one at your own expense," and encourage class members with their own pending lawsuits to "speak to your lawyer in that lawsuit immediately." *See* Federal Judicial Center, Class Action Notices Page.[2] Forcing absent class members to invite class counsel to participate in discussions with separately retained counsel would "eviscerate the right" to separate counsel guaranteed under Rule 23. *See In re Community Bank of Northern Virginia*, 418 F.3d 277, 313 (3d Cir. 2005) (reversing order that prohibited communications between outside counsel and absent class members).

---

[2] *Available at* http://www.fjc.gov/public/pdf.nsf/lookup/ClaAct04.pdf/$file/ClaAct04.pdf.

INTERVENORS' OPPOSITION TO *EX PARTE*

Ignoring the text of Rule 23(c), plaintiff's counsel rely on two district court cases, *In re Shell Oil Refinery*, 152 F.R.D. 526 (E.D. La. 1989) and *In re Airline Ticket Comm'n Antitrust Litig.*, 1996 WL 585301 (D. Minn. Aug. 12, 1996), that are very different from the present facts and based on obsolete law. Neither of these cases arose in a setting where an absent class member had filed and pursued an independent action before an order on class certification. Both arose before Rule 23(c) was amended to permit specifically a class member to retain his or her own counsel. In addition, both decisions expressly limited their holding to situations where communications occurred *after* class notices were issued and *after* the opt-out period expired, neither of which has occurred here. *See, e.g.*, *In re Airline Ticket*, 1996 WL 585301 at *2 ("Had these [class members] wished to opt out of the case, or seek a private settlement with defendants, they were free to do so prior to expiration of the opt-out period.").

In any event, these decisions cannot be squared with the plain language of Rule 23, which was amended in 2003 to guarantee expressly and specifically the right of absent class members to use separate counsel. *See* Fed. R. Civ. P. 23 Adv. Comm. Notes to 2003 Amendments (confirming that the "notice provisions" in 23(c) were "substantially revised" in 2003). The decisions thus are no longer good law (and never were).

## C.   Class Certification Cannot Undermine and Displace Existing Lawyer-Client Relationships.

Even if the mediation had not occurred solely with legal representatives for the Record Companies (it did), and even if the Record Companies had not filed their own action (they did), plaintiff's counsel's argument would fail. Class members cannot truly be said to be represented by class counsel until the opt out period expires because, until then, class members retain an absolute right to decline to participate in a class action. *See* ABA Formal Opinion 07-445 (2007) ("A client-lawyer relationship with a potential member of the class does not begin until the class has been certified

10

and the time for opting out by a potential member of the class has expired."); *Bobryk v. Durand Glass Mfg. Co.*, 2013 WL 5574504, at *9 (D.N.J. Oct. 9, 2013) ("Until putative class members affirmatively opt-in to benefit from a collective action, or until a Rule 23 class is certified and the opt-out period expires, defense counsel is not completely barred from communicating with putative class members."); *Krzesniak v. Cendant Corp.*, 2007 WL 4468678, at *2-3 (N.D. Cal. Dec. 17, 2007) ("[T]here is nothing that prevents class members from contacting a defendant's counsel ***before the expiration of the opt-out period***.   Until then, the class members are not represented by plaintiff's counsel and plaintiff cannot 'freeze' opposing counsel's right to communicate.") (emphasis added); *see also generally* Hayden Decl. ¶¶ 11-18.

No authority holds that certification of a class displaces existing lawyer-client relationships.  The *Hernandez* decision relied upon by plaintiff applied Rule 2-100 before expiration of the opt-out period, but did so in a setting where a third party allegedly was misleading absent class members and communicating directly with class members without the benefit of any legal counsel.  *Hernandez v. Vitamin Shoppe Indus. Inc.*, 174 Cal. App. 4th 1441 (2009).  Neither of those concerns is present here.

### D.      The Failure of Plaintiff's Counsel To Timely Raise The Alleged Ethical Violation Constitutes Consent and Waiver.

Plaintiff's counsel also cannot now complain of a purported ethical violation that they raised for the first time on July 6, 2015 after the fact.  Nowhere in plaintiff's papers or supporting declarations do they claim to have advised Sirius XM or the Record Companies that Sirius XM's counsel would be violating Rule 2-100 by participating in a mediation.  *See also* Borkowski Decl. ¶ 17 (no notice prior to July 6, 2015) *and* Ostroff Decl. ¶ 2 (same).  The failure of plaintiff's counsel to provide such notice is telling because plaintiff's counsel knew no later than May 7, 2015, that the mediation would occur in mid-June – more than a month in advance – and then had dinner with counsel for the Record Companies just before the settlement.

INTERVENORS' OPPOSITION TO *EX PARTE*

The conduct of plaintiff's counsel amounts to consent or acquiescence to the communications between Sirius XM and Record Companies, which further bars their belated claims of misconduct.  A consent occurs where a party's lawyer acquiesces by not objecting that a communication cannot ethically occur without their participation.  *See* Hayden Decl. ¶ 17.  Plaintiff's counsel may have wanted, in a hope of higher fees, to take credit for the Record Companies' settlement, but this self-centered desire cannot transform a hope into a right.  Notably, it would have been unethical for plaintiff's counsel to refuse to grant the Record Companies permission to negotiate with Sirius XM with their own counsel (even assuming such permission was ever required).  *Id.* ¶¶ 17-18.

## V.   Plaintiff's Contention That Extraordinary Relief Is Warranted Because The Record Companies Purportedly Settled Based On Works They Do Not Own Is Wrong.

The Record Companies did not settle based on works that they had no right to settle.  Nor did they settle or purport to extinguish improperly claims of third parties.  *See* Schmidt Decl. ¶¶ 8-9.  Plaintiff's claims in this regard are wrong and irrelevant.  Sirius XM and the Record Companies cannot validly extinguish or dispose of the rights of class members (or of anyone) without their authorization.  Any such effort would be of no consequence to the enforceability of any third party's rights.

## VI.   The Application Creates Or Reveals A Disqualifying Conflict That Precludes Plaintiff's Counsel From Obtaining, or Even Seeking, Any Of The Relief Sought.

The *ex parte* application creates or reveals direct adversity between plaintiff's counsel and the Record Companies.  One of the Record Companies, UMG, was formerly represented by Mr. Harvey Geller of plaintiff's counsel.  There is a substantial relationship between the work that Mr. Geller did for UMG and the relief sought by the application, which is adverse to UMG.  California Rule of Professional

12

Conduct 3-310(E) prohibits plaintiff's counsel from seeking such relief and, thus, requires that the application be denied.  Hayden Decl. ¶¶ 19-23.

California Rule of Professional Conduct 3-310(E) provides: "A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."  If the attorney does not obtain consent from his former client upon becoming an adversary, the former client may disqualify the attorney and the attorneys' firm by showing a "substantial relationship" between the subjects of the prior and the current representations.  *City and County of San Francisco v. Cobra Solutions, Inc.*, 38 Cal. 4th 839, 847 (2006).

"To determine whether there is a substantial relationship between successive representations, a court must first determine whether the attorney had a direct professional relationship with the former client in which the attorney personally provided legal advice and services on a legal issue that is closely related to the legal issue in the present representation."  *City and County of San Francisco*, 38 Cal. 4th at 847.  Matters are substantially or closely related when "information material to the evaluation, prosecution, settlement or accomplishment of the former representation is also material to the evaluation, prosecution, settlement or accomplishment of the current representation given its factual and legal issues."  *Jessen v. Hartford Cas. Ins. Co.*, 111 Cal. App. 4th 698, 713 (2003).  The former client need not prove that the attorney actually possesses confidential information.  *City and County of San Francisco*, 38 Cal. 4th at 847.  Instead, it is presumed that confidences material to the current representation would have been imparted to counsel and the attorney is automatically disqualified.  *Id.*

Here, plaintiff's counsel is acting in direct contravention of Rule 3-310(E).  One of the lawyers in the firm serving as class counsel, Harvey Geller, represented UMG for close to two decades.  In his former role as in-house counsel, he regularly worked

INTERVENORS' OPPOSITION TO *EX PARTE*

and advised on issues relating to the ownership and control of sound recordings. Schmidt Decl. ¶¶ 5-9. In particular, he regularly advised UMG on legal issues relating to performance rights in pre-1972 recordings, which are at the heart of this case. *Id.* ¶¶ 5-6. As a result, both he and his firm are absolutely prohibited from taking positions adverse to UMG relating to those matters. *Global Van Lines, Inc. v. Superior Court*, 144 Cal. App. 3d 483, 486, 490 (1983) (holding former in-house counsel and his firm were disqualified due to taking adverse position against former client). So, even if while the work of plaintiff's counsel to date may not have presented a disabling conflict, if allowed to proceed, the *ex parte* temporary restraining order would create an irreparable and disabling conflict *See Nuttall v. Juarez*, Case No. 2:13-cv-08885-PSG-AS, Dkt. 150 (C.D. Cal. July 24, 2014) (holding that when a "straightforward breach of Rule 3-310(E)" is shown, it "cannot be permitted to continue").

## VII.  Plaintiff's Counsel Has Not Demonstrated An Immediate Risk Of Irreparable Harm.

Interested only in fees, the *ex parte* application devotes most of its attention to the common fund doctrine to justify the demands of plaintiff's counsel to a share of a private settlement between private litigants over a lawsuit that has been separately litigated since 2013. The Court does not need to wade into this dispute – and certainly not on an *ex parte* basis – because there is no possible ground for asserting irreparable injury should the settlement be effectuated according to its terms.

The short answer to plaintiff's counsel's desire to justify an enhanced fee award is that at the appropriate time, plaintiff's counsel can make that request, assuming: (a) the Ninth Circuit does not grant a pending Rule 23(f) petition and reverse certification, (b) this case proceeds to trial as a class action, and (c) plaintiff can prevail on a classwide basis. If the Court considers the request meritorious in whole or in part, it can award attorneys' fees accordingly and, presumably, Sirius XM will pay those fees. Those circumstances do not warrant or permit interference with the

14

arms-length transaction between Sirius XM and the Record Companies, especially when plaintiff's counsel lacks any authority for picking the pocket of the Record Companies because of an overlap of issues between two separately litigated cases.

Absent evidence that a defendant is unlikely to be able to pay an ultimate award at the end of litigation due to insolvency (which are the only authorities offered by plaintiff), "[d]amages compensable through money cannot provide the irreparable harm required for the extraordinary equitable remedy of a temporary restraining order." *Avila-Martinez v. Wells Fargo Bank, N.A.*, 2011 WL 3876000, at *2 (E.D. Cal. 2011); *La Jolla Cove Investors, Inc. v. GoConnect Ltd.*, 2012 WL 1580995, at *4 (S.D. Cal. 2012)*; see also, e.g.*, *Rent–A–Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir.1991) ("[E]conomic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award."). Disputes about whether attorneys' fees will be owed do not give rise to irreparable injury. *See U.S. Legal Support, Inc. v. Hofioni*, 2015 WL 110884, at *2 (E.D. Cal. 2015) (holding no irreparable harm raised by demand for payment of attorneys' fees).

Plaintiff's counsel has not suggested, much less offered a scintilla of evidence, that Sirius XM does not have adequate resources to pay an attorneys' fees award at the end of this litigation. *See supra* n.1 (2014 annual revenues in excess of $4 billion with free cash flow in excess of $1 billion). For this reason alone, the *ex parte* request for a temporary restraining order should be denied.

## VIII.  CONCLUSION

For all of the foregoing reasons, the Court should not lift the stay, and the *ex parte* temporary restraining order should be denied.

Dated:  July 10, 2015

Respectfully submitted,

SIDLEY AUSTIN LLP

By: */s/ Peter I. Ostroff*

Peter I. Ostroff
Attorneys for Capitol Records, LLC,
Sony Music Entertainment, UMG
Recordings, Inc., Warner Music Group
Corp., and ABKCO Music & Records,
Inc.

INTERVENORS' OPPOSITION TO *EX PARTE*

1

## PROOF OF SERVICE

2

STATE OF CALIFORNIA          )

3

                             ) ss

COUNTY OF LOS ANGELES )

4

5

        I am employed in the County of Los Angeles, State of California.  I am over the age of 18 years and not a party to the within action.  My business address is 555 West Fifth Street, Suite 4000, Los Angeles, California 90013-1010.

6

7

        On July 10, 2015, I served the foregoing document(s) described as **INTERVENORS CAPITOL RECORDS, LLC, SONY MUSIC ENTERTAINMENT, UMG RECORDINGS, INC., WARNER MUSIC GROUP CORP., AND ABKCO MUSIC & RECORDS, INC.'S OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION** on all interested parties in this action as follows:

8

9

10

11

| | |
|---|---|
| Henry Gradstein<br>Maryann R. Marzano<br>Harvey W. Geller<br>Daniel B. Lifschnitz<br>Gradstein & Marzano, P.C.<br>6310 San Vicente Blvd., Suite 510<br>Los Angeles, CA 90048<br>Facsimile: (323) 931-4990<br>[Courtesy email to<br>hgradstein@gradstein.com;<br>mmarzano@gradstein.com;<br>hgeller@gradstein.com;<br>dlifschitz@gradstein.com] | Evan S. Cohen<br>Attorney at Law<br>1180 South Beverly Drive, Suite 510<br>Los Angeles, California 90035<br>Facsimile: (310) 556-9801<br>[Courtesy email to esc@manifesto.com]<br><br>Daniel M. Petrocelli<br>Robert M. Schwartz<br>Victor H. Jih<br>O'Melveny & Meyers LLP<br>1999 Avenue of the Stars<br>Los Angeles, CA 90067<br>Facsimile: (310) 246-6779<br>[Courtesy email to<br>dpetrocelli@omm.com;<br>rschwartz@omm.com; vjih@omm.com] |

12

13

14

15

16

17

18

19

20

21

22

23

☒    (VIA FACSIMILE) I caused the foregoing document to be served by facsimile transmission from sending facsimile machine number (213) 896-6600 to each interested party at the facsimile machine telephone number shown.  Each transmission was reported as complete and without error.  A transmission report was properly issued by the sending facsimile machine for each interested party served.

24

25

26

27

28

ACTIVE 208980132v.1

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on July 10, 2015, at Los Angeles, California.

S.J. Geanopulos

ACTIVE 208980132v.1