UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-5693 PSG (RZx) | Date | July 22, 2015 |
|---|---|---|---|
| Title | Flo & Eddie, Inc. v. Sirius XM Radio, Inc. | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy Hernandez | | Not Reported |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiff(s): | | Attorneys Present for Defendant(s): |
| Not Present | | Not Present |

**Proceedings (In Chambers):**     Order DENYING *Ex Parte* Application to Lift Stay

     Before the Court is Plaintiff Flo & Eddie, Inc.'s ("Flo & Eddie") *ex parte* application to lift the stay in the case for the purpose of issuing orders (1) enjoining Defendant Sirius XM ("Sirius XM") from paying a settlement in different case; (2) imposing a lien on the settlement in favor of class counsel; (3) permitting discovery regarding the settlement; and (4) barring Sirius XM and its counsel from directly or indirectly communicating with class members. Dkt. # 241. Sirius XM opposes the application. *See* Dkt. # 247. The other parties to the settlement at issue – Capitol Records, LLC, Sony Music Entertainment, UMG Recordings, Inc., Warner Music Group Corp., and ABKCO Music & Records (the "Record Companies") – also oppose the motion. *See* Dkts. # 245, 215.[1] The Court finds this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. After considering the supporting and opposing papers, the Court DENIES Flo & Eddie's application.

I.     Background

     Flo & Eddie, represented by the law firm Gradstein & Marzano, P.C. ("G&M"), filed this lawsuit against Sirius XM in state court on August 1, 2013 and Sirius XM later removed to this Court. *See* Dkt. # 1. The litigation was styled as a class action on behalf of owners of sound recordings fixed prior to February 15, 1972 and asserted that Sirius XM infringed on the property rights of recording owners by publicly performing their recordings without authorization. *Id.* G&M also filed similar lawsuits on behalf of Flo & Eddie in New York and Florida in August and early September of 2013. *Gradstein Decl.* ¶ 2. Subsequently, on September 11, 2013, the Record Companies filed an action in California state court likewise asserting that Sirius XM was infringing on their rights by performing their pre-1972 recordings

---

[1] The Court GRANTS the Record Companies' unopposed *ex parte* application to intervene to oppose Flo & Eddie's *ex parte* application and set aside any relief granted in connection with it. *See* Dkt. # 244.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-5693 PSG (RZx) | Date | July 22, 2015 |
|---|---|---|---|
| Title | Flo & Eddie, Inc. v. Sirius XM Radio, Inc. | | |

without authorization (*Capitol Records LLC, et al v. Sirius XM Radio Inc.*, L.A.S.C., Case No. BC520981). *See id.* ¶ 3.

A decision on the merits preceded class certification in this case. On September 22, 2014, the Court granted summary judgment in favor of Flo & Eddie as to all causes of action. *See* Dkt. # 117. On May 27, 2015, the Court granted Flo & Eddie's motion for class certification and appointed G&M as class counsel. Dkt. # 225. The following week, Sirius XM filed an *ex parte* application to stay the case pending the resolution of Sirius XM's Federal Rule of Civil Procedure 23(f) appeal of the class certification order to the Ninth Circuit. Dkt. # 228. The Court granted the request on June 8, 2015 and stayed the case pending the resolution of Sirius XM's appeal. *See* Dkt. # 237. Sirius XM has since filed its Rule 23(f) petition, and Flo & Eddie has filed its opposition brief, but the Ninth Circuit has not ruled on the petition. *See Petrocelli Decl.* ¶ 3.

Earlier this year, in March of 2015, Sirius XM and the Record Companies scheduled a private mediation to take place on June 15 and 16, 2015 in New York before mediator Antonio Piazza. *See id.* ¶ 4. On May 7, 2015, approximately three weeks prior to the Court's class certification order, counsel for Sirius XM notified Harvey Geller ("Geller"), a G&M attorney representing Flo & Eddie, about this scheduled mediation with the Record Companies. *Geller Decl.* ¶ 2; *Petrocelli Decl.* ¶ 5, Ex. A; *see also Ostroff Decl.* ¶ 2 (counsel for Record Companies communicated with G&M in May and June 2015 about the forthcoming mediation). G&M wanted to be included in the *Capitol Records* mediation and requested a single combined mediation for the *Capitol Records* lawsuit and the three *Flo & Eddie* lawsuits, but counsel for Sirius XM refused. *Petrocelli Decl.* ¶¶ 7-8; *Gradstein Decl.* ¶ 6. Sirius XM proposed that a separate mediation session for the *Flo & Eddie* cases take place on June 17, 2015, the day after the *Capitol Records* mediation, in the same location and before the same mediator. *Petrocelli Decl.* ¶¶ 7-8. Although this course of action was not G&M's preference, it agreed. *Id.* ¶ 8; *Gradstein Decl.* ¶ 8. The mediations took place on June 15 and 16, 2015 for the *Capitol Records* lawsuit and on June 17, 2015 for the *Flo & Eddie* lawsuits, as scheduled. *Petrocelli Decl.* ¶¶ 11-12.

According to Daniel Petrocelli ("Petrocelli"), counsel for Sirius XM, the Record Companies and Sirius XM reached a settlement in principle on June 16, 2015 and signed a written settlement agreement on June 17, 2015 ("*Capitol Records* Settlement"). *Id.* ¶ 11. The *Capitol Records* Settlement resolved the Record Companies' lawsuit in its entirety and all claims concerning pre-1972 recordings owned or controlled by the Record Companies for a certain time period. *Id.* The settlement requires dismissal with prejudice and a cash payment on July 31, 2015. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-5693 PSG (RZx) | Date | July 22, 2015 |
|---|---|---|---|
| Title | Flo & Eddie, Inc. v. Sirius XM Radio, Inc. | | |

On June 17, 2015, G&M was informed that the Record Labels were documenting a confidential settlement with Sirius XM that day, but the terms of the settlement were not disclosed to G&M. *Gradstein Decl.* ¶ 12. Petrocelli attests that Sirius XM reached a verbal agreement to the essential terms of the settlement of the *Flo & Eddie* cases with G&M on June 17, 2015, including a cash payment and license agreement. *Petrocelli Decl.* ¶ 12. Thereafter, several drafts of an agreement were exchanged between counsel for Sirius XM and G&M. *Id.* ¶ 13. On June 22, 2015, Henry Gradstein ("Gradstein"), a G&M attorney, called Peter Ostroff ("Ostroff"), counsel for the Record Companies, and stated that he was very dissatisfied with the settlement offer that Sirius XM had made to him and asked about the percentage of songs owned or controlled by the Record Companies. *Ostroff Decl.* ¶ 4. On the morning of June 26, 2015, Petrocelli represents that counsel for Sirius XM and G&M participated in a lengthy telephonic conference in which they walked though and discussed all major points of the settlement, and many minor points as well. *Petrocelli Decl.* ¶ 12.

Also on June 26, 2015, Sirius XM publicly disclosed some of the terms of the *Capitol Records* Settlement in its 8-K filing with the Securities & Exchange Commission ("SEC"). *See Gradstein Decl.* ¶ 13, Ex. 1. The SEC filing revealed that Sirius XM would pay the Record Companies $210 million in a settlement that resolves all past claims as to Sirius XM's "use of pre-1972 recordings owned or controlled by the [Record Companies] and enables [Sirius XM] . . . to reproduce, perform and broadcast such recordings in the United States through December 31, 2017." *Id.*, Ex. 1. The SEC filing also stated that the Record Companies "have represented and warranted to [Sirius XM] that in the United States they own, control or otherwise have the right to contract with respect to approximately 80% of the pre-1972 recordings [Sirius XM] ha[s] historically used." *Id.*

On July 6, 2015, Gradstein of G&M telephoned counsel for Sirius XM and the Record Companies and gave them oral notice of Flo & Eddie and G&M's intent to file an *ex parte* application related to the *Capitol Records* Settlement. *Id.* ¶ 16. Two days later, G&M filed the *ex parte* application presently before the Court. *See* Dkt. # 241.

II.      Legal Standard

    A.      Lifting a Stay

A district court has discretionary power to stay proceedings in its own court. *j2 Global, Inc. v. Integrated Global Concepts, Inc.*, No. CV 12-03439 DDP (PLAx), 2013 WL 3272922, at *1 (C.D. Cal. June 27, 2013) (citing *Landis v. N. Am. Co.*, 299 U.S. 248 (1936)). And "[w]hen the circumstances have changed such that the reasons for imposing the stay are nonexistent or inappropriate, a court has the inherent power and discretion to lift the stay." *Id.* (citing *Canady*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-5693 PSG (RZx) | | Date | July 22, 2015 |
|---|---|---|---|---|
| Title | Flo & Eddie, Inc. v. Sirius XM Radio, Inc. | | | |

*v. Erbe Elektromedizin GmbH*, 271 F. Supp. 2d 64, 74 (D.D.C. 2002); *see also Sierra Med. Servs. Alliance v. Maxwell-Jolly*, No. CV 10-4182 CAS (MANx), 2011 WL 3837076, at *2-3 (C.D. Cal. Aug. 29, 2011) ("[T]he same court that imposes a stay of litigation has the inherent power and discretion to lift the stay.") (quotation omitted).

B.  *Ex Parte* Application

The law on *ex parte* applications is well-settled in the Ninth Circuit: In order to justify *ex parte* relief, the moving party must establish (1) that its cause will be irreparably prejudiced if the underlying motion is heard according to regularly noticed motion procedures, and (2) that it is without fault in creating the crisis that requires *ex parte* relief, or that the crisis occurred as a result of excusable neglect. *See Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995). Additionally, the Court's Standing Order requires strict compliance with the *Mission Power* standard and makes clear that "[e]x parte applications are solely for extraordinary relief." *Standing Order* ¶ 10.

III. Discussion

This case is presently stayed pending the resolution of Sirius XM's appeal of the Court's order granting class certification. Dkt. # 237. Flo & Eddie and G&M request that the Court lift the stay to impose *ex parte* relief (1) enjoining Sirius XM from paying the *Capitol Records* Settlement; (2) imposing a lien on the *Capitol Records* Settlement in favor of G&M; (3) permitting discovery regarding the *Capitol Records* settlement; and (4) barring Sirius XM and its counsel from directly or indirectly communicating with class members. Dkt. # 241.

The requested relief is premised on three theories. First, Flo & Eddie argue that the *Capitol Records* Settlement is improper because Sirius XM's communication with counsel for the Record Companies after class certification without G&M violated California Rule of Professional Conduct 2-100 ("Rule 2-100"). *App.* 9:15-11:22. Thus, Flo & Eddie argue, it was an ethical violation for Sirius XM and the Record Companies to meet and settle the *Capitol Records* lawsuit without including G&M in the process. *Id.* Second, the *Capitol Records* Settlement is improper because it purports to settle the claims of class members other than the Record Companies. *See id.* 11:23-13:10. These two arguments underpin Flo & Eddie's requests for enjoining the settlement, permitting discovery about the settlement, and barring Sirius XM from further communicating with class members. The third argument is asserted by G&M alone, not on behalf of Flo & Eddie. G&M contends that it is entitled to recover its attorneys' fees from the *Capitol Records* Settlement under the "common fund doctrine" because the settlement fund resulted entirely and directly from the work of G&M in successfully litigating the property

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-5693 PSG (RZx) | Date | July 22, 2015 |
|---|---|---|---|
| Title | Flo & Eddie, Inc. v. Sirius XM Radio, Inc. | | |

rights issues in the *Flo & Eddie* cases. *Id.* 13:11-22:9. On this theory, G&M requests that the Court enjoin payment of the *Capitol Records* Settlement or impose a lien on it in favor of G&M.

    A.    <u>Lifting a Stay</u>

Although the circumstances that gave rise to the stay – a pending appeal of this Court's class certification order – have not changed, the Court reasons that it would be "inappropriate" to maintain the stay if doing so would irreparably harm one of the litigants. Thus, it would be proper to lift the stay for the purpose of granting necessary injunctive relief if such immediate relief was necessary to avoid irreparable harm. However, for the reasons discussed below, the requested relief is not necessary to avoid irreparable harm to Flo & Eddie, the class, or G&M.

    B.    *Ex Parte* Relief

        i.    *Without Fault*

*Ex parte* relief is only appropriate if "the moving party is without fault in creating the crisis that requires the relief, or if the crisis occurred as a result of excusable neglect." *See Mission Power*, 883 F. Supp. at 492.

G&M's delay in challenging Sirius XM's communications with the Record Companies and even the settlement itself suggests to the Court that G&M did not care to enjoin the settlement payment or seek to recover a portion of it until G&M learned the size of the settlement. If class counsel took issue with Sirius XM communicating with the Record Companies post-certification, it should have moved to restrict such communication after the Court certified the class on May 27, 2015. As discussed above, G&M had notice of the Record Companies' scheduled mediation with Sirius XM as of May 7, 2015. Also, after the *Capitol Records* Settlement took place, if G&M believed that it was entitled to recover fees out of the settlement fund, it should have so moved when it discovered that the parties had reached a settlement, on June 17, 2015. Instead, G&M was not spurred to action until Sirius XM disclosed the amount on the settlement – $210 million – in its June 26, 2015 SEC filing. G&M filed this *ex parte* application on July 8, 2015. *See* Dkt. # 241. The size of the settlement payment is not germane to any of the arguments proposed in the application and should not have been a trigger for anything.[2]

---

[2] Although the SEC disclosure also stated that the agreement settled claims as to recordings "owned *or controlled*" by the Record Companies and G&M asserts that this statement implies that the Record Companies improperly settled claims on behalf of other class members, the Court agrees with the Record Companies and Sirius XM that this issue is a "straw man" argument. *See Sirius XM Opp.* 13:12-15:6; *Record Co. Opp.* 12:11-19; *Sur-Reply* 2:8-21. The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-5693 PSG (RZx) | Date | July 22, 2015 |
|---|---|---|---|
| Title | Flo & Eddie, Inc. v. Sirius XM Radio, Inc. | | |

      Although G&M's dilatory conduct suggests that it did not intend to challenge the *Capitol Records* Settlement or seek to recover from it until G&M discovered the size of the settlement, that finding would not necessarily preclude *ex parte* relief.  On May 27, 2015, when the Court certified the class, the scheduled mediation was less than three weeks away and G&M could not have asked the Court to stop the mediation or require G&M's inclusion before the mid-June mediation date by regularly timed motion.  However, G&M also did not move *ex parte* to halt the communications at that point.  If G&M was concerned that the mediation session was unethical, it should have.  Instead, with full knowledge that the mediation was to occur and could result in settlement, G&M did not ask the Court to intervene and attended its own mediation with Sirius XM the day after the *Capitol Records* mediation.  Thus, the Court concludes that G&M is at fault for creating the "crisis" that Sirius XM and the Record Labels settled their claims without allowing class counsel to participate because G&M could have raised the issue to the Court prior to the mediation and failed to do so.  Accordingly, the Court will not entertain the portions of the *ex parte* application that complain that the *Capitol Records* Settlement was improper because it was reached at a mediation that excluded G&M.

      G&M's final legal argument, the common fund recovery theory, presents a different timing analysis.  The trigger event for the claim that G&M was entitled to a portion of the *Capitol Records* Settlement was learning that the settlement had occurred.  G&M discovered that Sirius XM and the Record Companies had settled on June 17, 2015.  On that date, this Court's regular motion calendar was closed through August 3, 2015.  Thus, even if G&M had acted promptly to claim its stake to the settlement proceeds, it would not have been able to proceed by regularly timed motion to preserve the fund.  Accordingly, G&M is not at fault for creating the timing crisis related to the *Capitol Records* Settlement such that G&M could not proceed to halt the settlement by regular motion.

      ii.    *Irreparable Harm*

---

Record Companies only had and have the authority to settle claims as to the recordings that they lawfully own or control.  If the Record Companies represented to Sirius XM that they own or control a greater percentage of relevant pre-1972 recordings than they actually do, that representation may affect the agreement between the Record Companies and Sirius XM (as Sirius XM may have relied on it when valuing the *Capitol Records* Settlement at $210 million), but the Court discerns no impact on the actual rights-holders.  Consequently, the Court will not grant relief premised on the argument that the *Capitol Records* Settlement unlawfully extinguished the rights of other class members.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-5693 PSG (RZx) | Date | July 22, 2015 |
|---|---|---|---|
| Title | Flo & Eddie, Inc. v. Sirius XM Radio, Inc. | | |

The relief that G&M seeks related to its common fund theory is that the Court enjoin Sirius XM from paying the *Capitol Records* Settlement amount or impose a lien on the settlement so that G&M can recover attorneys' fees from the settlement fund. Monetary loss generally does not constitute irreparable harm. *See Dahl v. Swift Distribution, Inc.*, 2010 WL 1458957 (C.D. Cal. Apr. 1, 2010) ("An irreparable injury, however, does not exist where monetary damages would be an adequate remedy.") (citing *Stormans, Inc. v. Selecky*, 571 F.3d 960, 988 (9th Cir. 2009)); *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) ("[E]conomic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award."); *see also Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("[T]he temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury."); *Sirius XM Opp.* 20:11-12:19; *Record Co. Opp.* 14:14-15:21. Here, what G&M ultimately seeks is money – a percentage of the $210 million *Capitol Records* Settlement payment. And G&M does not contend that the Recording Companies, five major record labels, might not be able to pay G&M if it is later determined that they owe G&M some portion of their settlement allocations pursuant to the common fund doctrine.

However, G&M asserts that distribution of the settlement fund to the Record Companies on July 31, 2015 would constitute irreparable injury because G&M's common fund recovery theory requires that the settlement fund at issue stay intact. *See Reply* 2:3-6, 8:23-9:16. The Court disagrees. Under the circumstances of this case, distribution of the alleged common fund, the *Capitol Records* Settlement amount, would not irreparably harm G&M because G&M could later recover its fees directly from the five entities comprising the Record Companies, if warranted.

"The common fund doctrine provides that a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). G&M is correct that the doctrine requires the existence of a "fund" intended to benefit a group of beneficiaries from which the party who bestowed the benefit can seek to recover, and that a settlement can qualify as this fund. *Id.* at 770. However, the requirement for a fund exists to ensure that the "class of beneficiaries is sufficiently identifiable," "benefits can be accurately traced," and "the fee can be shifted with some exactitude to those benefiting" so that the burden of litigation expenses can be "spread proportionally among those who have benefited." *See Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989). It is still possible to ensure this result after distribution of the fund to the beneficiaries so long as such a fund existed in the first place. The Ninth Circuit has expressly stated that, under the common fund doctrine, a party's "award can [] be recovered either from the fund or directly from the beneficiaries." *See B.P. N. Am. Trading, Inc. v. Vessel*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-5693 PSG (RZx) | Date | July 22, 2015 |
|---|---|---|---|
| Title | Flo & Eddie, Inc. v. Sirius XM Radio, Inc. | | |

*Panamax Nova*, 784 F.2d 975, 977 (9th 1986) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257 (1975)).

The only out-of-circuit case that the Court finds persuasive on this issue does not support G&M's argument that distribution of the *Capitol Records* Settlement fund would irreparably injure G&M. *Reply* 9:2-16. The Second Circuit has reasoned that distribution of a common fund constitutes irreparable harm when the beneficiaries are so numerous that recovering from them directly would be highly impractical. *See Savoie v. Merchants Bank*, 84 F.3d 52, 58 (2d Cir. 1996) (explaining that a preliminary injunction was necessary to "ensure the availability of the common fund monies" because "[i]f plaintiffs were subsequently awarded attorney's fees but a portion of the common fun had not been set aside, plaintiffs would have had to attempt to seek recovery from each of the hundreds of trust customers who received part of the $9 million payment . . . [and] such a recourse is so impractical as to be infeasible, and constitutes irreparable harm"). The *Capitol Records* Settlement does not present this impractical recovery issue because the purported beneficiaries are just five known entities.

For these reasons, the Court concludes that distribution of the *Capitol Records* Settlement to the Record Companies will not irreparably injure G&M, thus, *ex parte* relief to halt distribution of payment or impose a lien on fund is not warranted.

In summary, the Court declines to lift the stay in this case to grant the *ex parte* application requesting various forms of injunctive relief because the "crisis" of the *Capitol Records* Settlement's consummation and impending distribution is due in part to Flo & Eddie's dilatory conduct leading up to the *Capitol Records* mediation and G&M has not demonstrated that it will be irreparably harmed absent the requested relief.

IV. <u>Conclusion</u>

For the foregoing reasons, the Court DENIES Flo & Eddie's *ex parte* application to lift the stay in the case.

**IT IS SO ORDERED.**