| | |
|---|---|
| HENRY GRADSTEIN (89747)<br>hgradstein@gradstein.com<br>MARYANN R. MARZANO (96867)<br>mmarzano@gradstein.com<br>DANIEL B. LIFSCHITZ (285068)<br>dlifschitz@gradstein.com<br>6310 San Vicente Blvd., Suite 510<br>Los Angeles, California 90048<br>T: 323-776-3100<br><br>EVAN S. COHEN (119601)<br>esc@manifesto.com<br>1180 South Beverly Drive, Suite 510<br>Los Angeles, California 90035<br>T: 310-556-9800 F: 310-556-9801 | SUSMAN GODFREY L.L.P.<br>STEPHEN E. MORRISSEY (187865)<br>smorrissey@susmangodfrey.com<br>STEVEN G. SKLAVER (237612)<br>ssklaver@susmangodfrey.com<br>KALPANA SRINIVASAN (237460)<br>ksrinivasan@susmangodfrey.com<br>1901 Avenue of the Stars, Suite 950<br>Los Angeles, CA 90067-6029<br>T: 310-789-3100 F: 310-789-3150 |

*Attorneys for Plaintiff FLO & EDDIE, INC.*
[Additional Counsel for Plaintiff on Signature Page of Motion]

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| FLO & EDDIE, INC., a California corporation, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>SIRIUS XM RADIO, INC., a Delaware corporation; and DOES 1 through 10,<br><br>                    Defendants. | Case No. CV13-05693 PSG (GJSx)<br><br>**DECLARATION OF HENRY GRADSTEIN IN SUPPORT OF PLAINTIFF'S MOTION FOR INTERIM FEE AWARD BASED ON CLASS COUNSEL'S ROLE IN CREATING COMMON BENEFIT FOR MEMBERS OF THE CERTIFIED CLASS THAT HAVE ENTERED INTO SETTLEMENTS WITH SIRIUS XM** |

**REDACTED VERSION OF DOCUMENT**
**PROPOSED TO BE FILED UNDER SEAL**

4419633v1/015185

I, Henry Gradstein, hereby declare and state as follows:

1. I am an attorney duly licensed to practice law in the State of California and admitted to practice before the United States District Court for the Central District of California since 1979. I am a partner in the law firm of Gradstein & Marzano, P.C. ("G&M"), which has been appointed as Co-Lead Class Counsel in the above-entitled action. I have personal knowledge of the facts set forth herein, and if called upon to testify as a witness, I could and would do so competently.

2. G&M instituted this class action litigation on behalf of Flo & Eddie and a putative class of owners of recordings fixed prior to February 15, 1972 ("pre-1972 recordings") on August 1, 2013. The original complaint was filed in California state court, and later removed by Defendant Sirius XM Radio, Inc. ("Sirius XM") to this Court on August 6, 2015. G&M also filed similar putative class actions on behalf of Flo & Eddie in New York on August 16, 2013 (*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, Southern District of New York, Case No. 13-CIV-5784 (CM) and in Florida on September 3, 2013 (*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, Southern District of Florida, Case No. 13-CV -23182 (DPG)).

3. After we filed all three of the class action lawsuits, Capitol Records, LLC, Sony Music Entertainment, UMG Recordings Inc., Warner Music Group Corp. and ABKCO Music & Records, Inc. (the "Major Labels") filed an action against Sirius XM in California state court on September 11, 2013 alleging claims identical to those filed by Flo & Eddie in California federal court (with an additional claim for declaratory relief) concerning the pre-1972 recordings they allegedly owned (*Capitol Records LLC, et al. v. Sirius XM Radio Inc.*, Superior Court of Los Angeles, Case No. BC520981). A true and correct copy of the Major Labels' complaint is attached as **Exhibit 1,** and a true and correct copy of the Notice of Related Case filed in the *Capitol Records* action is attached as **Exhibit 2.**

4. In recognition of the common interests between Class Counsel and the Major Labels, and in order to obtain privileged strategic and legal advice from Class

Counsel regarding their claims, the Major Labels and Class Counsel entered into a Common Interest Agreement ("CIA"). The Recording Industry Association of America ("RIAA"), which represents the interests of the Major Labels, also is a party to the CIA. The CIA was executed effective as of September 11, 2013, the date the Major Labels' action was filed, although it was not actually signed until several months later. Pursuant to the CIA, G&M shared discovery, work product, and legal strategy with the Major Labels and the RIAA. The CIA has not been terminated by any party.

5.   Pursuant to the CIA, between September 2013 and June 2015, Harvey Geller of G&M (and who joined another firm in 2016), exchanged hundreds of emails with counsel for the Major Labels, including George Borkowski, Senior Vice President, Litigation and Legal Affairs, for the RIAA; Steve Marks, Chief, Digital Business and General Counsel for the RIAA; Alasdair McMullen, Universal Music Group; Russell Frackman, a partner with Mitchell Silberberg & Knupp who represented the Major Labels; and Peter Ostroff, a partner with Sidley & Austin who represented the Major Labels. Copies of those emails reside on my law firm's server.

6.   I have reviewed the emails exchanged pursuant to the CIA, and G&M most frequently corresponded with Messrs. Borkowski and Frackman. This correspondence was privileged under the terms of the CIA, and I thus cannot disclose the contents of the correspondence without waiving the privilege, but G&M is agreeable to producing the correspondence to the Court for *in camera* review. The correspondence addressed a broad range of strategic and legal issues relating to both the *Flo & Eddie* action and the separate action filed by the Major Labels, including discussion of the merits of claims and defenses, legal strategy relating to motions filed in both the *Flo & Eddie* action and the state court action, discovery taken by Class Counsel, hearings held in the related matters, the possibility of the Major

1 Labels dismissing their state court action and pursuing the claims as part of the
2 Class, and the potential for settlement.

3     7. In addition to email correspondence with the Major Labels, I and my
4 colleagues at G&M also had conversations with representatives of the Major Labels
5 pursuant to the CIA. Those conversations included discussion of strategic advice
6 regarding the litigation against Sirius XM, and discussion of the interests of the
7 Major Labels as members of the putative Class in the *Flo & Eddie* actions and
8 discussion of settlement.

9     8. Throughout the litigation, G&M has worked to advance the claims of
10 the entire class, including those of the Major Labels. Without limitation:

11         A. G&M conducted or defended 15 separate fact and expert witness
12 depositions prior to class certification, including:

13             i. Terrence Smith, corporate vice president and chief
14 engineering officer of Sirius XM, who sat for two separate
15 30(b)(6) depositions on 2/11/14 and 3/12/14,

16            ii. David Frear, chief financial officer of Sirius XM, who sat for
17 a 30(b)(6) deposition on 3/12/14 and an individual deposition
18 on 2/18/15;

19           iii. Evan Cohen, administrator of Flo & Eddie, who sat for an
20 individual deposition on 3/25/14 and a 30(b)(6) deposition on
21 2/13/15;

22           iv. Howard Kaylan, vice president of Flo & Eddie, who sat for an
23 individual deposition on 3/26/15;

24             v. Mark Volman, president of Flo & Eddie, who sat for an
25 individual deposition on 4/4/14 and a 30(b)(6) deposition on
26 2/27/15;

27
28

      vi. Jason Pascal, vice president of licensing and associate general counsel at The Orchard, who sat for a 30(b)(6) deposition on 5/6/14;

      vii. Steve Blatter, senior vice president and general manager of music programming for Sirius XM, who sat for an individual deposition on 2/11/15;

      viii. Scott Greenstein, president and chief content officer of Sirius XM, who sat for an individual deposition on 2/27/15;

      ix. Mike Wallace, damages expert for Flo & Eddie, who sat for an expert deposition on 4/20/15;

      x. Elliot Goldman, music industry expert for Sirius XM, who sat for an expert deposition on 4/30/15; and

      xi. Keith Ugone, damages expert for Sirius XM, who sat for an expert deposition on 5/8/15.

(Copies of the face pages of these 15 depositions are collectively attached hereto as **Exhibit 3**).

B.    G&M propounded or responded to 11 sets of discovery requests prior to class certification in the California action alone, which included 162 requests for production and 42 interrogatories.

C.    G&M inputted and reviewed 19 document productions by Sirius XM prior to class certification, which, together with the native files including monthly playlists, totaled well over a million pages. G&M also subpoenaed third parties AAIM and Omniphone, which resulted in an additional 10, 361 pages/files produced and reviewed as well as additional native files.

D.    G&M successfully moved for summary judgment resulting in this Court's Order GRANTING Plaintiff's Motion for Summary Judgment on September 22, 2014 (Dkt. 117)

E. G&M successfully moved for class certification resulting in this Court's Order GRANTING Motion for Class Certification and APPOINTING Gradstein & Marzano P.C. as Class Counsel on May 27, 2015. (Dkt. 225) The Court also vetted the damages model developed by Flo & Eddie. (Dkt. 225)

9. Throughout the litigation, it was my observation that the Major Labels relied on Class Counsel to conduct written discovery, take fact and expert witness depositions, develop legal and factual arguments, develop a damages model, and conduct extensive law and motion practice including, but not limited to, our motions for summary judgment and class certification. While the CIA was in effect and continuing through their settlement with Sirius XM, it is my understanding that the Major Labels conducted little, if any, discovery of their own. Instead, depositions of Sirius XM witnesses were taken by Class Counsel, and transcripts of several of those depositions were shared with counsel for the Major Labels pursuant to the CIA.

10. While the CIA was in effect and continuing through the date of the Major Labels Settlement with Sirius XM, there does not appear to have been any substantial motion practice in the *Capitol Records* state court action, apart from an early motion asking the Superior Court to adopt a special jury instruction recognizing the Major Labels' rights in pre-1972 recordings and litigation related thereto. On August 27, 2014, the Superior Court initially issued a tentative ruling that would have denied that motion and concluded there was no public performance right to pre-1972 recordings under Cal. Civ. Code § 980(a)(2), but took the matter under submission following oral argument. *See* Tentative Ruling on Submitted Matter, *Capitol Records* (issued Aug. 27, 2014) (**Exhibit 4**).

11. While the motion for jury instruction was under submission in *Capitol Records*, this Court issued its September 22, 2014 ruling recognizing Plaintiffs' rights in pre-1972 sound recordings and granting summary judgment to Plaintiffs.

1   The Major Labels filed a request for judicial notice of that ruling the next day, on September 23, 2014, and on October 14, 2014, the Superior Court in the *Capitol Records* matter issued a ruling that reversed its tentative and granted the requested jury instruction motion, citing this Court's Order as a basis for its decision. *See* Ruling on Submitted Matter, *Capitol Records* (filed Oct. 14, 2014) (**Exhibit 5**). In challenging the ruling in the California Supreme Court, Sirius XM credited the ruling in this case and the fact that it had led the Superior Court to reverse its tentative. *See* Answer to Petition for Review, *Capitol Records,* p. 11 (filed Mar. 25, 2015) (**Exhibit 6**).

12.   Following the Superior Court's ruling, Class Counsel continued to prosecute the case on behalf of the entire class, including the Major Labels, conducting fact and expert discovery, pursuing class certification, and preparing the case for trial. In contrast to the limited activity in the Major Labels action which related primarily to obtaining the jury instruction ruling and defending it in an interlocutory appeal, Class Counsel actively and successfully litigated this case in a manner that allowed the Major Labels to rely on their efforts in securing their settlement with Sirius XM. Prior to the mediation discussed below, Rollin Ransom of Sidley Austin LLP, counsel for the Major Labels, told me that he had reviewed all of the pleadings, motions, declarations, exhibits, rulings and orders in our case to prepare for the mediation.

13.   At no time did I suggest to anyone from the Major Labels that Class Counsel would not seek compensation if our efforts resulted in a recovery by the Major Labels, and no one from the Major Labels at the time ever suggested to me that they believed it would be inappropriate for Class Counsel to seek compensation upon any such recovery.

14.   As Class Counsel, it was my preference to hold settlement discussions on a class-wide basis, and I was (and am) at all times willing to discuss a resolution of the dispute that would best serve the interests of the Class. However, Sirius XM

refused to conduct settlement discussions on a class-wide basis even though the Major Labels indicated that they were willing to participate in such discussions. In fact, until May 2015, Sirius XM did not express any interest at all in settlement discussions.

15. On May 7, 2015, I learned that Sirius XM had scheduled a mediation with the Major Labels. My firm's records indicate that, on that day, G&M's Harvey Geller had an e-mail exchange with Daniel Petrocelli, counsel for Sirius XM, regarding Sirius XM's request to continue the hearing on Flo & Eddie's motion for class certification. In that exchange, Mr. Geller advised Mr. Petrocelli that Flo & Eddie was "not in a position to do anything that jeopardizes the trial date, particularly given Sirius XM's refusal to discuss a settlement or even comply with the Court's order to mediate." In response, Mr. Petrocelli stated that Sirius XM had "scheduled a mediation in the state case with [the] record company plaintiffs." Prior to being advised by Mr. Petrocelli that Sirius XM had scheduled a mediation with the Major Labels, counsel for Flo & Eddie was unaware of that fact, even though the Major Labels were part of the proposed Class for which the motion for class certification was pending.

16. Upon learning of the scheduled mediation, we requested of both Sirius XM and counsel for the Major Labels that Class Counsel be allowed to participate in the mediation on behalf of the class. In an email exchange with my colleague Harvey Geller, counsel for the Major Labels indicated that the Major Labels were willing to allow Class Counsel to participate in the mediation, but Sirius XM was not. In a May 14, 2015 email that resides on my firm's server, Mr. Borkowski indicated that the Major Labels were willing to discuss settlement on a class-wide basis, and that a partner from Sidley & Austin, counsel for the Major Labels, had asked Sirius XM's counsel whether Class Counsel could participate in the mediation that was scheduled for June 16-17, 2015. Mr. Borkowsi reported that Dan Petrocelli, lead counsel for Sirius XM, had stated that Sirius XM was not interested

in Class Counsel's participation in the scheduled mediation, claiming that Class Counsel's participation would be a "distraction" and that Sirius XM was not interested in discussing past damages but was primarily interested in a "going forward deal."

17. Attached hereto as **Exhibit 7** is a transcript of the May 22, 2015 hearing in this action, which I attended. During that hearing lead counsel for Sirius XM had the following exchange with the Court:

> [SIRIUS XM COUNSEL, MR. PETROCELLI]: [We] have completely lost the protections of and have been grievously prejudiced now by the way that this has played out. Because look, for example, the situation with the record companies, the four major record companies that filed their own lawsuit one month after this suit was filed in the state court. They are going to – that case doesn't have any advance to discovery. There's no trial dates set. All they had is a ruling in their favor on a jury instruction.
> THE COURT: But it was postured fairly strangely.
> MR. PETROCELLI: Excuse me?
> THE COURT: It was postured strangely.
> MR. PETROCELLI: I agree with that. And one of the issues that I'm going to litigate in that case is that posture. But my point is that they can now wait and see, having – they were able to wait and see, having now seen that this Court has made the performance right determination in the favor of the plaintiff, they may decide – although we would object to this, of course – I'll just opt into this case, or I won't opt out of this case, and hey, my case is like long behind this case. Now I got to see the result. It's a free look, and now I'm going to go in and try to be part of this class that's going to trial presumably in August.

18. On May 27, 2015, this Court granted Flo & Eddie's motion for class certification, certifying the class of owners of pre-1972 recordings (the "Class") and appointed G&M as Class Counsel. Despite certification of the Class and our appointment as Class Counsel, Sirius XM did not change its position regarding the attendance of G&M at the Major Label's mediation. Given G&M's exclusion from the mediation with the Major Labels, G&M had no choice but to schedule a separate

mediation for the Class in New York on June 17, 2015.  G&M retained the mediator that had been selected by Sirius XM and the Major Labels, and advised the participants that we would also be available in New York on June 15-16 should they reconsider excluding G&M and consolidate the mediation.

19. On June 4, 2015, Harvey Geller and I had a conference call in excess of one hour in duration with Peter Ostroff and Rollin Ransom, both of Sidley Austin LLP, counsel for the Major Labels. We shared information with them pursuant to the CIA. We discussed the various filings and evidence in the record. Rollin Ransom indicated that he had read the file as aforesaid, but where it was apparent to me they were not aware of evidence, I pointed it out to them to assist the parties in reaching a global resolution.

20. On June 14, 2015, I travelled to New York along Mr. Geller to pursue settlement discussions with Sirius XM.  Unfortunately, G&M continued to be excluded from the mediation with the Major Labels.

21. On the evening of June 15, 2015, following their first day of mediation, Mr. Geller and I had dinner with representatives of the Major Labels, their litigation counsel Peter Ostroff and Rollin Ransom of Sidley Austin LLP, and lawyers from the RIAA (Steve Marks and George Borkowski).  I asked Mr. Ostroff what happened at the mediation that day.  He told me that he was not at liberty to share details with me as it was all "confidential," but he did say, somewhat jokingly, "they are not going to leave much" for the Class.  He also told me that based on an analysis of Sirius XM's playlists, the Major Labels claimed to own 80.2 % of the plays by Sirius XM of pre-1972 recordings during the damage period.  I reiterated that as Class Counsel we should not be excluded from the mediation and requested his cell phone number so that we could at least stay in touch and tangentially involved by cell phone.  He declined to provide his cell phone number and said that e-mail was best.

22. The second day of mediation, June 16, 2015, again continued without G&M's participation. At approximately 2:00 p.m., having heard nothing, I asked Mr. Ostroff by email how it was going. At 8:00 p.m., Mr. Ostroff replied: "Still working. See you in the morning." I emailed asking whether he was going to join us at the mediation to which he replied: "We will be there. Our mediation continues as yours commences."

23. The mediation on June 17, 2015 did not proceed as a joint session. Mr. Geller and I were literally down the hall from the Major Labels' mediation, yet we continued to be restricted from attending it. In fact, we were informed that the Major Labels were already documenting their settlement with Sirius XM. None of the participants would disclose to us the terms of their settlement.

24. Following their mediation, Sirius XM and the Major Labels reached a settlement agreement, dated June 17, 2015 (the "Major Labels Settlement"). A copy of that settlement agreement, which was produced in discovery in this litigation, is attached hereto as **Exhibit 8**. The Major Labels Settlement required a $210 million payment by Sirius XM to the Major Labels by July 31, 2015. *Id.* ¶ 1. Additionally, the agreement set forth an alternative dispute resolution mechanism to determine additional payments for claims spanning the period from December 31, 2017 through December 31, 2022. *Id.* ¶ 10.

25. The Major Labels Settlement further states that the Major Labels own or control 80% of the pre-1972 recordings included in the class, *id.* ¶ 11, and includes a covenant not to sue with respect to such recordings. ███████████████

███████████████
███████████████
███████████████
███████

26. The Major Labels agreed to opt out of the class "as soon as practicable within any opt-out period." *Id.* ¶ 2. Although the notice and opt out period in this

1 case did not begin until July 1, 2016, the Major Labels filed a "Notice of Opt Out."
2 (**Dkt. 255**). However, the Major Labels remain in the class because opt out requests
3 have not yet been addressed by the Court.
4     27. At my direction, my staff prepared a table summarizing the licenses and
5 settlements reached by Sirius XM based on documents produced in discovery. A[

[lines 6–21 redacted]

22     28. In addition to the licenses and settlements that Sirius XM reached after
23 class certification, the table attached as **Exhibit 9** also shows that Sirius XM entered
24 into twenty licenses and settlements with absent class members during the period
25 between the filing of this action and the class certification Order and the
26 appointment of class counsel. [redacted]
27 [redacted]
28 [redacted]

1     29. I have asked staff at my firm to prepare a summary of the time and expenses invested in this matter by Class Counsel, and including co-counsel working under the direction of Class Counsel, through June 17, 2015, the date of the Major Labels Settlement. A summary of the time invested in the Flo & Eddie cases by Class Counsel through the date of the Major Labels Settlement is attached as **Exhibit 10.** That summary by G&M timekeeper and rate shows total lodestar value through June 17, 2015 was $3,445,077, and, more specifically, $2,523,692 for the California action, $483,640 for the New York action and $437,745 for the Florida action. (An additional 183.3 hours not included in the G&M chart was incurred by local Florida counsel Heller Waldman P.L. for a lodestar value of $106, 877, as well as an additional 90 hours not included in the G&M chart incurred by co-counsel Evan S. Cohen, for a lodestar value of $63,000.) Out of pocket expenses advanced by Class Counsel for costs incurred through June 17, 2015 totaled $154,125. (**Exhibit 11**) Since the date of the Major Label Settlement, Class Counsel have invested hundreds of thousands of dollars in additional time and expenses in preparing this case for trial on behalf of the Class.

    30. I have additionally asked staff at my firm to prepare a summary of the comparative litigation activity between Flo & Eddie's action and the *Capitol Records* action (based on the state court docket) in the form of the following chart.

| | *Flo & Eddie v. Sirius XM* | *Capitol Records v. Sirius XM* |
|---|---|---|
| | 8/1/13: Complaint filed | |
| | 8/6/13: Case removed to federal court | |
| | | 9/11/13: Complaint filed |
| | 10/9/13: Motion to change venue filed | |
| | 10/18/13: Motion to stay case filed | |
| | 10/21/13: Ex parte to shorten time filed | |
| | 10/22/13: Opposition to ex parte filed | |
| | 10/23/13: Ex parte to shorten time denied | |
| | 11/8/13: Opposition re: venue filed | |
| | 11/15/13: Reply re: venue filed | |
| | 11/18/13: Answer filed | |
| | 11/25/13: Opposition re: stay filed | |
| | 11/25/13: RFPs served by SXM | |
| | 12/2/13: Reply re: stay filed | |
| | 12/2/13: Hearing re: venue held | |
| | 12/3/13: Motion to change venue denied | |
| | 12/4/13: Motion to stay case denied | |
| | 12/23/13: Response to RFPs served by F&E | |
| | 1/9/14: RFPs served by F&E | |
| | | 1/16/14: Joint status report filed |
| | | 1/27/14: Joint status report filed |
| | | 2/3/14: Motion for jury instruction filed |
| | 2/10/14: Response to RFPs served by SXM | |
| | 2/11/14: Deposition of Terrance Smith taken | |
| | 2/12/14: Motion to strike class allegations filed | |
| | 2/14/14: Motion to extend time filed | |
| | 2/21/14: Response to RFPs amended by SXM | |

| # | Date | Event | Date | Event |
|---|---|---|---|---|
| 1 | 3/3/14: | Joint case management statement filed | | |
| 2 | 3/3/14: | Opposition re: extending time filed | | |
| 3 | 3/3/14: | Opposition re: striking allegations filed | | |
| 4 | 3/10/14: | Reply re: striking allegations filed | | |
| 5 | 3/10/14: | Reply re: extending time filed | | |
| 6 | 3/12/14: | Deposition of David Frear taken | | |
| 7 | 3/12/14: | Deposition of Terrence Smith taken | | |
| 8 | 3/18/14: | Motion to extend time granted | | |
| 9 | 3/24/14: | Scheduling conference held | 3/24/14: | Opposition re: jury instruction filed |
| 10 | 3/25/14: | Discovery bifurcated | | |
| 11 | 3/25/14: | Deposition of Evan Cohen taken | | |
| 12 | 3/26/15: | Deposition of Howard Kaylan taken | | |
| 13 | 4/4/14: | Deposition of Mark Volman taken | | |
| 14 | | | 4/23/14: | Reply re: jury instruction filed |
| 15 | 4/29/14: | RFPs served by F&E | | |
| 16 | 4/29/14: | Joint motion for protective order filed | | |
| 17 | 5/5/14: | Protective order stricken | | |
| 18 | 5/6/14: | Deposition of Jason Pascal taken | | |
| 19 | | | 5/7/14: | Joint status report filed |
| 20 | 5/19/14: | Joint stipulation for protective order filed | | |
| 21 | 5/29/14: | Response to RFPs served by SXM | | |
| 22 | 6/9/14: | Motion for summary judgment filed | | |
| 23 | 6/10/14: | RFPs served by F&E | 6/10/14: | Answer filed |
| 24 | 6/13/14: | RFPs served by F&E | | |
| 25 | 6/13/14: | Rogs served by F&E | | |
| 26 | 6/17/14: | Ex parte to extend time for MSJ opp filed | | |
| 27 | 6/19/14: | Opposition to ex parte re: time filed | | |
| 28 | 6/20/14: | Ex parte re: time denied | | |

| # | | | | |
|---|---|---|---|---|
| 1 | | | 6/25/14: | Stipulated protective order filed |
| 2 | 6/27/14: | Ex parte for additional pages filed | | |
| 3 | 6/30/14: | Opposition to ex parte re: pages filed | | |
| 4 | 6/30/14: | Ex parte re: pages denied | | |
| 5 | 7/7/14: | Opposition to MSJ filed | | |
| 6 | 7/7/14: | Application to file under seal filed | | |
| 7 | 7/8/14: | Application to file under seal granted | | |
| 8 | 7/10/14: | Response to RFPs served by SXM | | |
| 9 | 7/11/14: | Stipulated protective order denied | | |
| 10 | 7/14/14: | Reply re: MSJ filed | | |
| 11 | 7/14/14: | Response to RFPs served by SXM | | |
| 12 | 7/14/14: | Response to Rogs served by SXM | | |
| 13 | 7/22/14: | Request to strike reply re: MSJ filed | | |
| 14 | 7/30/14: | Ex parte to reschedule filed | | |
| 15 | 7/31/14: | Opposition to ex parte re: rescheduling filed | | |
| 16 | 8/4/14: | Ex parte to reschedule granted | | |
| 17 | 8/11/14: | Opposition to MSJ filed | | |
| 18 | 8/18/14: | Reply re: MSJ filed | | |
| 19 | | | 8/27/14: | Tentative order issued denying motion |
| 20 | 9/5/14: | Settlement conference held | | |
| 21 | 9/8/14: | Joint Rule 26(f) report filed | | |
| 22 | 9/15/14: | Hearing on MSJ held | | |
| 23 | 9/22/14: | Motion for summary judgment granted | | |
| 24 | | | 9/23/14: | Request for judicial notice re: F&E MSJ |
| 25 | 10/6/14: | Joint case management statement filed | | |
| 26 | | | 10/14/14: | Motion for jury instruction granted |
| 27 | 10/15/14: | Motion for interlocutory appeal filed | | |
| 28 | 10/20/14: | Scheduling conference held | | |

| | | |
|---|---|---|
| 1 | 10/21/14: Scheduling order issued | |
| 2 | 10/28/14: Motion re: appeal supplemented | 10/28/14: Request for reconsideration filed |
| 3 | 10/30/14: RFAs served by F&E | |
| 4 | 10/30/14: RFPs served by F&E | |
| 5 | 10/30/14: Rogs served by F&E | |
| 6 | 10/31/14: Status conference held | |
| 7 | 11/3/14: Opposition re: appeal/stay filed | |
| 8 | 11/4/14: Amicus request filed | |
| 9 | 11/7/14: Opposition to amicus request filed | |
| 10 | 11/10/14: Reply re: appeal filed | |
| 11 | 11/10/14: Amicus request denied | |
| 12 | | 11/12/14: Opposition re: reconsideration filed |
| 13 | 11/17/14: Notice of SDNY MSJ denial filed | |
| 14 | 11/17/14: Motion for reconsideration filed | |
| 15 | 11/20/14: Motion for interlocutory appeal denied | |
| 16 | | 11/26/14: Reply re: reconsideration filed |
| 17 | 12/1/14: Response to RFAs served by SXM | |
| 18 | 12/1/14: Response to RFPs served by SXM | |
| 19 | 12/1/14: Response to Rogs served by SXM | |
| 20 | | 12/5/14: Request for reconsideration denied |
| 21 | | 12/15/14: Petition for writ of mandate filed |
| 22 | 12/24/14: Response to Rogs supplemented by SXM | |
| 23 | | 12/26/14: Opposition re: writ of mandate filed |
| 24 | | 1/2/15: Reply re: writ of mandate filed |
| 25 | 1/5/15: Opposition re: reconsideration filed | |
| 26 | 1/12/15: Reply re: reconsideration filed | |
| 27 | 1/13/15: RFPs served by SXM | |
| 28 | 1/13/15: Rogs served by SXM | |

| # | | | | |
|---|---|---|---|---|
| 1 | 2/9/15: | Ex parte for protective order re: depos filed | | |
| 2 | 2/10/15: | Opposition re: protective order filed | | |
| 3 | 2/11/15: | Reply re: protective order filed | | |
| 4 | 2/11/15: | Ex parte for protective order granted | | |
| 5 | 2/11/15: | Deposition of Steve Blatter taken | | |
| 6 | 2/12/15: | Response to RFPs served by F&E | | |
| 7 | 2/12/15: | Response to Rogs served by F&E | | |
| 8 | 2/13/15: | Deposition of Evan Cohen taken | | |
| 9 | 2/18/15: | Deposition of David Frear taken | | |
| 10 | 2/19/15: | Motion for reconsideration denied | | |
| 11 | | | 2/23/15: | Writ of mandate denied |
| 12 | 2/27/15: | Deposition of Mark Volman taken | | |
| 13 | 2/27/15: | Deposition of Scott Greenstein taken | | |
| 14 | | | 3/6/15: | Petition for review filed |
| 15 | 3/9/15: | Ex parte re: filing under seal filed | | |
| 16 | 3/10/15: | Opposition re: filing under seal filed | | |
| 17 | 3/11/15: | Reply re: filing under seal filed | | |
| 18 | 3/12/15: | Ex parte re: filing under seal denied | | |
| 19 | 3/16/15: | Motion for class certification filed | | |
| 20 | 3/17/15: | Application to file under seal filed | | |
| 21 | 3/18/15: | Application to file under seal granted | | |
| 22 | | | 3/27/15: | Answer re: petition for review filed |
| 23 | | | 4/7/15: | Reply re: petition for review filed |
| 24 | 4/14/15: | Motion to amend scheduling order filed | | |
| 25 | 4/15/15: | Opposition re: class certification filed | | |
| 26 | 4/20/15: | Deposition of Mike Wallace taken | | |
| 27 | | | 4/29/15: | Petition for review denied |
| 28 | 4/30/15: | Deposition of Elliot Goldman taken | | |

| | |
|---|---|
| 5/6/15: Reply re: class certification filed | |
| 5/6/15: Evidentiary objections re: opposition filed | |
| 5/7/15: Ex parte re: hearing date filed | |
| 5/8/15: Opposition to ex parte re: hearing date filed | |
| 5/8/15: Ex parte re: hearing date granted | |
| 5/8/15: Deposition of Keith Ugone taken | |
| 5/18/15: Opposition re: scheduling order filed | |
| 5/19/15: Responses to evidentiary objections filed | |
| 5/20/15: Request re: supp authority filed | |
| 5/22/15: Request re: supp authority granted | |
| 5/22/15: Hearing re: class certification held | |
| 5/27/15: Motion for class certification granted | |
| 6/2/15: Motion to amend scheduling order denied | |
| 6/2/15: Ex parte to stay case pending appeal filed | |
| 6/3/15: Partial opposition to ex parte re: stay filed | |
| 6/5/15: Reply re: staying case filed | |
| 6/8/15: Hearing on ex parte re: stay held | |
| 6/8/15: Ex parte to stay case granted | |
| | 6/15/15: Private mediation conducted |
| 6/17/15: Private mediation conducted | 6/17/15: Settlement reached |
| | 6/26/15: Settlement announced |
| [Ex parte re: *Capitol Records* settlement litigated] | [Ex parte re: *Capitol Records* settlement litigated] |
| | 8/4/15: Case dismissed with prejudice |

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

1  Signed this 27th day of July, 2016, at Los Angeles, California.

                                          */s/ Henry Gradstein*
                                             Henry Gradstein