GRADSTEIN & MARZANO. P.C.
HENRY GRADSTEIN (89747)
hgradstein@gradstein.com
MARYANN R. MARZANO (96867)
mmarzano@gradstein.com
DANIEL B. LIFSCHITZ (285068)
dlifschitz@gradstein.com
6310 San Vicente Blvd.. Suite 510
Los Angeles. California 90048
T:  323-776-3100

SUSMAN GODFREY L.L.P.
STEPHEN E. MORRISSEY (187865)
smorrissey@susmangodfrey.com
STEVEN G. SKLAVER (237612)
ssklaver@susmangodfrey.com
KALPANA SRINIVASAN (237460)
ksrinivasan@susmangodfrey.com
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
T:  310-789-3100 F: 310-789-3150

[Additional Counsel for Plaintiff on Signature Page]
*Co-Lead Class Counsel*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| FLO & EDDIE, INC., a California corporation, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>SIRIUS XM RADIO INC., a Delaware corporation; and DOES 1 through 10,<br><br>        Defendants. | Case No. 2:13-cv-05693-PSG-GJS<br><br>**FINAL PRETRIAL CONFERENCE ORDER**<br><br>Hon. Philip S. Gutierrez<br><br>**Final Pretrial Conference:**<br>Oct. 31, 2016 at 2:30 p.m.<br><br>**Trial Date:**<br>Nov. 15, 2016 at 9:00 a.m. |

4581846v1/015185

# Table of Contents

1.  THE PARTIES ........................................................................................................ 2

2.  JURISDICTION ..................................................................................................... 5

3.  TRIAL TIME  ......................................................................................................... 6

4.  JURY TRIAL  ......................................................................................................... 6

5.  ADMITTED FACTS ............................................................................................... 7

6.  STIPULATED FACTS ........................................................................................... 7

7.  CLAIMS AND DEFENSES OF THE PARTIES ................................................. 7

8.  THIRD PARTY PLAINTIFFS AND DEFENDANTS ...................................... 30

9.  ISSUES REMAINING TO BE TRIED ............................................................... 30

10. DISCOVERY  ........................................................................................................ 33

11. JOINT EXHIBIT LIST ........................................................................................ 33

12. DEMONSTRATIVE EXHIBITS ......................................................................... 61

13. WITNESS LISTS ................................................................................................. 61

14. PENDING MOTIONS .......................................................................................... 68

15. BIFURCATION .................................................................................................... 70

16. SIRIUS XM'S OCTOBER 21, 2016 LATE-PRODUCED THIRD-PARTY
    DECLARATION .................................................................................................. 70

17. ADMISSIONS ...................................................................................................... 80

1

Following pretrial proceedings, pursuant to Rule 16 of the Federal Rules of Civil Procedure and Local Rule 16, IT IS ORDERED:

## 1. THE PARTIES

The parties are:

a. Plaintiff Flo & Eddie, Inc. ("Flo & Eddie" or "Plaintiff"), on behalf of the certified class (collectively, "Plaintiffs"), which consists of: The owners of sound recordings fixed prior to February 15, 1972 ("pre-1972 recordings") which have been reproduced, performed, distributed or otherwise exploited by Defendant Sirius XM Radio Inc. ("Sirius XM") in California without a license or authorization to do so from August 21, 2009 to August 24, 2016.  Dkt. 225 at 2; Dkt. 317 at 5.[1]

b. Defendant Sirius XM.

Each of these parties has been served and has appeared.  All other parties named in the pleadings and not identified in the preceding paragraph are now dismissed.

The pleadings which raise the issues are:

---

[1] Plaintiffs assert the Court's class certification order identifying August 21, 2009 as the start of the class period appears to be a typographical error as the Complaint was filed on August 1, 2013 and four years beforehand is August 1, 2009 (*see* Dkt. 1-1 ¶ 9), which is the class period alleged in the Complaint.  Sirius XM asserts the August 21, 2009 date should govern, as that was the date proposed in plaintiffs' class certification motion (Dkt. 180 at 2), adopted in the Court's class certification order (Dkt. 225 at 2, 9, 25), and reiterated in subsequent orders (*see* Dkt. 317 at 7).  Sirius XM believes the class definition should be amended to limit the conduct challenged to Sirius XM's "performances" of pre-1972 recordings.  Plaintiffs have only challenged Sirius XM's performances of pre-1972 sound recordings in this litigation, and have expressly abandoned their reproduction claims.  *See* Dkt. 444 at 3 n.1.

4581846v1/015185

a. Plaintiffs' Complaint and Demand for Jury Trial, filed August 1, 2013, in the Superior Court of the State of California for the County of Los Angeles, Central District (Dkt. 1-1); and

b. Sirius XM's (1) Answer and Affirmative Defenses; and (2) Demand for Jury Trial, filed November 18, 2013, in the United States District Court for the Central District of California (Dkt. 38).

On September 22, 2014, the Court granted partial summary judgment in favor of Flo & Eddie on its causes of action for unfair competition under the Unfair Competition Act, Cal. Bus. & Prof. Code §§ 17200 *et seq.* (the "UCL"), misappropriation, and conversion.  Dkt. 117.  On May 27, 2015, the Court granted Flo & Eddie's motion for class certification.  Dkt. 225.  On June 16, 2016, the Court granted Flo & Eddie's motion for an order approving the form and manner of Class notice.  Dkt. 317.  On September 8, 2016, the Court granted partial summary judgment in favor of Sirius XM on Plaintiffs' cause of action for common law unfair competition and request for punitive damages.  Dkt. 411.  On September 19, 2016, the Court denied Sirius XM's motion for decertification.  Dkt. 432.

**Plaintiffs' Position**: This Court granted summary judgment on liability on Plaintiff's causes of action for unfair competition under the UCL, misappropriation, and conversion.  Dkt. 117.  The Court has held that this ruling applies to the entire class.  Dkt. 225 at 17-18 (ruling that "[l]iability has already been determined in this case" and that "the trial in this case will be 'damages-only[.]'"); Dkt. 317 at 5.

Sirius XM, however, refuses to accept's the Court's rulings and still contends that liability has not already been determined class-wide.  This is the same meritless, regurgitated argument the Sirius XM has repeatedly raised before, and the Court has repeatedly rejected.  For example, in approving the form and manner of class notice, the Court held:

> Defendant also argues that the notice wrongly suggests that
> liability has been established as to the entire Class. In granting

3

Class certification, however, the Court noted that "[l]iability has already been determined in this case" and that "the trial in this case will be 'damages-only[.]'" Dkt. # 225 at 17-18. The language contained in the notice reflects that in the Court's prior order, and the Court finds it appropriate that the notice accurately informs Class members as to the state of the litigation. Dkt. 317 (June 16, 2016 Order) at 5.

Sirius XM refuses to acknowledge or accept the rulings of this Court and insists on attempting to relitigate decided isses, forcing Plaintiffs and their counsel to expend enormous time and energy in new motion practice (which has also burdened the Court) simply to ensure Sirius XM does not improperly re-argue liability to the jury. Plaintiffs should not have to do this, and Sirius XM's conduct is highly improper.

Additionally, as to affirmative defenses, the Court already denied a motion for reconsideration of the Court's Summary Judgment Order, concluding that Sirius XM waived those class-wide affirmative defenses by failing to assert them in opposition to Plaintiff's motion for summary judgment on liability. Dkt. 175 at 5 (noting that "Sirius XM did not assert any defenses to the performance obligations"). This Court subsequently granted summary judgment dismissing Plaintiffs' claims for punitive damages and Plaintiffs' common law unfair competition claim, and denied Sirius XM's challenge to Plaintiffs' damages methodology. *See* Dkt. 411. The Court also denied Sirius XM's Motion for Decertification. Dkt. 432.

Because these issues have already been decided long ago, and Sirius XM's previous attempts to relitigate liability as to the Class have already been rejected, the law of the case prevents their readjudication. *See United States v. Jingles*, 702 F.3d 494, 499 (9th Cir. 2012); *United States v. Smith*, 389 F.3d 944, 948 (9th Cir. 2004).

4

At trial, Plaintiffs are not pursing as to each cause of action their alternative theory of relief that Sirius XM improperly duplicated, reproduced, and copied Plaintiffs' pre-1972 recordings.

**Sirius XM's Position**: The Court has not adjudicated Sirius XM's liability as to any class member other than Flo & Eddie. The Court's September 22, 2014 order granted partial summary judgment in favor of Flo & Eddie only. Dkt. 117. Because no class had been certified at that point, the Court did not, and could not, adjudicate Sirius XM's liability class-wide. *Id.* As a result, the Court did not—and could not—adjudicate Sirius XM's liability as to any other class member. Similarly, Sirius XM did not—and could not—waive any affirmative defenses pled in its answer as to the class members' claims. *See* Doc. 38 ¶ 42. For the same reasons, the Court did not hold, in its motion for reconsideration as to its September 22, 2014 partial summary judgment order, that Sirius XM has waived all of its affirmative defenses to the class. And as discussed *infra,* Sirius XM disputes that the Court has endorsed plaintiffs' proposed damages model as the *only* appropriate measure of damages in this case.

Plaintiffs have abandoned the reproduction claims asserted in their complaint. *See* Dkt. 1-1 ¶¶ 1, 9, 14 (challenging reproductions allegedly made by Sirius XM to facilitate broadcasts of pre-1972 recordings); Dkt. 444 at 3 n.1 (confirming that "Plaintiffs are not pursuing at trial" their "copying/reproduction claims"). Sirius XM requests that the Court enter an order of dismissal with respect to those claims.

## 2. JURISDICTION

Federal jurisdiction and venue are invoked upon the following grounds:

This action was initially filed by Flo & Eddie, on behalf of the class, in the Superior Court of the State of California for the County of Los Angeles, Central District. Sirius XM removed this case under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Federal subject matter jurisdiction is proper under

CAFA in that, according to Plaintiffs' complaint, (i) the class has more than 100 members; (ii) this action involves an amount in controversy in excess of $5,000,000; and (iii) the parties are minimally diverse in that at the time of the filing of the Complaint, Plaintiff Flo & Eddie was a corporation organized under the laws of California with its principal place of business in Los Angeles, California, and is a citizen of California for purposes of diversity jurisdiction; and Sirius XM was a corporation organized under the laws of Delaware, with its principal place of business in New York, New York, and is a citizen of Delaware and New York for purposes of diversity jurisdiction.

Venue is proper in this Court as this action was removed from the Superior Court of California for the County of Los Angeles, such that the United States District Court for the Central District of California, Western Division, was the proper forum for removal in that it is the "district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a); *see* 28 U.S.C. § 84(c)(2).

### 3. TRIAL TIME

The length of trial depends in part on the Court's rulings on pending motions *in limine*.

Plaintiffs estimate the trial to take 3 days, because it is damages-only.

Sirius XM estimates the trial to take at least 7 days.

### 4. JURY TRIAL

The trial is to be a jury trial.

A timely demand for jury trial has been made.

At least seven (7) days prior to the Pretrial Conference, the parties shall submit any special questions requested to be asked on *voir dire* per the Court's Order for Jury Trial.

And at least sixteen (16) days before trial, the parties shall file with the Court a joint set of jury instructions on which there is agreement, and the parties shall separately file any proposed jury instructions on which there is not agreement.

6

## 5. ADMITTED FACTS

There are no admitted facts.

## 6. STIPULATED FACTS

The following facts, though stipulated, shall be without prejudice to any evidentiary objection:

a. Plaintiff and class representative Flo & Eddie is a California corporation that claims to own sound recordings of songs by a band known as "The Turtles."

b. Mark Volman and Howard Kaylan are Flo & Eddie's principals, sole owners, directors, and employees.

c. Mr. Volman resides in Tennessee and Mr. Kaylan resides in Washington.

d. Sirius XM operates a satellite radio service and is headquartered in New York.

e. Sirius XM's predecessor companies, Sirius Satellite Radio Inc. ("Sirius") and XM Satellite Radio Holdings Inc. ("XM"), were each established more than 20 years ago and merged in 2008 to form Sirius XM.

## 7. CLAIMS AND DEFENSES OF THE PARTIES

**Plaintiffs' Claims:**

a. **Plaintiffs Plan To Pursue Damages At Trial For The Following Claims Against Sirius XM**

Claim 1:     Defendant Violated California Civil Code § 980(a)(2)

Claim 2:     Defendant Committed Common Law Misappropriation

Claim 3:     Defendant Engaged in Unfair Competition in Violation of California Business & Prof. Code § 17200

Claim 4:     Defendant Committed Common Law Conversion

7

**b.     The Elements Required To Establish Plaintiffs' Claims Are:**

**Plaintiffs' Position**: The Court has already granted summary judgment against Defendant on liability on all of the above-stated causes of action, finding Sirius XM liable for its unlicensed performance of pre-1972 recordings. *See* Dkt. 117. The Court subsequently confirmed that this ruling applies as to the entire class. Dkt. 225 at 17-18; Dkt. 317 at 5. At trial, Plaintiffs need only establish the amount of class-wide damages, which is the same for each claim.

Elements to establish Plaintiffs' Claim for Damages for Sirius XM's Violation of Cal. Civ. Code § 980(a)(2)[2] and Cal. Bus. & Prof. Code § 17200, Common Law Misappropriation, and Common Law Conversion:

(1) The gross revenues generated by Sirius XM by performing sound recordings owned by Plaintiffs in California between August 1, 2009 and the present.[3]

---

[2] Sirius XM incorrectly suggests Cal. Civ. Code § 980(a)(2) does not provide a right of relief independent from common law misappropriation. *See, e.g., Bridge Publs., Inc. v. Vien*, 827 F. Supp. 629, 632 (S.D. Cal. 1993) (granting summary judgment on § 980(a)(2) claim without any common law misappropriation claim).

[3] The Court already approved Plaintiffs' damages model consisting of "Sirius XM's Gross Revenues as defined at 37 C.F.R. §382.11" multiplied by "[t]he percentage of performances of pre-1972 recordings on Sirius XM's service" multiplied by "[t]he percentage of Sirius XM's subscribers located in California." Dkt. 225 at 20-21. The Court held this measure, which accounted for "100% of Sirius XM's revenues attributable to pre-1972 recordings, without deduction for costs," was supported by both California and Ninth Circuit authority. *Id.* at 21. The Court reaffirmed that "Plaintiff's damages model is appropriate in this case" and that "Plaintiff's damages model has already been approved." *See* Dkt. 411 (Order Granting in Part and Denying in Part Defendant's Motion for Partial Summary Judgment).

In turn, the Court has rejected Sirius XM's attempt to "cast[] the appropriate measure of damages as 'lost royalties' or 'imputed license fees'" and noted that "Sirius XM does not demonstrate that its alternative measure of damages are either available under the law or that they would enable greater class and class member

8

Elements to Establish Plaintiffs' Claim for Injunctive Relief: To obtain injunctive relief under California law, Plaintiffs must show:

> (1) The elements of a cause of action involving the wrongful act sought to be enjoined and
>
> (2) the grounds for equitable relief, such as, a showing of threatened future harm.

Plaintiffs have already proven the first element because the Court granted summary judgment on liability with respect to Plaintiffs' UCL cause of action (among others). Under the second prong, Plaintiffs must make a "showing of threatened future harm or continuing violation. Such a showing is established if there is a risk that the defendant may commit the same wrong again.

Elements to Establish Plaintiffs' Entitlement to Prejudgment Interest: To establish the right to receive prejudgment interest at a rate of 7 percent per annum, Plaintiffs must demonstrate:

> (1) damages are certain or are capable of being made certain by calculation; and
>
> (2) the right to recover damages is vested in Plaintiffs upon a particular day.

---

recovery." Dkt. at 21-22.  Sirius XM fails to acknowledge this Court's Orders and that Sirius XM's cited authority is explicitly confined to the specific industries and types of property involved in each case.  *See generally* Dkt. 542; *J & J Sports Prods. v. Johns*, 2015 U.S. Dist. LEXIS 163105, at *16 (E.D. Cal. Dec. 4, 2015) ("*In the context of broadcast piracy* [i.e., unlawful interception of proprietary broadcasts], damages for conversion have often been calculated based upon the amount that the defendant would have been required to pay for a proper sublicensing agreement.") (emphasis added); *Williams v. Weisser*, 273 Cal. App. 2d 726, 735 (1969) ("University lectures are *sui generis*. Absent compulsion by statute or precedent, they should not be blindly thrown into the same legal hopper with [other types of property].").

9

1    **Sirius XM's Position**: The Court has not adjudicated Sirius XM's liability as

2  to any class member other than Flo & Eddie.  The Court's September 22, 2014

3  order granted partial summary judgment in favor of Flo & Eddie, Dkt. 117, but

4  because no class had been certified at that point, the Court did not (and could not)

5  adjudicate Sirius XM's liability class-wide.  Plaintiffs bear the burden of

6  establishing class-wide liability at trial, and Sirius XM is entitled to contest each

7  and every element of their claims.  *See* Dkt. 519 at 2-4.[4]

8    Sirius XM disputes plaintiffs' contention above that the Court has

9  conclusively accepted plaintiffs' proposed damages model as the *only* appropriate

10  measure of damages in this case.  The Court has made no such finding.  In ruling

11  on plaintiffs' motion for class certification, the Court only considered whether

12  plaintiffs' proposed damages model was satisfactory *for class certification*

13  *purposes*.  *See* Doc. 225 at 23.  That is, the Court's analysis of plaintiffs' model

14  was limited to considerations inherent in evaluating certification—*i.e.*, whether the

15  "damages in this case are well-suited to streamlined determination via application

16  of a mechanical formula and will not require factual investigation beyond

17  reviewing Sirius XM's records."  *Id.*  These considerations, however, do not bear

18  on whether plaintiffs' proposed execution of that model properly measures the

19  detriment suffered by plaintiffs under California law.  And, while the Court has

20  acknowledged that *plaintiffs believe* "100% of Sirius XM's revenues . . . is the

21  appropriate measure of damages in California," the Court did not rule that 100% of

22  Sirius XM's revenues is *the* appropriate measure of damages under California law,

23  let alone the *only* appropriate measure of damages.  *Id.* at 21.

24

25  _____

26  [4] In accordance with Local Rule 16, Sirius XM does not identify the evidence that it intends to present in contesting the elements underlying Plaintiffs' claims—although some of that evidence is identified in its Memorandum Of Contentions Of Fact And Law.  Dkt. 499 at 7-13.

27

28

Sirius XM sets forth below the elements of Plaintiffs' causes of action and claims for relief.  For the avoidance of doubt, Sirius XM contests each and every one of these causes of action and claims for relief, but does not believe Local Rule 16 contemplates or permits legal argument.  Sirius XM responds to plaintiffs' legal arguments only where necessary to correct the record.

Elements to Establish Plaintiffs' Claim for Violation of Cal. Civ. Code § 980(a)(2): Plaintiffs did not plead a stand-alone cause of action for violation of Section 980(a)(2).  Dkt. 1-1 at 7-8 ("First Cause of Action (For Violation of California Civil Code § 980(a)(2) and Common Law Misappropriation").  As pleaded, Section 980(a)(2) merely provides the property right underlying Plaintiffs' misappropriation claim, and does not constitute a separate cause of action.

Elements to Establish Plaintiffs' Claim for Common Law Misappropriation: To establish a claim for common law misappropriation, Plaintiffs must prove:

(1) Class members invested substantial time, skill, or money in developing their property (here, the property at issue is the exclusive right to perform pre-1972 recordings);

(2) Sirius XM appropriated and used class members' property at little or no cost to Sirius XM;

(3) Sirius XM's appropriation and use of class members' property was without authorization or consent of the owner; and

(4) Class members were injured by Sirius XM's conduct.

*See U.S. Golf Ass'n. v. Arroyo Software Corp.*, 69 Cal. App. 4th 607, 618 (1999).

Elements to Establish Plaintiffs' Claim for Common Law Conversion: To establish a claim for conversion, Plaintiffs must prove:

(1) Class members owned the exclusive right to perform sound recording(s) created before February 15, 1972;

11

4581846v1/015185

(2) Sirius XM intentionally and substantially interfered with class members' property (the exclusive right to perform pre-1972 recordings) by:

    (a) taking possession of it, or

    (b) preventing class members from taking possession of it, or

    (c) preventing class members from having access to it, or

    (d) destroying it, or

    (e) refusing to return it after a demand for its return;

(3) Class members did not consent;

(4) Class members were harmed; and

(5) Sirius XM's conduct was a substantial factor in causing the harm.

*See* Judicial Council of California Civil Jury Instructions (2016) 2100 (Conversion—Essential Factual Elements); *see also Lee v. Hanley*, 61 Cal. 4th 1225, 1240 (2015) ("The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages").

    <u>Elements to Establish Plaintiffs' Claim for Violation of  Cal. Bus. & Prof. Code § 17200</u>: To establish liability under the *unlawful* prong of Section 17200, Plaintiffs must prove:

    (1) Sirius XM engaged in a business practice; and

    (2) That business practice is forbidden by law.

*See Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1361 (2010) ("An unlawful business practice under Business and Professions Code section 17200 is an act or practice, committed pursuant to business activity, that is at the same time forbidden by law.").

    Separately, to establish liability under the *unfair* prong of Section 17200, Plaintiffs must prove:

    (1) Sirius XM engaged in a business practice; and

12

(2) That business practice "offends an established public policy or … is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."

*See Cmty. Assisting Recovery, Inc. v. Aegis Sec. Ins. Co.*, 92 Cal. App. 4th 886, 894 (2001).

As to both prongs, equitable relief may only be awarded if (1) class members suffered a loss of "money or property," and (2) that loss resulted from the unfair competition. *See* Cal. Bus. & Prof. Code §17203 ("The court may make such orders or judgments … as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.").

Elements to Establish Plaintiffs' Damages: Sirius XM disputes that the appropriate measure of damages is Sirius XM's gross revenues without deduction of costs. California law provides that the damages for Plaintiffs' causes of action must be calculated by reference to the value of the property at issue (*i.e.*, the non-exclusive right to perform pre-1972 recordings) at the time it was used. *See* Cal. Civ. Code §§ 3336, 3333.

As set forth in Sirius XM's Motion *in Limine* No. 1 (Dkt. 474), the proper measure of damages is a reasonable license fee (taking into account any offsetting benefits)[5], which requires Plaintiffs to establish the value that a willing buyer would

---

[5] Plaintiffs erroneously contend that "[a]ny evidence that class members benefitted from Sirius XM's conduct is irrelevant under" Cal. Civ. Code Section 3337. Section 3337, however, does not apply here and has no bearing on the relevance of evidence demonstrating benefits realized by class members as a result of Sirius XM's airplay of their music. These benefits are directly pertininet to whether Plaintiffs were, in fact, harmed. *See* Cal. Civ. Code §§ 3336, 3333. Moreover,

13

have paid for a non-exclusive performance right.  *See Williams v. Weisser*, 273 Cal. App. 2d 726, 743 (1969) (awarding reasonable value of license for appropriation of literary property in violation of common law copyright); *Integrated Sports Media, Inc. v. Mendez*, 2014 WL 3728594, at *5 (N.D. Cal. July 28, 2014) (damages for conversion and misappropriation of plaintiff's exclusive "ownership over . . . nationwide distribution rights" is measured by "denial of the license fee to which [plaintiff] would otherwise have been entitled"); *J&J Sports Prods., Inc. v. Medina*, 2014 WL 641919, at *4-5 (E.D. Cal. Feb. 18, 2014) (conversion of "[e]xclusive right to distribute a broadcast signal to commercial establishments" is measured by market "rate" to broadcast program "at an establishment such as Defendant's").

        <u>Elements to Establish Plaintiffs' Entitlement to Injunctive Relief</u>: To obtain injunctive relief, Plaintiffs must prove:

        (1) Class members will suffer an irreparable injury;

        (2) There are no adequate remedies at law;

        (3) The balance of hardships favors an injunction; and

        (4) The public interest would not be disserved by an injunction.

*See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).  Plaintiffs provide no authority for their proffered elements, which do not comport with applicable law.

---

California law is clear that when a defendant's "possession was lawful before the conversion occurred . . ., [S]ection 3337 is inapplicable, and a converter is not precluded from claiming mitigation of damages."  *Dakota Gardens Apartment Investors B v. Pudwill*, 75 Cal. App. 3d 346, 351-52 (1977).  Plaintiffs cannot establish that Sirius XM's possession of plaintiffs' pre-1972 sound recordings was "wrongful from the beginning."  Cal. Civ. Code § 3337.  Sirius XM's performance of class members' Sirius XM was at most an act of innocent conversion.  Indeed, the Court has acknowledged that prior to its summary judgment ruling "no court had ever expressly recognized" an exclusive performance right in pre-1972 recordings.  Dkt. 411 at 2.

14

<u>Elements to Establish Plaintiffs' Entitlement to Prejudgment Interest</u>:
Plaintiffs appear to assert entitlement to prejudgment interest under Cal. Civ. Code
§ 3287.  Section 3287(a) only applies where, unlike here, damages are "certain."
Damages are not "certain" where "the amount . . . cannot be resolved except by
verdict or judgment."  *Wisper Corp. v. Cal. Commerce Bank*, 49 Cal. App. 4th 948,
960 (1996).  It is well-settled that damages are uncertain where the parties present
"conflicting evidence of . . . property value." *Jamison v. Jamison*, 164 Cal. App.
4th 714, 721 (2008); *see also Cnty. of Los Angeles v. S. Cal. Edison Co.*, 112 Cal.
App. 4th 1108, 1123 (2003).  That is precisely the case here.  Because "a great
multitude of determinations [must] be made in order to ascertain the true [amount]
which ought to be paid," there is no basis for prejudgment interest under Section
3287(a).  *Stockton Theatres, Inc. v. Palermo*, 121 Cal. App. 2d 616, 632 (1953); *see
also PSM Holding Corp. v. Nat'l Farm Fin. Corp.*, 2014 WL 12179486, at *5 (C.D.
Cal. Dec. 17, 2014) (no prejudgment interest where experts required to determine
damages).

**c.     In Brief, The Key Evidence Plaintiffs Rely On For Each Of The
Claims Is:**

<u>Evidence to Support Damages</u>: To establish Sirius XM's gross proceeds
attributable to its unlicensed performance of pre-1972 recordings in California,
Plaintiffs will establish Sirius XM's gross revenue earned during the class period;
the portion of that base that is attributable to Sirius XM's use of pre-1972
recordings as identified by Sirius XM itself in its reporting of revenues subject to
royalties and in verified testimony and interrogatory responses; the portion of the
pre-1972 recording revenue attributable to California subscribers; and the number
of plays of those songs as identified in Sirius XM's Consolidated Playlists, except
where such recordings have been licensed by Sirius XM or are the subject of a
settlement, or the recording has been identified as owned by a class member that

has opted out.  The key evidence supporting Plaintiffs' damages includes: Sirius XM's First, Second, and Third Supplemental Responses and Objections to Flo & Eddie Inc.'s Second Set of Interrogatories & Attachments B, F, and G and Sirius XM's testimony concerning the same, including the testimony of David Frear; Sirius XM's own methodology for calculating revenues attributable to its performances of pre-1972 recordings in paying royalties to SoundExchange and Sirius XM's testimony concerning the same; SXM-F&E_00016511; SXM-F&E_00016540; SXM-F&E_00016572; Sirius XM's Third Supplemental Responses and Objections to Flo & Eddie, Inc.'s Third Set of Interrogatories and Sirius XM's testimony concerning the same; the testimony of Plaintiffs and (possibly) class members regarding pre-1972 recordings they own that were played by Sirius XM; exclusion forms submitted by class members that opted out on or before August 30, 2016, listing the song and artist for each pre-1972 recording they purport to own or control; and expert testimony by Plaintiffs' damages expert, including the information set forth in Mr. Wallace's expert report, supplemental expert report, his declarations submitted in this case and the schedules thereto.

Evidence to Support Injunctive Relief: Evidence that Sirius XM continues to perform Plaintiffs' pre-1972 recordings and there is therefore a threat of continuing harm to Plaintiffs includes: SXM-F&E_00016511; SXM-F&E_00016540; SXM-F&E_00016572; Sirius XM's Third Supplemental Responses and Objections to Flo & Eddie, Inc.'s Third Set of Interrogatories and Sirius XM's testimony concerning the same; the testimony of Sirius XM that it continues to play Plaintiffs' pre-1972 recordings.

Evidence to Support Prejudgment Interest and Attorneys' Fees: Evidence that damages are capable of being made certain by calculation and that the right to recover was vested in Plaintiffs upon Sirius XM's playing of each pre-1972 recording includes: expert testimony by Plaintiffs' damages expert, including the information set forth in Mr. Wallace's expert report, supplemental expert report,

16

declarations submitted in this case, and the schedules thereto; and the testimony of Plaintiffs and (possibly) class members regarding pre-1972 recordings they own that were played by Sirius XM.  Evidence of attorney fees will be submitted on post-trial motions.

**Sirius XM's Defenses:**

**a.    Sirius XM Plans To Pursue The Following Affirmative Defenses[6]:**

Affirmative Defense No. 1:    Laches

Affirmative Defense No. 2:    Waiver

Affirmative Defense No. 3:    Estoppel

Affirmative Defense No. 4:    Implied License

Affirmative Defense No. 5:    Mitigation

**b.    The Elements Required To Establish Sirius XM's Affirmative Defenses Are:**

**Sirius XM's Position**: As set forth *supra*, the Court has determined Sirius XM's liability as to Flo & Eddie, but not as to any other class member.  Plaintiffs bear the burden of establishing class-wide liability and damages at trial, and Sirius XM is entitled to contest each and every element of their claims and assert its affirmative defenses.  *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2561 (2011) (class action defendant has due process right "to litigate its ... defenses").  The fact that this is a class proceeding does not absolve Plaintiffs of their affirmative burden of proof or impair Sirius XM's right to defend itself.  Rule 23 was designed to "leave[] the parties' legal rights ... intact." *Shady Grove Ortho. Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010).

---

[6] Sirius XM does not assert the statute of limitation as a complete bar to Plaintiffs' claims, but as a limitation on the damages period.

17

1    Nor can Sirius XM's defenses be relegated to some undefined "post-trial"

2 process.  As set forth in Sirius XM's opposition to Plaintiffs' Motions *in Limine*

3 Nos. 1-3, Dkt. 519, the question of whether Plaintiffs authorized or consented to

4 Sirius XM's performance of their pre-1972 recordings—which underlies Sirius

5 XM's defenses *and* Plaintiffs' claims—is germane to liability and damages,

6 because Sirius XM cannot be held liable or forced to pay damages for

7 performances that it was authorized to make.  This question, which turns on

8 contested factual issues, must be decided by the jury.  *See Haynes Trane Serv.*

9 *Agency, Inc. v. Am. Standard, Inc.*, 573 F.3d 947, 964-66 (10th Cir. 2009)

10 (defendant is entitled "to have a jury properly determine the question of liability

11 and the extent of the injury by an assessment of damages").  Any other approach

12 would violate due process, the Seventh Amendment, and the Rules Enabling Act.

13 *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846 (1999) (class action cannot abridge

right to jury trial).

14    The elements of Sirius XM's affirmative defenses are set forth below.

15 Again, Sirius XM does not engage in legal argument except to the extent necessary

16 to respond to plaintiffs' arguments, but reserves all rights to present additional

17 arguments and evidence at the appropriate time.

18    <u>Elements to Establish Sirius XM's Affirmative Defense of Laches</u>: To

19 prevail on the affirmative defense of laches, Sirius XM must prove:

20    (1) Class members' delay in asserting a right or a claim;

21    (2) The delay was not reasonable or excusable; and

22    (3) Prejudice to Sirius XM.

23 *See Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 997 (9th Cir. 2006).

24    Plaintiffs point to the Court's previous conclusion that laches is not an

25 available defense because plaintiffs seek legal damages.  Sirius XM maintains that

26 despite characterizing it as legal damages, the monetary relief Plaintiffs seek—

27 Sirius XM's gross revenue without deduction of costs and without proof of

28

18

detriment to plaintiffs—constitutes, in substance and effect, equitable disgorgement under California law.  *See* Dkt. 335 at 20-22.  In any event, laches is an available defense to Plaintiffs' Section 17200 claim.  *See Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 235 F.3d 1184, 1193 (9th Cir. 2000) (laches is available as a defense to equitable claims).

<u>Elements to Establish Sirius XM's Affirmative Defense of Waiver</u>: To prevail on the affirmative defense of waiver, Sirius XM must prove:

> (1) That class members intentionally relinquished a known right; or
>
> (2) That class members' conduct was inconsistent with the intent to enforce the right in question; and
>
> (3) That class members' conduct gave rise to a reasonable belief that they relinquished their rights.

*See Rubin v. L.A. Fed. Sav. & Loan Ass'n*, 159 Cal. App. 3d 292, 298 (1984); *see also See Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1114 (9th Cir. 1998) (waiver may be found where plaintiff "encourag[ed]" distribution of works).

Plaintiffs assert that Sirius XM waived this defense by failing to adequately raise it in opposing Flo & Eddie's summary judgment motion.  That is inaccurate, and ignores that the Court's September 22, 2014 summary judgment ruling only adjudicated Sirius XM's liability as to Flo & Eddie. Dkt. 117.  As the Court has recognized, Sirius XM is entitled to challenge class members' claims and raise its defenses. Dkt. 225 at 17-20; *see also* Dkt. 272 at 1 (granting Sirius XM's request for post-certification discovery concerning liability issues);  Dkt. 313-3 at 6, 8 (class notice: "[t]he Court has not yet ruled on Sirius XM's defenses").

Plaintiffs also assert that waiver is unavailable because class members were not aware that California law provides pre-1972 recording owners a performance right before the summary judgment ruling in this case.  But even so, class members did know that Sirius XM was broadcasting their pre-1972 recordings and never

19

1  complained.  Moreover, some class members now claim they did believe they had a

2  performance right and chose not to invoke it.  *See* Dkt. 519 at 11-12.

3       <u>Elements to Establish Sirius XM's Affirmative Defense of Estoppel</u>: To

4  prevail on the affirmative defense of estoppel, Sirius XM must prove:

5         (1) That class members knowingly acquiesced to Sirius XM's conduct

6         through inaction or silence; or

7         (2) That class members aided Sirius XM in the acts of misappropriation; or

8         (3) That class members induced or caused Sirius XM to perform such acts;

9         and

10         (4) Sirius XM relied on that acquiescence, aid, or enforcement.

11  *See* M. Nimmer & D. Nimmer, Nimmer on Copyright, 13.07 (2002) (citing *Quinn*

12  *v. City of Detroit*, 23 F. Supp.2d 741, 753 (E.D. Mich. 1998); *Nat'l Business Lists,*

13  *Inc. v. Dun & Bradstreet, Inc.*, 552 F. Supp. 89 (N.D. Ill. 1982); *Allen-Myland v.*

14  *Int'l Business Machs. Corp.*, 746 F. Supp. 520, 540-57 (E.D. Pa. 1990); *Curtis*

15  *Publishing Co. v. Union Leader Corp.*, 12 F.R.D. 341 (D.N.H. 1952); *Coleman v.*

16  *ESPN, Inc.*, 764 F. Supp. 290, 295 (S.D.N.Y. 1991)).

17       Sirius XM has not waived this or any other defense.  Plaintiffs argue that

18  Sirius XM cannot prove its authorization defenses, including estoppel, because its

19  decision not to obtain written licenses from pre-1972 recording owners was based

20  on its understanding that California law did not grant them a performance right.

21  The question of whether class members' conduct gives rise to estoppel (or any

22  other authorization defense) depends on the legal effect of that conduct—not on

23  Sirius XM's subjective understanding of the law.

24       <u>Elements to Establish Sirius XM's Affirmative Defense of Implied License</u>:

25  To prevail on the affirmative defense of implied license, Sirius XM must prove:

26         (1) That class members knowingly acquiesced to Sirius XM's conduct

27         through inaction or silence; and

28

4581846v1/015185

1    (2) Sirius XM reasonably interpreted that inaction or silence as consent to

2    the performance of class members' recordings.

3  *See Zellers v. State*, 134 Cal. App. 2d 270, 273-74 (1955) ("An implied

4  license is one which is presumed to have been given from the words, acts or passive

5  acquiescence of the party authorized to give it.").

6    An implied license does not only arise only "where one party created a work

7  at [the other's] request." Doc. 225 at 18 (quoting *A&M Records, Inc. v. Napster,*

8  *Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001)). When the Court concluded otherwise, it

9  cited dicta in *A&M* that commentators have criticized, *see* Nimmer & Nimmer,

10  Nimmer on Copyright § 10.03[A][7] (2016), and the Ninth Circuit has not

11  followed. *See Foad Consulting Grp., Inc. v. Musil Govan Azzalin*o, 270 F.3d 821,

12  828 (9th Cir. 2001) (implied license can arise from "course of conduct, and custom

13  and practice"); *cf. Stevens v. Corelogic, Inc.*, 2016 U.S. Dist. LEXIS 86843, at *17-

14  18 (S.D. Cal. July 1, 2016) (finding implied license based on "industry practice").

15  Nor is there any California case adopting the narrow test articulated in A&M. *Cf.*

16  *Zellers, 134 Cal. App. 2d at 273*.

17    Plaintiffs' claim that Sirius XM's counsel "admitted" the unavailability of an

18  implied license defense at the class certification hearing, is also incorrect. As the

19  transcript makes clear, counsel merely agreed with the Court's statement that Sirius

20  XM did not exist at the time pre-1972 recordings were created. Dkt. 234 at 25:23-

21  26:5. As set forth in Sirius XM's opposition to Plaintiffs' Motion *in Limine* Nos. 1-

22  3, that fact is irrelevant, since California law is clear that implied licenses may arise

23  based on post-creation conduct. Dkt. 519 at 6-9; *Zellers*, 134 Cal. App. 2d at 273

24  ("An implied license is one which is presumed to have been given from the words,

25  acts or passive acquiescence of the party authorized to give it.").

26    Elements to Establish Sirius XM's Affirmative Defense of Mitigation: To

27  prevail on the affirmative defense of mitigation, Sirius XM must prove:

28

21

(1) That class members failed to use reasonable efforts to mitigate damages; and

(2) The amount by which damages would have been mitigated.

Ninth Circuit Model Instruction No. 5.3.  Under the mitigation doctrine, any damages award must also be offset by the value of any special benefit conferred on class members resulting from Sirius XM's performance of their pre-1972 recordings.  *See Turpin v. Sortini*, 31 Cal. 3d 220, 236-37 (1982).

**Plaintiffs' Position**: The Court has already granted summary judgment against Defendant on liability on all of the above-stated causes of action, finding Sirius XM liable for its unlicensed performance of pre-1972 recordings and rejecting as a matter of law the laches defense that Sirius XM asserted in opposing summary judgment.  *See* Dkt. 117.  The Court subsequently denied Sirius XM's motion for reconsideration of that ruling, concluding that Sirius XM had failed to assert any affirmative defenses in opposing summary judgment on liability.  *See* Dkt. 175.  Thereafter, the Court has repeatedly rejected Sirius XM's claims that the Court's rulings do not apply to the entire class, holding that Sirius XM waived the protections of the one-way intervention rule and that the trial in this case is "damages-only."  Dkt. 225 at 4-8, 17-18; Dkt. 317 at 5. Evidence in support of any defense to individual class members (and there are none) can be handled in post-trial proceedings, *see Vaquero,* 824 F.3d at 1156, as any such defenses "would be manageably addressed in individualized proceedings at a later phase of the case." *Nitsch, et al. v. Dreamworks Animation SKG Inc., et al.*, 315 F.R.D. 270, 313 (N.D. Cal. 2016) (holding that "issues unique to particular class members may be handled in a manner similar to that used when individualized damages inquiries arise in class action proceedings").  Sirius XM's argument that "the Court has recognized[] Sirius XM is entitled to challenge class members' claims and raise its defenses" cites to nothing establishing Sirius XM's entitlement to do so *at the classwide damages trial* commencing November 15, 2016.  This is underscored by the

22

Court's denial of Sirius XM's Motion for Decertification, in which Sirius XM raised these exact affirmative defenses. Dkt. 432. Indeed, because Sirius XM's defenses are individualized, they could have no relevance to a classwide damages trial – only to later reducing damages (if at all) as to individual claimants.

The elements of the affirmative defenses Sirius XM indicates it intends to pursue, despite the fact the Court found that they were already waived by failing to assert any when opposing summary judgment, *see* Dkt. 117 & 175, are as follows:

Elements to Establish Defendant's Affirmative Defense of Laches:

(1) The claimant unreasonably delayed in filing suit based on when the claimant knew or should have known of the allegedly infringing conduct; and;

(2) As a result of the delay, the defendant suffered prejudice.[7]

However, this Court already ruled that laches is unavailable in an action for damages.  Dkt. 117 at 15.

Elements to Establish Defendant's Affirmative Defense of Waiver:

(1) Intentional relinquishment of a known right, including

(2) clear, decisive and unequivocal conduct that indicates a purpose to waive the legal rights or privileges involved;[8]

(3) by a party with full knowledge of the facts.[9]

Waiver is a defense to liability; Sirius XM did not assert its waiver defense in opposing summary judgment on liability; the Court denied Sirius XM's prior

---

[7] *AirWair Int'l Ltd. v. Schultz*, 84 F. Supp. 3d 943, 955 (N.D. Cal. 2015) (citing *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 952–56 (9th Cir. 2001)).

[8] *Arizona v. Tohono O'odham Nation*, 818 F.3d 549, 559-60 (9th Cir. 2016) (quoting *United States v. Amwest Sur. Ins. Co.*, 54 F.3d 601, 602-03 (9th Cir. 1995)).

[9] *Padres Hacia Una Vida Mejor v. Davis*, 96 Cal. App. 4th 1123, 1136, 117 Cal. Rptr. 2d 727, 736 (2002).

23

motion for reconsideration of the summary judgment ruling based on affirmative defenses that the Court concluded Sirius XM had failed to present in opposing summary judgment on liability.  Dkt. 175.  The Court has already ruled that "Sirius XM's position throughout this litigation has been that pre-1972 recording owners never knew or expected that they had any control over the public performance of their recordings," and so "would have great difficulty establishing the 'known right' portion of this defense."  Dkt. 225 at 19.  Furthermore, because the Court ruled that Sirius XM was not "induced" by class members' conduct and instead relied entirely on its interpretation of the law, it cannot demonstrate prejudice, and any waivers would thus be revocable.  *Id.* Any evidence that class members benefitted from Sirius XM's conduct is irrelevant under California black letter law.[10]

> Elements to Establish Defendant's Affirmative Defense of Implied License:
>
> (1) The licensee requested the creation of the work;
>
> (2) The licensor expressly created the work at the licensee's request;
>
> (3) The licensor handed the work over to the licensee; and
>
> (3) The licensor intended for the licensee to copy and distribute the work.[11]

The Court has already rejected Sirius XM's arguments for a broader standard of implied license, which it repeats here, finding that "binding Ninth Circuit precedent supplies the standard here, and as class members own recordings created over four decades ago, they did not create those recordings at Sirius XM's direction; therefore, Sirius XM will not have credible implied license arguments as to any

---

[10] Cal. Civ. Code § 3337; *Dakota Gardens Apartment Investors "B" v. Pudwill*, 75 Cal. App. 3d 346, 352 (1977).

[11] *Bangkok Broad. & T.V. Co. v. IPTV Corp.*, 742 F. Supp. 2d 1101, 1113 (C.D. Cal. 2010); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001).

class members."[12] As Sirius XM's counsel admitted at the class certification hearing:

> THE COURT: If we look at the doctrine of implied consent, basically to prove a case for implied consent the Courts have said this is a narrow circumstance that the party created a work at another's request and handed it over intending that the other copy and distribute it. That's impossible in this case because, when these works were created, Sirius didn't exist.
>
> MR. PETROCELLI: That's correct.

May 22, 2015 Transcript (Class Certification H'rg) at 25-26.

> Elements to Establish Defendant's Affirmative Defense of Estoppel:
>
> (1) The party to be estopped must be apprised of the facts;
>
> (2) The party to be estopped must intend that his conduct shall be relied upon, or must so act that the party asserting the estoppel had a right to believe it was so intended;
>
> (3) The party asserting estoppel must be ignorant of the true state of facts; and
>
> (4) The party asserting estoppel must rely upon the conduct to his injury.[13]

Estoppel is a defense to liability; Sirius XM did not assert its estoppel defense in opposing summary judgment on liability; the Court denied Sirius XM's prior motion for reconsideration of the summary judgment ruling based on affirmative defenses that the Court concluded Sirius XM had failed to present in opposing summary judgment on liability.  Dkt. 175.  An estoppel defense is, "for

---

[12] Dkt. 225 at 18-19.

[13] *Bd. of Trs. v. Roche Molecular Sys.*, 487 F. Supp. 2d 1099, 1114 (N.D. Cal. 2007) (citing *Granite State Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996)).

25

practical purposes, indistinguishable" from an implied waiver defense.[14]  The Court has already ruled that Sirius XM cannot claim it relied on class members' conduct, and so cannot satisfy equitable estoppel, because "its practice of performing pre-1972 recordings without first seeking licenses or paying royalties was based on its interpretation of the applicable law."  Dkt. 225 at 19.

<u>Elements to Establish Defendant's Affirmative Defense of Mitigation:</u>

Mitigation is not an available defense against a conversion claim for compensatory damages or restitution under the UCL. *J & J Sports Prods. v. Dean*, No. 10-05088 CW, 2011 U.S. Dist. LEXIS 102371, at *7 (N.D. Cal. Sep. 12, 2011); *see also Doughty v. Aurora Towing*, No. 91-36336, 1993 U.S. App. LEXIS 23074, at *14-15 (9th Cir. Sep. 3, 1993) (where mitigation was not an available defense against conversion, court was correct to refuse jury instruction). Moreover, even if the defense were available, as noted by the Court, "Sirius XM's position throughout this litigation has been that pre-1972 recording owners never knew or expected that they had any control over the public performance of their recordings," Dkt. 225 at 19. Accordingly, no duty to mitigate could have arisen. *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1329 (9th Cir. 1995) ("The duty to mitigate damages does not arise until the party upon whom the duty is impressed is aware of facts making the duty to mitigate necessary."); *see also* Dkt. 411 (granting Sirius XM's motion for summary judgment as to Plaintiffs' claim for punitive damages on the basis of case being one of first impression). To the extent Sirius XM's mitigation defense is based on benefits allegedly conferred upon the class by its conduct, that argument is foreclosed upon by California black letter law. *See* Cal. Civ. Code § 3337; *Dakota Gardens Apartment Investors "B" v.*

---

[14] *Oakland Raiders v. Oakland-Alameda Cty. Coliseum, Inc.*, 144 Cal. App. 4th 1175, 1190 (2006).

26

*Pudwill*, 75 Cal. App. 3d 346, 352 (1977) ("[T]he effect of section 3337 is to prevent mitigation when property is stolen from the plaintiff and subsequently applied to his benefit. In this situation, the defendant will not be able to claim that his conversion benefited plaintiff; he will thereby be prevented from claiming an offset derived from his original wrong.").

      **c.**    **In Brief, The Key Evidence Sirius XM Relies On For Each Affirmative Defense Is:**

    <u>Evidence to Support First Affirmative Defense of Laches</u>: As the evidence at trial will show, class members delayed in asserting their purported rights, and that delay was not reasonable or excusable and prejudiced Sirius XM.  Key evidence on these points includes, but is not limited to:

    (1) Live testimony of Steven Blatter, Senior Vice President and General Manager, Music Programming, Sirius XM.  Mr. Blatter's testimony will demonstrate that, *inter alia*, Sirius XM and its predecessors have openly and continuously performed pre-1972 recordings without obtaining written licenses or paying compensation to recording owners for more than a decade—and never hid that fact.  Mr. Blatter will also testify that before this lawsuit, no class member ever asked Sirius XM to stop performing its pre-1972 recordings, obtain a written license, or pay compensation.  Mr. Blatter's testimony will demonstrate that class members encouraged Sirius XM to perform their pre-1972 recordings, without any expectation of compensation, in order to reap the promotional benefits of airplay and the unique exposure of the works to a national audience on satellite radio.

    (2) Testimony of Flo & Eddie's principals, Mark Volman and Howard Kaylan, that for nearly 50 years, Flo & Eddie has known that AM/FM radio stations perform its pre-1972 recordings without seeking permission or paying royalties, and that Flo & Eddie has known the same about Sirius XM for many years.  Even so, Flo & Eddie never objected to Sirius XM's performance of their pre-1972

recordings and, in fact, encouraged those performances.

(3) Testimony of class members who claim to have known they had a right to control performances of their pre-1972 recordings and that Sirius XM was performing their recordings, but nonetheless chose not to object.  For example, Sirius XM will present testimony that Codigo has been aware of Sirius XM's performances of its pre-1972 recordings since at least 2005, but never asked Sirius XM to obtain a license—even though it purportedly "knew" it had a right to demand one.  Sirius XM will also present testimony that Fuel2000 has been aware of Sirius XM's performances for 5-10 years, and supposedly knew that it had a performance right, but chose not to challenge Sirius XM's performances (even though Fuel2000 did object to performances by Pandora and others).  Sirius XM will present similar testimony from Malaco Records, Hindsight Records, Shout!, and others.

(4) Live testimony of David Frear, Senior Executive Vice President and Chief Financial Officer, Sirius XM.  Mr. Frear's testimony will demonstrate that, *inter alia*, Sirius XM invested billions of dollars developing, marketing, selling, promoting, and maintaining its business over the years—at considerable risk to its stockholders and investors—and reasonably relied on the industry consensus and practice that broadcasters had no obligation to obtain written licenses from or pay compensation to recording owners.

Evidence to Support Second Affirmative Defense of Waiver: As the evidence at trial will show, class members waived any right to control performances of their pre-1972 recordings by, for example, soliciting Sirius XM to perform those recordings and failing to object to Sirius XM's performances.  Key evidence on these points includes, but is not limited to:

(1) *See supra*, First Affirmative Defense of Laches, Key Evidence (1)-(3).

(2) Documents and testimony showing that class members have solicited

Sirius XM to perform their pre-1972 recordings by, for example, asking Sirius XM to increase airplay, sending Sirius XM copies of their recordings to perform, making promotional appearances on Sirius XM, and otherwise collaborating with Sirius XM to promote their music.  To take just a few examples, David Freeman will testify that he knows many Sirius XM DJs "on a friendly first-name basis," sends them copies of his recordings to play "all the time," and has no objection to Sirius XM's performances; Sundazed will testify that its president is "friends" with several Sirius XM DJs and sends them pre-1972 recordings to play; Rural Rhythm will testify that it has provided Sirius XM with copies of its recordings "from day one" in hopes of maximizing airplay; Delmark Records will testify that it sent copies of albums to Sirius XM DJs with the intention that they be played; and VP Records will testify that it has frequently sent Sirius XM promotional emails containing links to download its recordings.

(3) Testimony of Mr. Blatter confirming that class members have encouraged Sirius XM to perform their pre-1972 recordings.  For example, Flo & Eddie's principals have made many promotional appearances on Sirius XM, during which their pre-1972 recordings (and others) were performed, and thanked Sirius XM for its support.

Evidence to Support Third Affirmative Defense of Estoppel: As the evidence at trial will show, class members are barred from challenging Sirius XM's performances of their pre-1972 recordings given that Sirius XM has openly and continuously performed those recordings for more than a decade, class members have been aware of those performances, and class members never objected to or demanded compensation for those performances (and in many instances, actively encouraged them).  Sirius XM relied on class members' actions (and inactions) to its detriment.  Key evidence on these points includes, but is not limited to:

(1) *See supra*, First Affirmative Defense of Laches, Key Evidence (1)-(3).

29

(2) *See supra*, Second Affirmative Defense of Waiver, Key Evidence (2)-(3).

<u>Evidence to Support Second Affirmative Defense of Implied License</u>: As the evidence at trial will show, class members' actions—including their efforts to encourage Sirius XM to perform their pre-1972 recordings—led Sirius XM to reasonably believe that class members authorized Sirius XM's performance of their pre-1972 recordings.  Key evidence on these points includes, but is not limited to:

(1) *See supra*, First Affirmative Defense of Laches, Key Evidence (1)-(4).

(2) Testimony of Flo & Eddie's principals, Mark Volman and Howard Kaylan, concerning the beneficial effects of airplay, including that Sirius XM's performances "helped a great deal" with sales of their recordings.

(3) Testimony of other class members and/or former class members, including David Freeman, Curb Records, and Rural Rhythm, that they benefitted from Sirius XM's performances of their pre-1972 recordings through increased record sales and exposure.

## 8. THIRD PARTY PLAINTIFFS AND DEFENDANTS

There are no third-party plaintiffs or defendants.

## 9. ISSUES REMAINING TO BE TRIED

**Plaintiffs' Position**: In view of the Court's orders to date, the law of the case, the admitted facts and the elements required to establish the claims and affirmative defenses, the following issues remain to be tried to the jury:

1. The amount of damages Sirius XM owes Plaintiffs for violation of Cal. Civ. Code § 980(a)(2) and Cal. Bus. & Prof. Code § 17200, Common Law Misappropriation, and Common Law Conversion.

2. The amount of prejudgment interest Plaintiffs are owed.

The following issues remain to be tried to or determined by the Court:

1. Whether an injunction should issue to enjoin Sirius XM from exploiting Plaintiffs' pre-1972 recordings and ordering Defendant to pay for its future

30

exploitation of Plaintiffs' pre-1972 recordings, or, in the alternative, requiring Sirius XM to pay damages based on a projection of future revenues.

2.      Whether Plaintiffs are entitled to attorneys' fees and costs for their successful claim under the UCL, and the amount of such fees and costs.[15]

Sirius XM has no classwide defense to liability available as a matter of law that has not already been addressed in the Court's prior orders, or that cannot otherwise be addressed by the Court in a bench trial on any equitable claims or equitable defense permitted to be tried, but to the extent those defenses survive and Sirius XM still seeks to raise them as to individual class members, that should be handled post-trial. *See Vaquero,* 824 F.3d at 1156; *Tyson Foods*, 136 S.Ct. at 1045.

**Sirius XM's Position**: As explained above, class-wide liability has not been adjudicated, and Sirius XM is entitled to challenge class members' claims and entitlement to damages and to assert its affirmative defenses.  The following issues remain to be tried:

1.      Whether Sirius XM can be found liable for misappropriating class members' personal property by performing pre-1972 recordings owned by class members.

---

[15] Sirius XM misrepresents Plaintiffs' previous statement that "none of the claims at issue permit an award of attorneys' fees," which was made in the context of addressing the superiority of a class action because attorneys' fees would be unavailable in an action brought by an *individual*. Dkt. 180 at 19-23. The Court's observation was made in the exact same context. Dkt. 225 at 23-25. As part of a class action, however, enforcement of the UCL allows Plaintiffs to seek recovery of attorneys' fees under Cal. Code Civ. Proc. § 1021.5. *See Walker v. Countrywide Home Loans, Inc*., 98 Cal. App. 4th 1158, 1179 (2002) ("If a plaintiff prevails in an unfair competition law claim, it may seek attorney fees as a private attorney general pursuant to Code of Civil Procedure section 1021.5.").

4581846v1/015185

2.      Whether Sirius XM can be found liable for conversion of class members' personal property by performing pre-1972 recordings owned by class members.

3.      Whether Sirius XM can be found liable for statutory unfair competition by performing pre-1972 recordings owned by class members.

4.      Whether class members' equitable claims are barred by the doctrine of laches.

5.      Whether class members' claims are barred under the doctrine of waiver.

6.      Whether class members' claims are barred under the doctrine of estoppel.

7.      Whether class members' claims are barred because they impliedly licensed the performances of their pre-1972 recordings.

8.      Should Sirius XM be found liable to the class, the fair market value of a non-exclusive performance license for class members' pre-1972 recordings, expressed as a royalty rate, taking into account any offsetting benefits.

9.      Whether class members failed to use reasonable efforts to mitigate damages and/or received a special benefit from the performance of their pre-1972 sound recordings, and the amount by which damages shall be reduced to account for such.

10.       Whether class members are entitled to an injunction.

11.      Whether class members should recover prejudgment interest should they prevail at trial.[16]

---

[16] As plaintiffs had previously acknowledged, there is no basis for recovery of attorneys' fees against Sirius XM in this dispute regarding class members' property rights. Dkt. 180 at 20 ("[N]one of the claims at issue permit an award of attorneys' fees."); *see* Dkt. 225 at 24 (Class Certification Order) (noting that "[a]ttorneys' fees are unavailable in this case"). And *Walker v. Countrywide Home Loans, Inc*. 98

32

4581846v1/015185

## 10. DISCOVERY

All discovery has been completed, including—as of October 22, 2016—all expert discovery.

**Plaintiffs' Position**: Just *one business day ago* (or just 3 calendar days)*,* Sirius XM produced brand new discovery, including new documents and a hearsay declaration from a lawyer at Sidley Austin LLP, long after the deadline for fact discovery expired.  Dkt. 272 at 1 (ordering June 6, 2016 fact-discovery cut-off). Plaintiffs' Motion in Limine No. 9 seeks to preclude use of or reliance on various late-produced material, and this new Sirius XM discovery—served even after motions in limine were due, under the guise of expert materials—came just three days ago and purports to introduce an inadmissible declaration that was signed on October 20, 2016.  Further discussion of this discovery misconduct is below in Section __.

## 11. JOINT EXHIBIT LIST

All disclosures under Fed. R. Civ. P. 26(a)(3) have been made.

The joint exhibit list of the parties has been filed under separate cover as required by L.R. 16-6.1.  Dkt. 503.  Because many of the parties' objections to exhibits are dependent upon the Court's rulings on the pending motions *in limine*, and the parties differ on the intended scope of the trial as set forth herein, the parties have mutually agreed to make a good faith effort to resolve objections after the Court rules on the pending motions.  For the time being, the parties have agreed

---

Cal. App. 4th 1158, 1179 (2002) does not stand for the proposition that a party who prevails under the UCL is entitled to the recovery of attorneys' fees automatically. A court may only award fees under Section 1021.5 if the successful party enforced an important right affecting the public interest, which conferred a significant benefit on the public, and the necessity and financial burden of enforcing that right and the interests of justice make the award appropriate. *See* Cal. Civ. Proc. Code § 1021.5. None of those requisites are met here.

4581846v1/015185

tha unless all parties have agreed that an exhibit shall be withdrawn, all exhibits
will be admitted without objection at trial, except those exhibits listed below:

Plaintiffs object to the following exhibits, with the following objections and
grounds as follows:[17]

Ex. No. 401: 402, 403, 802, 901, MIL 4

Ex. No. 402: 402, 403, 802, 901, MIL 4

Ex. No. 403: 402, 403, MIL 4, MIL 13

Ex. No. 404: 402, 403, 802, 901, MIL 4

Ex. No. 405: 402, 403, MIL 4, MIL 13

Ex. No. 406: 402, 403, MIL 4, MIL 13

Ex. No. 407: 402, 403, 802, 901, MIL 4

Ex. No. 408: 402, 403, 802, 901, MIL 4

Ex. No. 409: 402, 403, 901, MIL 4, MIL 13

Ex. No. 410: 402, 403, MIL 4, MIL 13

Ex. No. 411: 402, 403, 901, MIL 4, MIL 13

Ex. No. 412: 402, 403, MIL 1, MIL 4, MIL 7

Ex. No. 413: 402, 403, 802, 901, MIL 4

Ex. No. 414: 402, 403, MIL 4, MIL 13

Ex. No. 415: 402, 403, 901, MIL 4, MIL 13

Ex. No. 416: 402, 403, 802, 901, MIL 4

Ex. No. 417: 402, 403, 802, 901, 104, MIL 1, MIL 2, MIL 5, MIL 7

Ex. No. 418: 402, 403, 802, 901, MIL 4, MIL 10

Ex. No. 419: 402, 403, 802, 901, MIL 4, MIL 10

Ex. No. 420: 402, 403, 802, 901, MIL 4

---

[17] All numerical objections refer to the Federal Rules of Evidence. "MIL_"
refers to Flo & Eddie's pending motions in *limine*. "L" refers to the objection that
Sirius XM either did not produce the relevant document or did not produce it before
fact discovery closed.

1   Ex. No. 421: 402, 403, 802, 901, MIL 4

2   Ex. No. 422: 402, 403, 802, 901, MIL 4

3   Ex. No. 423: 402, 403, 802, 901, MIL 4

4   Ex. No. 424: 402, 403, 802, 901, MIL 4

5   Ex. No. 425: 402, 403, 802, 901, MIL 4

6   Ex. No. 426: 402, 403, 802, 901, MIL 4

7   Ex. No. 427: 402, 403, 802, 901, MIL 4

8   Ex. No. 428: 402, 403, 802, 901, MIL 4

9   Ex. No. 429: 402, 403, 802, 901, MIL 4

10   Ex. No. 430: 402, 403, 802, 901, MIL 4

11   Ex. No. 431: 402, 403, 802, 901, MIL 4

12   Ex. No. 432: 402, 403, 802, 901, MIL 4

13   Ex. No. 433: 402, 403, 802, 901, MIL 4

14   Ex. No. 434: 402, 403, 802, 901, MIL 4

**Ex. No. 435: 402, 403, 802, 901**

15   Ex. No. 436: 402, 403, 802, 901, MIL 4

16   Ex. No. 437: 402, 403, 802, 901, MIL 4

17   Ex. No. 438: 402, 403, 802, 901, MIL 4

18   Ex. No. 439: 402, 403, 802, 901, MIL 4

19   Ex. No. 440: 402, 403, 802, 901, MIL 4

20   Ex. No. 441: 402, 403, 802, 901, MIL 4

21   Ex. No. 442: 402, 403, 802, 901, MIL 4

22   Ex. No. 443: 402, 403, 802, 901, MIL 1, MIL 2

23   **Ex. No. 444: 402, 403, 802, 901, MIL 4**

24   Ex. No. 445: 402, 403, 802, 901, MIL 4

25   Ex. No. 446: 402, 403, 802, 901, MIL 4

26   Ex. No. 447: 402, 403, 802, 901, MIL 4

27   Ex. No. 448: 402, 403, 802, MIL 13

28

35

1      Ex. No. 449: 402, 403, 802, 901, MIL 4

2      Ex. No. 450: 402, 403, 802, 901, MIL 4

3      Ex. No. 451: 402, 403, 802, 901, MIL 4

4      Ex. No. 452: 402, 403, 802, 901, MIL 4

5      Ex. No. 453: 402, 403, 802, 901, MIL 4

6      Ex. No. 454: 402, 403, 802, 901, MIL 4

7      Ex. No. 455: 402, 403, 802, 901, MIL 4

8      Ex. No. 456: 402, 403, 802, 901, MIL 4

9      Ex. No. 457: 402, 403, 802, 901, MIL 4

10     Ex. No. 458: 402, 403, 802, 901, MIL 4

11     Ex. No. 459: 402, 403, 802, 901, MIL 4

12     Ex. No. 460: 402, 403, 802, 901, MIL 4

13     Ex. No. 461: 402, 403, 802, 901, MIL 4

14     Ex. No. 462: 402, 403, 802, 901, MIL 4

15     Ex. No. 463: 402, 403, 802, 901, MIL 4

16     Ex. No. 464: 402, 403, 802, 901, MIL 4

17     Ex. No. 465: 402, 403, 802, 901, MIL 4

18     Ex. No. 466: 402, 403, 802, 901, MIL 4

19     Ex. No. 467: 402, 403, 802, 901, MIL 4

20     Ex. No. 468: 402, 403, 802, 901, MIL 1, MIL 2, MIL 4

21     Ex. No. 469: 402, 403, 802, 901, MIL 4

22     Ex. No. 470: 402, 403, 802, 901, MIL 4

23     Ex. No. 471: 402, 403, 802, 901, MIL 4

24     Ex. No. 472: 402, 403, 802, 901, MIL 4

25     Ex. No. 473: 402, 403, 802, 901, MIL 4

26     Ex. No. 474: 402, 403, 802, 901, MIL 4

27     Ex. No. 475: 402, 403, 802, MIL 4

28     Ex. No. 476: 402; 403; MIL 4

36

Ex. No. 477: 402; 403; MIL 4

Ex. No. 478: 402; 403; 802; MIL 4

Ex. No. 479: 402; 403; MIL 4

Ex. No. 480: 402; 403; MIL 4

Ex. No. 481: 402; 403

Ex. No. 482: 402; 403; MIL 4

Ex. No. 483: 402; 403; MIL 4

Ex. No. 484: 402; 403; MIL 4

Ex. No. 485: 402; 403; MIL 4

Ex. No. 486: 402; 403; MIL 4

Ex. No. 487: 402; 403; MIL 4

Ex. No. 488: 402; 403; MIL 4

Ex. No. 489: 402; 403; MIL 4, MIL 5, MIL 13

Ex. No. 490: 402; 403; 802, MIL 4

Ex. No. 491: 402; 403

Ex. No. 492: 402; 403; 106; MIL 4

Ex. No. 493: 402; 403; 802; MIL 1; MIL 2

Ex. No. 494: 402; 403; 802; MIL 1; MIL 2; MIL 5

Ex. No. 495: 402; 403; MIL 4

Ex. No. 496: 402; 403; MIL 4

Ex. No. 497: 402; 403; MIL 4

Ex. No. 498: 402; 403; MIL 4

Ex. No. 499: 402; 403; MIL 4

Ex. No. 500: 402; 403; MIL 4

Ex. No. 501: 402, 403, 802, 901, MIL 13

Ex. No. 502: 402, 403; 802; MIL 2; MIL 3; MIL 5

Ex. No. 503: 402, 403; 802; MIL 2; MIL 3; MIL 5

Ex. No. 504: 402, 403; 802; MIL 2; MIL 3; MIL 5

37

Ex. No. 505: 402; 403; 802; MIL 4

Ex. No. 506: 402; 403; 802; MIL 4

Ex. No. 507: 402; 403; 802 MIL 4

Ex. No. 508: 403; 403; 802; MIL 4

Ex. No. 509: 402; 403; 802; MIL 4

Ex. No. 510: 402; 403; 802; MIL 4

Ex. No. 511: 402, 403, 802; MIL 1

Ex. No. 512: 402, 403; MIL 4

Ex. No. 513: 402, 403, 802; MIL 2; MIL 3

Ex. No. 514: 402, 403; 802; 901; MIL 8, L

Ex. No. 515: 802, 901, MIL 8, L

Ex. No. 516: 402, 403; 802; 901; MIL 1; MIL 8, L

Ex. No. 517: 402, 403, 802, 901, MIL 8, L

Ex. No. 518: 402, 403, 106; MIL 1; MIL 2; MIL 3

Ex. No. 519: 402, 403; 802; 901; MIL 1; MIL 8, L

Ex. No. 520: 402, 403; 802; 901; MIL 1; MIL 8, L

Ex. No. 521: 802, 901, MIL 8, L

Ex. No. 522: 402, 403; 802; 901; MIL 1; MIL 8, L

Ex. No. 523: 402, 403; 802; 901; MIL 1; MIL 8, L

Ex. No. 524: 402, 403; 802; 901; MIL 1; MIL 8, L

Ex. No. 525: 402, 403; 802; 901; MIL 1; MIL 8, L

Ex. No. 526: 402, 403; 802; 901; MIL 1; MIL 8, L

Ex. No. 527: 402, 403; 802; 901; MIL 1; MIL 8, L

Ex. No. 528: 402, 403; 802; 901; MIL 1; MIL 8, L

Ex. No. 529: 402, 403; 802; 901; MIL 1; MIL 8, L

Ex. No. 530: 402, 403; 802; 901; MIL 1; MIL 8, L

Ex. No. 531: 402 403; 802; 901; MIL 1; MIL 8, L

Ex. No. 532: 402, 403; 802; 901; MIL 1; MIL 8, L

4581846v1/015185

Ex. No. 533: 402, 403; 802; 901; MIL 1; MIL 8, L

Ex. No. 534: 402, 403; 802; 901; MIL 1; MIL 8, L

**Ex. No. 535: 402, 403; 802; 901; MIL 1; MIL 8, L**

Ex. No. 536: 402, 403; 802; 901; MIL 1; MIL 8, L

Ex. No. 537: 402, 403; 802; 901; MIL 1; MIL 8, L

Ex. No. 538: 402, 403; 802; 901; MIL 1; MIL 8, L

Ex. No. 539: 402, 403; 802; 901; MIL 1; MIL 8, L

Ex. No. 540: 402, 403; 802; 901; MIL 1; MIL 8, L

Ex. No. 541: 402, 403; 802; 901; MIL 1; MIL 8; MIL 13, L

Ex. No. 542: 402, 403; 802; 901; MIL 1; MIL 8, L

Ex. No. 543:  402, 403; 802; 901; MIL 1; MIL 8; MIL 13, L

**Ex. No. 544: 402, 403, 802; MIL 1**

Ex. No. 545: 402, 403; 802; 901; MIL 2; MIL 8, L

Ex. No. 546: 402, 403; 802; 901; MIL 2; MIL 8, L

Ex. No. 547: 402, 403; MIL 2; MIL 3

Ex. No. 548: 402, 403, 802, 901, MIL 4, MIL 8, L

Ex. No. 549: 403; 802, 901, MIL 4, MIL 8, L

Ex. No. 550: 402, 403, 802, 901, MIL 4, MIL 10

Ex. No. 551: 105, 402, 403, 802, 901, MIL 2, MIL 4

Ex. No. 552: 105, 402, 403, 802, 901, MIL 2, MIL 4

Ex. No. 553: 105, 402, 403

Ex. No. 554: 105, 402, 403

Ex. No. 555: 105, 402, 403

Ex. No. 556: 105, 402, 403, 802

Ex. No. 557: 402, 403, 802, MIL 4, MIL 10

Ex. No. 558: 105, 402, 403

Ex. No. 559: 105, 402, 403

Ex. No. 560: 105, 402, 403

39

Ex. No. 561: 105, 402, 403

Ex. No. 562: 402, 403, 802, MIL 4, MIL 10

Ex. No. 563: 105, 402, 403

Ex. No. 564: 105, 402, 403

Ex. No. 565: 402, 403, 802, MIL 4, MIL 10

Ex. No. 566: 105, 402, 403

Ex. No. 567: 402, 403, 802, 901, MIL 4, MIL 10

Ex. No. 568: 402, 403, 802, 901, MIL 4, MIL 10

Ex. No. 569: 402, 403, 802, 901, MIL 4, MIL 10

Ex. No. 570: 402, 403, 802, 901, MIL 4, MIL 13

Ex. No. 571: 402, 403, 802, 901, MIL 4, MIL 13

Ex. No. 572: 402, 403, 802, 901, MIL 4, MIL 13

Ex. No. 573: 402, 403, 802, 901, MIL 4, MIL 13

Ex. No. 574: 402, 403, 802, 901, MIL 4

Ex. No. 575: 402, 403, 802, 901, MIL 4, MIL 13

Ex. No. 576: 402, 403, 802, 901, MIL 4

Ex. No. 577: 402, 403, 802, 901, MIL 4, MIL 13

Ex. No. 578: 402, 403, 802, 901, MIL 4

Ex. No. 579: 402, 403, 802, 901, MIL 4

Ex. No. 580: 402, 403, 802, 901, MIL 4

Ex. No. 581: 402, 403, 802, 901, MIL 4

Ex. No. 582: 402, 403, 802, 901, MIL 4

Ex. No. 583: 402, 403, 802, 901, MIL 4, MIL 13

Ex. No. 584: 402, 403, 802, 901, MIL 4, MIL 13

Ex. No. 585: 402, 403, 802, 901, MIL 4

Ex. No. 586: 402, 403, 802, 901, MIL 4, MIL 13

Ex. No. 587: 402, 403, 802, 901, MIL 4, MIL 13

Ex. No. 588: 402, 403, 802, 901, MIL 4, MIL 13

4581846v1/015185

Ex. No. 589: 402, 403, 802, 901, MIL 4, MIL 13

Ex. No. 590: 402, 403, 802, 901, MIL 4, MIL 13

Ex. No. 591: 402, 403, 802, 901, MIL 4, MIL 13

Ex. No. 592: 402, 403, 802, 901, MIL 4, MIL 13

Ex. No. 593: 402, 403, 802, 901, MIL 4, MIL 13

Ex. No. 594: 402, 403, 802, 901, MIL 4, MIL 13

Ex. No. 595: 402, 403, 802, 901, MIL 4, MIL 13

Ex. No. 596: 402, 403, 802, 901, MIL 4, MIL 13

Ex. No. 597: 402, 403, 802, 901, MIL 4, MIL 13

Ex. No. 598: 402, 403, 802, 901, MIL 4, MIL 13

Ex. No. 599: 402, 403, 802, 901, MIL 4, MIL 13

Ex. No. 600: 402, 403, 802, 901, MIL 4, MIL 13

Ex. No. 601: 402, 403, 802, 901, MIL 4, MIL 13

Ex. No. 602: 402, 403, 802, 901, MIL 4, MIL 13

Ex. No. 603: 402, 403, 802, 901, MIL 4

Ex. No. 604: 402, 403, 802, 901, MIL 4

Ex. No. 605: 402, 403, 802, 901, MIL 12, MIL 13

Ex. No. 606: 402, 403, 802, 901, MIL 12, MIL 13

Ex. No. 608: 402, 403, 802, 901, MIL 4

Ex. No. 609: 402, 403, 802, 901, MIL 4

Ex. No. 610: 402, 403, 802, 901, MIL 4

Ex. No. 611: 402, 403, 802, 901, MIL 4

Ex. No. 612: 402, 403, 802, 901, MIL 12, MIL 13

Ex. No. 613: 402, 403, 802, 901, MIL 12, MIL 13

Ex. No. 614: 402, 403, 802, 901, 1002

Ex. No. 615: 402, 403, 802, 1002, MIL 1, MIL 2

Ex. No. 616: 402, 403, 802, 1002, MIL 1, MIL 2

Ex. No. 617: 402, 403, 802, 1002, MIL 1, MIL 2

41

Ex. No. 618: 402, 403, 802, 1002, MIL 1, MIL 2

Ex. No. 620: 402, 403, 802, 901, MIL 1, MIL 5

Ex. No. 621: 402, 403, 802, 901, MIL 1, MIL 2, MIL 5

Ex. No. 622: 402, 403, 802, 901, MIL 1, MIL 2

Ex. No. 624: 402, 403, 802, 901, MIL 1, MIL 2, MIL 3

Ex. No. 625: 402, 403, MIL 1, MIL 2, MIL 3

Ex. No. 626: 402, 403, MIL 1, MIL 2, MIL 3

**Ex. No. 627: 402, 403, MIL 1, MIL 2, MIL 3**

Ex. No. 628: 402, 403, MIL 1, MIL 2, MIL 3

Ex. No. 629: 402, 403, MIL 1, MIL 2, MIL 3

Ex. No. 630: 402, 403, MIL 1, MIL 2, MIL 3

Ex. No. 631: 402, 403, MIL 1, MIL 2, MIL 3

Ex. No. 632: 402, 403, MIL 1, MIL 2, MIL 3

**Ex. No. 633: 402, 403, MIL 1, MIL 2, MIL 3**

Ex. No. 638: 402, 403, 802, MIL 1, MIL 2, MIL 8, L

Ex. No. 639: 402, 403, 802, MIL 1, MIL 2, MIL 8, L

Ex. No. 640: 402, 403, 802, MIL 1, MIL 2, MIL 8, L

Ex. No. 641: 402, 403, 802, MIL 1, MIL 2, MIL 8, L

Ex. No. 642: 402, 403, 802, MIL 1, MIL 2, MIL 8, L

Ex. No. 643: 402, 403, 802, MIL 1, MIL 2, MIL 8, L

**Ex. No. 644: 402, 403, 802, MIL 1, MIL 2, MIL 8, L**

Ex. No. 645: 402, 403, 802, MIL 1, MIL 2, MIL 8, L

Ex. No. 646: 402, 403, 802, MIL 1, MIL 2, MIL 8, L

Ex. No. 647: 402, 403, 802, MIL 1, MIL 2, MIL 8, L

Ex. No. 648: 402, 403, 802, MIL 1, MIL 2, MIL 8, L

Ex. No. 649: 402, 403, 802, MIL 1, MIL 2, MIL 8, L

Ex. No. 650: 402, 403, 802, MIL 1, MIL 2, MIL 8, L

Ex. No. 651: 402, 403, 802, MIL 1, MIL 2, MIL 8, L

4581846v1/015185

Ex. No. 652: 402, 403, 802, MIL 1, MIL 2, MIL 8, L

Ex. No. 653: 402, 403, 802, MIL 1, MIL 2, MIL 8, L

Ex. No. 654: 402, 403, 802, MIL 1, MIL 2, MIL 8, L

Ex. No. 655: 402, 403, 802, MIL 1, MIL 2, MIL 8, L

Ex. No. 656: 402, 403, 802, MIL 1, MIL 2, MIL 8, L

Ex. No. 660: 402, 403, 802, MIL 1, MIL 2, MIL 8, L

Ex. No. 661: 402, 403, 802, MIL 1, MIL 2, MIL 8, L

Ex. No. 662: 402, 403, 802, MIL 1, MIL 2, MIL 8, L

Ex. No. 663: 402, 403, 802, MIL 1, MIL 2, MIL 8, L

Ex. No. 664: 402, 403, 802, MIL 1, MIL 2, MIL 8, L

Ex. No. 665: 402, 403, 802, MIL 4, MIL 10

Ex. No. 666: 402, 403, 802

Ex. No. 667: 402, 403, 802, MIL 1, MIL 2, MIL 4, MIL 10

Ex. No. 668: 402, 403, 802, MIL 1, MIL 2, MIL 4, MIL 10

Ex. No. 670: MIL 1, MIL 2, MIL 3

Ex. No. 671: 802

Ex. No. 672: 402, 403, 802, MIL 4, MIL 10

Ex. No. 673: 402, 403, 802, MIL 4, MIL 10

Ex. No. 674: 402, 403, 802, MIL 4, MIL 10

Ex. No. 675: 402, 403, 802, 901, MIL 4, MIL 10

Ex. No. 676: 402, 403, MIL 1, MIL 2, MIL 3, MIL 8, L

Ex. No. 677: 402, 403, MIL 1, MIL 2, MIL 3, MIL 8, L

Ex. No. 678: 402, 403, MIL 1, MIL 2, MIL 3, MIL 8, L

Ex. No. 679: 402, 403, MIL 1, MIL 2, MIL 3, MIL 8, L

Ex. No. 680: 402, 403, MIL 1, MIL 2, MIL 3, MIL 8, L

Ex. No. 681: 402, 403, MIL 1, MIL 2, MIL 3, MIL 8, L

Ex. No. 682: 402, 403, MIL 1, MIL 2, MIL 3, MIL 8, L

Ex. No. 683: 402, 403, MIL 1, MIL 2, MIL 3, MIL 8, L

4581846v1/015185

Ex. No. 684: 402, 403, MIL 1, MIL 2, MIL 3, MIL 8, L

Ex. No. 685: 402, 403, 802, 901, MIL 4, MIL 10

Ex. No. 686: 402, 403, 802, MIL 1, MIL 2, MIL 3

Ex. No. 687: 402, 403, 802, MIL 1, MIL 2, MIL 3

Ex. No. 688: 402, 403, 802, 901, MIL 1, MIL 2, MIL 3

Ex. No. 689: 402, 403, 802, 901, MIL 1, MIL 2, MIL 3

Ex. No. 690: 402, 403, 802, 901, MIL 1, MIL 2, MIL 3

Ex. No. 691: 802

Ex. No. 692: 402, 403, 802, MIL 1, MIL 2, MIL 3

Ex. No. 693: 402, 403, 802, MIL 1, MIL 2, MIL 3

Ex. No. 694: 402, 403, 802, MIL 1, MIL 2, MIL 3

Ex. No. 695: 402, 403, 802, 901, MIL 1, MIL 2, MIL 3

Ex. No. 696: 402, 403, 802, MIL 1, MIL 2, MIL 3

Ex. No. 697: 402, 403, 802, MIL 1, MIL 2, MIL 3

Ex. No. 698: 402, 403, 802, MIL 1, MIL 2, MIL 3

Ex. No. 699: 402, 403, 802, MIL 1, MIL 2, MIL 3

Ex. No. 700: 402, 403, 802, MIL 1, MIL 2, MIL 3

Ex. No. 701: 402, 403, MIL 1, MIL 2, MIL 3

Ex. No. 702: 402, 403, 802, MIL 1, MIL 2, MIL 8, L

Ex. No. 703: 402, 403, 802, MIL 1, MIL 2, MIL 8, L

Ex. No. 704: 402, 403, 802, 901, MIL 1, MIL 2, MIL 3

Ex. No. 707: 402, 403, 802, 901, MIL 1, MIL 2, MIL 8, L

Ex. No. 708: 402, 403, MIL 10

Ex. No. 709: 402, 403, 802, 901, MIL 8, MIL 10, L

Ex. No. 710: 402, 403, 802, 901, MIL 8, MIL 10, L

Ex. No. 711: 402, 403, 802, 901, MILs 1, 2, 3, 5, 6, 8, 9

Ex. No. 712: 402, 403, 802, 901, MILs 1, 2, 3, 5, 6, 8, 9, L

Ex. No. 713: 402, 403, 802, 901, MILs 1, 2, 3, 5, 6, 8, 9, L

44

Ex. No. 714: 402, 403, 802, 901, MILs 1, 2, 3, 5, 6, 8, 9, L

Ex. No. 715: 402, 403, 802, 901, MILs 1, 2, 3, 5, 6, 8, 9, L

Ex. No. 716: 402, 403, 802, 901, MIL 8, MIL 11, MIL 12, L

Ex. No. 717: 402, 403, 802, 901, MIL 8, MIL 11, MIL 12, L

Ex. No. 718: 402, 403, 802, 901, MIL 8, MIL 11, MIL 12, L

Ex. No. 719: 402, 403, 802, 901, MIL 8, MIL 11, MIL 12, L

Ex. No. 720: 402, 403, 802, 901, MIL 8, MIL 11, MIL 12, L

Ex. No. 721: 402, 403, 802, 901, MIL 8, MIL 11, MIL 12, L

Ex. No. 722: 402, 403, 802, 901, MIL 1, MIL 2, MIL 3, MIL 8, MIL 9, MIL 11, L

Ex. No. 723: 402, 403, 802, 901, MIL 5, MIL 8, L

Ex. No. 724: 402, 403, 802, 901, MIL 8, L

Ex. No. 725: 402, 403, 802, 901, MIL 8, L

Ex. No. 726: 402, 403, 802, 901, MIL 8, L

Ex. No. 727: 402, 403, 802, 901, MILs 1, 2, 3, 5, 6, 8, 9, L

Ex. No. 728: 402, 403, 802, 901, MILs 1, 2, 3, 5, 6, 8, 9, L

Ex. No. 729: 402, 403, 802, 901, MIL 8, L

Ex. No. 730: 402, 403, 802, 901, MIL 8, L

Ex. No. 731: 402, 403, 802, 901, MIL 8, MIL 11, MIL 12, L

Ex. No. 732: 402, 403, 802, 901, MIL 8, L

Ex. No. 733: 402, 403, 802, 901, MIL 8, L

Ex. No. 734: 402, 403, 802, 901, MIL 8, MIL 11, MIL 12, L

Sirius XM objects to Exhibit Nos. 1-11, 13-15, 22, 24-26, 29-33, 35-69, 91-117.  The objections and grounds therefor are:

(a) Exhibits 1, 9, and 105:

Sirius XM objects to Exhibits 1, 9, and 105 on the grounds that they are irrelevant, prejudicial, confusing, and misleading under Rules 401, 402, and

45

403.  Exhibits 1, 9, and 105 are Sirius XM's "Statements of Account" from 2009

through 2015.  These exhibits provide details of Sirius XM's monthly royalty

payments to SoundExchange for performances of *post*-1972 recordings on its

satellite radio and webcasting services.  The exhibits contain monthly "Gross

Revenues" figures subject to post-1972 royalty payments and the "Monthly Fee

Liability" for performances of post-1972 recordings.  They do not provide

information relevant to Sirius XM's revenues for performances of *pre*-1972

recordings.  In fact, neither plaintiffs' nor Sirius XM's damages expert relies on the

Statements of Account to calculate damages.  Exhibits 1, 9, and 105 are therefore

irrelevant to any issues at trial, and would only confuse and mislead the jury by

presenting financial figures unrelated to performances of pre-1972

recordings.  Moreover, the annual gross revenues figures in the Statements of

Account unfairly prejudice Sirius XM by suggesting it has a high net worth, and

provide no probative value regarding specific revenues tied to performances of pre-

1972 recordings.  Finally, these exhibits are subject to exclusion under the reasons

explained in Sirius XM's pending Motions *in Limine* Nos. 1, 2 and 3.  *See* Docs.

474, 470, and 471.

> (b) Exhibits 2 and 5:

Sirius XM objects to Exhibits 2 and 5 on the grounds that parts of its

contents are irrelevant and prejudicial under Rules 401, 402, and 403, and are

subject to an agreed Motion *in Limine*.  Exhibits 2 and 5 are nearly identical

declarations of David Frear filed in connection with summary judgment briefing in

this matter and the *Flo & Eddie* New York matter.  Paragraphs 12, 13, and 16 refer

to a lawsuit between SoundExchange and Sirius XM, which is irrelevant and

prejudicial by suggesting that Sirius XM has engaged in wrongdoing separate from

plaintiffs' allegations in this lawsuit.  The parties have already agreed not "to offer

evidence or argument … regarding other litigation … in which … Sirius XM Radio

Inc. is or was a party." Doc. 459 ¶ 8. .  Moreover, paragraph 11 is irrelevant, prejudicial, and confusing.  Sirius XM's deduction of revenue related to pre-1972 sound recordings is used by plaintiffs to misleadingly suggest that Sirius XM engaged in wrongdoing by taking that deduction.  This allegation is inaccurate and prejudicial.

(c) Exhibits 3, 36-69:

Sirius XM objects to Exhibits 3 and 36-69 on the grounds that they are irrelevant, prejudicial, and likely to confuse the issues and mislead the jury under Rules 401, 402, and 403.  Exhibit 3 is a redacted copy of Sirius XM's Supplemental Responses and Objections to Flo & Eddie's Second Set of Interrogatories.  Exhibits 36-44 are Sirius XM's Objections to Flo & Eddie's Second Set of Interrogatories and corresponding attachments.  Exhibits 45-53 are Sirius XM's Supplemental Reponses and Objections to Flo & Eddie's Second Set of Interrogatories and corresponding attachments.  Exhibit 54-61 are Sirius XM's Second Supplemental Responses and Objections to Flo & Eddie's Second Set of Interrogatories and corresponding attachments.  Exhibits 62-69 are Sirius XM's Third Supplemental Responses to Flo & Eddie's Second Set of Interrogatories.  And while Sirius XM does not categorically object to plaintiffs use of Sirius XM's interrogatory responses, such exhibits must be appropriately redacted to address the issues outlined below.

Attachments A, G, and H to Exhibits 3, 36, 45, 54, 62, and Exhibits 37, 43, 44, 46, 52, 53, 55, 60, 61, 63, 68, and 69 contain financial figures related to Sirius XM's gross revenue.  The gross revenue information contained in these exhibits is irrelevant and prejudicial because Sirius XM's gross revenues (that includes revenues for both pre- and post-1972 sound recordings on a nationwide basis) is irrelevant and prejudicial.  Large revenue numbers may suggest to the jury that Sirius XM should pay a large damages amount regardless of its degree of liability

1   (if, in fact, there is any liability).  These exhibits are also subject to exclusion under

2   the reasons explained in Sirius XM's pending Motion *in Limine* No. 1.  Doc.

3   474.Exhibits 36-53 are also irrelevant and prejudicial to the extent that they include

4   evidence of damages sustained prior to the Court's September 22, 2014 summary

5   judgment ruling, as well as to the extent it includes evidence of damages sustained

6   prior to August 1, 2011, as explained in Sirius XM's Motions *in Limine* Nos. 2 and

7   3, respectively.  Docs. 470, 471.

8       (d) Exhibits 4 and 91:

9       Sirius XM objects to Exhibits 4 and 91 as irrelevant, substantially more

10  prejudicial than probative under Rules 401, 402, 403, and inadmissible hearsay

11  under Rule 802.  Exhibits 4 and 91 are communications, including meet and confer

12  exchanges, between counsel for Sirius XM and counsel for plaintiffs regarding

13  Sirius XM's discovery responses.  These exchanges between attorneys are

14  irrelevant to the issues at trial.  Moreover, these communications are prejudicial as

15  the jury will give unqualified weight to the statements within these communications

16  because they come from attorneys.  Finally, Exhibits 4 and 91are hearsay and do

17  not fall within any exception.  Counsel are not witnesses in this action and will not

18  be subject cross-examination.

19      Exhibits 4 and 91 also fall squarely within the purview of the first agreed on

20  motion *in limine* stipulated to by the parties and approved by the Court (Doc. 459),

21  which precludes referencing to, or attempting to read or show to the jury, "any ...

22  communications between trial counsel not otherwise embodied in a stipulation

23  agreed to among the parties."  And Exhibit 91 additionally falls within the purview

24  of the second agreed on motion *in limine*, which precludes evidence or argument

25  "suggesting before the jury that a party did not comply with its discovery

26  obligations or otherwise engaged in discovery misconduct."  *Id.*

27

28

1    Exhibit 91 also apparently was never produced in this litigation (it does not bear

2    any bates numbers).

3        (e) Exhibits 6 and 104:

4        Sirius XM objects to Exhibits 6 and 104 on the grounds that their contents

5    are irrelevant, confusing, and prejudicial under Rules 401, 402, and 403.  Exhibit 6

6    is the Written Rebuttal Testimony of David Frear on behalf of Sirius XM Radio

7    Inc. in the Matter of Determination of Rates and Terms for Preexisting Subscription

8    and Satellite Digital Audio Radio Services ("Satellite II"), and Exhibit 10 is the

9    redacted public version of Exhibit 6.  Mr. Frear offers testimony on four topics:  (1)

10   Sirius XM's direct licenses with independent record labels; (2) SoundExchange's

11   proposed revisions to the regulatory definition of "Gross Revenue;" (3) Sirius

12   XM's Music Royalty fee and increase in subscription prices; and (4) the portrayal

13   of SoundExchange experts of the financial prospects of Sirius XM.  The probative

14   value of these exhibits is outweighed by the danger of unfair prejudice and will

15   only confuse the jury.

16       First, while some of the direct licenses discussed in Exhibits 6 and 104 may

17   have covered a limited number of pre-1972 recordings, none of the licenses

18   provided separate royalty rates for pre-1972 recordings.  The probative value of

19   these licenses is minimal.  Rather, introducing licensing discussions in Exhibits 6

20   and 104 without the proper context can be highly prejudicial to Sirius XM and

21   confusing to the jury.  Plaintiffs may attempt to use these discussions to suggest

22   that Sirius XM knew it had to enter into licenses to perform *any* recordings

23   (including pre-1972 recordings)—an incorrect and prejudicial inference already

24   rejected by this court.  *See* Doc. 411.  As set forth in Sirius XM's Motion *in Limine*

25   No. 4, Sirius XM has offered to stipulate to use of the terms and amounts payable

26   under direct licenses to the extent necessary to identify relevant royalty rates.  Doc.

27

28

49

472 at 8.  Absent that use, plaintiffs should be precluded from relying on the direct licenses or discussions about them.

Second, the music royalty fee—the fee Sirius XM collects from subscribers to pay royalties on *post*-1972 recordings—is irrelevant to the issues at trial and will only confuse the jury.  In fact, neither plaintiffs' nor Sirius XM's damages expert relies on the Music Royalty Fee to calculate damages.  Moreover, plaintiffs' attempt to use testimony regarding Sirius XM's "increase in subscription prices" is irrelevant and prejudicial, as it may inappropriately suggest that Sirius XM is engaging in some wrongdoing to make profits.

Third, the opinions of SoundExchange's experts on the financial prospects of Sirius XM are irrelevant to the issues at trial, especially when their projections ended in 2016.  These statements will only confuse the jury and prejudice Sirius XM by providing unfounded opinions on Sirius XM's potential for success under the guise of unrebutted "expert" testimony.

(f) <u>Exhibits 7, 8</u>:

Sirius XM objects to Exhibits 7 and 8 as irrelevant, substantially more prejudicial than probative, and likely to confuse the trier of fact under Rules 401, 402, and 403.  Exhibit 8 also constitutes hearsay under Rule 802.  Exhibit 7 is a draft presentation by a Sirius XM employee regarding Sirius XM's Music Royalty Fee and Exhibit 8 appears to be a FAQ page from Sirius XM's website regarding the subject "U.S. Music Royalty Fee."  As an initial matter, the Music Royalty Fee—which is the fee Sirius XM collects from subscribers for royalties on *post*-1972 recordings—is irrelevant to the issues at trial and will only confuse the jury. Indeed, neither party's expert has analyzed or considered, much else opined on this subject matter.  Moreover, Exhibit 7 is a draft presentation and, as such, has little probative value, and it would be prejudicial to Sirius XM to cause the jury to infer that the conclusions in the draft are the ultimate views of Sirius XM.

1    Exhibit 8 also appears to be an incomplete duplicate ( *i.e.*, missing a page).  To

2    the extent the Court overrules Sirius XM's objections to Exhibit 8, per Rule 106,

3    Sirius XM requests that it be permitted to introduce a complete copy of the same.

4    Finally, the Exhibit 8 amounts to hearsay and does not fall within any exception.

5         (g) Exhibit 10:

6         Sirius XM objects to Exhibit 10 on the grounds that it contains content that is

7    irrelevant, confusing, and prejudicial under Rules 401, 402, and 403.  Exhibit 10 is

8    the Written Direct Testimony of David Frear on behalf of Sirius XM Radio Inc. in

9    the Matter of Determination of Rates and Terms for Digital Performance in Sound

10   Recordings and Ephemeral Recordings ("Web IV").  Mr. Frear's testimony

11   regarding circumstances surrounding the negotiation of the "2009 Sirius XM WSA

12   Settlement Agreement" and "Sirius XM's Rate Proposal" for webcasting services

13   are irrelevant to the issues at trial.  In the written testimony, Sirius XM proposes

14   (and uses) a per-performance metric to calculate payments for webcasting

15   recordings, rather than a percentage of revenue metric.  Neither plaintiffs' nor

16   Sirius XM's damages expert uses a per-performance metric.  Thus, this testimony is

17   irrelevant and would only confuse the jury in determining the appropriate measure

18   of damages.  This would also prejudice Sirius XM by suggesting to the jury that

19   Sirius XM can apply a per-performance measure of damages to its satellite radio

20   broadcasts when it is undisputed that Sirius XM does not have the technology to

21   measure performances on satellite radio.

22        (h) Exhibits 11 and 22:

23        Sirius XM objects to Exhibits 11 and 22 on the grounds that their contents are

24   irrelevant, confusing, and more prejudicial than probative under Rules 401, 402,

25   and 403, and constitute hearsay under Rule 802.  Exhibits 11 and 22 appear to be

26   printouts from a website regarding Sirius XM's 60s on 6 program and OnDemand

27   features, but there is no indication where the documents came from (*i.e.*, no website

28

51

URL).  Moreover, there is no indication that the 60s on 6 program and OnDemand features referenced in the exhibits are current.  The exhibits are therefore unreliable.  The introduction of such evidence at trial will only mislead the jury and confuse the issues, and thus its probative value (if any) is substantially outweighed by the likelihood of prejudicing Sirius XM.  Exhibits 11 and 22 are also hearsay and do not fall within any exception.

(i) Exhibits 13, 14, 15, 30, 31 (settlement), 32, 33:

Sirius XM objects to Exhibits 13-15 and 30-33 on the grounds that they are irrelevant, substantially more prejudicial than probative under Rule 401, 402, and 403, and the subject of a pending Motion *in Limine* (Doc. 472) and—for only Exhibits 13-15, 30, and 32-33—are hearsay, lack foundation, and constitute settlement communications and are inadmissible under Rules 802, 602, and 408.  Exhibits 13-15, 30, and 32-33 are pre-lawsuit communications between ABKCO, UMG, and Sirius XM from shortly before the *Capitol Records* lawsuit was filed, and Exhibit 31 is the *Capitol Records* settlement agreement.

As set forth in Sirius XM's Motion *in Limine* No. 4, Doc. 472 at 8, there is only one relevant, permissible use of the *Capitol Records* settlement:  to identify pre-1972 recordings covered by that agreement and exclude them from the damages analysis.  Sirius XM does not object to plaintiffs' use of the *Capitol Records* settlement for that limited purpose (or references to Sirius XM's "agreement with non-class members" to the extent necessary to provide the jury with context).  Any other use of or reference to the *Capitol Records* settlement, including communications preceding the *Capitol Records* lawsuit, would be improper, irrelevant, and prejudicial, and violate Rule 408.

Plaintiffs have argued that the cease-and-desist letters sent by ABKCO and UMG shortly before the *Capitol Records* lawsuit was filed, and Sirius XM's pre-litigation settlement discussions with UMG, prove that Sirius XM was aware of

52

1   class members' pre-1972 performance rights and consciously disregarded those

2   rights.  *See* Doc. 373 at 5, 13; Doc. 374 at 5-6.  The Court has recognized that this

3   case was the first to establish that California law grants pre-1972 recording owners

4   a performance right, and that Sirius XM could not have consciously disregarded

5   rights it had no reason to believe existed.  Doc. 411 at 3-6.  Any use of these letters

6   at trial would be irrelevant and prejudicial.  Moreover, Rule 408 expressly prohibits

7   use of settlement-related communications, including cease-and-desist letters, "to

8   prove … the validity or amount of a disputed claim."  *See* Fed. R. Evid. 408(a)(1)-

9   (2); *Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F. Supp. 2d 1023, 1034-35 (C.D.

10  Cal. 2013) (Rule 408 applies to cease-and-desist letters).

11      Moreover, the cease-and-desist letters are hearsay and do not fall within a

12  hearsay exception.  Sirius XM is unable to cross-examine the ABKCO and UMG

13  executives who wrote the letters to establish the credibility of the out-of-court

14  statements and to determine the circumstances in which the statements were

15  made.  For this same reason, Exhibits 13-15, 30, and 32-33 lack foundation, which

16  cannot be rectified unless the executives testify in court.

17      The *Capitol Records* settlement is likewise irrelevant and prejudicial, and

18  plainly protected by Rule 408.  The settlement was the product of a separate

19  lawsuit, involved different parties—which account for more than 80% of the pre-

20  1972 recordings that Sirius XM has historically played—and granted Sirius XM

21  rights to perform the Major Labels' recordings nationwide (not just in California,

22  the subject matter of this action) through 2017.  That settlement teaches the jury

23  nothing about Sirius XM's liability to class members in this case or the amount of

24  damages (if any) to which class members are entitled.  Plaintiffs argue that the

25  settlement is relevant to royalty rate analysis.  Not so.  The settlement provides for

26  a one-time, lump sum payment in settlement of litigation--it does not provide for

27  any royalty payments or rate and includes significant other language and terms

28

53

1   casting further doubt on its relevance and admissibility.  Further, neither expert

2   used the agreement in setting a royalty rate.  The settlement is irrelevant, and

3   offering it at trial would create a substantial risk of prejudice and confusion under

4   Rule 403 and violate Rule 408.

5       (j) Exhibit 24:

6       Sirius XM objects to Exhibit 24 as irrelevant and prejudicial under Rules

7   401, 402, and 403 because it is likely to mislead the jury to the extent that it

8   includes recordings that have not been broadcast by Sirius XM in

9   California.  Exhibit 24 is a list of recordings purportedly owned by Flo & Eddie,

10  Inc. that Flo & Eddie submitted as an attachment to its First Amended Complaint in

11  its lawsuit against Sirius XM in the Southern District of Florida, and a duplicate of

12  which is attached to the Complaint in this lawsuit  *See* Doc. 1-1.  Exhibit 24

13  includes 100 recordings, but does not indicate whether those recordings are pre- or

14  post-1972 recordings and does not indicate whether Sirius XM has broadcast any of

15  them.  Exhibit 24 may incorrectly suggest that Sirius XM broadcasts all 100

16  recordings.  Additionally, pursuant to an agreement with plaintiffs, Sirius XM

17  expended significant resources creating spreadsheets identifying the pre-1972

18  recordings broadcast by Sirius XM from August 2009 through May 2016.  These

19  spreadsheets therefore already include the pre-1972 recordings on Exhibit 24 for

20  which plaintiffs are seeking damages.

21      (k) Exhibit 25, 26:

22      Sirius XM objects to Exhibits 25 and 26 as irrelevant, substantially more

23  prejudicial than probative, and misleading and likely to confuse the trier of fact

24  under Rules 401, 402, and 403, and hearsay under Rule 802.  Exhibits 25 and 26

25  appear to be website pages regarding Flo & Eddie's principal Mark Volman.

26  Exhibits 25 and 26 purport to set forth Mr. Volman' s personal background and

27  anecdotes from his life as a musician.  The introduction of such evidence at trial

28

54

1  will only mislead the jury and confuse the issues, and thus its probative value (if

2  any) is substantially outweighed by the likelihood of prejudicing Sirius XM.  The

3  self-serving characterizations of one of the principals of Flo and Eddie, Inc. in what

4  appears to be a printout from a university website is prejudicial and may cause the

5  jury to believe that the document is some official representation regarding his

6  qualifications.  Exhibits 25 and 26 are also hearsay and do not fall within any

7  exception.

8      (l) Exhibits 29:

9      Sirius XM objects to Exhibit 29 on the grounds that it is irrelevant, substantially

10  more prejudicial than probative, lacks foundation, and constitutes hearsay under

11  Rules 401, 402, 403, and 802, and is the subject of a pending Motion *in Limine* (*see*

12  Doc. 473).  Exhibit 29 is a September 22, 2011 letter from SoundExchange—the

13  organization charged with collecting, distributing, and administering royalties for

14  post-1972 recordings—to Sirius XM in which SoundExchange asserts that it paid

15  statutory royalties for performances of post-1972 recordings to certain pre-1972

16  recording owners and wrongly blames Sirius XM for its mistake.

17      The letter is irrelevant and prejudicial.  As set forth in Sirius XM's Motion *in*

18  *Limine* No. 5 (Doc. 473), the letter involves a collateral dispute with a third party,

19  and has no bearing on any issue in dispute.  The letter does not, as plaintiffs

20  suggest, establish that class members received payments from SoundExchange that

21  they believed were attributable to performances of their pre-1972 recordings, or

22  that Sirius XM somehow misled class members.  Allowing plaintiffs to present this

23  irrelevant, inflammatory letter at trial would confuse the jury, waste time, and

24  prejudice Sirius XM—particularly because the Court denied Sirius XM's request

25  for discovery from SoundExchange concerning its payments to class members.

26  Doc. 327.

27

28

1    Moreover, because plaintiffs are offering the letter to prove the truth of the

2    matters asserted therein—*i.e.*, that SoundExchange made payments to class

3    members for performances of their pre-1972 recordings or that Sirius XM

4    somehow misled class members—it constitutes inadmissible hearsay.

5    SoundExchange is not a witness in this action and Sirius XM will be unable to

6    cross-examine SoundExchange or explain the circumstances of its statements.  For

7    the same reason, the letter lacks foundation.(n) <u>Exhibits 92-97, 101</u>:

8    Sirius XM objects to Exhibits 92-97 and 101 as irrelevant, prejudicial, likely

9    to confuse the issues and mislead the jury, and hearsay under Rules 401, 402, 403,

10   and 802.  Exhibits 92-97 and 101 are excerpts and schedules of the supplemental

11   expert report of Michael J. Wallace, plaintiffs' expert witness in this action.  While

12   the exhibits purport to be objective financial records based on their titles, they are

13   really expert opinions of Mr. Wallace that plaintiffs are seeking to introduce as

14   evidence.  Exhibit 92 is literally a page from the expert report of Mr. Wallace

15   asserting "class damages" of $70,641,393.  This is expert opinion testimony that

16   should not be admitted into evidence.  All of these objectionable exhibits are

17   hearsay because they are out of court statement being offered for the truth of the

18   matter asserted, and are not subject to any recognized exception.

19   In addition, the gross revenue information contained in these exhibits is

20   irrelevant because Sirius XM's gross revenues attributable to the use of pre-1972

21   recordings from California subscribers is not the appropriate measure of damages

22   in this case, explained more fully in Sirius XM's Motion *in Limine* No. 1.  It is also

23   prejudicial because large revenue and profit numbers may suggest to the jury that

24   Sirius XM should pay a large damages amount regardless of its degree of liability

25   (if, in fact, there is any liability).  Exhibits 92-97 and 101 are also irrelevant and

26   prejudicial to the extent that they include evidence of alleged damages sustained

27   prior to the Court's September 22, 2014 summary judgment ruling, as well as to the

28

1  extent it includes evidence of damages sustained prior to August 1, 2011, as

2  explained in Sirius XM's Motions *in Limine* Nos. 2 and 3, respectively.

3      (m)  Exhibit 35:

4      Sirius XM objects to Exhibit 35 on the grounds that it is irrelevant,

5  prejudicial, misleading, and cumulative under Rules 401, 402, and 403.  Exhibit 35

6  is a redacted copy of Sirius XM's Responses and Objections to Flo & Eddie's First

7  Set of Interrogatories.  Exhibit 35 is irrelevant and prejudicial to the extent that it

8  discusses the owners of pre-1972 recordings that Sirius XM has "reproduced" or

9  "distributed."  Plaintiffs confirmed that they are "not pursuing" their reproductions

10  claims, Doc. 506 at 29, and this case concerns Sirius XM's performances of pre-

11  1972 recordings, not its "distribution" of them.  Therefore, Sirius XM's responses

12  and objections to Interrogatory Nos. 1 and 2—which solely focus on the

13  identification of owners of pre-1972 recordings that Sirius XM has reproduced and

14  distributed—are irrelevant, prejudicial, and misleading because they suggest,

15  without any additional context or explanation, that Sirius XM makes copies of

16  sound recordings and distributes them to the public.

17      Sirius XM further objects to Exhibit 35 because Sirius XM's responses and

18  objections to Interrogatory No. 3 reference an incomplete and superseded list of

19  monthly playlists.  Pursuant to an agreement with plaintiffs, Sirius XM expended

20  significant resources combining its monthly playlist files into three spreadsheets

21  (the "Combined Playlists") that identify the pre-1972 recordings played by Sirius

22  XM from August 2009 through May 2016.  Both plaintiffs expert, Michael J.

23  Wallace, and Sirius XM's rebuttal expert, Dr. Keith R. Ugone, relied on the

24  Combined Playlists, rather than the individual playlist files, in their supplemental

25  expert reports.  The individual monthly playlist files therefore offer very little

26  probative value and their underlying data is already included on the Combined

27

28

57

Playlists that both parties have been relying upon to calculate any damages award. These playlists are therefore cumulative and should be excluded.

(n) <u>Exhibits 98-100, 102</u>:

Sirius XM objects to Exhibits 98-100 and 102 on the grounds that they are irrelevant and that their probative value is substantially outweighed by a danger of undue prejudice, confusing the issue, misleading the jury, undue delay, and wasting time under Rules 401, 402, 403, and is also hearsay under Rule 802.  Exhibits 98-100 and 102 are large spreadsheets prepared by Michael J. Wallace, plaintiffs' expert witness, as part of his supplemental expert report, that identify the pre-1972 recordings broadcast between August 2009 and May 2016 that Mr. Wallace believes are owned/controlled or not owned/controlled by class members.  While it purports to be an objective listing of recordings, it really is the expert opinion of Mr. Wallace that plaintiffs are seeking to introduce as evidence.  This is opinion testimony that should not be admitted as an exhibit.  It is hearsay because it is an out of court statement being offered for the truth of the matter asserted, and is not subject to any recognized exception.  In addition, reviewing these spreadsheets would be confusing and a waste of time for the jury given that they contain information on tens of thousands of individual recordings.  Exhibits 98-100 and 102 are also irrelevant and prejudicial to the extent that they include evidence of alleged damages sustained prior to the Court's September 22, 2014 summary judgment ruling, as well as to the extent it includes evidence of damages sustained prior to August 1, 2011, as explained in Sirius XM's Motions *in Limine* Nos. 2 and 3, respectively.

(o) <u>Exhibit 103</u>:

Sirius XM objects to Exhibit 103 on the grounds that it is irrelevant and that its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury under Rules 401, 402, 403, and is also

58

hearsay under Rule 802.  Exhibit 103 is a schedule from the supplemental expert report of Michael J. Wallace, plaintiffs' expert witness, that identifies Mr. Wallace's calculation of pre-judgment interest.  While it purports to be an objective calculation of pre-judgment interest, it really is the expert opinion of Mr. Wallace that plaintiffs are seeking to introduce as evidence.  This is opinion testimony that should not be admitted as an exhibit.  It is hearsay because it is an out of court statement being offered for the truth of the matter asserted, and is not subject to any recognized exception.  In addition, any document purporting to calculate pre-judgment interest is premature at this stage, and should be excluded.  Exhibit 103 is also irrelevant and prejudicial to the extent that it includes evidence of alleged damages sustained prior to the Court's September 22, 2014 summary judgment ruling, as well as to the extent it includes evidence of damages sustained prior to August 1, 2011, as explained in Sirius XM's Motions *in Limine* Nos. 2 and 3, respectively.

(p) Exhibit 106:

Sirius XM objects to Exhibit 106 on the ground that it is prejudicial, cumulative, and its introduction at trial is likely to waste time and cause undue delay under Rule 403.  Exhibit 106 includes 180 separate playlist files showing sound recordings that Sirius XM has broadcast on a monthly basis since August 2009.  Pursuant to an agreement with plaintiffs, Sirius XM expended significant resources combining its monthly playlist files into three spreadsheets (the "Combined Playlists") that identify the pre-1972 recordings played by Sirius XM from August 2009 through May 2016.  Both plaintiffs expert, Michael J. Wallace, and Sirius XM's rebuttal expert, Dr. Keith R. Ugone, relied on the Combined Playlists, rather than the individual playlist files, in their supplemental expert reports.   The individual monthly playlist files therefore offer very little probative value and their underlying data is already included on the Combined Playlists that

both parties have been relying upon to calculate any damages award.  Moreover, the playlists offer no indication of how many times a particular recording has been broadcast on a monthly basis (i.e., play data), and there is no indication of how many users of Sirius XM's webcasting service were listening to the broadcast (i.e., performance data), unless the trier of fact individually adds up the data associated with every broadcast for each recording on each playlist.

(q) Exhibits 107-112:

Sirius XM objects to Exhibits 107-112 on the grounds that these exhibits do not appear to have any relevance to this litigation, and if introduced at trial, these exhibits would only confuse and mislead the trier of fact under Rules 401, 402, and 403.  These documents also were never produced in this litigation (they do not bear any bates numbers).  Exhibits 107-112 appear to be incomplete images of record jackets.  However, it is not clear what these images are, where they came from, and their relevance  to the litigation.  The probative value of these exhibits is outweighed by the danger of confusing and misleading jury.

(r) Exhibit 113-117:

Sirius XM objects to Exhibits 113-117 on the grounds that they are irrelevant and prejudicial under Rules 401, 402, and 403.  These documents were also apparently never produced in this litigation (they do not bear any bates numbers).  Exhibits 113-117 are Sirius XM's Form 10-K statements that include Sirius XM's revenue figures and other financial information.  The gross revenue information contained in these exhibits is irrelevant and prejudicial because Sirius XM's gross revenues attributable to the use of pre-1972 recordings from California subscribers is not the appropriate measure of damages in this case as explained more fully in Sirius XM's Motion *in Limine* No. 1.  Exhibits 113-117 are also irrelevant and prejudicial to the extent that they include evidence of damages sustained prior to the Court's September 22, 2014 summary judgment ruling, as

well as to the extent it includes evidence of damages sustained prior to August 1, 2011, as explained in Sirius XM's Motions *in Limine* Nos. 2 and 3, respectively.

* * *

The parties agree that, absent a good faith basis to believe that a document is not what it purports to be, the parties will not object on authenticity grounds to documents produced by the parties (including any absent class members) in this litigation.  Nothing in this agreement shall be construed as an agreement that any documents or things subject to that stipulation are admissible into evidence. The parties expressly reserve the right to object to the admissibility of any documents or things on any grounds permitted by law and not expressly addressed herein.

## 12.   DEMONSTRATIVE EXHIBITS

Subject to the Court's approval, the parties agree to meet and confer to discuss reaching a potential agreement on a proposed stipulation that in lieu of L.R. 16-3—which provides that "the parties shall disclose copies of all graphic or illustrative material to be shown the trier of fact as illustrating the testimony of a witness at least eleven (11) days before trial"—the parties shall provide color copies of all graphic or illustrative material to be shown the trier of fact ("demonstrative exhibits") on a different schedule.  The parties agree to work in good faith to resolve any objections.  Any unresolved objections shall be submitted to the Court.  The parties will submit a separate stipulation and proposed order memorializing this stipulation.

## 13.   WITNESS LISTS

The joint witness list of the parties has been filed under separate cover as required by L.R. 16-6.1.  (Dkt. 501.)  Only the witnesses identified in that list will be permitted to testify at trial (other than solely for impeachment).

4581846v1/015185

Each party intending to present evidence by way of deposition testimony has marked such depositions in accordance with L.R. 16-2.7. For this purpose, the following depositions shall be lodged with the Clerk as required by L.R. 32-1:

Steven Blatter, Sirius XM

David Frear, Sirius XM

Terrence Smith, Sirius XM

Scott Greenstein, Sirius XM

Vincent Micallef, Allegro Corp.

Paul Tarnopol, Brunswick Record Corp.

Stuart Livingston, Codigo Music

Christian Hosnell, Country Music Foundation

John Nemoy, Curb Records

David Freeman

Robert Joseph Koester, Delmark Records

Leonard Fico, Fuel 2000

Lars Edegram, George H. Buck, Jr. Jazz Foundation

Timothy Weston, Hanover Music Corporation

Joe Stone, Henry Stone Music, Inc.

Tommaso Gramuglia, Hindsight Records

Jesse Colin Young

Thomas Couch, Malaco, Inc.

Sam Passamano, Rural Rhythm Records

Richard Nevins, Shanachie Entertainment Corporation

Robert Emmer, Shout! Factory, LLC

Bob Irwin, Sundazed Records

John McWeeney, Jr., VP Records

**Plaintiffs' Position**: Plaintiff objects to the presentation of testimony in a damges-only trial by deposition of the following absent class member witnesses:

62

1    Vincent Micallef, Allegro Corp.

2    Paul Tarnopol, Brunswick Record Corp.

3    Stuart Livingston, Codigo Music

4    Christian Hosnell, Country Music Foundation

5    John Nemoy, Curb Records

6    David Freeman

7    Robert Joseph Koester, Delmark Records

8    Leonard Fico, Fuel 2000

9    Lars Edegram, George H. Buck, Jr. Jazz Foundation

10   Timothy Weston, Hanover Music Corporation

11   Joe Stone, Henry Stone Music, Inc.

12   Tommaso Gramuglia, Hindsight Records

13   Jesse Colin Young

14   Thomas Couch, Malaco, Inc.

15   Sam Passamano, Rural Rhythm Records

16   Richard Nevins, Shanachie Entertainment Corporation

17   Robert Emmer, Shout! Factory, LLC

18   Bob Irwin, Sundazed Records

19   John McWeeney, Jr., VP Records

20   The testimony of Absent Class Members ("ACM") is, by definition, not
representative of the class as a whole, and Sirius XM has made no effort to
establish that it is, whether through expert testimony or otherwise.  Class member
testimony is irrelevant where it is not "properly generalized to the class as a
whole."  *In re Nat'l W. Life Ins. Deferred Annuities Litig.*, No. 3:05-cv- 1018-GPC-
WVG, 2013 U.S. Dist. LEXIS 20314, at *15-*16 (S.D. Cal. Feb. 14, 2013) (citing
*Plascencia v. Lending 1st Mortg.*, No. C 07-4485 CW, 2011 U.S. Dist. LEXIS
136078, at *7-8 (N.D. Cal. Nov. 28, 2011)).  Indeed, many courts have found
absent class members irrelevant to common issues. *See, e.g., Waters v. Int'l*

*Precious Metals Corp.*, 172 F.R.D. 479, 486, 489 (S.D. Fla. 1996) (excluding opt outs and class members in light of "decision to restrict the trial to common issues only"); *In re Worlds of Wonder Sec. Litig.*, No. C-87- 5491 SC (FSL), 1992 U.S. Dist. LEXIS 10503, at *12-14 (N.D. Cal. July 9, 1992) (class members not "relevant" to classwide reliance, knowledge of falsity, or materiality); *see also, e.g., On the House Syndication, Inc. v. Fed. Express Corp.*, 203 F.R.D. 452, 456 (S.D. Cal. 2001) (class members not "relevant to common questions nor . . . necessary for the resolution at trial"), *later decision on unrelated issues aff'd in part and rev'd in part*, 79 F. App'x 247 (9th Cir. 2003); *Sessions v. Owens-Illinois, Inc.*, No. 1:07-CV- 1669, 2011 U.S. Dist. LEXIS 62670, at *5-9 (M.D. Pa. June 13, 2011) (class members irrelevant to common issues); *Baghdasarian v. Amazon.Com, Inc.*, 258 F.R.D. 383, 387 (C.D. Cal. 2009) (no reliance required for UCL); *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, No. 02 C 5893, 2005 U.S. Dist. LEXIS 8610, at *14 (N.D. Ill. Apr. 18, 2005) (class member reliance "irrelevant to any class-wide liability issues"); *In re Lucent Techs., Inc. Sec. Litig.*, No. 00 CV 621 (JAP), 2002 U.S. Dist. LEXIS 24973, at *5 (D.N.J. July 16, 2002) (41 class members not helpful). While many of these decisions were in the discovery or class certification context, the standard for relevance there is far *broader* than at trial, rendering attempts to distinguish them on that basis unavailing.  It would be cumulative, a waste of time, unfairly prejudicial, and probative of nothing to permit Sirius XM to offer testimony from individual absent class members to support any class-wide inference as to either liability (which is not at issue) or damages.

Plaintiff also objects to Sirius XM calling Karyn Ulman of Music Reports, Inc. ("MRI") as a witness because Sirius XM never disclosed Ms. Ulman in its Rule 26 disclosures or in discovery responses, and the Court previously barred discovery of Music Reports, Inc.  *See* Dkt. 272. It is not enough for Sirius XM to rely on having generally mentioned MRI somewhere buried in interrogatories  -- under the Federal Rules, all fact witnesses that a party intends to rely upon at trial

must be specifically disclosed by name, address, and phone number, which Sirius XM failed to do as to Ms. Ulman. *Jie Yin v. Alvarado*, No. 1:11-CV-00780 EAW, 2016 U.S. Dist. LEXIS 128165, at *6 (W.D.N.Y. Sep. 20, 2016); *see also Engate, Inc. v. Esquire Deposition Servs. LLC,* No. 01 C 6204, 2005 U.S. Dist. LEXIS 4926, at *5-6 (N.D. Ill. Mar. 29, 2005) ("[D]efendants have never supplemented their Rule 26(a) disclosures, even now. Simply listing the witnesses in a draft of the final pretrial order is not enough; Rule 26(a)(1)(A) requires more than just a list of names. Even were this partial disclosure somehow sufficient to comply with Rule 26(a)(1)(A), defendants' supplementation of their disclosure did not come at an 'appropriate interval[],' as required by Rule 26(e)(1).").

**Sirius XM's Position**: In the deposition designations concurrently lodged herewith, Plaintiffs object to the presentation of absent class member testimony on the ground that such testimony is not representative of the class as a whole (even though plaintiffs themselves identified two absent class members, Brunswick and Codigo, on their witness list).  Plaintiffs failed to submit a motion *in limine* to exclude such testimony, which would have been the appropriate vehicle to litigate this issue.  In any event, Plaintiffs' objection is baseless:  there is simply "no basis in law for the proposition that an unnamed class member should not be permitted to testify at the trial of a class action."  *Young v. County of Cook*, 2009 WL 2231782, at *1 (N.D. Ill. July 27, 2009) (rejecting argument that absent class members were necessarily atypical and therefore irrelevant).  The same rules apply to class actions as to any other proceedings—*i.e.*, "all relevant evidence is admissible at trial."  *U.S. v. Curtin*, 489 F.3d 935, 953 (9th Cir. 2007).  Because absent class members are percipient witnesses with relevant knowledge, courts routinely allow defendants to present their testimony to contest liability and to demonstrate to the jury that plaintiffs have not met their burden of proof on damages.[18]

---

[18] *See, e.g.*, *Barnes v. D.C.*, 924 F. Supp. 2d 74, 91-92 (D.D.C. 2013); *Whiteway v. FedEx Kinkos Office & Print Servs.*, 2007 WL 1456046 , at *2-3 (N.D. Cal. May

1    For example, Sirius XM will present testimony that class members routinely

2  exhorted Sirius XM to play their pre-1972 recordings, evidence that is directly

3  relevant to, among other contested issues, the value of a non-exclusive license to

4  play pre-1972 recordings.  Dkt. 529 at 7.   Under the rule barring absent class

5  member testimony Plaintiffs urge on the Court, Sirius XM would only be permitted

6  to provide that evidence through its *own* witnesses, depriving Sirius XM of the

7  ability to corroborate these facts for the jury through the testimony of class

8  members themselves.  Corroboration of party testimony is a quintessential and

9  valuable use of percipient witnesses; their testimony would have a tendency to

10  make a consequential fact more probable than it would be without the evidence.

11  FRE 401; *see Barnes*, 924 F. Supp. at 92 (absent class member witnesses "briefly

12  explaining their first hand experiences, would not waste the Court's time," citing

13  how the "corroborative force of overlapping testimony can be important in

14  persuading juries" (citation omitted)).  This is but one example of how absent class

15  member testimony is relevant and admissible.  *See also* Dkt.  544 at 2-13.

16    Except in limited circumstances not present here,[19] there is no requirement

17  that absent class member testimony be "representative" of the class as a whole, as

_____

18  17, 2007); *Negrete v. Allianz Life Ins. Co. of N. Am.*, 2013 WL 6535164, at *20-21

19  (C.D. Cal. Dec. 9, 2013).

20  [19] The cases plaintiffs cite involve (1) class-wide inferences of reliance that have no
application here, *see In re Nat'l W. Life Ins. Deferred Annuities Litig.*, 2013 WL

21  593414, at *4-6; *Baghdasarian v. Amazon.com*, Inc., 258 F.R.D. 383, 387 (C.D.
Cal. 2009); *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 2005 WL

22  3801463, at *4 (N.D. Ill. Apr. 18, 2005); (2) exclusion of testimony on grounds that

23  it was *irrelevant*, not that it was unrepresentative of the class as a whole, *see
Waters*, 172 F.R.D. 479, 489 (S.D. Fla. 1996); and (3) limitations placed on absent

24  class member *discovery* rather than testimony at trial, *see In re Worlds of Wonder

25  Sec. Litig.*, 1992 WL 330411, at *2; *Plascencia,* 2011 WL 5914278, at *1-2; *On the
House Syndication*, 203 F.R.D. 452, 455-58; *In re Lucent Techs. Inc. Sec. Litig.,*

26  2002 WL 32815233, at *2; *Sessions, Inc.*, 2011 WL 2415387, at *2 (M.D. Pa. June

27  13, 2011).

28

4581846v1/015185

Plaintiffs suggest.  Indeed, a categorical rule barring absent class member testimony solely on the basis of the fact that they are not "representative" of the class would turn the trial into a patently unfair one-sided affair abridging Sirius XM's Seventh Amendment right to a jury trial, due process, Federal Rule of Evidence 402, and the Rules Enabling Act, which precludes any interpretation of Rule 23 that would abridge, modify, enlarge or modify substantive rights.

Plaintiffs suggest that the rules of relevance are broader at discovery and therefore a denial of discovery into absent class member on relevance grounds is some how more forceful.  Not so.  In the class discovery context, the rules, burdens and interests while different, are not "broader."  Indeed, to the contrary, courts have intervened to protect potentially unwilling class members from intrusive discovery that might chill class participation participation, noting the rule that discovery of absent class members "generally will be denied" unless the defendant makes a "strong showing of necessity."  *In re Worlds of Wonder Sec. Litig.*, 1992 WL 330411, at *2 (N.D. Cal. July 9, 1992).  Here, by contrast, Sirius has already met that standard:  the Court already permitted Sirius XM to take discovery from a limited sample of absent class members.  *See* Dkt. 272 at 1.

In addition, Sirius XM is entitled to call Ms. Ulman of Music Reports, Inc. ("MRI") if necessary.  Sirius XM has previously disclosed MRI to plaintiffs *twenty-two months* ago—beginning with its December 23, 2014 Supplemental Response to Flo & Eddie's Second Set of Interrogatories.  Since then, Sirius XM has disclosed MRI in at least four additional interrogatory responses to Plaintiffs. Further, Sirius XM disclosed Ms. Ulman in its initial witness list which was sent to Plaintiffs on September 22, 2016.  Thus, Sirius XM has provided sufficient notice to plaintiffs that it may call Ms. Ulman.  *See Wajcman v. Inv. Corp. of Palm Beach*, 2009 WL 465071, at *5 (S.D. Fla. Feb. 23, 2009) (denying motion to strike because witness disclosed on witness list, witness was repeatedly identified in response to interrogatories, and there is "no obligation to provide supplemental or corrective

information that has been otherwise made known to the parties ... during the discovery process"). And Plaintiffs identify no harm resulting from any purported delay in disclosing that Sirius XM might rely on Ms. Ulman's testimony. *See* Fed. R. Civ. P. 37(c) (showing of harm required before a court may preclude use of "late" produced evidence). The Court's prior order denying Sirius XM's request to serve certain discovery on MRI and other third parties has no bearing on Ms. Ulman's ability to testify at trial.

## 14.  PENDING MOTIONS

The following law and motion matters and motions *in limine* are pending:

a.  Plaintiffs' Motion *in Limine* to Exclude Evidence Relating to Sirius XM's Defenses to Liability (MIL 1 of 13);

b.  Plaintiffs' Motion *in Limine* to Exclude Evidence of Defendant's Purported Equitable Defenses (MIL 2 of 13);

c.  Plaintiffs' Motion *in Limine* to Exclude Evidence of Implied Licenses (MIL 3 of 13);

d.  Plaintiffs' Motion *in Limine* to Exclude Evidence or Argument Regarding Matters Reserved for Claims Administration (MIL 4 of 13);

e.  Plaintiffs' Motion *in Limine* to Exclude Evidence or Argument Regarding Practices of Other Broadcasters (MIL 5 of 13);

f.  Plaintiffs' Motion *in Limine* to Preclude Sirius XM Radio Inc. from Offering Argument or Evidence Concerning Its State of Mind (MIL 6 of 13);

g.  Plaintiffs' Motion *in Limine* to Exclude Evidence Relating to Affirmative Defenses Not Asserted in Sirius XM's Initial Pleadings (MIL 7 of 13);

h.  Plaintiffs' Motion *in Limine* to Exclude Evidence Produced After Discovery (MIL 8 of 13);

i.  Plaintiffs' Motion *in Limine* to Exclude Evidence of Authorization if Not Identified in Response to Interrogatory No. 25 (MIL 9 of 13);

j.  Plaintiffs' Motion *in Limine* to Exclude Evidence Relating to Invalid or Untimely Exclusion Requests (MIL 10 of 13);

k.  Plaintiffs' Motion *in Limine* to Preclude Dr. Keith R. Ugone from Testifying Concerning (1) Sirius XM's Costs (2) Alternative Damages Models (3) Allocation of Pre-1972 Subscription Revenue to Talk Channels and (4) Unfounded Matters Beyond Ugone's Expertise (MIL 11 of 13);

l.  Plaintiffs' Motion *in Limine* to Exclude Evidence of Defendant's Costs (MIL 12 of 13);

m. Plaintiffs' Motion *in Limine* to Exclude Evidence of Lost Royalties, Imputed License Fees, or Other Forms of Fair Market Valuation (MIL 13 of 13);

n.  Sirius XM's Motion *in Limine* No. 1/*Daubert* to Exclude Testimony of Expert Michael Wallace and any other Evidence and Argument that Gross Revenue Alone Is an Appropriate Measure of Damages (MIL 1 of 5);

o.  Sirius XM's Motion *in Limine* No. 2 to Exclude Evidence, Argument, and Testimony Regarding Past Damages (MIL 2 of 5);

p.  Sirius XM's Motion *in Limine* No. 3 to Exclude Evidence, Argument, and Testimony Regarding Damages Barred by the Applicable Statutes of Limitation (MIL 3 of 5);

q.  Sirius XM's Motion *in Limine* No. 4 to Exclude Evidence, Argument, and Testimony Regarding the *Capitol Records* Settlement and Direct License Agreements (MIL 4 of 5);

r.  Sirius XM's Motion *in Limine* No. 5 to Exclude Evidence, Argument, and Testimony Regarding SoundExchange Letter and Its Contents (MIL 5 of 5).

4581846v1/015185

### 15.   BIFURCATION

**Plaintiffs' Position**: The Court has already ordered that this will be a "damages-only" trial.  *See* Dkt. 225 (May 27, 2015 Order) at 17-18 ("[L]iability has been determined and the trial in this case will be 'damages-only'…."); Dkt. 317 (June 16, 2016 Order) at 5 (Court Order approving class notice: "In granting Class certification … the Court noted that '[l]iability has already been determined in this case' and that 'the trial in this case will be 'damages-only[.]'").

Sirius XM has no classwide defense to liability available as a matter of law that has not already been addressed in the Court's prior orders, or that cannot otherwise be addressed by the Court in a bench trial on any equitable claims or defense permitted to be tried, but to the extent those defenses survive and Sirius XM still seeks to raise them as to individual class members, that should be handled post-trial. *See Vaquero,* 824 F.3d at 1156; *Tyson Foods*, 136 S. Ct. at 1045.

**Sirius XM's Position**: Sirius XM does not seek bifurcation.  As explained above, the Court has determined Sirius XM's liability as to Flo & Eddie, but not as to any other class member.  *Supra*.  Plaintiffs bear the burden of establishing class-wide liability and damages at trial, and Sirius XM is entitled to contest each and every element of their claims and assert its affirmative defenses.  *Id.*  There is no basis to relegate key liability and damages issues to some undefined "post-trial" claims administration phase, which would violate due process, the Seventh Amendment, and the Rules Enabling Act.  *Id.*

### 16.   SIRIUS XM'S OCTOBER 21, 2016 LATE-PRODUCED THIRD-PARTY DECLARATION

**Plaintiffs' Position:** Plaintiffs seek to preclude the use of or reliance on an improper third-party declaration produced by Sirius XM just one business day (or 3 calendar days) ago.  There is and can be no justification for Sirius XM's eleventh

70

hour attempt to interject new purported issues into this case.  Moreover, the third-party declaration—executed by an attorney for the Major Labels after a two-week window to collect information on their purported licensing of recordings—violates every rule of basic evidence and is unreliable in every way.  The declaration is rank hearsay and should be struck with Sirius XM precluded from referencing or relying on this declaration in any way.

On October 21, 2016, well after the close of discovery in this case, more than three weeks after Sirius XM's deadline to produce the supplemental report of its expert (Dr. Keith Ugone), and one day before Plaintiffs' deposition of Dr. Ugone, Sirius XM produced a declaration (UGONE_00009563) from Sidley Austin, counsel for the major record labels or as he describes it the "Record Companies."[20] In this new declaration, Rollin Ransom of Sidley Austin describes how, nearly two weeks after the production of Dr. Ugone's supplemental expert report, Vision Winter of O'Melveny & Myers and counsel for Sirius XM approached him to request that the Record Companies analyze a list of approximately 1,000 "unmatched" pre-1972 recordings. According to this hearsay declaration, Mr. Ransom then contacted the "Record Companies" (not a single individual at any of these companies is specified) and solicited their input.  At that point, Mr. Ransom declares that he received their feedback and compiled them into a spreadsheet which he then returned with his declaration to Mr. Winter at O'Melveny and Myers, who apparently gave it to Dr. Ugone.  The Exhibit A attachment purports to indicate tracks that may be owned by the Record Companies (even though Sirius XM has never asserted the Record Companies have a license to those tracks in the course of this litigation), but Mr. Ransom's declaration is painfully explicit that it cannot be relied upon in any way.  Indeed, according to Mr. Ransom (the go-

---

[20] As defined by Mr. Ransom, the Record Companies consist of Capitol Records, LLC, Sony Music Entertainment, UMG Recordings, Inc., Warner Music Group Corp., and ABKCO Music & Records.

between declarant), the Record Companies "cannot guarantee the completeness or accuracy of the information reflected in Exhibit A at this time."

This late produced declaration is improper for numerous procedural and evidentiary issues.  **First,** this declaration, although produced under the guise of Dr. Ugone's expert materials, is not that at all.  Dr. Ugone admittedly never relied on this declaration in preparing any of his expert opinions in this case (nor could he have done so, given that his supplemental rebuttal report was served weeks *before* this new declaration was produced).  Sirius XM has missed the fact discovery cutoff of June 6, 2016 by several months.  There can be no basis or reason for this late disclosure. To the extent Sirius XM wanted to obtain evidence from the Record Companies about their licensed tracks, it had more than a year since the execution of that agreement to do so.

**Second**, the declaration was not relied on by Dr. Ugone in forming his opinions and thus producing it as one of his "expert" materials the day before his deposition, when the declaration was executed two days before his deposition, cannot change this fact. Under Rule 26(a)(2)(B), expert testimony must be accompanied by a written report which shall contain, *inter alia*, "a *complete* statement of all opinions the witness will express and the basis and reasons for them," "the data or other information considered by the witness in forming them," and "*any exhibits that will be used to summarize or support them*." (emphasis added). Rule 37(c)(1) states that if a party fails to abide by these requirements, "the party is not allowed to use that information ... to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." It is Sirius XM's burden to demonstrate substantial justification or harmlessness. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Sirius XM's last-minute procurement and production of this declaration, however, is neither.

4581846v1/015185

Dr. Ugone's supplemental report was produced on September 28, 2016, prior to *any* of the activities described in Sidley Austin's declaration. Accordingly, Dr. Ugone neither cites nor relies upon the information contained in the declaration, making it entirely improper to bundle with the expert materials submitted in connection with his deposition. *Sherwin-Williams Co. v. JB Collision Servs*., No. 13-CV-1946-LAB(WVG), 2015 U.S. Dist. LEXIS 30022, at *21-22 (S.D. Cal. Mar. 11, 2015) (rejecting argument that "document analysis not completed by the supplemental report deadline, but which simply confirms and supports the opinions of the designated experts as already disclosed in the initial expert reports, can be produced after the supplemental report deadline."). Sirius XM's failure to conduct such an analysis during discovery cannot be rectified by a late-filed declaration filled with caveats and conclusory statements. *See United States v. City of N.Y.*, 637 F. Supp. 2d 77, 107 (E.D.N.Y. 2009) (noting that "]t]he numerous conclusory assertions in the [] Declaration suggest that they were constructed to fill holes in the evidence that [the offering party] failed to gather during discovery[.]").

***Third***, even if Sirius XM's production had complied with its timing obligations under the rules of discovery, it constitutes *quadruple* hearsay: Outside counsel for Sirius XM from O'Melveny and Myer, Vision Winter (1) provided unverified information from Sirius XM's expert, Keith Ugone (2) to outside counsel for the Record Companies  at the law firm of Sidley Austin, Rollin Ransom, (3) who in turn provided the information to "the Record Companies" (unnamed individuals affiliated with the major labels), (4) who returned the information to Ransom, who returned the information to Winter. *See Arizona v. ASARCO, L.L.C*., 844 F. Supp. 2d 957, 965 (D. Ariz. 2011) (excluding as "'classic' hearsay" an "out of court declaration offered for its truth" and which was "plainly prepared in anticipation of litigation"); *McKinney v. Fisher*, No. CV-96-177-S-BLW, 2007 U.S. Dist. LEXIS 65717, at *27 (D. Idaho Sep. 5, 2007) (rejecting document "filtered through various sources whose reliability and credibility are

73

entirely unknown" as constituting multiple hearsay). As the Record Companies' outside counsel, Mr. Ransom has no knowledge of the actual processes utilized by the major labels to prepare the information attached to his declaration.  *See Goben v. Wal-Mart Stores, Inc*., No. 2:12-CV-86 JCM (VCF), 2014 U.S. Dist. LEXIS 81442, at *6 (D. Nev. June 16, 2014) ("Because Orchard is unable to state the principles and methods used to create the report that he relied on, testimony based on the report's contents cannot satisfy the requirements of Fed. R. Evid. 702."). He says only that the Record Companies drew from their own records to provide the information. The attachment is not saved by an expert's general ability to rely upon hearsay, as the data was compiled *after* the completion of Dr. Ugone's supplemental report and was therefore never relied upon by him. *See Arizona*, 844 F. Supp. 2d at, 965. Sirius XM also cannot claim a business records exemption to hearsay for provision of the data, as the selection provided to Ransom by Winter was created for the purpose of furthering Dr. Ugone's analysis. *See Clark v. Los Angeles*, 650 F.2d 1033, 1037 (9th Cir. 1981) ("[A] document prepared for purposes of litigation is not a business record because it is lacking in trustworthiness.") (citing *Palmer v. Hoffman*, 318 U.S. 109 (1943).

**Fourth,** the declaration itself is riddled with statements that demonstrate its inherent unreliability (which could not even be resolved with cross examination of all actors involved if that were even possible).  Outside counsel for the Record Companies Mr. Ransom caveats that the Record Companies "cannot guarantee the completeness or accuracy of the information reflected in Exhibit A at this time." Declaration at ¶4.  As other limitations, Mr. Ransom notes that the Record Companies used whatever Sirius XM gave them and "did not confirm the accuracy of the underlying data on the spreadsheet (i.e. artist, title, album and label)."  This half-hearted declaration done by an outside counsel at the eleventh hour on the behest of Sirius XM's expert is plainly is not enough to meet Sirius XM's burden to demonstrate what tracks or are not licensed. *See Worldwide Church of God v.*

74

*Philadelphia Church of God, Inc*., 227 F.3d 1110, 1114 (9th Cir. 2000) (express

license is an affirmative defense to copyright infringement); *Corbello v. Devito*,

777 F.3d 1058, 1066 (9th Cir. 2015) (same); *Oracle Am., Inc. v. Terix Comput. Co.,*

*No.* 5:13-cv-03385-PSG, 2015 U.S. Dist. LEXIS 59495, at *5 (N.D. Cal. May 5,

2015) ("A defendant asserting a license defense has the initial burden of identifying

any license provision that puts it in the clear.");

> **Fifth,** discovery cannot be used as a sword and shield.  If Sirius XM intends
to have its expert rely upon this brand-new declaration created as a result of
communications between Sirius XM's attorneys and counsel for the Major Record
Labels, than *all* communications between Sirius XM and the Major Record Labels
regarding this litigation need to be produced—discovery that Siriux XM has
refused to make available.

> **Sirius XM's Position**: The document at issue is a declaration from a third
party that Dr. Keith Ugone (Sirius XM's damages expert) timely produced in
response to a subpoena from Plaintiffs.   It is not something that Sirius XM is trying
to improperly inject into the case.  Rather, the subject declaration is independent
research conducted by Dr. Ugone (facilitated by counsel for Sirius XM) in response
to direct criticism from Mr. Wallace (Plaintiffs' damages expert).

> Not only was the production of the declaration not improper, it was required
based on a subpoena from Plaintiffs—a fact that cannot reasonably be disputed.
And Plaintiffs examined Dr. Ugone extensively at his deposition and never
mentioned a word about the alleged impropriety and never sought to meet and
confer about the relief that they are now seeking.  It was not until  11:41 p.m. on
October 23—just hours before the Joint Pre-Trial Conference Order was due—that
plaintiffs sent Sirius XM five pages of substantive argument to preclude the use of
the declaration that Dr. Ugone produced in response to a subpoena plaintiffs served
on October 13, 2016.

4581846v1/015185

The Joint Pre-Trial Conference Order is not the proper vehicle to resolve this evidentiary issue.  Sirius XM believes that plaintiffs are required to file a separate motion in limine or motion to strike and must give Sirius XM the proper notice and opportunity to brief a full response.  Sirius XM reserves all rights to respond further if and when Plaintiffs properly present this issue before the Court, and briefly addresses Plaintiffs' arguments below.

First, Plaintiffs' arguments that the Rollin Declaration is improper because it was not relied upon by Dr. Ugone in forming his expert opinion and was late-produced lack merit.  In his timely served supplemental expert rebuttal report, Dr. Ugone criticizes Mr. Wallace for vastly overstating the percentage of Sirius XM's plays and performances of pre-1972 recordings owned by class members. Specifically, Dr. Ugone believes that Mr. Wallace significantly undercounts the ownership percentage attributable to the consortium of record labels that entered into a settlement agreement with Sirius XM in 2015 (the "Major Labels").  As part of the settlement agreement, the Major Labels identified certain pre-1972 recordings they own or control on a spreadsheet that identifies some, but not all, of the pre-1972 recordings that Sirius XM has broadcast since August 2009.  The Major Labels did not analyze the remaining tens of thousands of pre-1972 recordings (and some post-1972 recordings) listed on the full population of pre-1972 recordings broadcast since August 2009 (the "Combined Playlists") that Sirius XM produced to Plaintiffs.  As a result, there are many recordings listed on the Combined Playlists that are not captured by the Major Labels' spreadsheet (the "unmatched recordings").

Rather than looking at the unmatched recordings and trying to determine which are owned by the class or analyzing the unmatched recordings at all, Mr. Wallace simply assumed that each unmatched recording was owned by the class. See Doc 552-1, Ex. A at 556:21-557:11 ("Q: Did you do anything to verify that the remainder that wasn't cut out by the license or authorization or the opt-out was, in

76

fact, pre-'72 sound recordings not owned by a licensee? . . .   A: I don't think so.  I didn't -- I didn't independently research who owned the sound recordings and inquire whether Sirius XM had a license. I relied on Sirius XM telling us who -- who they believed they were licensed or authorized from.").  Mr. Wallace made this assumption even though it is plaintiffs burden to prove that they own the pre-1972 recordings at issue in this case, and not Sirius XM's burden to prove which recordings are not owned by class members.  *See Lee v. Hanley*, 61 Cal. 4th 1225, 1240 (2015); Doc. 521.

Using statistical sampling, independent research, and relying on documents that were produced to plaintiffs during the course of discovery, Dr. Ugone concluded that the majority of the unmatched recordings are in fact owned by the Major Labels and not class members.  Dr. Ugone included this opinion in his timely-filed expert report, and properly disclosed all materials relied upon in forming it.  At his October 7, 2016 deposition, Mr. Wallace criticized Dr. Ugone's opinions regarding ownership of the unmatched recordings.  In response to these criticisms, Dr. Ugone requested that outside counsel for Sirius XM (Mr. Vision Winter) send a random sample of 1,028 unmatched recordings to the Major Labels to confirm the appropriateness and accuracy of his statistical sampling methodology and conclusions.  At Dr. Ugone's direction,  Mr. Winter sent Rollin Ransom, outside counsel for the Major Labels the exact spreadsheet provided to him by Dr. Ugone.  The Major Labels took that list form Dr. Ugone and identified hundreds of recordings on the random sample that belong to the Major Labels (and are licensed).

The Ransom Declaration further confirms the reliability and accuracy of Dr. Ugone's opinions.  Indeed, the Ransom declaration was only created at Dr. Ugone's instruction to verify the accuracy of his statistical methodology (and it did so precisely).  Dr. Ugone properly and timely produced the Ransom Declaration in response to Plaintiffs' 22 requests for the production of documents that they served

77

1   on Dr. Ugone along with his deposition subpoena—a fact that Plaintiffs wholly fail
2   to mention.  The Ransom Declaration was responsive to these requests, and Dr.
3   Ugone produced it on October 21, 2016.  At Dr. Ugone's deposition on October 22,
4   2016, plaintiffs had a fair and full opportunity to question Dr. Ugone about the
5   Ransom Declaration and about any further analysis that Dr. Ugone performed in
6   response to it, and did so for a significant amount of time.

7          Dr. Ugone's ongoing investigatory efforts to confirm the accuracy and
8   reliability of his opinion is not only proper, but it is identical to the approach taken
9   by Mr. Wallace.  On the day of his deposition, Mr. Wallace produced several
10  documents that responded to criticisms made by Dr. Ugone of his methodology,
11  including an analysis of the unmatched recordings on the third Combined Monthly
12  Playlist and a document purporting to support the appropriateness and accuracy and
    reliability of his matching methodology.

13         Second, Plaintiffs' third and fourth arguments that the Ransom Declaration is
14  "inherently  unreliable" and "constitutes quadruple hearsay" are baseless.  Such
15  arguments plainly go to the weight and not the admissibility of Dr. Ugone's
16  analysis.  An expert can rely on and use any documents—including hearsay—to
17  formulate his opinions.  *Cf.* Fed. R. Evid. 703 (facts or data relied on by expert
18  "need not be admissible for the opinion to be admitted"); *U.S. v. Golden*, 532 F.2d
19  1244, 1248 (9th Cir. 1976) (opinion of DEA agent based in part on information
20  from other undercover agents was admissible because "such information was of the
21  type reasonably relied upon by experts" in the field); *Valtierra v. City of L.A.*, 99 F.
22  Supp. 3d 1190, 1197 n.2 (C.D. Cal. 2015) ("no merit" to argument that expert
23  opinion was "deficient because it reference[d] publications and other policies that
24  may be inadmissible hearsay" because expert "is entitled to rely on hearsay
25  evidence to support his conclusions").  Plaintiffs fully questioned Dr. Ugone about
26  his analysis of these documents at his deposition, and will again have the
27  opportunity to cross-examine the bases for his opinions at trial.
28

Moreover, Plaintiffs' hearsay arguments are completely disingenuous.  As explained, plaintiffs bear the burden of identifying and proving which recordings they own.  See also Doc. 521.  In attempts of proving that ownership—and excluding recordings they do not own—plaintiffs relied on evidence of the very same nature as the Ransom Declaration and its attached spreadsheet.  For example, plaintiffs' expert, Michael Wallace, relies on spreadsheets that Sirius XM produced containing a subset of recordings that the Major Labels and direct licensors claim to own.  *See* Doc. 521 at 20-21.  This information was gathered and produced by using the same process that plaintiffs now argue is "hearsay" and "unreliable"—*i.e.*, Sirius XM previously provided the Major Labels with a different sample of recordings it performed during the class period and asked them to identify which recordings they purport to own in that sample.  Yet, plaintiffs did not raise any hearsay objections to those documents because their expert relies on them to formulate his opinions on class damages.  *See* Doc. 503 at Exhibits 634, 705, 706. The Ransom Declaration cannot be treated any differently.  Indeed, plaintiffs have time and again advocated for the use of declarations to identify which recordings to include in their damages model.  *See, e.g.*, Doc. 200 (arguing that "ownership can be established by declaration[s]" because they are "reliabl[y] … used in the music business to establish ownership.").  Plaintiffs cannot credibly argue that such "hearsay" evidence can only be used to identify, but not to exclude, recordings in calculating class damages.  And finally, plaintiffs' request for "all communications between Sirius XM and the Major Record Labels" is specious.  Plaintiffs provide no basis to require Sirius XM to produce any communications it had with the Major Record Labels, let alone all communications that are privileged, confidential, and unrelated to the Ransom Declaration.  The Court has already rejected plaintiffs' previous request for similar discovery.  *See* Doc. 272 (rejecting Flo & Eddie's request for "communications between Sirius XM and members of the class

79

4581846v1/015185

concerning this litigation, settlement of the claims in this litigation, and licensing of pre-1972 recordings").

## 17.  ADMISSIONS

The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remaining to be litigated, this Final Pretrial Conference Order shall supersede the pleadings and govern the course of the trial of this cause, unless modified to prevent manifest injustice.

Dated: October __, 2016

_____
UNITED STATES DISTRICT JUDGE
Philip S. Gutierrez

Approved as to form and content.


By: _____ */s/ Kalpana Srinivasan*

GRADSTEIN & MARZANO, P.C.
Henry Gradstein
Maryann R. Marzano
Daniel B. Lifschitz

SUSMAN GODFREY L.L.P.
Stephen E. Morrissey
Steven G. Sklaver
Kalpana Srinivasan
Rachel S. Black, *Admitted PHV*
Michael Gervais, *Admitted PHV*

*Co-Lead Class Counsel*


By: _____ */s/ Daniel M. Petrocelli* _____

O'MELVENY & MYERS LLP
Daniel M. Petrocelli
Cassandra L. Seto

80

4581846v1/015185

1999 Avenue of the Stars, Suite 800
Los Angeles, CA 90067
Telephone: (310) 553-6700
Fax:  (310) 246-6779
dpetrocelli@omm.com
cseto@omm.com

*Attorneys for Defendant Sirius XM Radio Inc.*

4581846v1/015185