GRADSTEIN & MARZANO. P.C.
HENRY GRADSTEIN (89747)
hgradstein@gradstein.com
MARYANN R. MARZANO (96867)
mmarzano@gradstein.com
DANIEL B. LIFSCHITZ (285068)
dlifschitz@gradstein.com
6310 San Vicente Blvd.. Suite 510
Los Angeles. California 90048
T:  323-776-3100

SUSMAN GODFREY L.L.P.
STEPHEN E. MORRISSEY (187865)
smorrissey@susmangodfrey.com
STEVEN G. SKLAVER (237612)
ssklaver@susmangodfrey.com
KALPANA SRINIVASAN (237460)
ksrinivasan@susmangodfrey.com
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
T:  310-789-3100 F: 310-789-3150

*Co-Lead Class Counsel*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| FLO & EDDIE, INC., a California corporation, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Sirius XM RADIO, INC., a Delaware corporation; and DOES 1 through 10,<br><br>Defendants. | Case No. 2:13-cv-05693-PSG-GJS<br><br>**DECLARATION OF STEVEN G. SKLAVER IN SUPPORT OF MOTION BY PLAINTIFF FOR AN AWARD OF ATTORNEYS' FEES AND COSTS**<br><br>Date: March 13, 2017<br>Time: 1:30 p.m.<br>Place: Courtroom 6A |

4695635v1/015185

I, Steven G. Sklaver, hereby declare as follows:

1.      I am a partner at Susman Godfrey L.L.P. ("Susman Godfrey"), counsel of record for the Plaintiff Flo & Eddie, Inc. and the certified class (collectively, "Plaintiffs") in the above-entitled action. I have personal knowledge of the facts set forth in this declaration and, if called to testify thereto, could and would do so competently.

2.      I respectfully submit this declaration in support of Plaintiff's motion for an award of attorneys' fees and costs.  Susman Godfrey has significant experience with litigation and class actions, including settlements thereof. A copy of the firm's class action profile and my profile are available at www.susmangodfrey.com. The lawyers working on this case for the Class are experienced lawyers who have substantial experience prosecuting large-scale class actions and complex litigation.

3.      On March 28, 2016, Flo & Eddie sought the appointment of Susman Godfrey as co-lead class counsel to assist with the completion of discovery, pretrial preparation, and trial. *See* Dkt. 278. Susman Godfrey has extensive experience litigating class action matters, including trying class action cases to a jury, and has litigated and handled at trial many intellectual property matters. By its Order dated May 16, 2016, Dkt. 308, the Court appointed Susman Godfrey as co-lead class counsel in this case pursuant to Federal Rule of Civil Procedure 23(g). Since that time, Susman Godfrey has acted as co-lead class counsel. I, along with other Susman Godfrey attorneys and co-lead class counsel Gradstein & Marzano, P.C. (G&M), have personally supervised and directed every aspect of the prosecution and resolution of this litigation on behalf of Plaintiff and the Class.

4.      I have personal knowledge of the matters set forth in this declaration based on my day-to-day participation in the prosecution and settlement of this litigation, and, if called as a witness, could and would testify competently thereto.

5.      In this landmark intellectual property matter, my firm was brought in to join as co-lead class counsel to help shepherd the case—which spanned over three

1

years—to trial. At the time Susman Godfrey joined this action, G&M already had obtained a liability ruling in favor of Plaintiff and certified a Class.  However, after the case had been stayed pending a Ninth Circuit appeal, significant work and cost investment remained to prepare this case for trial including: completing discovery, securing approval of the form and manner of class notice and disseminating notice, analyzing and developing classwide damages, and preparing this case for trial.

6.    Among other activities that transpired since Susman Godfrey's involvement began in early March 2016, Sirius XM engaged in a sweeping campaign of absent class member discovery. Class Counsel contacted the absent class members, prepared objections to the subpoenas, and met and conferred with Sirius XM's counsel multiple times concerning the scope of absent class member document discovery and the scope of deposition testimony. Due to disputes concerning the validity and scope of the subpoenas, the parties participated in a telephonic conference with the Court on April 22, 2016, after which time the Court directed the parties to submit written briefs. Dkts. 295; 298, 299. The Court held a discovery motion conference on May 9, 2016, and held that "only very narrowly tailored document discovery of absent class members is permitted." Dkt. 305 at 1. Class Counsel also handled further discovery disputes relating to discovery of absent class members. *See, e.g.*, Dkts. 319, 321, 328, 329, 332.

7.    Class Counsel consulted and met with the subpoenaed absent class members, prepared them to testify if the absent class member agreed to allow Class Counsel to represent them during the deposition, attended their depositions (defending the deposition if representation was accepted), and conferred with them post-deposition concerning corrections or any follow-up issues or production. In total, Class Counsel attended the depositions of 19 subpoenaed absent class members in 11 different states and oversaw the production of thousands of pages of absent class member documents.

8.     Class Counsel also orchestrated and implemented a Class Notice Plan to inform the class of essential details concerning class certification and opt-out requirements. On April 27, 2016, after meeting and conferring with Defendant concerning the form and manner of a proposed Class Notice Plan, Plaintiffs filed a Motion for an Order Approving the Form and Manner of Class Notice. *See* Dkt. 294. After Sirius XM filed an opposition, Dkt. 311, Plaintiffs met and conferred with Sirius XM again, and proposed a revised notice, Dkt. 313, which the Court approved. Dkt. 317. On June 24, 2016, Sirius XM filed a petition for writ of mandamus and an emergency motion to stay with the Ninth Circuit, which Plaintiffs opposed on June 28, 2016. The Ninth Circuit denied the petition on June 30, 2016, and denied the emergency motion to stay as moot. Meanwhile, the notice campaign began on June 1, 2016, and working together with the claims administrator, Class Counsel implemented a three-part notice plan consisting of a long form class notice disseminated through direct mailing; a short form class notice published in multiple editions of three separate periodicals; and a press release and development of a website setting forth essential details concerning class certification and opt-out requirements. Class Counsel responded to multiple inquiries from class members and oversaw responses to deficient opt-out requests.

9.     During the months leading up to trial, Class Counsel also successfully opposed Sirius XM's motion for summary judgment, in part. On July 6, 2016, Sirius XM filed a motion for partial summary judgment, seeking judgment against Plaintiff's claims for punitive damages, disgorgement, and common law unfair competition. Dkt. 335. Plaintiff filed an opposition on August 22, 2016, Dkt. 362, and Sirius XM filed a reply on August 29, 2016. On September 8, 2016, the Court granted Sirius XM's motion in part, granting Sirius XM judgment as a matter of law on Plaintiffs' punitive damages and common law unfair competition claim. Dkt. 411.

10. Class Counsel also successfully defeated Sirius XM's motion to decertify the Class and to continue the trial date. On July 29, 2016, Sirius XM filed a Motion for Decertification, Dkt. 345. Plaintiff filed an opposition on September 2, 2016, Dkt. 396, and Sirius XM filed a reply on September 12, 2016. Dkt. 424. The Court denied Sirius XM's motion on September 20, 2016. Dkt. 432. Sirius XM filed an *ex parte* application to continue the trial date on September 1, 2016. Dkt. 379. Plaintiff filed an opposition on September 2, 2016, Dkt. 383, and Sirius XM filed a reply on September 6, 2016, Dkt. 405. The Court denied Sirius XM's motion that same day. Dkt. 408.

11. Amid all of this fact discovery and motion practice, Class Counsel was heavily engaged in expert discovery in connection with the analysis of classwide damages in this case. With the Court's authorization, Class Counsel served targeted interrogatory and document requests on the issue of damages. Class Counsel met and conferred numerous times with counsel for Sirius XM regarding the production of data and the scope of that data. Class Counsel worked extensively with the retained damages expert team to analyze the data, which included identification of the pre-1972 sound recordings played by Sirius XM over the class period, determination of which sound recordings were authorized and calculation of Sirius XM's pre-1972 revenues among other metrics. Class Counsel assisted in the preparation of the damages analysis, including depositions of both experts. Class Counsel also readied demonstratives, trial testimony, and damages summaries that could be presented at trial and conducted jury testing at an all-day mock trial.

12. Class Counsel put forth tremendous effort to prepare this case for trial, submitting extensive and complete pre-trial briefing that involved numerous hours of meeting and conferring with Sirius XM's counsel; reviewing thousands of pages of deposition testimony and preparing objections to designated testimony; and reviewing thousands of pages of exhibits and preparing objections. On October 7, 2016, after having met and conferred extensively, both parties filed a Memorandum

of Contentions of Fact and Law, a joint witness list, and a joint exhibit list. On October 24, 2016, the parties filed a joint pretrial conference order. Dkt. 563-1. The parties briefed a total of 18 motions *in limine*, designated deposition testimony from 23 witnesses, prepared competing jury instructions, verdict forms, and statements of the case, proposed voir dire questions, and designated and conferred regarding the admissibility of the parties' hundreds of exhibits, which comprised of thousands of pages. The parties submitted trial briefs on October 28, 2016. Dkts. 644, 645.

13.     As the record in this litigation demonstrates, this was a very active and hotly contested case which was settled only after legal and factual issues regarding Plaintiff's claims, the defenses thereto, and the claimed damages were thoroughly developed, investigated and tested as a result of intensive litigation. Indeed, Sirius XM has denied, and to this day continues to deny, all liability. Sirius XM planned to offer a damages model at trial based on a royalty calculated against a greatly reduced revenue base, and indicated its intention to move to decertify the Class yet again.

14.     The Court held pretrial conferences on November 7, 2016 and November 10, 2016. Dkts. 639, 661. A jury trial was scheduled to begin on November 15, 2016. Less than two days before the jury trial was to begin, and after extensive arm's-length negotiations, the Parties entered into the Settlement Agreement.

15.     Susman Godfrey frequently takes cases on a contingency basis. In cases like this one where the firm is advancing expenses, the firm has a standard contingency agreement, under which it receives 40% of the gross sum recovered by a settlement that is agreed upon, or other resolution that occurs, on or before the 60th day preceding any trial. Sophisticated parties and institutions have agreed to these standard market terms. The firm receives 45% of gross recoveries received thereafter, and 50% after the submission of the evidence to the fact-finder. The

requested fee here of 30% of the gross sum recovered is less than what Susman Godfrey would receive under its standard contingency agreement.

16.     Class Counsel's request for an award of 30% of any recovery paid to the Class includes money paid to the Class under the Royalty Program. When Susman Godfrey handles cases on a contingency basis, its standard contingency agreement provides a recovery for the gross sum recovered, which includes future royalty payments.  For example, in an intellectual property case where the client will receive past payment for infringement and an ongoing royalty, Susman Godfrey's standard contingent agreement where the firm advances expenses provides that Susman Godfrey would be paid its standard percentages (40%, 45%, or 50%, depending on when the case is resolved) which includes those same contingent percentages for all ongoing future royalty payments made.  Sophisticated parties and institutions have agreed to these standard market terms.

17.     According to the records of my firm and the Declaration of Henry Gradstein ("Gradstein Declaration"), filed concurrently herewith, Class Counsel performed 14,627.30 hours of work in the prosecution and settlement of this litigation, which resulted in a total attorneys' fee lodestar of $8,356,877.80.   Of those hours, Susman Godfrey attorneys and support staff performed 4,279 hours of work, resulting in a total Susman Godfrey attorneys' fee lodestar of $2,082,591.50. The remainder of the lodestar is described in the Gradstein Declaration.

18.     Attached as Exhibit 1 is a true and correct copy of a summary schedule indicating the amount of time spent by the partners, attorneys and other professional support staff of my firm who were involved in this litigation, and the lodestar calculation based on my firm's billing rates in effect in 2016. The schedule was prepared from contemporaneous time records regularly prepared and maintained by my firm.  The hourly rates for the partners, attorneys and professional support staff in my firm included in this schedule are the same as the usual customary hourly

rates charged for their services in cases where my firm is engaged to be paid by the hour.

19.     The total number of hours expended by my firm in this litigation from inception through November 30, 2016—which does not include any time spent on Plaintiffs' motion for an award of attorneys' fees and expenses—is 4,279 hours. The total lodestar for my firm is $2,082,591.50. Should the Court request further supporting documentation for these amounts, the firm is prepared to provide it.

20.     The $2,082,591.50 lodestar amount does not include time my firm spent in December 2016 negotiating with Sirius XM regarding administration of the royalty program, or on the appeals in New York and Florida. Nor does this lodestar include the significant amount of time my firm anticipates it will spend in the future overseeing the notice to class members, drafting the motion for final approval of the settlement, preparing for and attending the fairness hearing, addressing any supplemental submissions, assisting class members with the claims process, overseeing administration of the settlement fund and addressing ownership issues, and briefing and arguing the appeals in this case and in New York and Florida. This ongoing work will add significant time to the work already undertaken in this case and will add significant expense.

21.     Class Counsel also seeks reimbursement of approximately $1,533,549.99 in unreimbursed costs and expenses reasonably paid or incurred by Class Counsel in the prosecution and settlement of the litigation, as of December 30, 2016.  Of this amount, Susman Godfrey advanced $1,308,395.80 in unreimbursed costs and expenses, and the details and categories of those Susman Godfrey expenses are summarized in Exhibit 2.

22.     The expenses incurred in this action are reflected on the books and records of my firm. These books and records are prepared from expense vouchers, check records and other materials that represent an accurate recordation of the

7

expenses incurred. Should the Court request further supporting documentation for these amounts, my firm is prepared to provide it.

23.     The expenses noted are reasonable and were incurred for items necessary to the prosecution of the litigation. The expenses were incurred largely in conjunction with discovery, the services of experts, mediation and travel. Additionally, because the expenses were incurred for the benefit of the Class and are of a type generally reimbursed in the marketplace, they should be reimbursed from the common fund prior to the payment of attorneys' fees, in the same manner as an individual client would reimburse counsel's expenses.

24.     Flo & Eddie's principals, Howard Kaylan and Mark Volman, spent significant time and effort supporting this litigation. This is not a case where the named plaintiff had little or no involvement. The discovery obligations imposed on Messrs. Kaylan and Volman included traveling to, preparing for, and appearing for deposition (in Mr. Volman's case, two depositions), responding to interrogatories and requests for admission, producing documents, and traveling to Los Angeles to prepare for trial. Messrs. Kaylan and Volman remained fully involved and expended considerable time and energy throughout the course of the litigation, including assisting Class Counsel with the prosecution of Class claims and communicating with other Class members.

25.     Sirius XM took 19 depositions of absent class members, who collectively produced thousands of pages of documents. Class Counsel traveled throughout the country—including to Florida, New York, New Jersey, North Carolina, Tennessee, Louisiana, Illinois, Mississippi, South Carolina, and Oregon—to prepare for, attend and defend such depositions.

26.     Attached hereto and marked as Exhibit 3 is a true and correct copy of this Court's order granting final approval of class action settlement, attorneys' fees and costs, and class representative incentive awards in *Luna et al. v. Universal City*

*Studios, LLC*, Case No. CV 12-09286 PSG (SSx) (C.D. Cal. Sept. 13, 2016) (Dkt. 99).

27.     Attached hereto and marked as Exhibit 4 is a true and correct copy of this Court's Order re Plaintiff's Motion for Attorney's Fees and Costs in *Colony Cove Properties, LLC v. City of Carson,* Case No. CV 14-03242-PSG (PJWx) (C.D. Cal. Aug. 15, 2016) (Dkt. 225).

28.     Attached hereto and marked as Exhibit 5 is a true and correct copy of this Court's Order re Granting in Part and Denying in Part Plaintiff's Motion for an Award of Attorney's Fees and Costs in *Vahan Eksouzian, et al. v. Brett Albanese, et al.*, Case No. CV 13-00728-PSG (AJWx) (C.D. Cal. Oct. 23, 2015) (Dkt 196).

29.     Attached hereto and marked as Exhibit 6 is a true and correct copy of Judge Guilford's order approving plaintiffs' motion for an award of attorneys' fees and expense in *Schulein, et al. Petroleum Development Corp., et al.*, Case No. CV. 11-1891 (AG) (C.D. Cal.) (C.D. Cal. March 16, 2015) (Dkt. 261).

30.     Attached hereto and marked as Exhibit 7 is a true and correct copy of Judge Guilford's order approving additional payments to class counsel for time and expenses incurred after the initial application for fees was granted in the preceding paragraph in *Schulein, et al. Petroleum Development Corp., et al.*, Case No. CV. 11-1891 (AG) (C.D. Cal.) (C.D. Cal. March 14, 2016) (Dkt. 315).

31.     Attached hereto and marked as Exhibit 8 is a true and correct copy of the Court's Order in *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, Case No. CV 15-1164, United States Court of Appeals for the Second Circuit, Dec. 29, 2016 Order (Dkt. 209).

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Signed this 30th day of December, 2016, at Los Angeles, California.

*/s/   Steven G. Sklaver*
Steven G. Sklaver

9

# Exhibit 1

SUSMAN GODFREY L.L.P.'s FEES

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*
Firm Name:  Susman Godfrey L.L.P.
March 2, 2016 through November 30, 2016

| Name (Status | Hourly Rate | Cumulative Lodestar | Cumulative Hours |
|---|---|---|---|
| Dolan, John F. (Paralegal) | $250.00 | $8,425.00 | 33.70 |
| Dunseth, William W. (Paralegal) | $270.00 | $10,206.00 | 37.80 |
| Tan, Joel (Paralegal) | $270.00 | $91,503.00 | 338.90 |
| Hogue, Brian (Associate) | $350.00 | $351,995.00 | 1,005.70 |
| Gervais, Michael (Associate) | $375.00 | $223,162.50 | 592.10 |
| Srinivasan, Kalpana (Partner) | $550.00 | $277,695.00 | 504.90 |
| Black, Rachel S. (Partner | $550.00 | $456,225.00 | 829.50 |
| Sklaver, Steven G. (Partner) | $700.00 | $291,550.00 | 416.50 |
| Morrissey, Stephen E. (Partner) | $700.00 | $345,670.00 | 498.10 |
| Seltzer, Marc M. (Partner) | $1,200.00 | $26,160.00 | 21.80 |
| **TOTAL** | | **$2,082,591.50** | **4,279** |

# Exhibit 2

# SUSMAN GODFREY L.L.P.'s EXPENSES

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.,* Susman Godfrey Combined Expenses All Cases (through December 30, 2016)

| Cost Code | Category | Total |
|-----------|----------|-------|
| APPEAL | Appellate Expert Fees | $269,776.13 |
| DEPEXP | Deposition Expenses | $44,271.55 |
| EXPERT | Expert Fees | $846,451.04 |
| FFEE | Filing Fees | $1,025.00 |
| HCMSGR | Messenger/Delivery Services | $9,297.75 |
| HCTELE | Telephone & Calling Card Expenses | $463.97 |
| MEALS | Meals (Travel) | $1,061.25 |
| MISC | Miscellaneous Client Charges | $894.09 |
| OSPHOT | Outside Photocopy Services | $10,821.47 |
| PRINT | Reproduction Charges | $7,104.80 |
| RESRCH | Research charges | $59,489.02 |
| SECOT | Secretarial Overtime | $5,242.50 |
| TRAVEL | Hotel & Travel Expenses | $52,497.23 |
| **TOTAL** | | **$1,308,395.80** |

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.,* U.S.D.C for the Central District of California, Case No. 2:13-CV-05693

| Cost Code | Category | Total |
|-----------|----------|-------|
| | | |
| DEPEXP | Deposition Expenses | $44,271.55 |
| EXPERT | Expert Fees | $846,451.04 |
| FFEE | Filing Fees | $1,025.00 |
| HCMSGR | Messenger/Delivery Services | $9,297.75 |
| HCTELE | Telephone & Calling Card Expenses | $463.97 |
| MEALS | Meals (Travel) | $1,061.25 |
| MISC | Miscellaneous Client Charges | $894.09 |
| OSPHOT | Outside Photocopy Services | $10,821.47 |
| PRINT | Reproduction Charges | $7,104.80 |
| RESRCH | Research charges | $59,352.27 |
| SECOT | Secretarial Overtime | $5,242.50 |
| TRAVEL | Hotel & Travel Expenses | $52,497.23 |
| **TOTAL** | | **$1,038,482.92** |

## SUSMAN GODFREY L.L.P.'s EXPENSES

*Flo & Eddie Inc. v. Sirius XM Radio Inc.,* U.S.D.C for the Southern District of Florida, Case No. 13-CV-23182

| Cost Code | Category | Total |
|---|---|---|
| APPEAL | Appellate Specialist Fees | $55,000.00 |
| **TOTAL** | | **$55,000.00** |

*Flo & Eddie Inc. v. Sirius XM Radio Inc.,* U.S.D.C for the Southern District of New York, Case No. 13-CV-5784 (CM).

| Cost Code | Category | Total |
|---|---|---|
| APPEAL | Appellate Specialist Fees | $214,776.13 |
| RESRCH | Research charges | $136.75 |
| **TOTAL** | | **$214,912.88** |

# Exhibit 3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

### CIVIL MINUTES - GENERAL

Case No.     CV 12-9286 PSG (SSx)                     Date     September 13, 2016

Title     Luna *et al.* v. Universal City Studios, LLC

Present: The Honorable     Philip S. Gutierrez, United States District Judge

| Wendy Hernandez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

Proceedings (In Chambers):     **Order GRANTING the Motions for Final Approval of Class Action Settlement, Attorneys' Fees and Costs, and Class Representative Incentive Awards**

Before the Court are Plaintiffs Uriel Luna, Carrie Gartin, Shaun Gartin, and Gregoria Ruiz's ("Plaintiffs") motions for final approval of class action settlement, and attorneys' fees, costs, and class representative incentive awards. Dkts. # 95, 96, 97. The Court held a final fairness hearing on September 12, 2016. Having considered the arguments in all of the submissions, the Court GRANTS Plaintiffs' motions.

I.     Background

Plaintiffs worked as non-exempt employees for Defendant Universal City Studios, LLC. In October 2012, Plaintiff Uriel Luna filed a class action Complaint in the Superior Court for the County of Los Angeles, alleging various wage and hour violations under California law. Dkt. #1, Ex. A. Defendant removed the case to this Court pursuant to the Class Action Fairness Act of 2004 ("CAFA"), 28 U.S.C. § 1332(d). Dkt. #1. Following a series of amendments to the pleadings, Plaintiffs filed a Sixth Amended Complaint ("SAC"), which is the operative pleading in this case. Dkt. #49. The SAC included six wage and hour claims under California law: (1) failure to provide required meal periods; (2) failure to provide required rest periods; (3) failure to pay overtime wages; (4) failure to pay minimum wages; (5) failure to pay all wages due to discharged and quitting employees; and (6) failure to furnish accurate itemized statements. *SAC* ¶¶ 75–95. The SAC also included two derivative claims for unfair and unlawful business practices under California Business and Professions Code § 17200, and penalties under the California Labor Code Private Attorneys' General Act ("PAGA") § 2698, *et seq. SAC* ¶¶ 75–95.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-9286 PSG (SSx) | Date | September 13, 2016 |
|---|---|---|---|

| Title | Luna *et al.* v. Universal City Studios, LLC |
|---|---|

The case was actively litigated for over two and a half years. Class counsel successfully argued a motion to compel and defended the depositions of the four named Plaintiffs. *Motion for Final Approval of Class Action Settlement* ("*Mot. for Final Approval*") 2:25–27, 3:4–6. Class counsel also interviewed approximately 98 class members about their experiences working for Defendant and retained an expert statistician to analyze a sample of timekeeping and payroll records. *Id.* 3:6–9.

In April 2015, the parties participated in a mediation session that ultimately resulted in "an agreement in principle regarding the material terms for a proposed class action settlement that would fully resolve this matter." *Id.* 3:15–20. After additional negotiations, the parties executed a "Stipulation for Settlement of Civil Action." *Id.* 3:20–22. The Court granted preliminary approval of the Settlement Agreement in July 2015, finding that the terms fell within the range of possible approval. Dkts. #82, 92. In its Order granting preliminary approval, the Court certified, for settlement purposes only, a class of:

> Plaintiffs, as well as other Parking Lot Attendants who are or were members of Amusement Areas Employees Union, Local B-192, all Food Stand Attendants who are or were members of Unitehere, Local 11, and all Commissary members of Hotel Employees and Restaurant Employees Union, Unitehere, Local 11 AFL-CIO who work or have worked for Defendant at Universal City, California at any time during the [period from August 21, 2008 through the date of entry of the Preliminary Approval Order].

*Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement*, ("*Preliminary Approval Order*") 2, 7, Dkt. #82. In compliance with CAFA, the Settlement Administrator mailed the Notice of Proposed Class Action Settlement to the appropriate federal and state officials, and mailed packets to 3,224 class members. *Schwartz Decl.*, ¶¶ 6–7.

In December 2015, the parties discovered that additional class members existed and sought the assistance of a mediator to determine what additional funds were needed to resolve the action. *Mot. for Final Approval* 4:3–5. On February 26, 2016, the parties reached an agreement regarding the material terms of a revised settlement. *Id.* 4:6–8. The parties executed and filed a Revised Stipulation for Settlement of Civil Action on March 31, 2016. Dkt. # 91. By Order dated April 5, 2016, the Court preliminarily approved the Revised Stipulation and all modifications made to the documents attached as exhibits to the Revised Stipulation. Dkt. # 92. Shortly thereafter, the Settlement Administrator mailed supplemental CAFA notices to the appropriate federal and state officials, and to 3,637 class members. *Mot. for Final Approval*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-9286 PSG (SSx) | Date | September 13, 2016 |
|---|---|---|---|
| Title | Luna *et al.* v. Universal City Studios, LLC | | |

4:15-20. As of July 28, 2016, the Settlement Administrator had received thirteen requests for exclusion and no objections. *Id.* 4:20–22.

Plaintiffs now seek final approval of the Settlement Agreement and the plan of allocation, as well as attorneys' fees, costs, and incentive awards. Dkts. # 95, 96, 97. Defendant does not oppose the motions.

II.    Discussion

    A.    Final Approval of the Class Settlement

        *i.    Legal Standard*

A court may finally approve a class action settlement "only after a hearing and on finding that the settlement . . . is fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2). In determining whether a settlement is fair, reasonable, and adequate, the district court must "balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of proceedings; the experience and views of counsel; the presence of a government participant; and the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982) (noting that the list of factors is "by no means an exhaustive list").

The district court must approve or reject the settlement as a whole. *See Hanlon*, 150 F.3d at 1026 ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."). The Court may not delete, modify, or rewrite particular provisions of the settlement. *Id.* The district court is cognizant that the settlement "is the offspring of compromise; the question . . . is not whether the final product could be prettier smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id.* The Ninth Circuit had noted that "there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Synocor ERISA Litig.*, 516 F.3d 1095, 1011 (9th Cir. 2008).

        *ii.    Discussion*

            *a.    Strength of Plaintiffs' Case*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 12-9286 PSG (SSx) | Date | September 13, 2016 |
|---|---|---|---|

| Title | Luna *et al.* v. Universal City Studios, LLC | | |

"An important consideration in judging the reasonableness of a settlement is the strength of plaintiffs' case on the merits balanced against the amount offered in the settlement." *See Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 488 (C.D. Cal. 2010) (internal quotation marks omitted). Although Plaintiffs believe that they have developed substantial evidence to support their claims, Plaintiffs also understand that the merits of their arguments remain vigorously contested. *Mot. for Final Approval* 10:15–18.

There remain a number of open questions as to almost all of Plaintiffs' claims. It remains undecided, for example, whether all class members are entitled to overtime pay, and whether class members are entitled to pay for time spent walking to and from their workstations and changing in and out of their uniforms. Class certification is also precarious as Plaintiffs hail from different service unions and worked for Defendant under different employment terms. The parties have provided the Court with confidential memoranda that outline their respective positions. Having reviewed the memoranda, the Court is confident that there remain ample areas of disagreement among the parties so as to counsel in favor of settlement.

Plaintiffs further point out that the proposed settlement award is a proper compromise between the risks of litigation and the guarantee of recovery. *Mot. for Final Approval* 10:22–25. The settlement requires the Settlement Administrator to distribute individual settlement payments within 24 days of the effective date of settlement. *Id.* Although Plaintiffs may not receive as much as they could have from a jury verdict, the expediency of the payment assures the Court that the settlement agreement is sound. Given the above considerations, the Court agrees with Plaintiffs that this factor weighs in favor of approving the Settlement Agreement.

### b.     *Risk, Expense, Complexity, and Duration of Further Litigation*

The second factor in assessing the fairness of the proposed settlement is the complexity, expense, and likely duration of the lawsuit if the parties had not reached a settlement agreement. *Officers for Justice*, 688 F.2d at 625. Where the parties reach a settlement before the commencement of class certification, expert witness discovery, and trial preparation, this factor generally favors settlement. *See Young v. Polo Retail, LLC*, C 02-4546 VRW, 2007 WL 951821, at *3 (N.D. Cal. Mar. 28, 2007). If the Court were to reject the settlement agreement, the parties promise more costly litigation, including motions for summary judgment, expert discovery, and trial. *Mot. for Final Approval* 11:18–21. This litigation has already been underway for more than three and a half years, including two years of active discovery, and additional discovery, trial, and a possible appeal would only push recovery further down the

UNITED STATES DISTRICT COURT.
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-9286 PSG (SSx) | Date | September 13, 2016 |
| --- | --- | --- | --- |

| Title | Luna *et al.* v. Universal City Studios, LLC |
| --- | --- |

road. *Id.* 11:23–28. Given these considerations, the Court agrees with Plaintiffs that this factor also weighs in favor of approving the settlement.

### c. Risk of Maintaining Class Action Status Through Trial

Although the Court has certified a class, the certification was for settlement purposes only. Under Federal Rule of Civil Procedure 23(c)(1)(C), an "order that grants or denies class certification may be altered or amended before the final judgment." Fed. R. Civ. P. 23(c)(1)(C). Plaintiffs concede, and the Court concurs, that there is a risk that the Court would find that the variation in each Plaintiff's job responsibilities destroys commonality and predominance were Defendant to present the Court with a petition to decertify the class. *See* Dkt. #92. This factor thus also weighs in favor of final approval.

### d. Amount Offered in Settlement

The fourth factor in assessing the fairness of the proposed settlement is the amount of the settlement. "[T]he very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624. The Ninth Circuit has explained that "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* at 625 (citations omitted). Any analysis of a fair settlement amount must account for the risks of further litigation and trial, as well as expenses and delays associated with continued litigation.

The parties have agreed to settle all claims for $1.8 million. *Mot. for Final Approval* 5:7–16. This "Total Maximum Settlement Payment" includes individual settlement payments, class counsel awards, settlement administration costs, PAGA payments, and class members' share of employee payroll taxes. *Id.* Class counsel estimates that the class's maximum damages, based on a detailed review of time and payroll records, could have been as high as $4,122,037. *Matern Decl.*, ¶ 14. The settlement amount therefore represents 43 percent of the possible recovery. The Ninth Circuit has approved of settlements well within that range. *See Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 459 (9th Cir. 2000) (affirming approval of class settlement which represented roughly one-sixth of the potential recovery). The average estimated individual settlement payment is $309.69, and the highest estimated settlement payment is $3,591.16. *Mot. for Final Approval* 10:25–27. The Court finds these amounts reasonable in light of the uncertainties associated with litigating this case through trial. Accordingly, this factor too counsels in favor of approving the settlement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 12-9286 PSG (SSx) | Date | September 13, 2016 |
| Title | Luna *et al.* v. Universal City Studios, LLC | | |

   *e.*  *The Extent of Discovery Completed and the Stage of the Proceedings*

  This factor requires the Court to gauge whether Plaintiffs have sufficient information to make an informed decision about the merits of their case. *See Dunleavy*, 213 F.3d at 459. The more discovery that has been completed, the more likely it is that the parties have "a clear view of the strengths and weaknesses of their cases." *Young v. Polo Retail, LLC*, No. C 02-4546 VRW, 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007) (internal quotation marks and citations omitted).

  The discovery and investigation of this action included: written discovery, including interrogatories and requests for production of documents; a motion to compel, which resulted in Defendant's production of all relevant wage and hour policies, collective bargaining agreements, and a sample of time and payroll records; the depositions of the four named Plaintiffs; interviews with 98 other class members; and the analysis of an expert statistician, who reviewed the sample timekeeping and payroll records supplied by Defendant. *Mot. for Final Approval* 2:22-3:9. The parties actively litigated the case for two and a half years before turning to mediation. *Id.* 2:22. Given the amount of discovery completed, the Court finds that Plaintiffs had enough information to make an informed decision about settlement based on the strengths and weaknesses of their case. This factor weighs in favor of granting final approval.

   *f.*  *The Experience and Views of Class Counsel*

  The recommendations of Plaintiffs' counsel are given a presumption of reasonableness. *See, e.g.*, *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citation omitted). "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

  Here, class counsel has extensive class action experience in employment litigation. *Matern Decl.*, ¶¶ 18, 21–22. Class counsel has actively participated in every aspect of the litigation thus far, and finds the settlement to be fair, adequate, and reasonable. *Id.* ¶ 15. The Court sees no evidence to rebut the presumption that class counsel's recommendation should be regarded as reasonable. This factor thus weighs in favor of class approval.

   *g.*  *The Presence of Governmental Participant*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 12-9286 PSG (SSx) | Date | September 13, 2016 |
|----------|----------------------|------|--------------------|

| Title | Luna *et al.* v. Universal City Studios, LLC |
|-------|----------------------------------------------|

Because no government entities are participants in this case, this factor is neutral. However, the Court observed that a notice of the settlement was provided to federal and state government officials. *See Schwartz Decl.*, ¶ 9. None have objected.

### h. *Class Members' Reaction to the Proposed Settlement*

In evaluating the fairness, adequacy, and reasonableness of settlement, courts also consider the reaction of the class to the settlement. *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003). "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004).

Of the 3,637 employees in the class, none have objected to the settlement and only thirteen, or 0.35 percent of the class, requested exclusion. *Schwartz Decl.*, ¶¶ 10, 12–13. This response is an indicator that class members find the settlement to be fair, reasonable, and adequate. *See, e.g.*, *Hanlon*, 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."). This factor thus weighs in favor of approval of the settlement.

### i. *Fair and Honest Negotiations*

Evidence that a settlement agreement is the result of genuine "arms-length, non-collusive, negotiated resolution" supports a conclusion that the settlement is fair. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Here, the parties negotiated the settlement with the assistance of Michael Dickstein, an experienced wage-and-hour mediator. *Matern Decl.*, ¶ 12. Further, the Court has already concluded that the negotiations were "adversarial, fair, and non-collusive." *Preliminary Approval Order* 10. The fact that the parties engaged in arms-length negotiations also counsels in favor of approval of the settlement.

### j. *Conclusion*

Having reviewed the relevant factors and found that none counsel against approval of final settlement, the Court accordingly GRANTS Plaintiffs' motion for final approval of the class action settlement.

### B. Plan of Allocation

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-9286 PSG (SSx) | Date | September 13, 2016 |
| --- | --- | --- | --- |

| Title | Luna *et al.* v. Universal City Studios, LLC |
| --- | --- |

    A plan of allocation under Rule 23 "is governed by the same standards of review applicable to the settlement as a whole; the plan must be fair, reasonable and adequate." *Vinh Nguyen v. Radient Pharma. Corp.*, SACV 11-406 DOC (MLGx), 2014 WL 1802293, at *5 (C.D. Cal. 2014). To be approved, the plan needs to have a reasonable, rational basis. *Id.*

    The Settlement Agreement provides that each class member will receive a proportionate share of the settlement based on the number of weeks the class member worked for Defendant during the class period. *Matern Decl.*, Ex. A (Stipulation for Settlement of Civil Action), ¶¶ 9, 47(a)(i). Rust Consulting, Inc. ("Rust"), the settlement administrator, will determine the eligibility for, and the amounts of, each individual settlement payment. *Id.* ¶ 46(a)(iii). Rust plans to do this by dividing the net payment by the total number of compensable pay periods for all settlement class members, which will result in a "pay period value." *Id.* ¶ 47(a)(i). Rust will then take the number of pay periods for each individual class member and multiply that by the pay period value. *Id.* The average individual settlement payment is estimated at $309.69, and the highest estimated individual payment is $3,591.16. *Schwartz Decl.*, ¶ 14. Class members will not be required to submit a claim in order to share in the payment, and no portion of the net amount will revert back to Defendant. *Matern Decl.*, Ex. A, ¶ 47.

    Once Defendant transfers the funds to Rust and Rust calculates the individual payments, Rust will mail the payments by first class mail to each class member's last known mailing address. *Id.* ¶ 47(a). Rust will allocate 20 percent of the payment as wages, subject to all applicable tax withholdings, and 80 percent as non-wages, not subject to tax withholdings. *Id.* The back of each check will contain a release of all claims. *Id.* ¶ 47(a)(iv). Rust will deposit all checks that remain uncashed after 180 days into the California Department of Industrial Relations Unclaimed Wages Fund. *Id.* ¶ 47(a)(iv)(1).

    The Court finds that the plan of allocation is rationally grounded in a formula that will compensate class members for the weeks that they worked for Defendant and the amount that they earned during that time. The Court thus approves of the plan of allocation.

    C.   Motions for Attorneys' Fees, Costs, and Incentive Award

    Plaintiffs request that the following be disbursed from the settlement amount: (1) $532,800 in attorneys' fees, which constitutes 29.6 percent of the settlement amount; (2) reimbursement for litigation costs and expenses in the amount of $73,382.82; and (3) a $10,000 incentive award for each of the four named Plaintiffs. *See Mot. for Final Approval* 5:17–6:17; *Motion for Attorneys' Fees and Costs* ("*Attorneys' Fees Mot.*") 1:2–8. Class counsel asserts that

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 12-9286 PSG (SSx) | Date | September 13, 2016 |

| | |
|---|---|
| Title | Luna *et al.* v. Universal City Studios, LLC |

it is entitled to recover reasonable attorneys' fees under Labor Code § 1194, California Code of Civil Procedure § 1021.5, and the common fund doctrine. *Attorneys' Fees Mot.* 1:6–8.

> ### i.    *Legal Standard*

Awards of attorneys' fees in class action cases are governed by Federal Rule of Civil Procedure 23(h), which provides that after a class has been certified, the Court may award reasonable attorneys' fees and nontaxable costs. The Court "must carefully assess" the reasonableness of the fee award. *See Staton*, 327 F.3d at 963; *see also Browne v. Am. Honda Motor Co., Inc.*, No. CV 09-06750 MMM (DTBx), 2010 WL 9499073, at *3–5 (C.D. Cal. Oct. 5, 2010) (explaining that in a class action case, the court must scrutinize a request for fees when the defendant has agreed to not oppose a certain fee request as part of a settlement). Courts exercising diversity jurisdiction under CAFA should apply the substantive law of the state in which they sit to the calculation of the attorneys' fee award. *Mangold v. Cal. Pub. Util. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995).

Where litigation leads to the creation of a common fund, courts can determine the reasonableness of a request for attorneys' fees using either the common fund method or the lodestar method. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 944–45 (9th Cir. 2011) (finding that when a settlement establishes a common fund for the benefit of a class, courts may use either method to gauge the reasonableness of a fee request, but encouraging courts to employ a second method as a cross-check after choosing a primary method). The Court will analyze counsel's fee request under both theories.

> ### ii.    *Discussion*

In its Order granting preliminary approval of the class action settlement, the Court raised concerns about what appeared to be unusually high requests for attorneys' fees and class representative service awards. *Preliminary Approval Order* 12–13. The Court has now had an opportunity to review counsel's time sheets, rates, and hours expended. Although the Court finds that class counsel's hourly rates exceed the standard of reasonableness in the Central District of California, it nonetheless concludes that counsel is entitled to recover the entire amount requested, given their diligence in pursuing this matter on behalf of the class. The Court first assesses fees under the common fund method and then, as a cross-check, turns to assess fees under the lodestar method.

> ### a.    *Percentage of the Common Fund*

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-9286 PSG (SSx) | Date | September 13, 2016 |
|---|---|---|---|

| Title | Luna *et al.* v. Universal City Studios, LLC |
|---|---|

Under the percentage-of-recovery method, courts typically calculate 25 percent of the fund as a "benchmark" for a reasonable fee award. *See In re Bluetooth*, 654 F.3d at 942. The percentage can range, however, and courts have awarded more than 25 percent of the fund as attorneys' fees when the Court has found a higher award to be reasonable. *See Singer v. Becton Dickinson and Co.*, No. CV 08-821 IEG (BLMx), 2010 WL 2196104, at *8 (S.D. Cal. 2010) (finding an award of 33.3 percent of the common fund reasonable because class counsel took the case on a contingent basis and litigated for two years, courts routinely award between 20 to 50 percent of the total settlement amount, and no class member objected to the award); *Gardner v. GC Services, LP*, No. CV 10-997 IEG (CABx), 2012 WL 1119534, at *7 (S.D. Cal 2012) (finding that a departure from the 25 percent benchmark was reasonable where the results achieved were favorable, the risks of litigation were substantial, and the case was complex).

When assessing the reasonableness of a fee award under the common fund theory, courts consider "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *Viscaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002). Plaintiffs request that the Court approve an attorneys' fee award of $532,800, which amounts to 29.6 percent of the settlement amount. *Attorneys' Fees Mot.* 11:11–13. Because Plaintiffs ask the Court to depart from the "benchmark" of 25 percent, the Court must carefully evaluate each of the five factors set out in *Viscaino*. *See Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).

Reviewing each *Viscaino* factor in turn, the Court first finds that the results achieved in this case were favorable to the class. Plaintiffs were able to recover approximately 43 percent of the maximum possible recovery, and no class member objected to the settlement terms. Second, as detailed elsewhere, the risks of the litigation, including the risks of class certification—were real and substantial. Third, the duration of the case—lasting now for over three years—counsels in favor of a larger attorneys' fees award. Fourth, class counsel took this case on a contingent fee basis. *Matern Decl.*, ¶ 39. Fifth, the request for attorneys' fees in the amount of 29.6 percent falls below the 30 to 33 percent range allowed in similar cases. *See, e.g., Knight v. Red Door Salons, Inc.*, No. 08-1520 SC, 2009 WL 248367, at *17 (N.D. Cal. Feb. 2, 2009) ("nearly all common fund awards range around 30%"); *Ingalls v. Hallmark Mktg. Corp.*, CV 09-1662 OWW (MJSx), 2011 WL 2648879, at *28–29 (E.D. Cal. June 30, 2011) (awarding attorneys' fees amounting to 30 percent of a $2.25 million settlement); *Romero v. Producers Dairy Foods, Inc.*, No. CV 05-484 DLB, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 13, 2007) (awarding 33 percent of the common fund); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491–92 (E.D. Cal. 2010) (citing to wage and hour cases where courts approved awards ranging from 30 to 33 percent); *Singer*, 2010 WL 2196104, at *8 (approving an attorneys' fee award of 33.33 percent).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 12-9286 PSG (SSx) | Date | September 13, 2016 |
|---|---|---|---|
| Title | Luna *et al.* v. Universal City Studios, LLC | | |

Given the above considerations, the Court finds class counsel's attorneys' fees reasonable under the common fund theory. The Court grants an upward departure from the 25 percent benchmark in light of the results achieved, the risk of litigation, the contingent nature of the fee, and the financial burden carried by class counsel.

### b.    *Lodestar Cross-Check*

To determine attorneys' fees under the lodestar method, a court must multiply the reasonable hours expended by a reasonable hourly rate. *In re Washington Public Power Supply System Securities Litig.*, 19 F.3d 1291, 1294 n.2 (9th Cir. 1994). The Court may then enhance the lodestar with a "multiplier," if necessary, to arrive at a reasonable fee. *Id.*

### 1.    *Reasonable Rate*

The reasonable hourly rate is the rate prevailing in the community for similar work. *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1200 (9th Cir. 2013) ("[T]he court must compute the fee award using an hourly rate that is based on the prevailing market rates in the relevant community." (citation omitted)); *Viveros v. Donahue*, CV 10-08593 MMM (Ex), 2013 WL 1224848, at *2 (C.D. Cal. 2013) ("The court determines a reasonable hourly rate by looking to the prevailing market rate in the community for comparable services."). The relevant community is the community in which the court sits. *See Schwarz v. Sec. of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995). If an applicant fails to meet its burden, the Court may exercise its discretion to determine reasonable hourly rates based on its experience and knowledge of prevailing rates in the community. *See, e.g., Viveros*, 2013 WL 1224848, at *2; *Ashendorf & Assocs. v. SMI-Hyundai Corp.*, CV 11-02398 ODW (PLAx), 2011 WL 3021533, at *3 (C.D. Cal. 2011); *Bademyan v. Receivable Mgmt. Servs. Corp.*, CV 08-00519 MMM (RZx), 2009 WL 605789, at *5 (C.D. Cal. 2009).

Class counsel asserts that the eight attorneys who worked on this case had hourly rates ranging from $425 to $825. *See Matern Decl.*, ¶ 33. The Court turns to the Real Rate Report as a useful guidepost to assess the reasonableness of these hourly rates in the Central District. *See Eksouzian v. Albanese*, CV 13-728 PSG (AJWx), at *4–5 (C.D. Cal. Oct. 23, 2015); *Carbajal v. Wells Fargo Bank, N.A.*, CV 14-7851 PSG (PLAx), at *5 (C.D. Cal. July 29, 2015). As Judge Fisher explained in *Hicks v. Toys 'R' Us-Delaware, Inc.*, the Real Rate Report is persuasive because it:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 12-9286 PSG (SSx) | Date | September 13, 2016 |
| Title | Luna *et al.* v. Universal City Studios, LLC | | |

identifies attorney rates by location, experience, firm size, areas of expertise, and industry, as well as the specific practice areas, . . . [and] it is based on actual legal billing, matter information, and paid and processed invoices from more than 80 companies—a much better reflection of true market rates than self-reported rates in all practice areas as part of a national survey of top firms.

No. CV 13-1302 DSF (JCGx), 2014 WL 4670896, at *1 (C.D. Cal. Sept. 2, 2014).

The 2015 Real Rate Report offers a number of relevant data points for fees in the Central District. The hourly rate for a partner who practices labor and employment law in a Los Angeles firm with fifty or fewer attorneys ranges from $240 to $367. *Real Rate Report* 128. Across all Los Angeles firms, a labor and employment litigation partner makes an hourly rate between $275 and $625. *Id.* 110. Associates in Los Angeles firms with fifty or fewer attorneys make an hourly rate from $190.30 to $275. *Id.* 128. Across all Los Angeles firms, a labor and employment litigation associate makes an hourly rate between $240 and $443. *Id.* 110. Nationwide, litigation associates in labor and employment law with three to seven years' experience earn an hourly rate between $240 and $409.42, and labor and employment litigation associates with more than seven years' experience earn an hourly rate between $240 and $442.94. *Id.* 112.

Class counsel seeks approval for the hourly rates of one litigation partner, Mr. Matthew Matern, and seven associates. All attorneys are employees of the Matern Law Group, a fifteen member firm in Manhattan Beach, California. *Matern Decl.*, ¶ 23. Mr. Matern requests approval of an hourly rate of $825. *Id.* ¶ 33. The Court finds this rate too high in light of the prevailing hourly rates for litigation partners in labor and employment law at firms with fifty or fewer employees. *See Real Rate Report* 128 (reporting an hourly rate between $240 and $367 for partners in equivalent positions). The Court nonetheless recognizes that Mr. Matern has considerable experience in class action litigation and has successfully practiced law for nearly twenty-five years, including founding his own firm. *Id.* ¶¶ 19-21. Given Mr. Matern's qualifications and his performance in this case, the Court approves of an hourly rate of $625, which is the rate in the third quartile of Los Angeles firms for labor and employment litigation partners. *See Real Rate Report* 112. For the associates, the Court adopts the national rate for the third quartile of litigation associates with similar experience levels. *Id.* Thus, the Court finds the following adjustments appropriate:

| Attorney Name | Experience Level | Requested Hourly Rate | Accepted Hourly Rate (2015 Real Rate Report) |
|---|---|---|---|
| | | | |

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   CV 12-9286 PSG (SSx)                    Date   September 13, 2016

Title      Luna *et al.* v. Universal City Studios, LLC

| Matthew J. Matern | Partner, 21+ years | $825 | $625 |
|---|---|---|---|
| Launa Adolph | Senior Associate, 7+ years | $650 | $445 |
| Rania Habib | Senior Associate, 7+ years | $625 | $445 |
| Dalia Khalili | Senior Associate, 7+ years | $575 | $445 |
| Jennifer Newman | Associate, 3–7 years | $525 | $410 |
| Aubry Wand | Associate, 3–7 years | $450 | $410 |
| Nakkisa Akhavan | Associate, 3–7 years | $450 | $410 |
| Leanne Nguyen | Associate, 3–7 years | $425 | $410 |

*See Matern Decl.*, ¶¶ 18-34 (listing attorneys' experiences, hourly rates, and hours worked).

> 2.   *Reasonable Hours*

An attorneys' fees award should include compensation for all hours reasonably expended prosecuting the matter, but "hours that are excessive, redundant, or otherwise unnecessary" should be excluded. *Costa v. Comm'r of Soc. Sec. Admin.*, 690 F.3d 1132, 1135 (9th Cir. 2012). "[T]he standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982).

Here, the records demonstrate that class counsel spent 940.4 hours litigating this case. *See Matern Decl.*, ¶ 33. This case originated in 2012 and has been litigated for more than three years, with more than two years of active litigation. In those years, counsel conducted legal research on Defendant's wage and hour policies; drafted and amended Complaints; engaged in written discovery and submitted a motion to compel; defended the witness depositions for all four Plaintiffs and conducted interviews with nearly 100 members of the class; and attended mediations and drafted stipulations. *Id.* ¶ 34. Class counsel estimates that they will spend fifty additional hours overseeing the settlement administration process. *Id.* Counsel provided the Court with detailed time records for the attorneys who worked on the case. *Matern Decl.*, Ex. C. After reviewing these records, the Court finds 940.4 hours reasonable.

Based on the Court's adjustment of class counsel's hourly rates, the reasonable lodestar amount is $436,593.50. The Court adjusts the attorneys' fees request as follows:

| Attorney Name | Accepted Hourly Rate | Number of Hours Worked | Total Request |
|---|---|---|---|
| Matthew J. Matern | $625 | 197.3 | $123,312.50 |
| Launa Adolph | $445 | 199.0 | $88,555.00 |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 12-9286 PSG (SSx) | | Date | September 13, 2016 |
|---|---|---|---|---|

| Title | Luna *et al.* v. Universal City Studios, LLC | | | |
|---|---|---|---|---|

| | | | |
|---|---|---|---|
| Rania Habib | $445 | 39.4 | $17,533.00 |
| Dalia Khalili | $445 | 7.6 | $3,382.00 |
| Jennifer Newman | $410 | 94.2 | $38,622.00 |
| Aubry Wand | $410 | 309.7 | $126,977.00 |
| Nakkisa Akhavan | $410 | 46.3 | $18,983.00 |
| Leanne Nguyen | $410 | 46.9 | $19,229.00 |
| | *Revised Lodestar Amount* | | $436,593.50 |

*See Matern Decl.*, ¶ 33 (listing hourly rates and hours worked for each attorney).

### 3. *Multiplier*

The lodestar amount in this case is $436,593.50. Class counsel requests $532,800 in attorneys' fees. *See Fees Mot.* 5:8-13. The request constitutes a positive multiplier of 1.22. *See Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 244, 255 (2001) (observing that multipliers can range from 2 to 4 or even higher); *Sutter Health Uninsured Pricing Cases*, 171 Cal. App. 4th 495, 512 (2009) (affirming attorney fee award with 2.52 multiplier). Given the favorable outcome for class members, the duration of the litigation, and class counsel's diligence in pursuing the case, the Court finds that a multiplier of 1.22 is justified and that an attorneys' fees award of $532,800 is reasonable.

Having assessed the reasonableness of the hourly rates, the hours worked, and the multiplier, the Court finds that the requested fee amount is reasonable under both the common fund and lodestar theories and therefore GRANTS Plaintiffs' motion for attorneys' fees.

### c. *Litigation Costs*

In addition to attorneys' fees, class counsel requests reimbursement of expenses in the amount of $73,382.82. *Matern Decl.* ¶ 47. Because Plaintiffs' claim for attorneys' fees arises under California law, the Court applies California law on costs rather than Local Rule 54-4. *See Clausen v. M/V New Carissa*, 339 F.3d 1049, 1064 (9th Cir. 2003). Plaintiffs have provided the Court with a record of all costs incurred to date in this litigation. *See Matern Decl.*, Ex. D. The Court is satisfied that the costs are reasonable, and therefore, the Court GRANTS Plaintiffs' motion for costs in the amount of $73,382.82.

### C. Motion for Incentive Payment to Plaintiffs

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 12-9286 PSG (SSx) | Date | September 13, 2016 |
|---|---|---|---|

| Title | Luna *et al.* v. Universal City Studios, LLC |
|---|---|

Plaintiffs Uriel Luna, Carrie Gartin, Shaun Gartin, and Gregoria Ruiz also request that the Court award each Plaintiff a Class Representative Service Award in the amount of $10,000. *Motion for Class Representative Service Awards* ("*Service Awards Mot.*") 1:3-5. "Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (citations omitted); *see In re Toys R Us-Delaware, Inc. Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 470 (C.D. Cal. 2014). Courts have found that incentive awards are particularly appropriate in the employment context, where employees may open themselves to retaliation by their employer or co-workers. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005). When considering requests for incentive awards, courts consider five factors:

> (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Van Vraken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

In its Order preliminarily approving of the class action settlement, the Court raised concerns about the amount of the service awards, given that Ninth Circuit precedent has struck down excessively high awards that appear to over-compensate Plaintiffs. *See Online DVD-Rental*, 779 F.3d at 947–48. At the time of the preliminary approval, the Court did not have before it the declarations of the four named Plaintiffs in this case. Having reviewed those declarations and the facts set out in the motion, the Court is no longer concerned that the requested service award is unreasonable. This is especially true given that the total settlement amount increased after the Court's preliminary approval and Plaintiffs' did not increase their requested service award. The service award now comprises 2.2 percent of the settlement amount, which is within the range found reasonable in *Staton*. *See* 327 F.3d at 976–77 (striking down a service award of 6 percent); *see also Bostick v. Herbalife Int'l of Am., Inc.*, No. CV 13-2488 BRO (RZx), 2015 WL 3830208, at *6 (C.D. Cal. June 17, 2015) ($10,000 for one named plaintiff); *Boyd v. Bank of Am. Corp.*, No. SACV 13-561 DOC, 2014 WL 6473804, at *7 (C.D. Cal. Nov. 18, 2014) ($15,000 for named plaintiff); *Gino Morena Enters., LLC*, No. CV 13-1332 JM (NLSx), 2014 WL 5606442, at *3 (S.D. Cal. Nov. 4, 2014) ($10,000 each for two named plaintiffs).

Plaintiffs performed critical litigation tasks, including assisting class counsel in investigating the case, communicating with other class members about the status of the litigation,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 12-9286 PSG (SSx) | Date | September 13, 2016 |

| | |
|---|---|
| Title | Luna *et al.* v. Universal City Studios, LLC |

and preparing and attending depositions. *Service Awards Mot.* 3:4–18. Plaintiffs also risked retaliation by their current employer or future employers who might later learn that Plaintiffs were involved in class action litigation. *Id.* 3:26–28. Because this litigation has now gone on for more than three years, and resulted in substantial recoveries for other members of the class, the Court looks favorably on the service award request. Accordingly, the Court GRANTS Plaintiffs' motion for incentive awards for the four named Plaintiffs.

III.   Conclusion

For the reasons stated above, Plaintiffs' motion for final approval of class settlement and the plan of allocation, and the motions for attorneys' fees, costs, and incentive awards are GRANTED. Accordingly, it is HEREBY ORDERED AS FOLLOWS:

1. The Court approves settlement of the action between Plaintiffs and Defendant, as set forth in the Settlement Agreement as fair, reasonable, and adequate. The Parties are directed to perform their settlement in accordance with the terms set forth in the Settlement Agreement;

2. Class counsel is awarded $532,800 in attorneys' fees and $73,382.82 in costs. Additionally, each named Plaintiff is awarded $10,000. The Court finds that these amounts are warranted and reasonable for the reasons set forth in the moving papers before the Court and the reasons stated in this Order;

3. The Court approves payment in the amount of $7,500 to the California Labor Workforce Development Agency for the settlement of PAGA penalty claims and payment in the amount of $24,000 to Rust Consulting, Inc., the settlement administrator, for settlement administration costs;

4. Rust is authorized to disburse funds pursuant to the terms of the Settlement Agreement and this Order;

5. Without affecting the finality of this judgment in any way, this Court hereby retains exclusive jurisdiction over Defendant and the Settlement Class Members for all matters relating to the Litigation, including the administration, interpretation, effectuation, or enforcement of the Settlement Agreement and this order.

**IT IS SO ORDERED.**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-9286 PSG (SSx) | | Date | September 13, 2016 |
|----------|----------------------|--|------|--------------------|

| Title | Luna *et al.* v. Universal City Studios, LLC |
|-------|----------------------------------------------|

# Exhibit 4

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 14-3242 PSG (PJWx) | Date | August 15, 2016 |
| Title | Colony Cove Properties, LLC v. City of Carson, *et al.* | | |

Present: The Honorable   Philip S. Gutierrez, United States District Judge

| Wendy Hernandez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):**   **Order re Plaintiff's Motion for Attorney's Fees and Costs**

Before the Court is Plaintiff Colony Cove Properties, LLC's motion for attorney's fees and costs. Dkts. #202. After considering the arguments made at the hearing, as well as the moving, opposing, and reply papers, the Court GRANTS IN PART and DENIES IN PART Plaintiff's motion.

## I.   Background

In April 2006, Plaintiff purchased a mobilehome park in Carson, California. *Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948, 952 (9th Cir. 2011). Plaintiff contends that Defendants the City of Carson and the City of Carson Mobilehome Park Rental Review Board enacted a regulatory taking against Plaintiff's property by denying in part Plaintiff's requests in September 2007 and September 2008 to raise rents at the mobilehome park. *See generally Second Amended Complaint.*

On October 27, 2008, Plaintiff filed suit against Defendants in this Court. *See Colony Cove Props., LLC v. City of Carson, et al.*, CV 8-7065 PA (JWJx), Dkt. #1 (C.D. Cal. Oct. 27, 2008). The Court dismissed the as-applied regulatory taking claim as unripe, holding that Plaintiff was required to first seek just compensation in state court under *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985). *Id.*, Dkt. #28 (Nov. 24, 2009). The Ninth Circuit upheld this ruling. *See Colony Cove*, 640 F.3d at 957–59. The parties then proceeded in state court. *See Colony Cove Props., LLC v. City of Carson*, 220 Cal. App. 4th 840, 863–65 (2013), *as modified on denial of reh'g* (Nov. 18, 2013). The state trial court dismissed Plaintiff's petitions for writ of administrative mandamus, and was upheld on appeal. *Id.* at 864–80.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 14-3242 PSG (PJWx) | Date | August 15, 2016 |
|---|---|---|---|

| Title | Colony Cove Properties, LLC v. City of Carson, *et al.* |
|---|---|

Plaintiff then refiled its claims in this Court. *See* Dkt. #1. After two rounds of motions to dismiss, Plaintiff was left with its as-applied regulatory taking claim under 42 U.S.C. § 1983 for the denial of its rent-increase applications in 2007 and 2008. Dkt. #57. The case ultimately went to trial, and the jury returned a verdict in favor of Plaintiff. Dkts. #175–76, 182–84, 194–95. Plaintiff was awarded $3,336,056 in compensation. Dkts. #194–95. On May 16, 2016, the Court signed the judgment. Dkt. #200. On May 31, 2016, Plaintiff filed this motion for attorney's fees. Dkt. #202.

## II.    Legal Standard

Under 42 U.S.C. § 1988, the court may, in its discretion, award the prevailing party in a § 1983 action reasonable attorney's fees and costs. *See Chaudhry v. City of L.A.*, 751 F.3d 1096, 1110 (9th Cir. 2014) ("A party who prevails on a claim under § 1983 is entitled to reasonable attorneys' fees unless special circumstances would render such an award unjust."). To calculate the reasonable fee, courts apply the "lodestar" method, which is the "number of hours reasonably expended on the litigation multiplied by the reasonable hourly rate." *See id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The lodestar computation is a presumptively reasonable amount under § 1988. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). The court may adjust the lodestar upward or downward based on factors first adopted in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). *See Klein v. City of Laguna Beach*, 810 F.3d 693, 699 & n.5 (9th Cir. 2016) (discussing the *Kerr* factors). The prevailing party may also recover reasonable "out-of-pocket expenses" that would "normally be charged to a fee paying client" under § 1988. *Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005) (internal quotation marks omitted).

## III.    Discussion

Plaintiff, as the prevailing party, requests attorney's fees totaling $2,947,135.50 and costs totaling $98,818.96, for a total award of $3,045,954.46. *Mot.* 1, 25.[1] Defendants contend that the reasonable award is $1,955,380.29. *Opp.* 16–17.

### A.    State Court Fees and Costs

---

[1]    Defendants contend that Plaintiff should not be found to be the prevailing party until the Court rules on Defendants' renewed motion for judgment as a matter of law. *Opp.* 1. The Court denied this motion on August 8, 2016. Dkt. #221.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 14-3242 PSG (PJWx) | Date | August 15, 2016 |

| | |
|---|---|
| Title | Colony Cove Properties, LLC v. City of Carson, *et al.* |

Prior to the filing of this case, Plaintiff proceeded in state court. *Mot.* 3–7; *Opp.* 3–7. Plaintiff seeks "reasonable attorneys' fees and costs from the California state court proceedings related to the Year 1 and Year 2 applications[.]" *Mot.* 3. The total fees and costs sought for work done in the state court is $443,366.25. *Opp.* 7.

A party can be awarded attorney's fees under § 1988 for work done in an administrative agency or state court outside the § 1983 action itself. *See Rock Creek Ltd. P'ship v. State Water Res. Control Bd.*, 972 F.2d 274, 278 (9th Cir. 1992). The work done outside the § 1983 action must be a "necessary prerequisite" or an "essential step" for compensation to be awarded. *See Bartholomew v. Watson*, 665 F.2d 910, 914 (9th Cir. 1982); *Beltran Rosas v. Cty. of San Bernardino*, 260 F. Supp. 2d 990, 993 (C.D. Cal. 2003). Thus, fees and costs have been awarded under § 1988 and similar statutes where state court proceedings were an essential step because of the *Pullman* abstention rule, *see Bartholomew*, 665 F.2d at 914,[2] and where the parties were required to utilize applicable state administrative proceeding before filing a claim with the Equal Opportunity Employment Commission, *see New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 60–66 (1980), but were denied where a party was not required to exhaust state administrative remedies, *see Webb v. Bd. of Educ. of Dyer Cty., Tenn.*, 471 U.S. 234, 240–41 (1985), and where a party had the option of an administrative proceeding before proceeding to federal district court, *see Rock Creek*, 972 F.2d at 277–79.

Plaintiff argues that the Court should award fees because Plaintiff's trip to state court was a required prerequisite to the § 1983 action. *Mot.* 3–7. Under the Fifth Amendment, there is "no constitutional injury until the plaintiff has availed himself of the state's procedures for obtaining compensation for the injury, and been denied compensation." *Colony Cove*, 640 F.3d at 958 (quoting *San Remo Hotel v. City & Cty. of S.F.*, 145 F.3d 1095, 1102 (9th Cir. 1998)). Thus, for an as-applied § 1983 regulatory taking claim to be ripe, a plaintiff "must demonstrate that 'the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue,'" and "must have sought, and been denied, 'compensation through the procedures the State has provided for doing so.'" *Id.* (quoting *Williamson*, 473 U.S. at 186, 194). In other words, a plaintiff cannot bring an as-applied § 1983 regulatory taking claim in federal court without first going through state court.

Defendants argue that fees and costs are inappropriate because those cases that have allowed fees and costs are distinguishable. *Opp.* 3–7. Defendants explain that the plaintiffs in cases such as *Carey* and *Bartholomew* had a federal claim at the outset, but were required by case law or statute to use a state or administrative process. *See Carey*, 447 U.S. at 64 (plaintiffs

---

[2]    *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941).

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-3242 PSG (PJWx) | Date | August 15, 2016 |
|---|---|---|---|

| Title | Colony Cove Properties, LLC v. City of Carson, *et al.* |
|---|---|

who filed a Title VII discrimination claim with the EEOC prior to exhausting state remedies had their cases referred to the applicable state agency, and their federal case was suspended until the earlier of exhaustion or sixty days); *Bartholomew*, 665 F.2d at 912–13 (federal case in which inmates claimed that prison rules violated due process stayed pending an adjudication in state court of whether the prison rules were consistent with state law under the *Pullman* abstention doctrine). Here, in contrast, Plaintiff's as-applied § 1983 regulatory taking claim did not accrue (i.e. was unripe) until Plaintiff had sought just compensation in state court.

The Court agrees with Plaintiff that fees and costs are appropriate. Although the Court recognizes that an as-applied § 1983 regulatory taking claim does not fit neatly in either bin, the principles that animated the award of fees and costs in *Carey*, *Bartholomew*, and others apply equally here. First, courts that have declined to award fees and costs have done so on the basis that the state or administrative procedure was not mandatory. *See Webb*, 471 U.S. at 241 ("The difference between *Carey* and this case is that in *Carey* the statute that authorized fees, Title VII, also required a plaintiff to pursue available state administrative remedies. In contrast, nothing in § 1983 requires that a plaintiff exhaust his administrative remedies before bringing a § 1983 suit." (quoting *Smith v. Robinson*, 468 U.S. 992, 1012 n.14 (1984))); *Rock Creek*, 972 F.2d at 279 ("An approach to FERC was not a condition precedent to its entry to federal court, as in *New York Gaslight Club*. Nor was the FERC decision rendered as a part of a continuing federal court action, as was the case in [*Sullivan v. Hudson*, 490 U.S. 877 (1989)]. The distinct nature of the two proceedings distinguishes them from the related and dependent proceedings involved in the cases relied on by Rock Creek.").[3] Defendants cite to no case in which the distinguishing feature was the accrual of the federal cause of action.

Second, the *Bartholomew* court, in awarding fees, compared § 1983 to Title VII, noting that both statutes have "the same broad humanitarian and remedial aspect[s]" and "the purpose of the fee award in both civil rights actions is to aid in the enforcement of those rights." 665 F.2d at 913. The Court further noted that "Congress' purpose in authorizing fee awards was to encourage compliance with and enforcement of the civil rights laws. The Fees Awards Act must be liberally construed to achieve these ends." *Id.* (quoting *Dennis v. Chang*, 611 F.2d 1302, 1306 (9th Cir. 1980)). This militates in favor of awarding fees here, as the enforcement of Plaintiff's Fifth Amendment rights, which is the basis of its § 1983 claim, necessarily included a stop in state court to seek just compensation. *See Colony Cove*, 640 F.3d at 957–59.

---

[3] "[T]he additional ripeness requirements of *Williamson County* create a takings claim exception to [the] general requirement that exhaustion is not required in § 1983 suits." *Daniels v. Area Plan Comm'n of Allen Cty.*, 306 F.3d 445, 453 (7th Cir. 2002).

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 14-3242 PSG (PJWx) | Date | August 15, 2016 |
|---|---|---|---|

| Title | Colony Cove Properties, LLC v. City of Carson, *et al.* |
|---|---|

Finally, the *Bartholomew* court noted that awarding fees protects the balance between the state and federal courts. 665 F.2d at 913 ("The federal preference for deferring to state interpretation of state law will further cooperation between state and federal courts in the protection of federal constitutional rights."). As the Supreme Court explained in *Williamson*, the Fifth Amendment does not "require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a reasonable, certain and adequate provision for obtaining compensation." 473 U.S. at 194 (internal quotation marks omitted). Awarding fees for state-court proceedings encourages parties to protect their rights by first seeking just compensation in state court. *See Carey*, 447 U.S. at 63–64; *Bartholomew*; 665 F.2d at 913.[4]

The Court will therefore award Plaintiff its reasonable fees and costs for the proceedings in state court.

B. <u>Lodestar</u>

i. *Hours Reasonably Expended*

"The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1107 (9th Cir. 2015) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992)). "The district court . . . should exclude from this initial fee calculation hours that were not reasonably expended." *Hensley*, 461 U.S. at 434 (internal quotation marks omitted). Hours not reasonably expended are those that are "excessive, redundant, or otherwise unnecessary." *Id.* A district court may reduce hours by either conducting an hour-by-hour analysis or by making an across-the-board-percentage cut. *See $28,000.00 in U.S. Currency*, 802 F.3d at 1106.

Plaintiff's two lead attorneys, Matthew Close of O'Melveny & Myers LLP ("OMM") and Thomas Casparian of Gilchrist & Rutter ("G&R"), submitted declarations addressing the hours worked. Close states that OMM timekeepers (including attorneys and staff) spent 2,894.2 hours on this case. *Close Decl.* ¶ 23, Ex. 7 (OMM itemized billing entries). OMM, however, only submits 2,562.6 hours for consideration as hours reasonably spent. *Close Decl.* ¶¶ 18, 23.

---

[4] Defendants argue that Plaintiff was not pursuing a Fifth Amendment or § 1983 claim in state court because it filed a reservation pursuant to *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411 (1964). *Opp.* 5–6. The Court is not persuaded that the *England* reservation alters any of the analysis in this section.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-3242 PSG (PJWx) | Date | August 15, 2016 |
|---|---|---|---|

| Title | Colony Cove Properties, LLC v. City of Carson, *et al.* |
|---|---|

OMM voluntarily reduced its time by 331.6 hours, which included the elimination of all hours worked by attorneys who worked on the case for twenty-five or fewer hours, all of OMM's hours from the state-court case, hours based on unsuccessful legal theories, and hours reduced through normal billing judgment. *Close Decl.* ¶¶ 19–22, Ex. 8 (OMM Reductions Summary). Close also states that OMM spent 665.2 hours in the first federal litigation (prior to going to state court), but will not seek reimbursement for those hours. *Id.* ¶ 24. Finally, he states that he and the other OMM timekeepers did their best to minimize costs, and believes that the hours submitted are reasonable in light of the complicated legal and factual elements of the case. *Id.* ¶¶ 26–31. Close notes that the hours might have been lower if not for Defendants' litigation conduct. *Id.* ¶ 30.

Casparian states that G&R timekeepers (including attorneys and staff) spent 2,621.6 hours on this case. *Casparian Decl.* ¶ 22, Exs. 6–7 (G&R Itemized Billing Entries). G&R, however, only submits 2,423.2 hours. *Id.* ¶ 22. G&R voluntarily reduced its time by 198.4 hours, which included the elimination of all hours worked by attorneys who worked on the case for twenty-five or fewer hours, hours based on unsuccessful legal theories, and hours reduced through normal billing judgment. *Id.* ¶¶ 19–22, Ex. 8 (G&R Reduction Summary). He also states that G&R spent significant time in the first federal litigation, but will not seek compensation for those hours. *Id.* ¶ 23. He states that he and the other G&R timekeepers did their best to minimize costs, and believes that the hours submitted are reasonable in light of the complicated legal and factual elements of the case. *Id.* ¶¶ 24–34.

Both attorneys state that Plaintiff has paid all but the most recent fees. *Close Decl.* ¶ 18; *Casparian Decl.* ¶ 18. Courts have recognized that payment of fees by the client supports their reasonableness and appropriateness. *See, e.g., Kilopass Tech., Inc. v. Sidense Corp.*, 82 F. Supp. 3d 1154, 1167 (N.D. Cal. 2015); *Stonebrae, L.P. v. Toll Bros.*, No. C-08-0221-EMC, 2011 WL 1334444, at *6 (N.D. Cal. Apr. 7, 2011), *aff'd*, 521 F. App'x 592 (9th Cir. 2013). Plaintiff also offers an extensive discussion of its litigation conduct at each stage of the case in its opening brief. *See Mot.* 13–18.

Finally, Plaintiff submits a declaration by James King, who applied his professional opinion on the reasonableness of Plaintiff's fees. *See Viveros v. Donahoe*, No. CV 10-08593 MMM EX, 2013 WL 1224848, at *5 (C.D. Cal. Mar. 27, 2013) (relying on King's analysis in determining attorney's fees). King stated that the case was billed reasonably, especially in light of the complexity of the case and the conduct of Defendants. *King Decl.* ¶¶ 38–49. He also believes that Plaintiff's counsel exercised sound billing judgment. *Id.* ¶¶ 50–51.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 14-3242 PSG (PJWx) | Date | August 15, 2016 |
| Title | Colony Cove Properties, LLC v. City of Carson, *et al.* | | |

Defendants make a number of individual challenges to the hours sought by Plaintiff. First, they argue that the Court should reduce excessive and duplicative hours related to the state court litigation:

- G&R spent 94 hours on a reply to the opposition to the petition for writ of mandate, but only spent 88.4 hours on the moving papers. Defendants recommend that the Court reduce the fee awarded for the work on the reply by 50% ($21,977.50) because replies normally take less time.

- Three G&R attorneys spent 28.2 hours preparing for and attending the hearing for the petition for writ of mandate. Defendants state that it is unclear why three attorneys were needed, and recommend striking the amount of the lowest billing attorney ($4,689.50).

- Three G&R attorneys spent 52.8 hours on the petition for rehearing. Defendants recommend reducing the award by 50% ($14,272.50) because it is not clear why three attorneys were needed, and the petition was denied.

- Three G&R attorneys spent 49.2 hours on the petition for review in the California Supreme Court. Defendants recommend that the Court reduce the hours by 50% ($10,743) because it is not clear why three attorneys were needed and the petition was denied.

- Two G&R attorneys spent 30.3 hours seeking amicus support for the California Supreme Court. Defendants recommend eliminating this fee entirely ($18,802) because the necessity of the work is unclear, the petition was denied, and no amicus brief was ever filed.

*Opp.* 8–9; *Ailin Decl.*, Ex. 1.

The Court does not agree with any of Defendants' requests. Defendants' heavy focus on the number of attorneys involved on the various matters is misleading. The Court's job is to determine whether hours are excessive, unnecessary, or redundant. *See Hensley*, 461 U.S.at 434. The fact that three attorneys spent, for example, 52.8 hours on the petition for rehearing is only relevant if 52.8 hours is an unreasonable amount of time to spend on a petition for rehearing, or if the three attorneys performed duplicative or unnecessary tasks. Defendants do not supply any of this information. *Cf. Chabner v. United of Omaha Life Ins. Co.*, No. C-95-0447 MHP, 1999 WL 33227443, at *4 (N.D. Cal. Oct. 12, 1999) ("Common sense dictates that a single task can

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 14-3242 PSG (PJWx) | Date | August 15, 2016 |
| Title | Colony Cove Properties, LLC v. City of Carson, *et al.* | | |

be broken down over several discrete time periods and that a number of people might contribute to one end product."). Moreover, Plaintiff offers rational explanations for many of these hour allocations. *See Casparian Supp. Decl.* ¶¶ 6–11 (explaining, among other things, that Defendants' opposition to the petition for writ of mandate raised a number of new issues that needed to be addressed in the reply, and that two requests to file amicus letter briefs were submitted to the California Supreme Court). Finally, the Court does not believe that the fact that Plaintiff's petitions were denied makes them less worthy of compensation in the context of this case.

Second, Defendants argue that Plaintiff spent an excessive amount of time opposing Defendants' first motion to dismiss. *Opp.* 10. Defendants note that Plaintiff spent 157.1 hours opposing the first motion to dismiss, and 48.4 hours opposing the second motion to dismiss. *Id.* They argue that the disparity between the two amounts indicates that Plaintiff likely spent too much time on the first motion, and suggest that the Court reduce the amount awarded to the first motion by one third ($30,124.33). *Id.* After reviewing the motions and the Court's own order, the Court agrees with Defendants that 157.1 hours seems a bit high, and that the one-third reduction is fair.

Third, Defendants argue that Plaintiff's staffing was not as efficient as Plaintiff and its expert contend. *Opp.* 10–12. Specifically, Defendants challenge the amount of attorneys (four) present at the two mediation sessions and the amount of people (eight) present at trial. *Id.* Defendants recommend cutting 50% of the fees for the mediations ($13,858.75), and cutting the trial time for two of OMM's lawyers and one of G&R's lawyers ($50,326). *Id.* The Court disagrees. Plaintiff adequately explains its staffing at the mediations and trial. *Reply* 10; *Close Decl.* 6–8. Defendants also had four attorneys at the second mediation session, and the fact that one was acting in her capacity as the city attorney and one was acting in his capacity as the mayor is a distinction without a difference. And, although Plaintiff had eight *people* in the courtroom at various points throughout trial, only six of them were attorneys. Defendants themselves used five attorneys. The Court, from its own perspective, saw nothing excessive, unusual, or unnecessary about Plaintiff's representation. Finally, the Court cannot discount that Plaintiff won a difficult, technical, and complex case in which their claim was not a clear-cut winner. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.").

Fourth, Defendants attack the fees charged for certain clerical tasks:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-3242 PSG (PJWx) | Date | August 15, 2016 |
|---|---|---|---|
| Title | Colony Cove Properties, LLC v. City of Carson, *et al.* | | |

- 14 hours by two G&R employees who billed at paralegal billing rates for supposedly clerical tasks. Defendants suggest either eliminating all fees ($4,036) or reducing the fee for each hour to $100 (lowering the amount to $1,400).

- The trial work done by two OMM employees. Defendants recommend either eliminating all fees ($29,289) or reducing the fees for each hour worked to $100 (lowering the amount to $11,240).

- Fees for in-house proofreading. Defendants recommend denying all fees ($1,519.05).

*Opp.* 15–16. Clerical tasks should be subsumed into the firm's overhead and not billed at paralegal rates. *See Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009); *Pierce v. Cty. of Orange*, 905 F. Supp. 2d 1017, 1031 (C.D. Cal. 2012). After reviewing the billing entries and the explanations in the reply and supplemental declarations, the Court agrees that the proofreading hours are clerical, but finds that the fourteen hours spent by the G&R employees (which involved discovery and document review work) and the trial work by the OMM employees was not merely clerical and is appropriately charged at paralegal billing rates. *See Reply* 10–11; *Close Supp. Decl.* ¶¶ 10–13; *Casparian Supp. Decl.* ¶¶ 14–17.

Fifth, Defendants challenge a number of discrete billing entries:

- One G&R attorney spent 2.4 hours preparing for a deposition. Defendants claim that the deposition occurred weeks earlier, so no fees should be awarded for this time ($1,688).

- One OMM attorney billed 2.8 hours for attending trial the day after the verdict. Defendants suggest that the Court award no fees for this ($2,170).

- OMM spent 3.1 hours on a trial brief that was never filed. Defendants recommend awarding no fees for this time ($3,022.50).

- Daniel Tully, an attorney for OMM, spent 26.3 hours researching and preparing issue modules. Defendants contend that this time was excessive, and recommends reducing it by half ($6,772.25).

- Tully spent 7.5 hours on tasks that appear to be duplicative of those performed by another OMM attorney, Dimitiri Portnoi. Defendants suggest awarding no fees for these duplicative hours ($3,862.50).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-3242 PSG (PJWx) | Date | August 15, 2016 |
|---|---|---|---|
| Title | Colony Cove Properties, LLC v. City of Carson, *et al.* | | |

*Opp.* 9, 12. The Court disagrees that fees should be reduced for the G&R attorney or for Tully's time. Plaintiff adequately explains in reply that, notwithstanding a clerical error in the description, the G&R attorney was reviewing the deposition transcript, not preparing for it. *Reply* 11. Plaintiff also adequately explains that Tully's time was necessary and not duplicative of Portnoi's work. *See id.* 11–12. Plaintiff concedes, however, that the 2.8 hours for attending trial was erroneous and withdraws the request. *Id.* 12 n.9. The Court will also reduce the fees for the 3.1 hours spent on the unfiled trial brief; although Plaintiff states that it used the language from that brief elsewhere, and indeed lauded itself for not making a frivolous filing, the Court does not believe it has enough information to confirm the reasonableness of those hours.

The Court otherwise finds that Plaintiff's hours were hours reasonably expended.

    *ii.    Reasonable Hourly Rate*

"[T]he established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (internal quotation marks omitted); *see $28,000.00 in U.S. Currency*, 802 F.3d at 1106. "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. As we have noted, affidavits of the plaintiffs' attorneys and other attorneys regarding prevailing fees in the community, and rate determinations in other cases are satisfactory evidence of the prevailing market rate." *Camacho*, 523 U.S. at 980 (alterations, citations, and internal quotation marks omitted) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984), and *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)).

Close and Casparian addressed the fees sought by them and their co-workers. The fees sought for OMM ranged from $870 to $975 for the partner, $630 to $775 for the counsel, $415 to $655 for the associates, and $225 to $285 for support staff. *Close Decl.* ¶¶ 12–14. The fees sought for G&R attorneys ranged from $475 to $695 for senior partners and $420 to $540 for junior partners. *Casparian Decl.* ¶ 14. Both stated that they believed the fees sought by themselves and their co-counsel were in line with the prevailing market rates for attorneys of similar skill and reputation in the community. *Close Decl.* ¶¶ 12–16, 31–32; *Casparian Decl.* ¶¶

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 14-3242 PSG (PJWx) | Date | August 15, 2016 |
| Title | Colony Cove Properties, LLC v. City of Carson, *et al.* | | |

13–16. Both attorneys also noted that Plaintiff has paid all but the most recent pending bills in full. *Close Decl.* ¶ 18; *Casparian Decl.* ¶ 18.

King also discussed the reasonableness of the hourly rates. King based his focus on fees and fee awards in the Central District of California, as well as the Northern and Southern Districts of California (which he believes compensate similarly). *King Decl.* ¶ 4; *see Shirrod v. Dir., Office of Workers' Comp. Programs*, 809 F.3d 1082, 1087 (9th Cir. 2015) ("[W]e typically recognize the forum where the district court sits as the 'relevant community' for purposes of fee-shifting statutes."). King states that the fees charged by the attorneys at OMM and G&R are in line with firms of their caliber in the relevant communities. *King Decl.* ¶¶ 37, 52–65. He cites to a number of recent cases in the Central, Northern, and Southern districts of California that accepted hourly billing rates as reasonable that are in line with those sought by OMM and G&R. *Id.* ¶¶ 56–63, 65. King also lists the partner fee rates of other comparable firms to OMM, which are similar to those sought by OMM. *Id.* ¶ 64.

The Court finds that Plaintiff has met its "initial burden of production, under which it must 'produce satisfactory evidence' establishing the reasonableness of the requested fee." *$28,000.00 in U.S. Currency*, 802 F.3d at 1105. The burden thus shifts to Defendants. *See id.* Defendants do not directly challenge any of the evidence presented. *See Opp.* 12–14. Instead, Defendants challenge the reasonableness of the rates on the ground that the fees sought by the OMM lawyers are much higher than those sought by the G&R lawyers, even though many of the G&R lawyers are more experienced than the OMM lawyers charging higher rates. *Id.* Defendants state that "[i]deally, the City would propose O'Melveny's hourly rates be reduced to rates charge for similarly experienced attorneys at G&R, which has greater expertise in the subject matter of this case." *Id.* 14. In the alternative, Defendants recommend slashing OMM's overall attorney's fees by one-third (for a reduction of $497,628.50). *Id.*

Defendants' recommendation is not well taken. Courts have recognized that fees charged at large, national firms may exceed those of smaller, local firms. *See, e.g., Heller v. District of Columbia*, 832 F. Supp. 2d 32, 46–47 (D.D.C. 2011); *Tlacoapa v. Carregal*, 386 F. Supp. 2d 362, 369–70 (S.D.N.Y. 2005); *Algie v. RCA Glob. Commc'ns, Inc.*, 891 F. Supp. 875, 895 (S.D.N.Y. 1994), *aff'd*, 60 F.3d 956 (2d Cir. 1995). Moreover, Defendants hinge their arguments in large part on the greater experience of the G&R attorneys in the issues related to this case. *Opp.* 12–14. But the Court agrees with Plaintiff that the novel, complex litigation and constitutional issues justified bringing in a firm of OMM's magnitude, skill, and experience. *See Mot.* 9–10.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 14-3242 PSG (PJWx) | Date | August 15, 2016 |
| Title | Colony Cove Properties, LLC v. City of Carson, *et al.* | | |

The Court thus finds that Plaintiff has proposed reasonable hourly fees for its attorneys. Plaintiff supports these fees with evidence that goes unchallenged by Defendants. *See $28,000.00 in U.S. Currency*, 802 F.3d at 1105–06. These fees are also reasonable based on the Court's own understanding of the fees charged by firms in this district. The Court therefore awards Plaintiff the fees as set forth in the Close and Casparian Declarations. *See Close Decl.* ¶¶ 12–14; *Casparian Decl.* ¶ 14.

    *iii.*    *Lodestar Calculation and* Kerr *Factors*

Plaintiff's requested billing rates and hours expended lead to a lodestar value of $2,947,135.50. *See Mot.* 25. Although the Court approved of all the proposed billing rates, it found that certain discrete hours were not reasonably expended and decided to deduct the following: (1) a $30,124.33 reduction for the opposition to the first motion to dismiss, (2) a $1,519.05 reduction for in-house proofreading, (3) a $2,170 reduction for time erroneously billed, and (4) a $3,022.50 reduction for the unfiled trial brief. Thus, the Court's lodestar value for Plaintiff is $2,910,299.62.

Neither party requests any upward or downward departure under the *Kerr* factors. The Court similarly believes that an upward or downward departure is not appropriate. The Court therefore awards Plaintiff $2,910,299.62 in attorney's fees.

    C.    <u>Costs</u>

Plaintiff may also recover certain reasonable expenses under § 1988. *See Dang*, 422 F.3d at 814; *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). "The Supreme Court has provided two guidelines addressing the scope of attorney's fees as applied to litigation expenses. First, reasonable attorney's fees do not include costs that, like expert fees, have by tradition and statute been treated as a category of expenses distinct from attorney's fees. Second, reasonable attorney's fees include litigation expenses only when it is the prevailing practice in a given community for lawyers to bill those costs separately from their hourly rates." *Trustees of Const. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258 (9th Cir. 2006) (internal quotation marks omitted) (citing *W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 99–100 (1991), and *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 286–87 (1989)). Plaintiff seeks $98,818.96 in non-taxable costs, which includes "(1) local travel expenses; (2) mediation fees; (3) messenger and delivery costs; (4) copying and document-processing costs; (5) research expenses; (6) professional services/consultant fees; and (7) certain discovery-related costs." *Mot.* 23–25; *Close Decl.* ¶¶ 33–44, 46, Exs. 10–19; *Casparian Decl.* ¶¶ 35–44, Exs. 9–22. Close notes that OMM wrote off roughly 10% of costs. *Close Decl.* ¶ 46.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-3242 PSG (PJWx) | Date | August 15, 2016 |
|---|---|---|---|
| Title | Colony Cove Properties, LLC v. City of Carson, *et al.* | | |

Defendants challenge three costs: (1) data hosting fees ($8,419.29), (2) graphics consultants ($1773.75), and (3) jury consultants ($5,408). *Opp.* 16. Plaintiff responds that all of these costs were reasonable, and it is the prevailing practice to bill these costs separately from hourly rates. *Reply* 12 (citing *Close Decl.* ¶¶ 33–34, and *Close Supp. Decl.* ¶¶ 14–16). Case law also supports that these costs are recoverable. *See Gilster v. Primebank*, 884 F. Supp. 2d 811, 881 (N.D. Iowa 2012), *rev'd on other grounds*, 747 F.3d 1007 (8th Cir. 2014) (jury consulting fees); *Jardin v. DATAllegro, Inc.*, No. 08-CV-1462-IEG WVG, 2011 WL 4835742, at *6–7 (S.D. Cal. Oct. 12, 2011) (document conversion); *DiBella v. Hopkins*, 407 F. Supp. 2d 537, 539–40 (S.D.N.Y. 2005) (graphics consultants). Finally, Plaintiff notes that it incurred the document conversion fees in large part because Defendants produced unusable documents in discovery. *Close Decl.* ¶ 37. The Court thus finds that these costs (as well as the rest of Plaintiff's costs) are reasonable and recoverable.

IV.    Conclusion

The Court thus GRANTS IN PART and DENIES IN PART Plaintiff's motion for fees and costs under § 1988. Defendants must pay Plaintiff $2,910,299.62 in attorney's fees and $98,818.96 in costs.

**IT IS SO ORDERED.**

# Exhibit 5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#189 (10/26 HRG OFF)

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 13-728 PSG (AJWx) | Date | October 23, 2015 |
| Title | Vahan Eksouzian, *et al.* v. Brett Albanese, *et al.* | | |

Present: The Honorable    Philip S. Gutierrez, United States District Judge

| Wendy Hernandez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):    Order GRANTING IN PART and DENYING IN PART
Plaintiffs' motion for an award of attorney's fees and costs**

Before the Court is Plaintiffs Vahan Eksouzian, Cloud V Enterprises, and Vape A Cloud, Inc.'s motion for an award of attorney's fees and expenses. Dkt. #189. The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the moving, opposing, and reply papers, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' motion.

I.    Background

In February 2013, Plaintiffs filed suit against Defendants Brett Albanese and Cloud Vapez, Inc. for trademark and copyright infringement, among other things, arising out of Defendants' allegedly improper use of Plaintiffs' intellectual property. Dkt. #1. After extensive motions practice and discovery, the parties undertook settlement discussions. *Mot.* 3. The parties ultimately agreed to a settlement, which was incorporated into the Court's August 6, 2014 dismissal order. Dkt. #90; *see also* Dkt. #89 (stipulation of dismissal).

A little over one month later, Plaintiffs filed a motion to enforce the Settlement Agreement. Dkt. #188 ["Judge Nagle 8/7/15 Order"] at 1. Plaintiffs contended that Defendants violated various provisions of the Settlement Agreement relating to intellectual property use and failed to pay a $35,000 payment owed pursuant to the Settlement Agreement. *Id.* at 1–2. Defendants contested these allegations. *Id.* at 2. The parties again extensively litigated the issues. *Mot.* 4–7. On August 7, 2015, Judge Margaret A. Nagle granted Plaintiff's motion. Dkt. #188. On August 21, 2015, Plaintiffs brought this motion for attorney's fees and expenses. Dkt. #189.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 13-728 PSG (AJWx) | Date | October 23, 2015 |
| Title | Vahan Eksouzian, *et al.* v. Brett Albanese, *et al.* | | |

## II.    Legal Standard

The Settlement Agreement allows "the prevailing party" in any dispute "arising out of or related to or to enforce" the Settlement Agreement to recover its "reasonable attorneys', (sic) fees, costs and expenses" incurred as a result of the dispute. *Shenkman Decl.*, Ex. 1 ["Settlement Agreement"] § VI.B. "An agreement to settle a legal dispute is a contract and its enforceability is governed by familiar principles of contract law. . . .  The construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally." *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989).  Under California Civil Code § 1717, the prevailing party in a dispute over a contract that specifically provides for fee awards shall be entitled to reasonable attorney's fees as determined by the court.

California courts typically apply the lodestar method to determine the attorney's fee award, which multiples the hours reasonably expended by the reasonable hourly rate. *See PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000), *as modified* (June 2, 2000).  The lodestar calculation may then be adjusted "based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided." *Id.*[1]  "It is only when a plaintiff has achieved limited success or has failed with respect to distinct and unrelated claims, that a reduction from the lodestar is appropriate." *Hogar v. Cmty. Dev. Com. of City of Escondido*, 157 Cal. App. 4th 1358, 1369 (2007), *as modified* (Jan. 10, 2008).  "[T]he trial court has broad authority to determine the amount of a reasonable fee." *PLCM*, 22 Cal. 4th at 1094–95.

## III.   Discussion

### A.    Prevailing Party

The threshold question is whether Plaintiffs are the "prevailing party."  In *Hsu v. Abbara*, the California Supreme Court explained:

> In deciding whether there is a "party prevailing on the contract," the trial court is to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs,

---

[1]      "Under [*Serrano v. Priest*, 20 Cal. 3d 25 (1977)], the lodestar is the basic fee for comparable legal services in the community; it may be adjusted by the court based on factors including, as relevant herein, (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001).

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 13-728 PSG (AJWx) | Date | October 23, 2015 |
| Title | Vahan Eksouzian, *et al.* v. Brett Albanese, *et al.* | | |

opening statements, and similar sources. The prevailing party determination is to be made only upon final resolution of the contract claims and only by a comparison of the extent to which each party has succeeded and failed to succeed in its contentions.

9 Cal. 4th 863, 876 (1995); *see also Garzon v. Varese*, No. CV 09-9010 PSG PLAX, 2011 WL 103948, at *2 (C.D. Cal. Jan. 11, 2011) (citing *Hsu*). Plaintiffs contend that they are the "prevailing party" because they "achieved every one of their litigation objectives." *Mot.* 8 (emphasis omitted). Defendants do not dispute this, but argue that "Plaintiffs cannot rightly be adjudged the prevailing party" because Plaintiff also allegedly breached the Settlement Agreement and acted unethically during the course of litigation. *Opp.* 1–2.

Regardless of whether these allegations are true, they do not affect whether Plaintiffs are the "prevailing party." *See Susilo v. Wells Fargo Bank, N.A.*, No. CV 11-1814 CAS PJWX, 2013 WL 1970064, at *3 (C.D. Cal. May 6, 2013) ("In line with this analysis, a court cannot deny fees to a successful litigant merely because that litigant exhibits unsympathetic characteristics unrelated to litigation success."); *Int'l Fid. Ins. Co. v. Draeger Const., Inc.*, No. 10-CV-04398-LHK, 2012 WL 424994, at *5 (N.D. Cal. Feb. 8, 2012) ("[W]hen the results of the litigation on the contract claims are not mixed-that is, when the decision on the litigated contract claim is purely good news for one party and bad news for the other . . . a trial court has no discretion to deny attorney fees to the successful litigant." (quoting *Hsu*, 9 Cal. 4th at 875–76)). After reviewing the briefing and Judge Nagle's August 7, 2015 order, the Court is convinced that Plaintiffs are the prevailing party and that fees are thus owed. The Court now turns to the question of the reasonable fee.

### B. Reasonable Fee Calculation

#### i. Reasonable Hourly Rate

"The reasonable hourly rate is that prevailing in the community for similar work." *Gustafson v. U.S. Bank*, No. CV 13-5916 PSG SHX, 2014 WL 302242, at *5 (C.D. Cal. Jan. 27, 2014) (quoting *PLCM*, 22 Cal. 4th at 1095). This can take into account "the level of skill necessary, time limitations, the amount to be obtained in the litigation, the attorney's reputation, and the undesirability of the case." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1139 (2001) (internal quotation marks omitted). The burden is on the fee applicant to show that its requested rates are reasonable. *See Gustafson*, 2014 WL 302242, at *5.

Plaintiffs request a rate of $585 per hour for their attorney, Kevin Shenkman ("Shenkman") of Shenkman & Hughes. *Shenkman Decl.* ¶¶3, 6. Shenkman, a partner at the firm with thirteen years of experience, states that $585 is the rate that the firm regularly charges

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 13-728 PSG (AJWx) | Date | October 23, 2015 |
| Title | Vahan Eksouzian, *et al.* v. Brett Albanese, *et al.* | | |

its clients. *Id.* ¶¶4, 6. Shenkman states that his firm has seen a recent increase in demand for its business after several notable court victories. *Id.* ¶7. He also lists several decisions which have awarded him the $585 hourly rate, as well as other decisions that awarded him his older billing rate of $550 per hour. *Id.* ¶¶8–9. Plaintiffs' motion notes that $585 is less than the hourly rates found in a 2012 San Francisco Daily Journal Article and the Laffey Matrix, *Mot.* 13, which are $797 and $661, respectively. *Shenkman Decl.*, Ex. 2 ["Laffey Matrix"], Ex. 3 ["SF Daily Journal Rates"].

Defendants dispute the requested rate on two grounds. First, they argue that the case here was not much more than a "garden variety state law breach of contract action," and courts have found the reasonable rate in similar cases to be $265 to $275 per hour, so a reasonable rate in this case is closer to $300 per hour. *Opp.* 17. They also argue that the Laffey Matrix measures rates in Washington D.C., not Los Angeles, and has received a mixed reception in this circuit. *Id.* 16–17.

The Court shares some of Defendants' concerns. Although the trademark issues in this case belie Defendants' contention that this was a mere state-law case, *see Judge Nagle 8/7/15 Order* at 3–19, it is not clear that the fees previously awarded to Shenkman & Hughes represent the appropriate rate for the representation required for this case, *see Gustafson*, 2014 WL 302242, at *5 (analyzing the rate in the community for "similar work"); *Hopkins v. Wells Fargo Bank, N.A.*, No. CIV. 2:13-444 WBS, 2014 WL 2987753, at *4 (E.D. Cal. July 1, 2014) (same); *cf. United States v. $28,000.00 in U.S. Currency*, No. 13-55266, 2015 WL 5806325, at *4 (9th Cir. Oct. 6, 2015) (noting that the district court improperly ignored evidence of rates from lawyers with the same specialty as the fee applicant).[2]

The Court is also skeptical about the propriety of the Laffey Matrix because it (a) represents hourly rates for lawyer services in Washington D.C.; and (b) does not break down rates by practice area. *See Laffey Matrix*. Although some courts have taken the Laffey Matrix into account in calculating the reasonable fee, others have found it unhelpful. *See Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB SHX, 2015 WL 1746484, at *16 (C.D. Cal. Mar. 24, 2015) (collecting cases on both sides). The San Francisco Daily Journal does offer rates by region, but similarly fails to offer any specificity beyond that. *See SF Daily Journal Rates*. Instead, the Court finds the 2014 Real Rate Report to be a much better barometer of the reasonable rates in the Central District. As Judge Fisher explained in *Hicks v. Toys 'R' Us-Delaware, Inc.*:

---

[2]     For example, one of the cases in which Shenkman was awarded $550 per hour was a major voting-rights case that was the first-ever trial of its kind. *Shenkman Decl.* ¶¶7–8, Ex. 4.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | | |
|---|---|---|---|---|
| Case No. | CV 13-728 PSG (AJWx) | | Date | October 23, 2015 |
| Title | Vahan Eksouzian, *et al.* v. Brett Albanese, *et al.* | | | |

> The Court finds the 2013 Real Rate Report Snapshot (Real Rate Report), a CEB and TyMetrix publication that identifies attorney rates by location, experience, firm size, areas of expertise, and industry, as well as the specific practice areas, to be much more persuasive, as it is based on actual legal billing, matter information, and paid and processed invoices from more than 80 companies—a much better reflection of true market rates than self-reported rates in all practice areas as part of a national survey of top firms.

No. CV13-1302-DSF JCGX, 2014 WL 4670896, at *1 (C.D. Cal. Sept. 2, 2014) (footnotes omitted); *see also Tallman v. CPS Sec. (USA), Inc.*, 23 F. Supp. 3d 1249, 1258 (D. Nev. 2014) (considering the Real Rate Report); *G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 433 (S.D.N.Y. 2012) (same); *but see Hicks v. Vane Line Bunkering, Inc.*, No. 11 CIV. 8158 KBF, 2013 WL 1747806, at *9 (S.D.N.Y. Apr. 16, 2013) (critiquing the 2012 edition of the Real Rate Report), *aff'd sub nom. Hicks v. Tug PATRIOT*, 783 F.3d 939 (2d Cir. 2015), *cert. denied sub nom. Vane Line Bunkering, Inc. v. Hicks* (2015).

The 2014 Real Rate Report offers a few relevant datapoints for fees in the Central District. First, the Report states that the median rate for litigation partners in Los Angeles is $500. *Real Rate Report* at 71. Second, the Report states that partners in Los Angeles across all specialties and firm sizes with less than twenty-one years of experience have a median hourly rate of $500.91. *Id.* at 86. Third, the Report states that trademark partners have a median rate of $435 in Los Angeles. *Id.* at 144. Finally, the Report states that partners in firms with fifty or fewer lawyers have a median rate of $366.06 for general commercial litigation and $379.25 for intellectual property litigation. *Id. at* 169, 171.

After considering all of the evidence, the Court believes that $475 is a reasonable hourly rate for the services in this case. The Court recognizes that the $585 rate is what Plaintiffs charge their clients, *see Moore v. James H. Matthews & Co.*, 682 F.2d 830, 840 (9th Cir. 1982) (noting that "[b]illing rates usually reflect, in at least a general way, counsel's reputation and status (i.e., as partner, associate, or law clerk)"), and that other courts have awarded the $585 rate in the past, *see Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980–81 (9th Cir. 2008) (considering rates in other cases). But it is not clear that Plaintiffs' counsel have received those rates for *the type of work required for this case*, and data in the 2014 Real Rate Report suggests that such rates would be a bit high. At the same time, Defendants' suggested rate of $300 is much too low. The Court believes that an hourly rate of $475 best approximates the reasonable market value for the services rendered in this case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-728 PSG (AJWx) | Date | October 23, 2015 |
|---|---|---|---|

| Title | Vahan Eksouzian, *et al.* v. Brett Albanese, *et al.* |
|---|---|

    *ii.*    *Hours Reasonably Expended*

Attorney's fees ordinarily cover all hours reasonably spent, but excessive, inefficient, or duplicative work does not merit compensation. *See Gustafson*, 2014 WL 302242, at \*5. The fee applicant bears the burden of documenting the hours reasonably worked and submitting evidence in support of those hours. *See Salameh v. Tarsadia Hotel*, No. 09CV2739-GPC BLM, 2014 WL 3797283, at \*2 (S.D. Cal. July 31, 2014). California courts however, "do not require detailed time records"; fees awards can be "based on declarations of counsel describing the work they performed and the court's own review of the number of hours reasonably spent." *Id.* (citing *Syers Properties III, Inc. v. Rankin*, 226 Cal. App. 4th 691, 698 (2014), *review denied* (Sept. 10, 2014), and *Trustees of Cent. States, Se. & Sw. Areas Pension Fund v. Golden Nugget, Inc.*, 697 F. Supp. 1538, 1558 (C.D. Cal. 1988)).

Shenkman provided a detailed accounting of his hours. *Shenkman Decl.*, Ex. 5 ["Shenkman Time Records"], Ex. 6 ["Shenkman Task Records"]; *see also Shenkman Decl.* ¶¶10–11. They amount to 255.2 total hours. *Mot.* 12. Plaintiffs contend that all of the work was necessary to the success of the litigation. *Mot.* 12. Plaintiffs also note that two categories of hours were not included in the 255.2 total. Shenkman exercised his "billing judgment" and deleted thirty hours from his time records that he felt "took only a small amount of time" or "did not appear reasonably necessary to the litigation." *Id.*; *Shenkman Decl.* ¶10. Shenkman also did not include 38.1 hours related to the declarations of Michael Hesser and Lily Harutyunyan. *Shenkman Decl.* ¶10. These declarations were determined to be false and were ultimately withdrawn. *Mot.* 15; *Judge Nagle 8/7/15 Order* at 16 n.9, 19 n.11.

Defendants bring two main objections to the hours. First, they argue that 15.7 hours should be eliminated because the hours were not spent on enforcement of the Settlement Agreement or were spent on clerical tasks. *Opp.* 17–19 (detailing these disputed hours). Second, they argue that an additional 21.9 hours should be eliminated because the hours were block billed and spent on clerical tasks. *Id.* 19–22 (detailing these disputed hours).

Plaintiffs, in their Reply, respond to these arguments. *Reply* 15–20. The Reply, however, suffers from two major problems. First, the Reply, at twenty-two pages, is nearly double the twelve-page limit in the Court's Standing Order. *See Standing Order* ¶5(c) ("Replies shall not exceed 12 pages."). Second, the Reply, which was e-filed on October 12, Dkt. #194, was late. The Standing Order states that "all reply papers due on a holiday must be filed the preceding Friday." *See Standing Order* ¶5(a). Here, the hearing date is October 26, 2015, so a reply was due by Monday, October 12. Local Rule 7-10. That day was a court holiday, https://www.cacd.uscourts.gov/clerk-services/court-holidays, so Plaintiffs' failure to file their reply by the preceding Friday, October 9, violates the Standing Order.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-728 PSG (AJWx) | Date | October 23, 2015 |
|---|---|---|---|

| Title | Vahan Eksouzian, *et al.* v. Brett Albanese, *et al.* |
|---|---|

The Court, at its discretion, may refuse to consider pages or briefing that violates its standing orders. *See Sweet v. Pfizer*, 232 F.R.D. 360, 364 n.6 (C.D. Cal. 2005) (noting that the court had discretion to consider an oversized reply); *see, e.g.*, *Scientific Weight Loss, LLC v. U.S. Med. Care Holdings, LLC*, No. CV 08-2852PSG(FFMX), 2009 WL 2151365, at *5 (C.D. Cal. July 15, 2009) (declining to consider arguments outside the page limit in an oversized reply). The Court will therefore not consider the arguments made in rebuttal to Defendants' reasonable hour arguments and will not compensate Plaintiffs for those hours.

The Court is otherwise satisfied that Plaintiffs have presented hours that were reasonably expended in the course of litigation. The Court will therefore compensate Plaintiffs for 217.9 hours.[3]

### iii. Other Considerations

The lodestar calculation may be adjusted, at the Court's discretion, based on a consideration of factors specific to the case. *See PLCM*, 22 Cal. 4th at 1095. This can include increasing the amount of fees. *See Chodos v. Borman*, 227 Cal. App. 4th 76, 95 (2014) (noting that multipliers have been applied in § 1717 cases), *as modified on denial of reh'g* (July 9, 2014), *review denied* (Oct. 22, 2014). Plaintiffs, however, decline to request an enhancement or multiplier of the lodestar amount:

> While the [*Serrano v. Priest*, 20 Cal. 3d 25 (1977)] factors would otherwise support application of a fee multiplier, Plaintiffs nonetheless do not request a multiplier here. Plaintiffs recognize that portions of the declaration testimony of Lily Harutyunyan and Michael Hesser were untrue, and as a consequence it is inappropriate for Plaintiffs to request a multiplier . . . .

*Mot.* 15.

Defendants believe that greater sanctions are necessary. They argue that Plaintiffs' introduction of perjurious declarations, and failure to immediately withdraw the declarations when Plaintiffs learned that they were untrue, should result in either dismissal of the matter or the denial of all fees. *Opp.* 10–13. Defendants also note that Judge Nagle, in her August 7, 2015 order, indicated that she would be inclined to cut any fee award in half due to the submission of the perjurious declarations. *Id.* 2–3 (citing *Judge Nagle 8/7/15 Order* at 19 n.11).

---

[3] The Court reached this figure by subtracting 37.3 hours from the 255.2 requested. The Court used 37.3 and not Defendants' requested 37.6 because it appears that Defendants double-challenged 0.3 hours for March 23, 2015 court correspondence. *Compare Opp.* 18, *with id.* 20.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 13-728 PSG (AJWx) | Date | October 23, 2015 |
| Title | Vahan Eksouzian, *et al.* v. Brett Albanese, *et al.* | | |

Defendants rely heavily on *Franchitti v. Bloomberg, L.P.*, in which the court denied attorney's fees to the prevailing party because the party concealed information during litigation and "the importance of telling the truth in judicial proceedings is just too great." 411 F. Supp. 2d 466, 470 (S.D.N.Y. 2006). At least one California district court, however, has distinguished *Franchitti*. In *Campbell v. National Passenger Railroad Corp.*, a civil rights case, the court held that perjurious testimony did not require a denial of fees because doing so could chill the ability of victims to get competent counsel. 718 F. Supp. 2d 1093, 1097–98 (N.D. Cal. 2010). The *Campbell* court relied on the Sixth Circuit's decision in *Price v. Pelka*, which found perjury insufficient for a denial of fees where the perjurious testimony was of little value to the case, the attorney was not alleged to have contributed to the perjury, and there was concern that denying fees would chill the ability of plaintiffs to get competent counsel. 690 F.2d 98, 101–02 (6th Cir. 1982).

To the extent the Court was inclined to penalize Plaintiffs for the declarations, it believes that the denial of a multiplier is sufficient. As both the *Campbell* and *Franchitti* courts recognized, fee awards are within the sound discretion of the district court and must take into account the specific facts of the case. *See Campbell*, 718 F. Supp. 2d at 1097–98; *Franchitti*, 411 F. Supp. 2d at 469–70. Here, Plaintiffs prevailed on all main issues, and there is no indication that the declarations affected the decision-making process in any material way or that Shenkman submitted them knowing that they were false. *See Price*, 690 F.2d at 101–02. Although the Court recognizes that Judge Nagle suggested that a 50 percent fee cut may be appropriate, *see Judge Nagle 8/7/15 Order* at 19 n.11, it believes, after considering the fee application and the case in its entirety, that Plaintiffs' proposed penalty is all that needs to be done.

Two other issues must be addressed as well. First, Defendants appear to argue that fees should be reduced because Plaintiffs also breached the Settlement Agreement. *Opp.* 1–2, 4. The Court, however, does not find this a proper basis to reduce fees because it is not relevant to whether Plaintiffs were the prevailing party on *their claims* of breach. *See Susilo*, 2013 WL 1970064, at *3; *Int'l Fid. Ins. Co.*, 2012 WL 424994, at *5. Second, Plaintiffs requested an additional $1,340 for expert Andrew Freyer's witness fees. *Mot.* 16; *Shenkman Decl.* ¶4. Defendants do not appear to contest these fees in their opposition. *See generally Opp.* The Court will therefore include these fees in the fee award.

### iv. Summary

The Court finds that the reasonable hourly rate is $475 per hour and that the hours reasonably expended total 217.9. The lodestar value is therefore $103,502.50. As discussed in the previous section, the Court declines to enhance or decrease the lodestar value. The Court

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-728 PSG (AJWx) | Date | October 23, 2015 |
|---|---|---|---|

| Title | Vahan Eksouzian, *et al.* v. Brett Albanese, *et al.* |
|---|---|

will also add $1,340 in costs for the expert work of Andrew Freyer. The total fee award is therefore $104,842.50.

### C.    Waiver

The Settlement Agreement allowed the Court, and specifically Judge Nagle, to retain jurisdiction to enforce the terms of the agreement. *Settlement Agreement* § XI. Plaintiffs, who were aware that Judge Nagle planned to retire in July or August of 2015, *Opp.* 14, did not move for fees until August 7, 2015, Dkt. #189.

Defendants argue that the failure to apply for fees until after Judge Nagle's retirement constitutes "waiver" of Plaintiffs' right to such fees. *Opp.* 13–15. The Court disagrees. "Case law is clear that waiver is the intentional relinquishment of a known right after knowledge of the facts. The burden is on the party claiming a waiver of a right to prove it by clear and convincing evidence that does not leave the matter to speculation, and doubtful cases will be decided against a waiver." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 31 (1995) (alterations, citations, and internal quotation marks omitted), *as modified on denial of reh'g* (Oct. 26, 1995). There is nothing here that indicates that Plaintiffs, by not applying for fees prior to August, intentionally relinquished their right to request attorney's fees at a later date.

Defendants also argue that Plaintiffs should be equitably estopped from requesting fees. The Court again disagrees. Equitable estoppel requires that "(1) the party to be estopped knows the facts, (2) he or she intends that his or her conduct will be acted on or must so act that the party invoking estoppel has a right to believe it is so intended, (3) the party invoking estoppel must be ignorant of the true facts, and (4) he or she must detrimentally rely on the former's conduct." *United States v. Kim*, 797 F.3d 696, 703 (9th Cir. 2015) (quoting *United States v. Hemmen*, 51 F.3d 883, 892 (9th Cir. 1995)). Defendants claim that they relied to their detriment because they signed the Settlement Agreement under the belief that only Judge Nagle would decide issues related to enforcement. *Opp.* 14–15. But Defendants surely recognized that the unavailability of Judge Nagle (whether by retirement or unexpected occurrence) would not bar enforcement of the contract. The Court thus finds the reliance argument unpersuasive. This is simply not a case for equitable estoppel.

The Court therefore declines to find that Plaintiffs waived their right to fees or are equitably estopped from asserting their right to them.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | | |
|---|---|---|---|---|
| Case No. | CV 13-728 PSG (AJWx) | | Date | October 23, 2015 |
| Title | Vahan Eksouzian, *et al.* v. Brett Albanese, *et al.* | | | |

IV.   Conclusion

The Court therefore GRANTS IN PART and DENIES IN PART Plaintiffs' motion for attorney's fees and expenses of $150,632. Defendants must pay Plaintiffs' fees and costs in the amount of **$104,842.50**.

**IT IS SO ORDERED.**

# Exhibit 6

1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| JEFFREY SCHULEIN, et al., | Case No. SACV 11-1891 AG(ANx) |
| Plaintiffs, | |
| vs. | **REVISED ORDER RE PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES** |
| PETROLEUM DEVELOPMENT CORPORATION and DP 2004 MERGER SUB LLC, | |
| Defendants. | |
| | Hon. Andrew J. Guilford |
| AND RELATED COUNTER CLAIM | |

Plaintiffs in this class action have moved for an award of attorneys' fees, costs and expenses, and reimbursement to named plaintiffs for their time and expenses spent on the litigation. There have been no objections by any of the parties or Class members to the settlement or plaintiffs' motion for an award of attorneys' fees and expenses. Upon due considerations of the application by plaintiffs and all of the papers, pleadings and files in this action, and good cause appearing therefor, the Court hereby GRANTS the motion.

## I. ATTORNEYS' FEES

In a case where plaintiffs' counsel have through their efforts created a common fund, courts usually base the fee award on a percentage of the fund recovered for the class, but then cross-check the reasonableness of the percentage to be awarded by reviewing the attorneys' fees lodestar multiplier. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). The Ninth Circuit uses a 25% benchmark in common fund cases, and "in most common fund cases, the award exceeds that benchmark," with a 30% award being the norm "absent extraordinary circumstances that suggest reasons to lower or increase the percentage." *In re Omnivision Techs. Inc.*, 559 F. Supp. 2d 1036, 1047-48 (N.D. Cal. 2007) (quotation omitted).

The requested $11.25 million award is equal to 30% of the $37.5 Settlement Fund. After considering the evidence and all of the pertinent factors set forth in *Vizcaino*, 290 F.3d at 1047-50, and subsequent cases, the Court finds plaintiffs' fee request to be fair and reasonable under both the percentage method and the lodestar cross-check. Among other factors, plaintiffs' counsel achieved an exceptional result for the Class, the request is commensurate with market rates for contingency fee cases, the case was unusually risky for plaintiffs' counsel and undertaken entirely on a contingency basis.

The reasonableness of this fee is confirmed by the lodestar cross-check, which results in a multiplier of 1.22, as set forth in the Supplemental Declaration of Marc

1  M. Seltzer In Support of Plaintiffs' Motion for an Award of Attorneys' Fees and

2  Expenses well within the range of reasonableness. *See Vizcaino*, 290 F.3d at 1052-

3  54 (approving a fee award of $27,127,800, which equaled 28% of the cash

4  settlement fund and which resulted in a 3.65 multiplier); *Milliron v. T-Mobile USA*,

5  423 F. App'x 131, 135 (3d Cir. 2011) ("we have approved a multiplier of 2.99 in a

6  relatively simple case"); *In re Cadence Design Sys., Inc. Sec. & Derivative Litig.*,

7  No. C-08-4966 SC, 2012 WL 1414092, at *5 (N.D. Cal. April 23, 2012) (awarding

8  counsel "more than 2.88 times its lodestar amount"); *Been v. O.K. Industries, Inc.*,

9  No. CIV-02-285-RAW, 2011 WL 4478766, at *11 (E.D. Okla. 2011) (citing a

10  study "reporting average multiplier of 3.89 in survey of 1,120 class action cases"

11  and finding that a multiplier of 2.43 would be "per se reasonable"). No party or

12  Class member has objected to the application by plaintiffs' counsel for this fee

13  award. Accordingly, plaintiffs' counsels' request for a $11.25 million fee award is

14  hereby GRANTED.

15  **II.     EXPENSES**

16      Plaintiffs' counsel are entitled to recover their "out-of-pocket expenses that

17  would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d

18  16, 19 (9th Cir. 1994). Plaintiffs' counsel have submitted adequate support for the

19  $2,466,282.05 in expenses they incurred over the past three years for which

20  reimbursement is sought. No party or Class member has objected to reimbursement

21  of any of these expenses. Accordingly, the motion for reimbursement is hereby

22  GRANTED.

23  **III.    NAMED PLAINTIFFS' EXPENSES**

24      Besides his or her *pro rata* share of the common fund, a named plaintiff can

25  recover his reasonable costs and expenses directly relating to his or her

26  representation of the class. *See* 15 U.S.C. § 78u-4(a)(4); *see also In re Online*

27  *DVD-Rental Antitrust Litig.*, No. 12-15705, 2015 WL 846008 (9th Cir. Feb. 27,

28  2015) (affirming $5,000 incentive awards for each of the nine class representatives

where each unnamed class member received $12). In this case the requested awards represent a very small fraction of the settlement fund and Class members are eligible to receive compensation that will likely exceed $1,000 per limited partnership unit they owned. Plaintiffs' counsel have submitted a declaration of Marc M. Seltzer In Support of Service Awards to the Name Plaintiffs summarizing the named plaintiffs' time and expenses related to their representation of the Class in this matter. Good cause being shown therefor, the request for reimbursement to the named plaintiffs is hereby GRANTED.

## IV.  CONCLUSION

Based on the foregoing findings and conclusions, the Escrow Agent is AUTHORIZED and DIRECTED to pay the following amounts from the Settlement Fund:

A.  $11.25 million for attorneys' fees to plaintiffs' counsel;

B.  $2,466,282.05 for reimbursement to costs and expenses to plaintiffs' counsel;

C.  Reimbursement to the named plaintiffs in the following amounts:

(i)  Robert H. and Jane S. Barr, as Trustees of the Robert H. and Jane Barr Trust: $7,500;

(ii)  Christine L. Cox, as Trustee of the Christine L. Cox Trust: $7,500;

(iii)  Clay A. Cox, as Trustee of the Clay A. Cox Trust: $7,500;

(iv)  Matthew S. and Katherine M. Goldsmith, as Trustees of the Matthew Shawn Goldsmith and Katherine Mary Goldsmith Living Trust: $10,000;

(v)  Timothy McDonald: $10,000;

(vi)  William J. and Judith A. McDonald, as Trustees of the William J. and Judith A. McDonald Living Trust: $10,000;

3

(vii) Jeffrey and Linda Schulein, as Trustees of the Schulein Family Trust: $7,500;

(viii) William J. Wieseler, as Trustee of the William J. Wieseler Trust: $7,500;

D.    The foregoing amounts shall include interest thereon at the same rate as earned by the Settlement Fund.

These amounts shall be paid by the Escrow Agent to a bank account designated by Susman Godfrey L.L.P.  Susman Godfrey L.L.P. shall be responsible for the distribution of all funds to the appropriate parties.

The Court shall retain continuing jurisdiction over the Settlement Fund and the foregoing parties and counsel for purposes of supervising such distributions.

IT IS SO ORDERED. Dated:

March 16, 2015

_____

Andrew J. Guilford
UNITED STATES DISTRICT JUDGE

# Exhibit 7

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | SACV 11-1891 AG (ANx) | Date | March 14, 2016 |
|---|---|---|---|

| Title | JEFFREY SCHULEIN ET AL. v. PETROLEUM DEVELOPMENT CORP. ET AL. |
|---|---|

| Present: The Honorable | ANDREW J. GUILFORD | |
|---|---|---|
| Lisa Bredahl | Not Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:      Attorneys Present for Defendants:

**Proceedings:**     **[IN CHAMBERS] ORDER GRANTING MOTION FOR APPROVAL OF PAYMENTS AND DISTRIBUTIONS FROM THE SETTLEMENT FUND**

Class counsel for Plaintiffs filed a motion for approval of payments and distributions from the settlement fund in this case ("Motion"). (*See* Mot., Dkt. No. 302.) Class counsel didn't set this motion for a hearing.

The Court GRANTS the Motion.

## 1. BACKGROUND

Plaintiffs were individuals and entities who invested in partnership interests issued by Defendants. Plaintiffs filed a class action asserting that Defendants misrepresented or omitted important information in connection with a cash out merger. (*See* First. Am. Compl., Dkt. No. 54.) The Court granted preliminary approval of the class settlement in December 2014. (*See* Order, Dkt. No. 249.) The Court granted final approval of the class settlement and entered final judgment in March 2015. (*See* Final Order and J., Dkt. No. 263.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | SACV 11-1891 AG (ANx) | Date | March 14, 2016 |
|---|---|---|---|
| Title | JEFFREY SCHULEIN ET AL. v. PETROLEUM DEVELOPMENT CORP. ET AL. | | |

## 2. ANALYSIS

In the Motion, class counsel frame their requested relief as four requests. No one has
opposed any of them.

### 2.1 The Claims Administrator's Determinations

Class counsel asks the Court to approve the claims administrator's determinations accepting
and rejecting claims.

The Court GRANTS this requested relief. The claims administrator recommends rejecting
only 59 of the 3913 submitted claims. (*See* Mem. P. & A., Dkt. No. 303 at 3:14–17.) The
claims administrator accepted late-but-otherwise meritorious claims, and offered those with
rejected claims appropriate opportunity to remedy deficiencies. (*See id.* at 3:20–4:2.) The
Court agrees with the claims administrator's recommendation that no claim received after
November 30, 2015 be accepted. (*See id.* at 4:2–7.)

### 2.2 Payments to the Claims Administrator and Class Counsel

Class counsel asks the Court to authorize payments to the claims administrator of
$55,392.08.

The Court GRANTS this requested relief. The 75-page declaration filed supporting the
proposed additional payment of $55,392.08 adequately supports the request.

Class counsel also asks the Court to authorize payments to class counsel of $120,913.42.

The Court GRANTS this requested relief. Counsel submitted less support for this request
than they did for the proposed payment, but the Court nonetheless finds the request
appropriate.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-1891 AG (ANx) | Date | March 14, 2016 |
|----------|------------------------|------|----------------|

| Title | JEFFREY SCHULEIN ET AL. v. PETROLEUM DEVELOPMENT CORP. ET AL. |
|-------|---------------------------------------------------------------|

### 2.3 Distribution of the Net Settlement Fund to the Accepted Claimants

Class counsel asks the Court to authorize distribution of the net settlement fund to the accepted claimants. The approved claimants will receive payments as specified in an allocation plan the Court previously approved.

The Court GRANTS this requested relief.

### 2.4 Destruction of Paper Forms and Electronic Records

Class counsel asks the Court to authorize the claims administrator's destruction of paper proof of claim forms six months after distribution of the net settlement fund and destruction of electronic copies of claims records three years after distribution of the net settlement fund.

The Court GRANTS this requested relief.

## 3. DISPOSITION

The Court GRANTS the Motion.

|  | : | 0 |
|--|---|---|

| Initials of Preparer | lmb |
|----------------------|-----|

# Exhibit 8

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of December, two thousand sixteen.

PRESENT:  GUIDO CALABRESI,
          DENNY CHIN,
          SUSAN L. CARNEY,
                  *Circuit Judges.*
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FLO & EDDIE, INC., a California Corporation, individually and on behalf of all others similarly situated,

                  *Plaintiff-Appellee,*

                                                    **ORDER**

                  v.                                15-1164-cv

SIRIUS XM RADIO, INC., a Delaware Corporation,
                  *Defendant-Appellant,*

DOES, 1 THROUGH 10,
                  *Defendants.*


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

On April 13, 2016, we certified to the New York Court of Appeals the following question in this case: "Is there a right of public performance for creators of sound recordings under New York law and, if so, what is the nature and scope of that right?"

On December 20, 2016, the New York Court of Appeals, in an extensive opinion, with a concurrence and a dissent, answered our question in the negative.

The parties are directed to submit a letter brief of no more than twelve pages, double-spaced, by January 16, 2017, addressing the effect of the New York Court of Appeals' decision on the appeal before us.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk