GRADSTEIN & MARZANO, P.C.
HENRY GRADSTEIN (89747)
hgradstein@gradstein.com
MARYANN R. MARZANO (96867)
mmarzano@gradstein.com
6310 San Vicente Blvd., Suite 510
Los Angeles, CA 90048
T: 323-776-3100

SUSMAN GODFREY L.L.P.
STEPHEN E. MORRISSEY (187865)
smorrissey@susmangodfrey.com
STEVEN G. SKLAVER (237612)
ssklaver@susmangodfrey.com
KALPANA SRINIVASAN (237460)
ksrinivasan@susmangodfrey.com
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
T: 310-789-3100 F: 310-789-3150

[Additional Counsel on Signature Page]
*Co-Lead Class Counsel*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| FLO & EDDIE, INC., a California corporation, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SIRIUS XM RADIO INC., a Delaware corporation; and DOES 1 through 10,<br><br>Defendants. | Case No. CV13-05693 PSG (GJSx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION CERTIFICATION AND SETTLEMENT**<br><br>Date: May 8, 2017<br>Time: 1:30 p.m.<br>Place: Courtroom 6A |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **<u>TABLE OF CONTENTS</u>**

I.     INTRODUCTION ........................................................................... 1

II.    BACKGROUND ............................................................................ 3

       A.    Procedural and Factual Background of the Litigation ........................... 3

       B.    Terms of the Settlement ...................................................... 7

             1.    The Settlement Class ................................................. 7

             2.    The Right to Appeal .................................................. 8

             3.    Settlement Benefits .................................................. 9

             4.    Settlement Fund Distribution Plan ................................... 11

             5.    Royalty Program Distribution Plan ................................... 12

             6.    License and Covenant Not To Sue .................................... 13

             7.    Fees and Costs ...................................................... 14

       C.    Preliminary Approval ........................................................ 14

       D.    Notice to the Class ......................................................... 16

       E.    Exclusion from the Class .................................................... 17

       F.    Class Member Objections ..................................................... 17

       G.    Continued Jurisdiction ...................................................... 17

III.   FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED ................................................................. 18

IV.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND WARRANTS FINAL APPROVAL ......................................... 18

       A.    The Legal Standard for Final Approval of Settlement ......................... 19

       B.    The Benefits to the Class of Settling Outweigh the Possibility of Achieving a Larger Recovery if Litigation Were to Continue ............. 21

             1.    The strength of Plaintiffs' case and the amount offered in settlement. ....................................................... 21

             2.    The risk, expense, complexity, and likely duration of further litigation. .................................................. 22

             3.    The risk of maintaining class action status throughout the trial. ....................................................... 22

             4.    The extent of discovery completed and the stage of

i

proceedings. .................................................................................. 23

    5.    The experience and views of counsel. ....................................... 23

    6.    The reaction of the class members to the proposed settlement. ................................................................................ 23

C.    The Proposed Settlement is the Result of Arduous, Arm's-length Negotiations Conducted by Experienced and Capable Counsel. ........... 24

V.    THE CONCERNS RAISED BY PROPOSED AMICI CURIAE ARE NOT RELEVANT AND SHOULD BE OVERRULED ............................... 25

VI.    CONCLUSION ........................................................................................... 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Cases**

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2nd Cir. 1974) ..................................................................... 21

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ................................................................... 19

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) .................................................................... 24

*In re Michael Milken & Assocs. Sec. Litig.*,
  150 F.R.D. 57 (S.D.N.Y. 1993) ................................................................ 17

*Jenkins v. Pech*,
  No. 8:14CV41, 2015 WL 6738624 (D. Neb. Nov. 4, 2015) ......................... 18

*Lake v. First Nationwide Bank*,
  156 F.R.D. 615 (E.D. Pa. 1994) ............................................................... 17

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ................................................................... 21

*Mullane v. Central Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ............................................................................... 17

*Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ................................................... 20, 21, 23

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ...................................................... 19, 20, 22

*Torrisi v. Tuscon Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ...................................................................... 20

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976) .................................................................... 19

*White v. NFL*,
  822 F. Supp. 1389 (D. Minn. 1993) ............................................................ 17

**Rules**

Fed. R. Civ. P. 23 ............................................................................... passim

# I.    INTRODUCTION

After more than three years of hard-fought litigation, Plaintiffs agreed to settle this complex class action after securing an excellent result for the Class. The Settlement was reached on the eve of trial after class certification and decertification briefing and rulings, voluminous cross-motions for summary judgment and rulings, and the submission of the Pretrial Conference Order, exhibit and witness lists, objections, and deposition designations, motions *in limine*, voir dire questions, and proposed jury instructions. The Court granted preliminary approval of the Settlement on January 27, 2017, and Notice to the Class commenced shortly thereafter. Not a single objection to the Settlement was filed by a Class member. Only one request for exclusion was made.

The Settlement gives the Class an outstanding recovery. When the monetary benefits are combined, the Class will receive a guarantee of $25,500,000 million in value, which could increase to over $73 million. The guaranteed $25.5 million in cash payments by Sirius XM could increase to $35,500,000. The Settlement also creates a royalty program for Sirius XM to pay the Class up to an additional $37.68 million. The Settlement is the first and hence the largest amount ever recovered in a class action asserting claims by owners of pre-1972 sound recordings for unauthorized performances. This result is particularly impressive in light of the recent developments that occurred after the Settlement was reached—including the New York Court of Appeals ruling that a right of public performance *does not exist* under New York common law,[1] and the Ninth Circuit's reference of the Pandora

---

[1] While the New York Appeal was pending, the Settlement provided a potential $99 million cash benefit. Dkt. 66-1 at 1. However, Flo & Eddie ultimately did not prevail on the New York Appeal, thus reducing the potential value of the Settlement. On February 16, 2017, the United States Court of Appeals for the Second Circuit issued an order instructing the district court to grant Sirius XM's motion for summary judgment against Flo & Eddie, and on March 17, 2017, the district court entered judgment against Flo & Eddie. *See* Dkt. 678 at 405. Thus, under the terms of the Stipulation, the Class no longer has the potential of recovering the additional $5 million Settlement Payment and 2% prospective

action to the California Supreme Court to address whether California law grants pre-1972 recording owners a right of public performance—which demonstrates the substantial risks faced by the novel claims at issue in this case.

The uncertainty of the various states' laws is reflected in the Settlement, which provides for additional benefit to the Settlement Class contingent upon the resolution of various appeals that address the extent of public performance rights afforded to pre-1972 recordings (three potential appeals existed at the time of the Settlement; one has since been resolved). For past relief, the Settlement Class will be paid $25 million upon final approval, plus up to an additional $500,000 in administration costs. Stip. at 15-16, Part IV.A.1; *id.* at 29, Part VII (Dkt. 666-4). By any measure, that compensation by itself is an excellent result. The Settlement Class will also receive an additional $5 million—up to an additional $10 million payment in light of the two appeals that remain outstanding in California and Florida—for each appeal in which Flo & Eddie prevails on the performance rights issue. On a per-play basis, and excluding the value of administration that Sirius XM has agreed to separately pay up to $500,000, the minimum ***guaranteed*** $25 million settlement represents approximately an award of $15.68 per play; the current potential $35 million payment represents approximately $21.95 per play. Declaration of Michael Wallace ("Wallace Decl."), filed concurrently herewith, ¶ 24. None of these funds revert back to Sirius XM. Stip. at 16, Part IV.A.1.

The Settlement also provides for an ongoing 10-year license through January 1, 2028, which could include additional cash royalty payments by Sirius XM depending on the outcome of appellate proceedings—which currently amounts to up to a 3.5% royalty rate for each Settlement Class Member's pro rata share of Sirius XM's defined Gross Revenue. Plaintiffs' damages expert estimates that a 3.5% future license could generate between approximately $28.94 million

royalty contingent upon Flo & Eddie prevailing on the Performance Right Issue in the New York Court of Appeals. *See* Stip. at 19 ¶ IV.B.1-B.2 (Dkt. 666-4).

(assuming that Sirius XM has no annual revenue growth) to $37.68 million (assuming continued annual revenue growth) in additional cash payments to the Class over the next 10 years. Wallace Decl. at ¶ 21. This portion of the Settlement represents a substantial benefit for the Class and provides the potential for substantial additional monetary relief that could not be obtained even if Plaintiffs were victorious at trial.

The Settlement is fair, reasonable, and adequate in light of the guarantee of a minimum recovery versus the risk of no recovery at trial and the serious risks of continued litigation—namely the range of potential damages, competing damages models, and adverse rulings on appeal on both the merits and on decertification in this and other jurisdictions. Of course, the Court is very familiar with the issues raised in this litigation and the claims and defenses of the Parties. The Settlement culminated less than 48 hours before the jury trial was set to commence and after all pretrial filings were complete and after more than three years of hotly contested litigation, and it resulted from an extensive, arm's-length negotiation between the parties. Accordingly, Flo & Eddie respectfully requests that the Court give final approval to the terms of the Settlement.

Flo & Eddie also request that the Court deny the pending Motion for Leave to File Brief as Amici Curiae (Dkt. 684)—filed by entities *who are not class members* and have no standing to object to the proposed settlement—for the reasons set forth in Class Counsel's opposition thereto, filed concurrently herewith.

## II.   BACKGROUND

### A.   Procedural and Factual Background of the Litigation

Flo & Eddie filed its Complaint in this action on August 1, 2013, in state court. Sirius XM removed the case to this Court on August 6, 2013. Dkt 1. Sirius XM then filed a Motion to Transfer Venue, Dkt. 30, and a Motion to Stay Proceedings, Dkt. 32. The Court denied both motions. Dkts. 42-43. Sirius XM also filed a Motion to Strike Class Allegations, which the Court denied. Dkt. 47, 56. The

Court bifurcated discovery into liability and damages phases. Dkt. 58. After conducting liability discovery, Plaintiffs moved for summary judgment on liability as to all of their claims, and substantial briefing followed. Dkt. 65, 86, 97, 106, 111. The Court heard oral argument on September 15, 2014. On September 22, 2014, the Court granted summary judgment against Sirius XM on liability based on the performance right issue, but not the reproduction issue. Dkt. 117.

On October 15, 2014, Sirius XM moved to certify the Court's summary judgment order for interlocutory appeal and requested a stay, which Plaintiff opposed. Dkt. 123, 143, 149. The Court denied Sirius XM's request for interlocutory appeal on November 20, 2014. Dkt. 159. Sirius XM also filed a motion for reconsideration of the Court's summary judgment order on November 17, 2014. Dkt. 154, 162 (opposition), 165 (reply). The Court denied Sirius XM's motion on February 19, 2015. Dkt. 175.

On March 16, 2015, after conducting additional extensive discovery, Plaintiff filed its motion for class certification. Dkt. 180. Plaintiff moved the Court under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure for an order certifying the Action as a class action on behalf of:

> The owners of sound recordings fixed prior to February 15, 1972 … which have been reproduced, performed, distributed, or otherwise exploited by Defendant Sirius XM in California without a license or authorization to do so during the period from August []1, 2009 to the present.

Dkt. 180 at 2; *see* Dkt. 193 (opposition); Dkt. 200 (reply). The Court held a hearing on May 22, 2015. Dkt. 224. The Court entered an order certifying the class on May 27, 2015. Dkt. 225.

Shortly thereafter, on June 2, 2015, Sirius XM filed an *Ex Parte* Application for Stay Pending Rule 23(f) Petition or, Alternatively, to Modify Scheduling Order, Dkt. 228, requesting the Court stay the case pending resolution of Sirius XM's

4

petition to the Ninth Circuit for permission to appeal the Court's order granting Plaintiff's motion for class certification. Dkt. 228; *see* Dkt. 230 (opposition), Dkt. 232 (reply). The Court heard oral argument on June 8, 2015, Dkt. 236, and that same day entered an order granting the motion. Dkt. 237. Sirius XM filed its Rule 23(f) petition to the Ninth Circuit on June 10, 2015, which Plaintiffs opposed. On August 10, 2015, the Ninth Circuit denied the petition. On August 24, 2015, Sirius XM filed a petition for rehearing or reconsideration *en banc*, which the Ninth Circuit denied on November 10, 2015. On November 25, 2015, Sirius XM filed a Motion to Continue Stay Pending Resolution of Related Appeal. Dkt. 264; *see* Dkt. 269 (opposition), Dkt. 270 (reply). The Court denied Sirius XM's motion. Dkt. 271.

Thereafter, the Court entered an order permitting Plaintiffs to conduct limited damages-related discovery on Sirius XM and Sirius XM to conduct absent class member discovery. Dkt. 272. Such discovery involved numerous in-person meet and confer sessions as well as motion practice. Sirius XM served subpoenas on absent class members across the country and took 19 depositions, with absent class members collectively producing thousands of pages of documents.

On April 27, 2016, Plaintiffs filed a Motion for an Order Approving the Form and Manner of Class Notice, Dkt. 294; *see* Dkt. 311 (opposition), Dkt. 313 (reply), which the Court granted on June 16, 2016, Dkt. 317. Sirius XM filed a petition for writ of mandamus with the Ninth Circuit, which was denied.

On July 6, 2016, Sirius XM filed a motion for partial summary judgment, seeking judgment against Plaintiffs' claims for punitive damages, disgorgement, and common law unfair competition. Dkt. 335. On September 8, 2016, the Court granted Sirius XM's motion in part, granting Sirius XM judgment as a matter of law on Plaintiffs' punitive damages and common law unfair competition claim. Dkt. 411. On July 29, 2016, Sirius XM filed a Motion for Decertification. Dkt. 345; *see* Dkt. 396 (opposition); Dkt. 424 (reply). The Court denied Sirius XM's motion on September 20, 2016. Dkt. 432.

The parties briefed a total of 18 motions *in limine*, designated deposition testimony from 23 witnesses, prepared competing jury instructions, Dkts. 592-593, and designated and conferred regarding the admissibility of the parties' hundreds of exhibits, which comprised of thousands of pages. The Court held pretrial conferences on November 7, 2016, and November 10, 2016. Dkts. 639, 661. A jury trial was scheduled to begin on November 15, 2016.

Leading up to trial and prior to agreeing to the Settlement, Plaintiffs, through Class Counsel, conducted a thorough investigation of the facts and law relating to the matters alleged in the Complaint, including, among other things, (i) reviewing and analyzing the evidence and applicable law, including the review and analysis of thousands of pages of documents produced by Sirius XM and third parties; (ii) consulting with experts retained by Class Counsel; (iii) taking and defending numerous depositions of fact and expert witnesses; (iv) engaging in extensive motion practice, including motions to compel, class certification, summary judgment, and motions *in limine*; and (vi) the preparing exhibit lists, jury instructions, and related pretrial conference filings. Less than two days before the jury trial was to begin, and after extensive arm's-length negotiations, the Parties entered into the Settlement Agreement.

In parallel with the litigation in this Court, Class Counsel on behalf of Flo & Eddie pursued litigation in Florida and New York against Sirius XM relating to the Class claims under those states' laws. The proceedings in those courts likewise have involved extensive motion practice, appellate proceedings, hard-fought litigation, and coordination with the proceedings in this action. Since filing for preliminary approval, the New York proceeding has culminated with the New York Court of Appeal finding no performance right and the Second Circuit directing summary judgment be granted in Sirius XM's favor on liability. That outcome underscores the uncertain landscape against which this settlement was achieved.

Sirius XM has denied and continues to deny each and all of the claims and

contentions alleged by Plaintiffs. Sirius XM has expressly denied and continues to deny all charges of wrongdoing or liability arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in this action and explicitly denies that it has committed the alleged infringement, violations of law or breaches of duty to Plaintiffs, the Settlement Class, or anyone else.

Plaintiffs and Class Counsel believe that the claims as to liability asserted and damages sought have merit and that the evidence supports the claims asserted. However, based upon their extensive discovery, investigation, and evaluation of facts and the law concerning the matters alleged, Plaintiffs and Class Counsel agreed to settle the Action pursuant to the provisions of the Settlement after considering, among other things: (1) the fairness, reasonableness, and adequacy of the Settlement; (2) the substantial risks and uncertainty of protracted litigation as to damages in this case and appeals as to all issues, especially in complex actions such as this, as well as the difficulties and delays inherent in such litigation; and (3) the desirability of promptly providing relief to Plaintiff and the Settlement Class.

**B.     Terms of the Settlement**

The Stipulation and the exhibits thereto (Dkt. 666-4) provide all of the material details of the Settlement terms. Flo & Eddie approved the terms of the Settlement, and Class Counsel deems such settlement to be fair, reasonable, and adequate to, and in the best interests of the members of the Settlement Class.

### 1.     *The Settlement Class*

The Settlement Class, as conditionally certified by this Court on January 27, 2017, is defined as follows:

> All entities and natural persons, wherever situated, that are owners of Pre-1972 Sound Recordings which have been reproduced, performed, distributed, or otherwise exploited by Sirius XM in the United States without a license or authorization to do so from August 1, 2009 through November 14, 2016.

7

Dkt. 676 at 3 ¶ 4.[2] Excluded from the Settlement Class are: (1) all federal court judges who have presided over this case and any members of their immediate families; (2) Direct Licensors; (3) Major Record Labels; and (4) Sirius XM's employees, officers, directors, agents, and representatives, and their immediate family members. *Id.* ¶ 5.

As explained in Plaintiffs' Motion for Preliminary Approval (Dkt. 666-1), the Certified Class differs only slightly from the Settlement Class, in that the Certified Class was limited to Pre-1972 Recordings that Sirius XM exploited in California, whereas the Settlement Class broadens the territory to the United States. Importantly, all members of the Settlement Class are members of the Certified Class because Sirius XM broadcasts the recordings nation-wide, and because the Settlement also reflects a compromise and release of Plaintiffs' claims under other states' laws. The change from California to the United States does not alter who is eligible to participate in the Settlement Class (other than the stated exclusions from the Settlement Class); nor does it alter the Pre-1972 Sound Recordings at issue.

### 2. *The Right to Appeal*

In exchange for a contingent payment of an additional $5 million to the Settlement Class and a 2% increase in the royalty rate otherwise owed, the Settlement provides that Sirius XM preserves its right to appeal the Court's final judgment of liability on the performance right issue and Commerce Clause issue in this Action, but Sirius XM agreed it will not appeal the Court's class certification rulings. Stip. at 14 ¶ II.A (Dkt. 666-4).

For similar potential additional financial benefits to the Settlement Class ($5 million and 1.5% royalty payment currently remaining at issue in Florida), the Stipulation preserves the parties' respective rights to proceed with the appeal of a

---

[2] "Pre-1972 Sound Recording" is "a sound recording that was initially fixed prior to February 15, 2972 (without regard to whether that sound recording was subsequently re-released, re-issued, or re-mastered)." Stip. at 6 ¶ I.A.32 (Dkt. 666-4).

related Florida Action.[3] *Id.* ¶ II.C. The Florida Action was appealed to the Eleventh Circuit and certified to the Florida Supreme Court on June 29, 2016, Appeal No. SC16-1161, on the underlying question of whether Sirius XM is entitled to publicly perform Pre-1972 Sound Recordings owned by Plaintiff without having to obtain permission from and pay compensation to Plaintiff (the "Performance Right Issue") under Florida law. *Id.* at 3-4 ¶ I.A.20. The briefing is complete and oral argument took place on April 6, 2017.

Also provided in the Stipulation, but no longer an issue due to the dismissal of the case with prejudice, is the Parties' respective rights to proceed with the appeal of the related New York Action.[4] *Id.* at 14 ¶ II.B. The Stipulation, entered into when the New York Appeal remained unresolved, provides for potential additional financial benefits to the Settlement Class ($5 million and 2.0% royalty payment) if Flo & Eddie were to prevail on the New York Appeal.

### 3. *Settlement Benefits*

The Settlement, if approved by the Court, will establish a guaranteed cash settlement fund of $25 million for past Performances through December 31, 2017. Stip. at 15-16 ¶ IV.A.1. The Settlement will also establish a cash settlement fund of what currently amounts to up to an additional $10 million for past Performances, contingent on the two appellate outcomes that currently remain unresolved:

- If Plaintiff prevails on appeal of the Performance Right Issue in the

---

[3] The Stipulation defines the Florida Action as:
> the putative class action captioned *Flo & Eddie Inc. v. Sirius XM Radio Inc.*, filed on September 3, 2013 in the United States District Court for the Southern District of Florida (the "Florida Court"), Case No. 13-CV-21382.

Stip. at 3 ¶ I.A.19 (Dkt. 666-4).

[4] The Stipulation defines the New York Action as:
> the putative class action captioned *Flo & Eddie Inc. v. Sirius XM Radio Inc.*, filed on August 16, 2013 in the United States District Court for the Southern District of New York (the "New York Court"), case No. 13-CV-5784 (CM).

Stip. at 5 ¶ I.A. 25 (Dkt. 666-4).

Florida Action in the Florida Supreme Court, Sirius XM will pay into the Settlement Fund an additional $5 million. *Id.* at 19 ¶ IV.B.3.

- If Plaintiff prevails on appeal of the Performance Right Issue in this Action, Sirius XM will pay into the Settlement Fund an additional $5 million. *Id.* at 19 ¶ IV.B.5.

The Settlement Payment, together with all interest accruing thereon, the potential amounts of up to $10 million in additional bonus payments (contingent on appellate outcomes as described above) and all interest accruing thereon, are collectively referred to as the "Settlement Fund." Stip. at 8 ¶ I.43. There will be no reversion to Sirius XM of the Settlement Fund. *Id.* at 15-16 ¶ IV.A.1.

As part of the Settlement, members of the Settlement Class will also license to Sirius XM the right to publicly perform, reproduce, distribute, or otherwise exploit their Pre-1972 Sound Recordings for a ten-year period from January 1, 2018, through January 1, 2028, and will be eligible to receive monthly royalty payments during that time period at a royalty rate as high as 3.5%, depending on the appellate outcomes that currently remain unresolved:

- In the event Sirius XM prevails on the Performance Right Issue in the Florida Supreme Court, the prospective royalty rate is reduced by 1.5%.

- In the event Sirius XM prevails on the Performance Right Issue in an appeal of this Action, the prospective royalty rate is reduced by 2%.

- If Sirius XM prevails regarding its appeal in the U.S. Courts of Appeal for the Ninth, or Eleventh Circuits, or in the United States Supreme Court based on the question of whether it would violate the Commerce Clause of the United States Constitution to apply a state-law right to control and/or demand compensation for the public performance of Pre-1972 Sound Recordings, Sirius XM will not be required to make any prospective royalty payments, but the Settlement Class will keep all royalties previously paid.

1    *Id.* at 19 ¶ IV.B.

2    Sirius XM's payment of royalties pursuant to Paragraph IV.C.2-9 of the

3    Stipulation is referred to as the "Royalty Program." *Id.* at 7 ¶ I.A.36. The future

4    license—which currently has a potential maximum value of 3.5% (reduced from a

5    potential maximum of 5.5%, in light of the New York Appeal outcome)—has

6    significant value with estimated potential future royalties between $28.4 million

7    (assuming no revenue growth) and $37.68 million (assuming continued annual

8    revenue growth) in royalties over the next 10 years based on the assumption that

9    15% of Sirius XM's future plays are of Pre-72 Sound Recordings owned by the

10   Settlement Class. Wallace Decl. ¶ 20.

11   Sirius XM also agreed to pay for the reasonable costs of administering the

12   Settlement Fund and the Notice, up to an additional $500,000. Stip. at 29 ¶ VII.

13                    **4.    *Settlement Fund Distribution Plan***

14   To qualify for a payment from the Settlement Fund, a Settlement Class

15   Member must timely and validly submit a completed Proof of Claim, which will (1)

16   identify each Pre-1972 Sound Recording owned by providing the (i) title, (ii) artist,

17   and (iii) album and/or label; and (2) represent and warrant that the Settlement Class

18   Member owns all right, title, and interest in such recording(s). The Proof of Claim

19   will be distributed to the Class via first class mail. Any Class Member may also

20   obtain a Proof of Claim on the Internet at the website maintained by the

21   Administrator: *www.pre1972soundrecordings.com*. All members of the Settlement

22   Class who establish their entitlement to participate in the Settlement will be entitled

23   to a pro rata share of the Settlement Payment based on the number of historical

24   plays of the Settlement Class Members' Pre-1972 Sound Recordings.

25   Any disputes concerning ownership or control that cannot be resolved will be

26   referred to a magistrate judge appointed by the Court. Stip. at 9 ¶ 47 (Dkt. 666-4).

27   The Special Master will resolve disputes regarding the ownership and/or control of

28   Pre-1972 Sound Recordings between, amongst, or involving Settlement Class

Members who submit a timely, valid, and properly completed claim for payment from the Settlement Fund. *Id.* All decisions by the Special Master concerning ownership or control may be appealed to the Court. *Id.* at 28 ¶ VI.C.

### 5. *Royalty Program Distribution Plan*

To qualify for a payment from the Royalty Program, a Settlement Class Member must be a Bona Fide Claimant as defined in the Stipulation. *Id.* at 1 ¶ I.A.3. A Bona Fide Claimant must properly submit an uncontested claim to specific Pre-1972 Sound Recording(s) it claims to own or control by identifying each Pre-1972 Sound Recording owned by providing the (i) title, (ii) artist, (iii) album, (iv) label, (v) ISRC (if known), and (vi) date first fixed, in each case for each applicable Pre-1972 Sound Recording owned, and must represent and warrant that it owns all right, title, and interest in such recording(s). *Id.* at 1 ¶ I.A.3; *id.* at 5 ¶ I.A.23. Such a claim will be considered uncontested so long as no other person or entity claims to own or control the same specific Identified Pre-1972 Sound Recording(s). *Id.* Because the royalty program begins in January 2018, depending on the timing of final approval, the parties will have substantial time to work with the Royalty Administrator to set-up administration and implementation details of the program.

Any disputes concerning ownership or control for the Royalty Program will be referred to the Special Master, in the same manner and procedure as the Settlement Fund. To the extent that Sirius XM has a reasonable, good faith basis to believe that a claimant does not own or control an Identified Pre-1972 Sound Recording(s) (on grounds other than a claimed public domain status of the Recording(s)), it may contest the claim to the Special Master, bearing all of its own attorneys' fees and costs. *Id.* at 1 ¶ I.A.3. All decisions by the Special Master concerning ownership or control may be appealed to the Court. *Id.* at 28 ¶ VI.C.

Claim forms for participating in the Royalty Program will be distributed to the Settlement Class via first class mail. Any Class Member may also obtain a Royalty Program claim form on the Internet at the website maintained by the

Administrator: *www.pre1972soundrecordings.com*. The Administrator will also maintain a toll-free number that Class Members can use to ask questions.

Sirius XM will account for the "Pro Rata Share" of royalties allocable to its use of Identified Pre-1972 Sound Recordings owned by Bona Fide Claimants, calculated as follows:

> for any particular sound recording and for any applicable accounting period, a fraction of which the numerator is the total number of Performances of that particular Pre-1972 Sound Recordings in that accounting period on the Reference Channels, and the denominator of which is the total number of Performances of all sound recordings broadcast by Sirius XM in that accounting period on the Reference Channels.

*Id.* at 7 ¶ I.A.34.

The parties have selected Music Reports Inc. ("MRI") to serve as the Royalty Administrator. Under the Stipulation, the Royalty Administrator will develop and maintain a Royalty Claims Website, calculate, prepare, and distribute royalty statements based on the usage information provided by Sirius XM, and distribute payments to Bona Fide Claimants and any applicable Court-approved fees to Class Counsel from the Royalty Program. The Royalty Administrator has audit rights to examine the books and records of Sirius XM to verify the accuracy of royalty accountings, with any disputes to be resolved by the Court.

### 6. *License and Covenant Not To Sue*

Upon final approval, the Settlement Class will license and grant to Sirius XM through January 1, 2028, in the United States, its territories, possessions, commonwealths, and military bases, the right, through to the listener, to broadcast and publicly perform by means of digital audio transmission and to make reproductions, distributions, and other exploitations necessary or incident thereto, any of all of the Pre-1972 Sound Recordings owned or controlled by the Settlement

Class in connection with Sirius XM's satellite digital audio radio service, Sirius XM's Internet Service, Sirius XM's multi-channel video programming distributors service, or Sirius XM's commercial business establishment service, including any such service offered by agents or representatives on behalf of Sirius XM. Any sale, assignment, transfer, or other disposition of a Pre-1972 Sound Recordings owned or controlled by the Settlement Class shall be subject to such license. Stip. at 20-21 ¶ IV.C.1. Upon final approval, Plaintiff and each and every other Settlement Class Member covenant not to sue and will be barred through January 1, 2028, from pursuing their own lawsuits based on Sirius XM's performance, distribution, reproduction, or other exploitation of their Pre-1972 Sound Recordings in the United States, with the exception of pursuing the appeals related to the millions in additional cash payments provided for in the Settlement.

### 7. *Fees and Costs*

The Settlement provides that Class Counsel may seek reimbursement of expenses and an award of up to one-third of the total cash benefits conferred by the Settlement from the Settlement Fund and Royalty Program.[5] *Id.* Additionally, the Settlement provides that Sirius XM will pay up to $500,000 in notice and administration costs of the Settlement, and that a portion of the Settlement amount may be used to pay for any additional notice and administration costs. Stip. at 29 ¶ VII. The Settlement provides that Class Counsel may request incentive awards to be paid from the Settlement Fund of up to $25,000 each for the two Flo & Eddie principals for their services as representatives on behalf of the Class. *Id.* at 30 ¶ VII.

### C.   Preliminary Approval

On January 27, 2017, this Court entered an Order Granting Preliminary

---

[5] Class Counsel filed such a motion seeking reimbursement of their costs, counsel fees, and incentive awards on December 30, 2016. *See* Dkt. 670. Plaintiff's Motion for an Award of Attorneys' Fees and Costs ("Plaintiff's Fee and Cost Motion") is scheduled to be heard at the same time as the final approval hearing—on May 8, 2017. Class members were given notice of Plaintiff's Fee and Cost Motion, and were given opportunity to object to that application.

1  Approval of Class Action Settlement, Approving Form and Manner of Notice, and

2  Setting Date for Hearing on Final Approval of Settlement ("Preliminary Approval

3  Order"). Dkt. 676. The Court found the Settlement to be fair, reasonable, and

4  adequate, and found that it was entered into at arm's length by highly experienced

5  counsel, and sufficiently within the range of reasonableness that notice of the

6  Settlement should proceed. *Id* ¶ 1.

7      The Court conditionally certified the Settlement Class for purposes of the

8  Settlement and appointed plaintiff Flo & Eddie to serve as class representative of

9  the Settlement Class. *Id.* ¶¶ 4-7. The Court appointed the law firms of Gradstein &

10 Marzano, P.C. and Susman Godfrey L.L.P. to serve as Class Counsel for purposes

11 of the Settlement. *Id.* ¶ 8.

12     The Court approved the form, substance, and requirements of the Short Form

13 Class Notice and the Long Form Class Notice, attached to the Stipulation as Exhibit

14 C, to Settlement Class Members. *Id.* ¶ 10. The Court found that the form and

15 content of the notice program and the methods of notifying the Settlement Class

16 Members of the Settlement and its terms and conditions met the requirements of

17 Rule 23 of the Federal Rules of Civil Procedure, Constitutional due process,

18 constituted the best notice practicable under the circumstances, and constituted due

19 and sufficient notice to all persons entitled thereto. *Id.*

20     The Court ordered that Sirius XM shall pay for all reasonable notice and

21 administrative costs, up to $500,000. *Id.* ¶ 11. The Court appointed Garden City

22 Group LLC to serve as the Administrator to provide the Class Notice and, if the

23 Settlement receives final approval, to administer the Claim Program. *Id.* ¶ 12. The

24 Court ordered the Administrator to cause the Class Notice to be mailed by first-

25 class mail to all reasonably identifiable prospective Settlement Class members no

26 later than February 6, 2017. *Id.* ¶ 15.

27     The Court ordered that Persons requesting exclusion from the Class must

28 mail their request for exclusion by first-class mail such that it is postmarked on or

15

before thirty days from the date Class Notices is sent (that is, by March 8, 2017). *Id.* ¶ 16. In a subsequent order, the Court ordered that any objections to the Settlement, plan of allocation, or the application for fees and costs must be filed by March 24, 2017. Dkt. 677 at ¶3(a). No objections were filed.

## D.   Notice to the Class

Class notice was disseminated pursuant to this Court's Preliminary Approval Order. Dkt. 676. On February 6, 2017, the Administrator distributed via First Class Mail to 330 potential members of the Class (as identified through a variety of sources, including Sirius XM) the Long Form Class Notice, substantially in the form attached as Exhibit C to the Stipulation (Dkt. 666-4 at 59-67). *See* Decl. of Eric Kierkegaard, filed concurrently herewith, ¶ 3 & Ex. A (Long Form Class Notice). The Administrator also posted on a website, www.pre1972soundrecordings.com, the Long Form Class Notice, the Preliminary Approval Order, the Settlement Agreement, information setting forth the exclusion and objection deadlines, and other essential details concerning the settlement and opt-out requirements. *Id.* ¶ 4. The Administrator also issued a press release, *see id.* ¶ 7 & Ex. D, and published the Short Form Class Notice in the following periodicals: The Tennessean (issue sale dates February 15 and 19, 2017); Billboard Magazine (issue sale dates February 17, 2017, and March 3, 2017, and publication dates February 25, 2017, and March 11, 2017); and Music Connection (publication dates February 22, 2017, and March 29, 2017). *Id.* ¶ 5 & Ex. B (Short Form Class Notice) & Ex. C (tear sheets).

The Court-approved notice fully comports with the requirements of Federal Rules of Civil Procedure 23(c)(2) and 23(e) and due process because it constitutes the best notice practicable under the circumstances. It fairly apprises the members of the Class of the essential terms of the Settlement and advises members of the Class of their rights thereunder. It advises Class Members of the pendency of this action, the proposed settlement, and Class Counsel's application for a fee and

16

expense award and for incentive compensation awards to Flo & Eddie's principals; describes the facts underlying this action; states who members of the Class are; provides information regarding attorneys' fees and how Class Members may object to the proposed settlement; and clearly indicates contact information for Class Counsel. *Id.* ¶ 4 & Exs. A-C. This is more than adequate notice under the circumstances. *See White v. NFL*, 822 F. Supp. 1389, 1400 (D. Minn. 1993) (notice by mail to identified Class members and publication once in *USA Today* "clearly satisfy both Rule 23 and due process requirements"); *Lake v. First Nationwide Bank*, 156 F.R.D. 615, 628 (E.D. Pa. 1994) (approving as reasonable notice by third class mail to identified Class members and publication two times in the national edition of *USA Today*); *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (notice by mail to identified Class members and publication in *USA Today*); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 317 (1950) ("This Court has not hesitated to approve of resort to publication as a customary substitute in another class of cases where it is not reasonably possible or practicable to give more adequate warning.").

### E.   Exclusion from the Class

Class Members had the opportunity to request exclusion from the Class by submitting a written request for exclusion so that it was received no later than March 8, 2017. Only one member of the Class served a request for exclusion. Kierkegaard Decl. ¶ 8 & Ex. E.

### F.   Class Member Objections

The Court required Class member objections to be filed and served on or before March 24, 2017. Out of 330 potential Class Members, not one objected to the Settlement. This speaks volumes of the fairness, reasonableness, and adequacy of the Settlement.

### G.   Continued Jurisdiction

The Preliminary Approval Order states that this Court "retains exclusive

17

continuing jurisdiction over the Action, the parties, the Settlement Class, the Settlement Fund, and the Royalty Program to consider all further matters arising out of or connected with the Settlement." Dkt. 676 at ¶ 26.

## III.   FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED

In its January 27, 2017, Preliminary Approval Order, this Court determined that the requirements of Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure are satisfied as to the Settlement Class as defined in the Stipulation. Plaintiffs request the Court to reaffirm its Preliminary Approval Order and order final certification of the proposed Settlement Class. Dkt. 676. The Class continues to meet the requirements for certification for the purposes of settlement under Rule 23, for the same reasons set forth in the Court's Order Granting Plaintiff's Motion for Class Certification, Dkt. 225; Plaintiff's Motion for Class Certification, Dkt. 180; Plaintiffs' Opposition to Sirius XM's Motion for Decertification, Dkt. 396, and the Court's Preliminary Approval Order, Dkt. 676. The Settlement Class, comprised of the same members of the Certified Class (other than opt outs), satisfies the requirements of Fed. R. Civ. P. 23(a), as well as the requirement of Fed. R. Civ. P. 23(b)(3) that the question of law or fact common to class members predominate, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *See Jenkins v. Pech*, No. 8:14CV41, 2015 WL 6738624, at *1 (D. Neb. Nov. 4, 2015) (certifying class for reasons stated in court's prior order on certification, where earlier certified class differed from the settlement class only with respect to the persons excluded).

## IV.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND WARRANTS FINAL APPROVAL

Plaintiffs request that this Court grant final approval of the Settlement Agreement not only because public policy favors the settlement of complex class actions such as this one, but also, as demonstrated herein, because the Settlement

Agreement has achieved excellent results for the Settlement Class. Plaintiffs respectfully submit that the proposed settlement is fair, reasonable, and adequate and warrants final approval by this Court.

### A.    The Legal Standard for Final Approval of Settlement

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise or settlement of class action claims. Approval of a proposed class-action settlement is a matter within the sound discretion of the district court. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). This discretion should be exercised in the context of a public policy which strongly favors the pretrial settlement of class action lawsuits. *Id.* at 1276; *see Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (stating that "there is an overriding public interest in settling and quieting litigation," and this "is particularly true in class action suits").

In deciding whether to approve a proposed settlement, the Court must determine whether the settlement, "taken as a whole, is fair, adequate, and reasonable." *City of Seattle*, 955 F.2d at 1291. "The court need not 'reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.'" *Id.* (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)).

The Ninth Circuit has set forth the following list of factors that may be relevant in evaluating the fairness of a class action settlement:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental

1  participant; and the reaction of the class members to the proposed

2  settlement.

3  *Id.* (quoting *Officers for Justice*, 688 F.2d at 625). "This list is not exclusive and

4  different factors may predominate in different factual contexts." *Torrisi v. Tuscon*

5  *Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

6  The district court must exercise sound discretion in approving a settlement.

7  The district court's discretion, however, is to be exercised in light of the

8  recognition that "the court's intrusion upon what is otherwise a private consensual

9  agreement negotiated between the parties to a lawsuit must be limited to the extent

10 necessary to reach a reasoned judgment that the agreement is not the product of

11 fraud or overreaching by, or collusion between, the negotiating parties, and that the

12 settlement, taken as a whole, is fair, reasonable and adequate to all concerned."

13 *Officers for Justice*, 688 F.2d at 625. Thus, the Ninth Circuit limits the inquiry as

14 follows:

15  [T]he settlement or fairness hearing is not to be turned into a trial or

16  rehearsal for trial on the merits. Neither the trial court nor this court is

17  to reach any ultimate conclusions on the contested issues of fact and

18  law which underlie the merits of the dispute, for it is the very

19  uncertainty of outcome in litigation and avoidance of wasteful and

20  expensive litigation that induce consensual settlements. The proposed

21  settlement is not to be weighed against a hypothetical or speculative

22  measure of what might have been achieved by the negotiators.

23 *Id.*

24  As the Ninth Circuit observed, "the very essence of a settlement is

25 compromise, a yielding of absolutes and an abandoning of highest hopes." *Id.* at

26 624 (internal quotation marks omitted). Indeed, "it is well-settled law that a

27 proposed settlement may be acceptable even though it amounts to only a fraction of

28 the potential recovery that might be available to the class members at trial." *Nat'l*

*Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (*citing Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)); *see City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2nd Cir. 1974) ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."). "Ultimately, the district court's determination is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Nat'l Rural Telecom. Coop.*, 221 F.R.D. at 526 (quoting *City of Detroit*, 495 F.2d at 468.

Here, the factors identified by the Ninth Circuit support final approval of the Settlement Agreement.

## B.   The Benefits to the Class of Settling Outweigh the Possibility of Achieving a Larger Recovery if Litigation Were to Continue

Although Plaintiffs believe the claims have merit, they recognize that they faced significant legal, factual, and procedural obstacles that posed substantial risks to their likelihood of success on the merits. As evidence of this, subsequent to Preliminary Approval by this Court, the Second Circuit directed the district court to dismiss the New York action with prejudice, after the New York Court of Appeal found no performance right. In light of the strengths and weaknesses of the case—which Class Counsel was intimately familiar with, given that the case settled on the eve of trial, after all discovery was complete and pretrial filings were submitted—Class Counsel believe that the Settlement is more than reasonable because it achieves a significant benefit for the Class in a case in which the scope of damages was hotly contested, Sirius XM intended to move to decertify the case yet again, and failure on appeal was possible.

### 1.   *The strength of Plaintiffs' case and the amount offered in settlement.*

The proposed Settlement provides substantial economic benefits to the Class. Given the inherent risks associated with class certification, the liability issues found

by the Court as a matter of law which could be overturned on appeal, and an intensely disputed trial on the scope of damages which could produce highly variable results from a jury, the monetary payments provided for in the Settlement potentially exceeds the relief the Class could receive in a successful trial.

### 2. *The risk, expense, complexity, and likely duration of further litigation.*

The risk, expense, complexity, and likely duration of further litigation are very significant. This second factor also weighs heavily in favor of final approval of the Settlement. At trial, Sirius XM planned to offer testimony that Plaintiffs' damages must be measured by the alleged detriment, if any, caused by Sirius XM. *See, e.g.*, Dkt. 521 at 1. Sirius XM planned to offer expert testimony that the appropriate measure of damages was a reasonable royalty rate, less any deduction for Plaintiff's failure to mitigate damages. Dkt. 644 at 2. Sirius XM's expert calculated the royalty to be vastly lower (*i.e.*, tens of millions of dollars lower) than Plaintiffs' damages model. The proposed Settlement guarantees a substantial recovery for the Class now while obviating the need for an uncertain trial and appeal. *See Officers for Justice*, 688 F.2d at 624 ("Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation.") (internal quotation marks omitted).

### 3. *The risk of maintaining class action status throughout the trial.*

Sirius XM previously indicated its intention to move to decertify the Class yet again. *See* Dkt. 594. Plaintiffs believe it would be successful in maintaining class action status through the trial and into an appeal, but there is a risk that Sirius XM would prove successful in attacking class certification. Pursuant to this Settlement, Sirius XM will not appeal the issue of certification.

**4.**   ***The extent of <u>discovery completed and the stage of</u> <u>proceedings.</u>***

This matter has been intensely litigated. This Settlement was reached after the end of the discovery period, on the eve of trial. Dozens of depositions have been taken of Plaintiffs, Defendant, numerous third parties and absent class members, and the parties' respective experts. Sirius XM and third parties have produced thousands of pages of documents. The parties both designated damages experts, each of whom produced two reports and were deposed twice, including on the brink of trial. Numerous motions were filed with the Court, including discovery motions; a class certification motion; two summary judgment motions; a motion to decertify the class; and multiple motions *in limine*. Both parties filed memoranda of contentions of law and fact, trial briefs, exhibit lists, witness lists, jury instructions, verdict forms, and competing statements of the case.

Given the advanced stage of these proceedings, there can be no question that Class Counsel has a clear view of the strengths and weaknesses of the Class's claims and damage approaches to recommend the Settlement.

**5.**   **<u>The experience and views of counsel.</u>**

Class Counsel is comprised of attorneys who have substantial experience serving as counsel in numerous complex actions. They fully endorse the Settlement as fair, reasonable and adequate to the Class.

**6.**   ***<u>The reaction of the class members to the proposed</u> <u>settlement.</u>***

The single request for exclusion from the Class and the absence of any Class Member objections raises a "strong presumption" that the terms of the Settlement are favorable to Class Members. *See Nat'l Rural Telecom. Coop.*, 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."). Notices were issued to the 330 members of the Class, only one Class Member requested

exclusion, and no Class Member objected. As detailed in Part II.D, *supra*, the Notice provided the Class with the necessary information to make an informed decision regarding the Settlement, including the essential terms of the Settlement, details regarding the procedure and deadline for opting out of the Class and for filing objections, and Class Counsel's motion for an award for fees (including accrued interest) and expenses and for incentive awards to the Representative Plaintiffs. Given the large size of the Class and the detail of the Court-approved Notice, the single opt out and the absence of any Class Member objections speaks loudly in support of the Settlement and its achievements for the Class.

### C.   The Proposed Settlement is the Result of Arduous, Arm's-length Negotiations Conducted by Experienced and Capable Counsel

In addition to the factors just discussed, the Court must also be satisfied that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011). Factors considered here include: "(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; "(2) when the parties negotiate a clear sailing arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class," and "(3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* (internal quotation marks omitted).

The parties have actively engaged in many rounds of arm's-length negotiations, involving the exchange of numerous proposals and counter-proposals over a period of months. The end result—a cash portion of currently up to $35 million, plus a 10-year license currently at up to 3.5% for a total value of up to approximately $37.68 million, with no reversion to Sirius XM and no "clear

sailing" arrangement—is fair, appropriate, and in the best interests of the Class.

## V.   THE CONCERNS RAISED BY PROPOSED AMICI CURIAE ARE NOT RELEVANT AND SHOULD BE OVERRULED

On March 3, 2017, certain entities—which include the Major Record Labels that had opted out of this action—filed a Motion for Leave to File Brief as Amici Curiae, expressing concerns that the ongoing royalty rate set forth in the Settlement may effect *post*-1972 licensing rates. Dkt. 684. For the reasons set forth in Class Counsel's Opposition to Motion of American Association of Independent Music *et al.* for Leave to File Brief as Amici Curiae, filed concurrently herewith, the Court should deny Petitioner's request. Petitioners—who are not class members and whose interests are not aligned with the Settlement Class— have no standing to object to the Settlement. Moreover, no weight should be given to the efforts of the Major Record Labels—which brokered their own settlement with Sirius XM before opting out of this class—to impede other smaller sound recording owners from being able likewise to settle their claims. The concerns raised by Petitioners are not relevant to the Court's determination of whether the Settlement is fair, adequate, and reasonable *to the Settlement Class*. Moreover, Petitioners misunderstand the perceived effect the Settlement's proposed ongoing royalty rate—which governs royalties for *pre*-1972 recordings protected under *state* law that varies from state to state—will have on *post*-1972 licensing rates, which are protected under federal law that does not vary from state to state.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court order final certification of the Settlement Class, grant final approval to the Settlement, approve the Notice as being in compliance with Rule 23 of the Federal Rules of Civil Procedure, and approve the plan of distribution as fair, reasonable and adequate.

1

Dated:  April 10, 2017

2

By:  /s/ Rachel S. Black

3

GRADSTEIN & MARZANO, P.C.

4

Henry Gradstein
Maryann R. Marzano

5

SUSMAN GODFREY L.L.P.

6

Stephen E. Morrissey

7

Steven G. Sklaver
Kalpana Srinivasan

8

Rachel S. Black, *Admitted PHV*
Michael Gervais, *Admitted PHV*

9

*Co-Lead Class Counsel*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28